**Claim Coversheet Report**

Find | Clear | Print | Save | New | Help

Admin Notes Claim Class Correspond Doc List Medical SPELL Letters

Claim Number 5690365 Claim Last Updated 04/28/2017 Printed On 5/11/2018

Claimant Information

| | | | | | |
|---|---|---|---|---|---|
| Name | MOHAMMED AL-SHAREIH | SSN | | Birth Date | |
| Address | | Salary Amount $ | 8081.67 | Mode | M |
| | | Date of Hire | 03/02/2015 | | |
| | | Last Work Date | 01/22/2016 | | |
| | | Federal Tax | Employee Option | State Tax | No |
| Phone | | Phys Demands | Sedentary | | |

JobDesc COMPUTER ENGINEER

| | | | | | |
|---|---|---|---|---|---|
| Claim Status | Closed | Status Reason | Not TD Own Occ | Received Date | 03/08/2016 |
| Disability Date | 01/23/2016 | Close Date | 12/14/2016 | Reopen Date | |
| Sick Days Left | | Max Ben Date | 08/09/2030 | RTW FT / PT | |
| Ben Begin Date | 04/22/2016 | Apprv Thru Date | 12/13/2016 | Gross Ben $ | |

Diagnosis 1 Code/Desc G47.1 Hypersomnia

Diagnosis 2 Code/Desc J44.9 Chronic obstructive pulmonary disease, unspecified

Policyholder Information

Customer ID 09 - 462942 CROWN EQUIPMENT CORPORATION

Subsidiary 0000

Location 00000000 CROWN EQUIPMENT CORPORATION

Symb GF Numeral 01 Product LTD Funding CON Bank Y Calcs Y Cntr Eff 01/01/2015

Class 01 ALL REGULAR FT SALARIED EMPLOYEES IN THE CORE PLAN

Waiting Period: New/Mode-Current/Mode 0 0 Days in WRKWK Pre-X 3-3

Elimination Period: Days/Type 90 Sickness COLA: Mode/Duration

Successive Period: Period/Mode 6 Month SS Integration:Type/Value FSS

Partial Disability Type/Pct QRP+ 7.00 Survivor Ben Months/Wait Period 3 180

Non-Verifiable Symptoms Limit 24 Own Occupation Definition Limit 36 M/N Limit 24

Benefit % Max Benefit $ Min Benefit $ Employer Contr % 100.00 Subro Ind Y

Selected Benefits

| Symbol | Numeral | Product Type | Class | Eligibility Date |
|---|---|---|---|---|
| GF | 01 | LTD | 01 | 03/02/2015 |

Additional Information:

EXHIBIT
3, part 1

**Note Report**

Report | Clear | Print | Help

AS Accom  AS Event  Add Note  Appeal  Claim  Coord Claim Note  Correspond  Doc List  Employee  Leave  Life Claim  Lve Addtl Info
Lve Correspondence  Lve Program  Lve Work Sched  Medical  Medical History  Note  SPELL Letters  Scheduled Pmt  Task Print  Task Rpt
Tasks

Claim
* **Claim/Event/Leave Number** 5690365    **Accommodation Number**
**Note type:**

Primary Sort Order
Note Type
Note Number
● Note Date/Time
Accm. No.

Sec
●

**08/02/2017 9:59 AM - CLAIM Note 78**
Claim/Event/Leave: 5690365
NoteSubject : Appeal
Other Subject : STATUS
Text: [08/02/2017 - MACALLISTER, LISA]REVIEWING ATTORNEY LETTER**PENDING RESPONSE.

**08/02/2017 6:30 AM - CLAIM Note 77**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : LETTER FROM ATTY
Text: [08/02/2017 - GRAY, LISA]RECD LETTER FROM AN ATTORNEY DATED 7/25/17 ADVISING US THAT EE WAS NOT UNDER LEGAL COUNSEL DURING THE APPEAL PROCESS. ATTORNEY REQUESTS THAT WE REOPEN EE'S FILE AND ALLOW THEM THE OPPORTUNITY TO SUBMIT INFORMATION THAT WOULDBE USEFUL TO THE DECISION MAKER IN FAIRLY DECIDING HIS CLAIM. DCM ASKED ARC TO REVIEW AND RESPOND REGARDING NEXT STEPS.

**05/22/2017 11:30 AM - PHONE Note 31**
Claim/Event/Leave: 5690365
NoteSubject : EE Called
Other Subject : CSU
Text: [05/22/2017 - NILES, CATHY]EE WANTED TO GET AN ELECTRONIC COPY OF DENIAL LETTER. ADV TO TALK TO DCM. WARM TRANSFERRED TO AVAIL DCM.

**05/22/2017 10:31 AM - PHONE Note 30**
Claim/Event/Leave: 5690365
NoteSubject : EE Called
Other Subject : RE: APPEAL
Text: [05/22/2017 - MURRAY, KIMBERLY]REC'D PHONE CALL FROM EE REGARDING APPEAL. ADVISED DETERMINATION HAD BEEN MADE AND LETTER HAD BEEN MAILED ON 5/02. EE ADVISED HE DID NOT RECEIVE LETTER. OFFERED TO RE-SEND LETTER AND EE AGREED. EE STATED HE WILL HAVETO GET AN ATTORNEY THEN AS THIS IS NOT RIGHT. EE DID NOT HAVE ANY ADDITIONAL QUESTIONS.

**05/02/2017 11:11 AM - CLAIM Note 76**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [05/02/2017 - MACALLISTER, LISA]POSTED PAYMENT TO MES TAX ID 38-2193020. INVOICE #: 31817049697. DATED 4/26/17. AMT $1645.00. IM/ PULMONARY PEER REVIEW. IN DOC LIST.

**05/02/2017 9:46 AM - CLAIM Note 75**
Claim/Event/Leave: 5690365
NoteSubject : Appeal
Other Subject : LETTER TO EE
Text: [05/02/2017 - MACALLISTER, LISA]REPRINTED LETTER- MAILED TO EE.

**04/28/2017 4:15 PM - CLAIM Note 74**
Claim/Event/Leave: 5690365
NoteSubject : Appeal
Other Subject : OUT
Text: [04/28/2017 - MACALLISTER, LISA]APPEAL MAINTAINED. ADDITIONAL INFORMATION DOES NOT ALTER PREVIOUS ASSESSMENT**LETTER TO EE.

**04/12/2017 9:07 AM - CLAIM Note 73**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : COPY JOB

Other Subject : COPY JOB
Text: [04/12/2017 - PILAR, SARAH]COPY OF DOC LIST ON 4 ZIP FILES SENT TO MES VIA EMAIL VOLTAGE SECURE.

**04/12/2017 2:32 AM - CLAIM Note 72**
Claim/Event/Leave: 5690365
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 4/11/2017 - REFERRED TO MES SOLUTIONS FOR PEER REVIEW.

**04/11/2017 12:12 PM - CLAIM Note 71**
Claim/Event/Leave: 5690365
NoteSubject : Appeal
Other Subject : STATUS
Text: [04/11/2017 - MACALLISTER, LISA]INITIAL REVIEW COMPLETE. APPEAL DATES CORRECT.***DOD:1/23/2016 (DOH: 03/02/2015. SUBJECT TO PRE-X REVIEW/NOT PREX). PAID THRU 12/31/16. ISSUED PAYMENT UNDER ROR. OCC: COMPUTER ENGINEER-AN OA INDICATED OCC PERFORMED ATSED LEVEL. DX: FATIGUE, COPD, HYPERSOMNOLENCE AND SLEEP APNEA ON CPAP. PULM/SLEEP CP OPINED: FULL TIME SEDENTARY WORK. SURV CONDUCTED IN 10/2016. DENIED 12/14/16. ***APPEAL RECEIVED W/ ADDITIONAL INFORMATION. **REFERRED TO MES FOR PEER REVIEW.***DELAY LETTER TO EE.

**04/11/2017 9:00 AM - CLAIM Note 70**
Claim/Event/Leave: 5690365
NoteSubject : Appeal
Other Subject : IN
Text: [04/11/2017 - SMITH, TYLER]ASSIGNED TO LISA MACALLISTER

**04/11/2017 2:32 AM - CLAIM Note 69**
Claim/Event/Leave: 5690365
NoteSubject : Ref to Appeals
Other Subject : SCORE REFERRAL
Text: 4/10/2017 - REFERRED TO APPEALS UNIT FOR CLAIM REVIEW AND DETERMINATION.

**04/10/2017 12:14 PM - CLAIM Note 68**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : MGR REVIEW
Text: [04/10/2017 - BREWSTER, TRISHA]AGREE WITH RECOMMENDATION

**04/10/2017 11:35 AM - CLAIM Note 67**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : RECOMMENDATION
Text: [04/10/2017 - GRAY, LISA]WE HAVE RECEIVED EE'S APPEAL ALONG WITH ADDITIONAL INFORMATION WHICH INCLUDES UPDATED PFT TESTING AS WELL AS AN MRI L SPINE AND LAB STUDIES. FURTHER REVIEW IS NEEDED. RECOMMEND REFERRAL TO ARU FOR FURTHER REVIEW AND CONSIDERATION.

**04/10/2017 11:29 AM - CLAIM Note 66**
Claim/Event/Leave: 5690365
NoteSubject : Appeal
Other Subject : RECD WITH INFO
Text: [04/10/2017 - GRAY, LISA]RECD EE'S WRITTEN REQUEST FOR RECONSIDERATION DATED 4/6/17 ALONG WITH THE FOLLOWING INFORMATION: OFFICE NOTE DATED 1/31/17, DR. NAJJAR, PFT STUDY DATED 1/27/17, LAB RESULTS DATED 12/22/16, MRI L SPINE DATED 1/31/17.

**04/06/2017 12:51 PM - PHONE Note 29**
Claim/Event/Leave: 5690365
NoteSubject : EE Called
Other Subject : APPEAL
Text: [04/06/2017 - GRAY, LISA]EE STATED HE HAS A DETAILED LETTER TO SUBMIT. EE ASKED IF HE COULD EMAIL. EXPLAINED WE ARE UNABLE TO ACCEPT EMAILS HOWEVER HE COULD EITHER MAIL OR FAX. PROVIDED HIM MY FAX NUMBER. EE STATED HE APOLOGIZES IN HOW LONG THISHAS TAKEN HOWEVER THIS IS DUE TO HIS DECLINING HEALTH. EE STATED HE HOPES LTD CAN BE REINSTATED AS HIS PRESCRIPTIONS ARE RUNNING OUT AND HE HAS NO INCOME. I ADVISED HIM TO FAX INFO TO ME AND UPON RECEIPT WILL REVIEW AND NOTIFY HIM OF NEXT STEPS.

**02/14/2017 1:16 PM - PHONE Note 28**
Claim/Event/Leave: 5690365
NoteSubject : EE Called
Other Subject : APPEAL
Text: [02/14/2017 - GRAY, LISA]EE CALLED STATING HE DOES NOT KNOW WHAT TO DO. HE STATED HE HAS NO INCOME. CANNOT PAY FOR MEDICATIONS. HE STATED HIS HEALTH INSURANCE WAS CUT OFF. HE SAID HE HAS BEEN VERY TIRED AND SICK AND THEREFORE HAS NOT BEEN ACTIVEIN APPEAL PROCESS. HE STATED SSDB IS PENDING. HE STATED SEVERAL TIMES THAT HE WILL BE OPEN AND HONEST REGARDING SSDB STATUS. EE QUESTIONED WITH HIS COPD, HYPERSOMNOLENCE, SLEEP APNEA AND NOW LOW BACK PAIN THIS IS NOT ENOUGH TO SUPPORT DISABILITY.I EXPLAINED I WAS UNABLE TO ANSWER THAT AND ADVISED HIM TO FOLLOW APPEAL PROCESS. ADVISED HIM TO SUBMIT WRITTEN REQUEST ALONG WITH ANY ADDITIONAL INFO HE FEELS WILL SUPPORT LTD. HE STATED HE IS NOT ACTIVE. HAS SEVERE HEALTH PROBLEMS. HE ASKED IFI WOULD REVIEW APPEAL. I EXPLAINED I WOULD REVIEW HIS REQUEST AND INFO SUBMITTED. IF INFO RECD REVEALS A LEVEL OF IMP PRECLUDING WORK WE COULD REINSTATE LTD HOWEVER IF WE ARE UNABLE TO DETERMINE IF INFO SUBMITTED WOULD SUPPORT TD WE WILL REFER FILE TO ARU. EE QUESTIONED

HOW MANY APPEALS HE HAS. ADVISED HIM ONE. HE SAID HE DOES NOT WANT TO GET AN ATTORNEY YET SO HE WILL SUBMIT HIS WRITTEN REQUEST WITH ADDITIONAL INFO. CALL ENDED

**12/27/2016 9:06 AM - PHONE Note 27**
Claim/Event/Leave: 5690365
NoteSubject : Called EE
Other Subject : RETURN CALL
Text: [12/27/2016 - GRAY, LISA]LATE ENTRY. DCM RETURNED EE'S CALL ON THURSDAY, DECEMBER 22, 2016 TO DISCUSS THE DECISION TO DENY LTD BENEFITS. EE STATED HE DOES NOT AGREE SPECIFICALLY STATING HE DOES NOT AGREE WITH HIS OBSERVED ACTIVITIES AND THAT THE OCCUPATION IS PERFORMED AT THE SEDENTARY PDL. EE STATED HE CANNOT WORK. DCM EXPLAINED VOC ASSESSMENT FURTHER AND EXPLAINED OWN OCCUPATION IN NATIONAL ECONOMY. EE DID NOT HAVE FURTHER COMMENTS BUT DID STATE HE WOULD APPEAL. I RECOMMENDED THAT HE PROVIDEA WRITTEN REQUEST TO REVIEW FILE AND TO PLEASE MAKE SURE TO PROVIDE THE INFO SPECIFICALLY OUTLINED IN PERFECTION PARAGRAPH INCLUDING PROOF OF SSDB APP. HE SAID OK AND THE PHONE CALL ENDED.

**12/22/2016 2:23 PM - PHONE Note 26**
Claim/Event/Leave: 5690365
NoteSubject : EE Called
Other Subject : CSU
Text: [12/22/2016 - WALKER, RYAN]EE CALLED TO DISCUSS CLAIM - REQUESTING TO SPEAK WITH DCM - CURRENTLY UNAVAILABLE - ADVISED HAS JUST RECENTLY LEFT A VM FOR DCM TODAY - WILL ALLOW TIME FOR DCM TO RTC, ADVISED TURNAROUND TIME FOR RTC IS 24 HOURS - THANKED AND ENDED CALL

**12/22/2016 2:16 PM - PHONE Note 25**
Claim/Event/Leave: 5690365
NoteSubject : EE Called
Other Subject : LVMM
Text: [12/22/2016 - GRAY, LISA]EE CALLED STATING HE RECD DENIAL LETTER. EE STATES HE DOES NOT AGREE WITH OUR DECISION STATING HE IS NOT ABLE TO WORK. EE CONTINUED TO TALK HOWEVER DCM WAS NOT ABLE TO MAKE OUT WHAT EE WAS SAYING. DCM WILL RETURN CALL ANDADVISE HIM OF APPEAL RIGHTS

**12/14/2016 9:20 AM - CLAIM Note 65**
Claim/Event/Leave: 5690365
NoteSubject : Medical Status
Other Subject : IM LMCP CC
Text: [12/14/2016 - GRAY, LISA]LATE ENTRY. THE FILE WAS REVIEWED BY IM LMCP 12/12/16. LMCP OPINED HE AGREED WITH PREVIOUS REVIEWER'S ASSESSMENT AND R/L'S AND THEREFORE DID NOT FEEL AN IME WAS WARRANTED.

**12/14/2016 8:48 AM - CLAIM Note 64**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : MANAGER REVIEW
Text: [12/14/2016 - CAREY, LAUREN]AGREE WITH DENIAL FOR NTD BASED ON THE TOTALITY OF MED INFO, CP REVIEW FINDINGS, SURVEILLANCE, AND OCC DEMANDS. THE CLMT HAS CAPACITY TO PERFORM HIS SED OCC ON A FT BASIS AT THIS TIME AND UTILIZE THE BREAKS FOR 15 MINUTESEVERY 2-4 HOURS IF NEEDED.

**12/14/2016 2:31 AM - CLAIM Note 63**
Claim/Event/Leave: 5690365
NoteSubject : Ref to Other
Other Subject : PMNT
Text: THE SCORE REFERRAL FOR PAYMENT SERVICES REFERRAL AND PAYMENT ADJUSTMENT AND A REASON OF CHANGE BENEFIT END DATE OR SUSPEND BENEFITS HAS BEEN RECEIVED AND ASSIGNED TO LYNNE FAASEN.

**12/14/2016 2:31 AM - CLAIM Note 62**
Claim/Event/Leave: 5690365
NoteSubject : Ref to Other
Other Subject : PMT SVC
Text: FOR CHANGE BENEFIT END DATE OR SUSPEND BENEFITS. BEN END:12/13/2016 COMMENTS: LTD DENIED BEYOND 12//13/16

**12/13/2016 4:37 PM - CLAIM Note 61**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : PAYMENT SERVICES
Text: [12/13/2016 - FAASEN, LYNNE]REFERRAL RECEIVED AND SCHEDULED PAYMENT END DATE CHANGED TO 12/13/2016 AS REQUESTED BY DCM.

**12/13/2016 10:57 AM - CLAIM Note 60**
Claim/Event/Leave: 5690365
NoteSubject : Medical Status
Other Subject : IM LMCP
Text: [12/13/2016 - GRAY, LISA]IM LMCP REVIEWED MEDICAL ON FILE 12/12/16. LMCP OPINED MEDICAL WOULD NOT PRECLUDE EE FROM PERFORMING SED WORK. LMCP ALSO REVIEWED PREVIOUS MEDICAL REVIEWS BY SLEEP MEDICINE CP AND AGREES WITH THE ASSESSMENT AND R/L'S.

**12/13/2016 10:55 AM - CLAIM Note 59**
Claim/Event/Leave: 5690365

Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : RECOMMENDATION
Text: [12/13/2016 - GRAY, LISA]EE STOPPED WORKING DUE TO REPORTS OF SEVERE FATIGUE, EXHAUSTION, AND DIFFICULTY WITH MEMORY. EE SUFFERS WITH COPD, HYPERSOMNOLENCE AND SLEEP APNEA ON CPAP. MEDICAL RECORDS WERE OBTAINED FROM HIS SLEEP SPECIALIST, PCP, AS WELL AS PHARMACY RECORDS. DURING OUR ONGOING INVESTIGATION LL ISSUED PAYMENT UNDER ROR. A MEDICAL REVIEW WAS PERFORMED BY CP, BOARD CERTIFIED IN SLEEP MEDICINE AND PULMONOLOGY. CP OPINED THE MEDICAL EVIDENCE WOULD NOT PRECLUDE THIS INDIVIDUAL FROM PERFORMING FULL TIME SEDENTARY WORK. AN OA WAS OBTAINED WHICH DOCUMENTS THE OCCUPATION IS PERFORMED AT THE SED PDL. R/LS FROM SLEEP MEDICINE MD ARE NOT CONSISTENT WITH MEDICAL AND DIAGNOSTIC EVIDENCE. OF NOTE, EE'S REPORTED FUNCTIONAL CAPACITY IS GREATER THAN FROM WHAT HIS SLEEP MEDICINE MD DOCUMENTS. NON MEDICAL EVIDENCE IS ALSO NOT CONSISTENT WITH TREATING MD'S R/L'S. BASED ON THE MEDICAL AND VOCATIONAL INFO ON FILE IT IS DETERMINED THAT THIS INDIVIDUAL DOES NOT MEET THE DEF OF TD. RECOMMEND DENIAL OF LTD.

**12/13/2016 2:38 AM - CLAIM Note 58**
Claim/Event/Leave: 5690365
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 12/12/2016 - REFERRED TO CONSULTING PHYSICIAN FOR CLAIM CONSULT - MEETING ATTENDANCE ONLY.

**12/05/2016 7:58 AM - CLAIM Note 57**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : CD'S
Text: [12/05/2016 - HOWARD, HOLLY]RECVD 2 CD'S FROM DONOVAN & DEVLIN , INC. DELIVERED TO L. GRAY

**11/28/2016 9:24 AM - CLAIM Note 56**
Claim/Event/Leave: 5690365
NoteSubject : Action Plan
Other Subject : IME
Text: [11/28/2016 - GRAY, LISA]LMCP REVIEWED THE FILE 11/16 AT WHICH TIME HE OPINED EE IS CAPABLE OF FULL TIME LIGHT DUTY WORK. HOWEVER TREATING MD DISAGREES AND OPINES EE IS TOTALLY DISABLED. WE NOW HAVE ALL UPDATED MEDICAL AND SURVEILLANCE VIDEO. PERLMCP REQUEST DCM IS ARRANGING AN IME TO OBTAIN CLARIFICATION OF THIS INDIVIDUAL'S LEVEL OF IMPAIRMENT.

**11/10/2016 4:47 PM - PHONE Note 24**
Claim/Event/Leave: 5690365
NoteSubject : EE Called
Other Subject :
Text: [11/10/2016 - RICE, RACHEL]REC'D P/C FROM EE ON BEHALF OF ADCM -- HE REC'D N&P LTR DATED 10/10/2016 AND WANTED TO KNOW IF ANYTHING WAS NEEDED FROM HIM -- CONFIRMED DR. NAJJAR IS HIS ONLY PROVIDER - LET HIM KNOW MED RECS WERE REC'D AND DCM IS NOT SUREIF THERE IS ANYTHING ELSE NEEDED - ASKED IF HE WANTED TO TALK TO ADCM - HE STATED NO, AND ASKED DCM TO PROVIDE MSG TO ADCM TO CALL EE IF ANYTHING ELSE WAS NEEDED - LET HIM KNOW DCM WILL PASS ON MSG TO ADCM - THANKED - CALL CONCLUDED

**11/04/2016 10:18 AM - CLAIM Note 55**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : VENDOR PMT
Text: [11/04/2016 - GRAY, LISA]ISSUED PMT TO DONOVAN AND DEVLIN FOR SURVEILLANCE PERFORMED 10/27-10/29/16

**10/21/2016 9:24 AM - CLAIM Note 54**
Claim/Event/Leave: 5690365
NoteSubject : Ref to Other
Other Subject : SIU
Text: [10/21/2016 - GRAY, LISA]SCHEDULED 3 DAYS OF SURVEILLANCE FOR 10/27, 10/28 & 10/29/16

**10/18/2016 2:31 AM - CLAIM Note 53**
Claim/Event/Leave: 5690365
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 10/17/2016 - REFERRED TO CONSULTING PHYSICIAN FOR FULL REVIEW.

**10/17/2016 12:57 PM - CLAIM Note 52**
Claim/Event/Leave: 5690365
NoteSubject : Action Plan
Other Subject : MED REVIEW
Text: [10/17/2016 - GRAY, LISA]UPDATED MEDICAL HAS BEEN RECD FROM DR. NAJJAR. REFERRING FILE BACK TO PULMONARY LMCP FOR FURTHER REVIEW.

**10/12/2016 9:26 AM - CLAIM Note 51**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : VENDOR PMT
Text: [10/12/2016 - GRAY, LISA]ISSUED PMT TO DONOVIN AND DEVLIN IN THE AMOUNT OF 1012.50

**10/10/2016 11:36 AM - CLAIM Note 50**
Claim/Event/Leave: 5690365
NoteSubject : Action Plan
Other Subject : N&P
Text: [10/10/2016 - GRAY, LISA]TO DATE WE HAVE NOT RECD PROOF THAT HE APPLIED FOR SSDB NOR UPDATED MEDICAL. ANOTHER REQUEST IS BEING SENT TODAY TO DR. NAJJAR. EE IS BEING PLACED ON N&P. IF WE DO NOT RECD INFO BY 11/10/16 LTD WILL BE SUSPENDED. IF WE DONOT RECV INFO BY 12/10/16 LTD WILL BE DENIED.

**10/05/2016 9:39 AM - CLAIM Note 49**
Claim/Event/Leave: 5690365
NoteSubject : Surveillance
Other Subject : STATUS
Text: [10/05/2016 - GRAY, LISA]LATE ENTRY 9/9/16 AFTER FURTHER DISCUSSION REGARDING EE'S WHEREABOUTS AND WHERE EE IS PLACED ON N&P IT WAS DETERMINED TO HOLD OFF ON ANY INVESTIGATIONS AT THIS TIME.

**08/30/2016 1:48 PM - CLAIM Note 48**
Claim/Event/Leave: 5690365
NoteSubject : LTR to Other
Other Subject : EMAIL
Text: [08/30/2016 - GRAY, LISA]EMAILED SALLY DEVLIN REQUESTING A STATUS OF WHERE EE NOW RESIDES

**08/30/2016 1:45 PM - PHONE Note 23**
Claim/Event/Leave: 5690365
NoteSubject : EE Called
Other Subject : RETURN CALL
Text: [08/30/2016 - GRAY, LISA]I ASKED EE IF HE HAS APPOINTMENT COMING UP AND IF HE HAS APPLIED FOR SSDB. EE STATED HE SAW HIS PROVIDER. HE STATED HE WAS EITHER GOING TO UNDERGO A SLEEP STUDY OR THAT HE HAS HAD ONE. HE ALSO SAID WHAT WE WOULD MOST BE INTERESTED IN IS THE RESULTS OF A FUNCTIONAL TEST STATING HE SCORED A 28 AND THAT ANYTHING UNDER 50 IS SEVERE. I ASKED IF HE RECENTLY HAD THAT DONE. EE WAS NOT ABLE TO PROVIDE A DEFINITIVE ANSWER. HE SAID HE WILL BE APPLYING FOR SSDB AND WILL PROVIDE EVERYTHING WE NEED. I ASKED HIM AGAIN ABOUT SLEEP STUDY AND FUNCTIONAL TEST. HE ASKED IF HE COULD RETURN CALL NEXT WEEK AT WHICH TIME HE WILL GIVE ME SPECIFIC DATES OF TESTS. I INSTRUCTED HIM TO CALL ME NO LATER THAN NEXT FRIDAY 9/9/16. EE AGREED. N&P LETTER WAS SENT TO EE ON 8/15. THEREFORE IF WE DO NOT RECV INFO BY 9/15 WILL SUSPEND LTD. CURRENTLY ISSUED UNDER ROR.

**08/30/2016 10:15 AM - PHONE Note 22**
Claim/Event/Leave: 5690365
NoteSubject : Called EE
Other Subject : STATUS
Text: [08/30/2016 - GRAY, LISA]CALLED EE TO SEE IF HE RECD MY N&P LETTER AND TO SEE WHEN HIS NEXT APPOINTMENT IS. EE ANSWERED AND STATED HE JUST WOKE UP. IT WAS AGREED HE WOULD CALL ME LATER TODAY.

**08/18/2016 3:44 PM - PHONE Note 21**
Claim/Event/Leave: 5690365
NoteSubject : Other Called
Other Subject : SIU VENDOR
Text: [08/18/2016 - GRAY, LISA]SALLY DEVLIN CALLED STATING THEY WENT TO EE'S ADDRESS. WAS INFORMED BY LANDLORD THAT EE WAS EVICTED AND OWES 2,000 WORTH IN DAMAGE. THEY TOLD SIU THAT EE RENTED A U HAUL AND HAD HIS CAR TOWING BEHIND. UNSURE OF WHERE HE WENT. SIU ALSO STATED HIS CELL NUMBER IS A GEORGIA NUMBER. EE HAS FAMILY IN MADISON SO IT COULD BE EE IS RELOCATING TO BE CLOSE TO HIS CHILDREN. S. DEVLIN STATED THEY ARE GOING TO HOLD OFF FOR ONE WEEK TO RUN HIS NAME AGAIN AS IT TAKES ABOUT 1 TO 2WEEKS FOR INFO TO CATCH UP IN DATA BASE SYSTEMS. I EXPLAINED I MAILED A LETTER TO EE THIS WEEK WHICH HE SHOULD HAVE BY NOW. IT REMAINS UNKNOWN IF HE CANCELLED HIS PO BOX NUMBER. WILL VERIFY IF EE CALLS ME TO DISCUSS LETTER OR IF LETTER IS RETURNED. IT WAS AGREED WE WOULD SPEAK AGAIN NEXT WEEK.

**08/16/2016 2:32 AM - CLAIM Note 47**
Claim/Event/Leave: 5690365
NoteSubject : Ref to Special Invest
Other Subject : SCORE REFERRAL
Text: 8/15/2016 - REFERRED TO DONOVAN & DEVLIN FOR SIU VENDOR SERVICES.

**08/15/2016 11:49 AM - CLAIM Note 46**
Claim/Event/Leave: 5690365
NoteSubject : Action Plan
Other Subject : N&P
Text: [08/15/2016 - GRAY, LISA]TO DATE EE HAS NOT PROVIDED PROOF THAT HE APPLIED FOR SSDB NOR HAS HE PROVIDED US WITH THE DATE AND TIME OF HIS APPOINTMENT. THEREFORE DCM IS MAILING EE A LETTER ADVISING HIM HE HAS 30 DAYS TO SUBMIT THIS INFORMATION. IN MYLETTER REMINDED EE LL IS PAYING LTD UNDER ROR AND THAT WITHOUT UPDATED MEDICAL WE ARE NOT ABLE TO RENDER A FORMAL LTD DECISION. EXPLAINED IF WE DO NOT RECV INFO BY 9/15 LL WILL RENDER CLAIM DETERMINATION BASED ON INFO CURRENTLY CONTAINED IN FILE.IF WE DO RECV UPDATED MEDICAL DCM WILL HAVE LMCP REASSES

**08/15/2016 11:29 AM - CLAIM Note 45**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : STATUS
Text: [08/15/2016 - GRAY, LISA]TO DATE WE HAVE NOT RECD PROOF OF SSDB OR WHEN HIS NEXT APT IS. DCM WILL SEND

Text: [08/16/2016 - GRAY, LISA]TO DATE WE HAVE NOT RECD PROOF OF SSDB OR WHEN HIS NEXT APPT IS. DCM WILL SEND N&P LETTER TO EE. AT THIS TIME FURTHER CLARIFICATION IS ALSO NEEDED REGARDING HIS DALS THEREFORE FILE REFERRED FOR NON MEDICAL ASSESSMENT.

**07/07/2016 1:08 PM - PHONE Note 20**
Claim/Event/Leave: 5690365
NoteSubject : Called EE
Other Subject : SSDB & MED STATUS
Text: [07/07/2016 - GRAY, LISA]ASKED EE IF HE HAS APPLIED FOR SSDB. HE SAID HE HAS. ASKED HIM IF HE HAD PROOF OF APPLICATION. HE THINKS HE HAS DOCUMENTATION SOMEWHERE. ASKED HIM TO LOCATE AND FAX TO ME. WE DISCUSSED WHAT OCCURS WHEN HE IS AWARDED. HESTATED HE UNDERSTOOD. I ASKED HIM IF HE HAS SEEN OR HAS APPOINTMENT SOON WITH DR. KATZ. HE SAID SHE IS OUT OF THE OFFICE ON VACATION. HE STATED HE DID HAVE AN APPOINTMENT EARLY JULY HOWEVER IT HAD TO BE CANCELLED. HE STATED HE NEEDS TO CALL BACKTO RESCHEDULE. HE ASKED WHY HE HAS TO GO TO DOCTORS AS THERE IS NOTHING MORE THEY CAN DO OTHER THEN PRESCRIBE MEDICATIONS. NO REHAB. I EXPLAINED WE NEED MEDICAL PROOF TO ESTABLISH HIS LEVEL OF IMPAIRMENT AND WHETHER OR NOT HE MEETS DEF OF TOTAL DISABILITY. HE STATED HE UNDERSTOOD. HE STATED HE WOULD CONTACT ME WITH DATE AND TIME OF NEXT APPOINTMENT. HE QUESTIONED WHY THERE WAS SOME MONEY DEDUCTED FROM HIS FIRST LTD BENEFIT CHECK. I EXPLAINED BASED ON INFO FROM HIS ER HE RECD SALARY CONTINUANCE THROUGH 4/26/16 THEREFORE WE HAD TO OFFSET FOR 4/22-4/26/16. HE STATED THEY HOLD BACK ONE WEEK AND DOES NOT UNDERSTAND WHY WE OFFSET. I EXPLAINED THIS INFO WAS PROVIDED DIRECTLY FROM HIS ER AND SHOULD HE DISAGREE HE SHOULD CONTACT THEM DIRECTLY. EXPLAINED IF IT IS INCORRECT WE WOULD BE MORE THAN HAPPY TO REVIEW ANY ADDITIONAL INFO FROM HIS ER AND ADJUST ACCORDINGLY. HE STATED HE UNDERSTOOD. HE ASKED ABOUT TAXES. I EXPLAINED WE DID NOT PROVIDE HIM A FEDERAL TAX WITHHOLDING FORM AS WEHAVE NOT FORMALLY APPROVED HIS CLAIM. EXPLAINED HIS LTD IS BEING ISSUED UNDER ROR. HE ASKED IF WE COULD STILL PROVIDE HIM A FORM. EXPLAINED I WOULD LOOK INTO THAT AND GET BACK TO HIM. HE AGREED AND CALL ENDED.

**07/05/2016 11:19 AM - PHONE Note 19**
Claim/Event/Leave: 5690365
NoteSubject : Called EE
Other Subject : SSDB STATUS
Text: [07/05/2016 - GRAY, LISA]CALLED EE TO FIND OUT ABOUT SSDB STATUS AND WHEN HIS NEXT APPOINTMENT IS. EE APPEARED TO HAVE BEEN SLEEPING. HE ASKED IF HE COULD CALL ME BACK THIS AFTERNOON. DCM AGREED AND CALL ENDED.

**06/21/2016 11:31 AM - PHONE Note 18**
Claim/Event/Leave: 5690365
NoteSubject : Called EE
Other Subject : STATUS
Text: [06/21/2016 - GRAY, LISA]NOT AVAILABLE. LEFT MESSAGE ADVISING HIM WE NEED A STATUS AS TO WHETHER HE NOT HE HAS APPLIED FOR SSDB AND IF SO WE NEED PROOF OF APPLICATION. ALSO ASKED EE TO PROVIDE US WITH DATE AND TIME OF HIS NEXT APPOINTMENT WITH DR.KATZ.

**06/03/2016 1:40 PM - CLAIM Note 44**
Claim/Event/Leave: 5690365
NoteSubject : Voc Rehab
Other Subject :
Text: [06/03/2016 - SULLIVAN, NANCY]PER TCMS REQUEST, I PERFORMED ADDITIONAL RESEARCH TO DETERMINE WHETHER MR. AL-SHAREIH'S OCCUPATION AS A ELECTRICAL ENGINEER CAN BE PERFORMED AT HOME. I REVIEWED JOB LISTINGS UTILIZING INDEED.COM AND FOUND THAT THE OCCUPATION DOES NOT EXIST 100% HOME BASED. WHILE SOME EMPLOYERS OUTLINED HOMED BASED POSITIONS EXIST THEY REQUIRE VERY FREQUENT/EXTENSIVE TRAVEL TO EMPLOYER/CUSTOMERS SITES. I DISCUSSED W TCMS WHO OUTLINED THIS NOTE WILL SUFFICE IN LIEU OF FULL NARRATIVE REPORT. I CLOSED MY FILE GIVEN TASK COMPLETION.

**06/02/2016 1:43 PM - PHONE Note 17**
Claim/Event/Leave: 5690365
NoteSubject : Called EE
Other Subject : ROR
Text: [06/02/2016 - GRAY, LISA]CALLED AND INFORMED EE THAT WE HAVE NOT COMPLETED OUR INITIAL INVESTIGATION AS TO WHETHER OR NOT HE MEETS DEF OF TOTAL DISABILITY HOWEVER WHILE WE CONTINUE WITH OUR REVIEW WE WILL ISSUE LTD UNDER RESERVATION OF RIGHTS. EXPLAINED THAT WE HAVE NOT RENDERED A FINAL DETERMINATION AND ARE THEREFORE NOT ACCEPTING LIABILITY AT THIS TIME. I EXPLAINED HIS LTD BBD IN 4/22/16 AND HE WILL REC BENEFITS RETROACTIVE TO THAT DATE. HE SAID HE IS STILL OUT OF THE COUNTRY BUT IS RETURNING IN ONE WEEK. ASKED EE FOR SPECIFIC DATE BUT HE WAS NOT CERTAIN JUST STATING ONE WEEK. HE SAID UPON HIS RETURN HE WILL APPLY FOR SSDB. I ASKED EE WHEN HIS NEXT APPOINTMENT WITH DR. KATZ IS AND HE SAID SOMETIME IN JULY. WILL HAVE TO LOOK AT HIS CALENDAR WHEN HE GETS BACK HOME. INFORMED EE TO PROVIDE ME WITH CONFIRMATION OF SSDB APP AS WELL AS NEXT APPOINTMENT DATE AND TIME. HE AGREED. I EXPLAINED IF IT IS DETERMINED THAT HE DOES NOT MEET THE DEF OF TD WE WILL NOT REQUIRE HIM TO PAY BACK ANY MONEY ISSUED. I ASKED HIM IF HE UNDERSTOOD AND HE STATED YES. I ADVISED HIM I WOULD SEND HIM A LETTER ADVISING OF HIM OF OUR DECISION TO ISSUE UNDER ROR. CALL ENDED.

**06/01/2016 11:12 AM - POSSINV Note 2**
Claim/Event/Leave: 5690365
NoteSubject : Possible Pre-Ex
Other Subject : INVESTIGATION COMPLE
Text: [06/01/2016 - GRAY, LISA]BASED ON A MEDICAL REVIEW IT IS DETERMINED EE IS NOT SUBJECT TO PRE X

**06/01/2016 10:04 AM - CLAIM Note 43**
Claim/Event/Leave: 5690365

Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : MANAGER REVIEW
Text: [06/01/2016 - CAREY, LAUREN]AGREE WITH RECOMMENDATION TO ISSUE PAYMENTS UNDER ROR AT THIS TIME AND ONGOING ACTION PLAN TO EVALUATE UPDATED OA REGARDING POSSIBLE WORK FROM HOME. IF THE OCC IS NOT PERFORMED AT HOME AGREE WITH NON MEDICAL ASSESMENT ANDTHEN POTENTIALLY AN ADDITOINAL CLINICAL REVIEW OR EXAMINATION TO MAKE THE FORMAL LIABILITY DETERMINATION.

**06/01/2016 9:46 AM - CLAIM Note 42**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : RECOMMENDATION
Text: [06/01/2016 - GRAY, LISA]REVISED. WHERE FURTHER CLARIFICATION IS NEEDED REGARDING HIS DIAGNOSES OF HYPERSOMNOLENCE AND SLEEP APNEA IT IS AGREED TO HAVE EE SEEN BY HIS PROVIDER UPON HIS RETURN TO SEE IF TREATMENT IS HELPING THIS INDIVIDUAL. LMCP OPINED THAT WITH PROPER MEDICAL MANAGEMENT COULD POSSIBLY ALLOW THIS INDIVIDUAL TO FUNCTION AT WORK. IN ADDITION WE ARE CURRENTLY WAITING FOR VCM RESPONSE AS TO WHETHER OR NOT THE OCCUPATION CAN BE PERFORMED AT HOME. NON MEDICAL ASSESSMENT WILL ALSO BE PERFORMED UPON EE'S RETURN. ONCE FURTHER CLARIFICATION IS RECD. WILL HAVE LMCP REVIEW TO ASSESS HIS LEVEL OF IMPAIRMENT AND/OR IF FURTHER REVIEW OR EXAMINATION IS NEEDED. DCM RECOMMENDS WE ISSUE LTD UNDER ROR WHILE WE CONTINUE OUR INVESTIGATIONAS TO WHETHER OR NOT THIS EE MEETS THE DEFINITION OF TD.

**05/31/2016 4:23 PM - PHONE Note 16**
Claim/Event/Leave: 5690365
NoteSubject : EE Called
Other Subject :
Text: [05/31/2016 - DRAKE, GARRETT]EE CALLED AND WANTED TO KNOW THE STATUS OF THE DISABILITY CLAIM AND DCM ADVISED THAT LISA GRAY SUBMITTED IT TO HER MANAGER AND WOULD BE A FEW DAYS BEFORE A RESPONSE IS RECEIVED. CLAIMANT THANKED AND ENDED CALL.

**05/31/2016 4:16 PM - PHONE Note 15**
Claim/Event/Leave: 5690365
NoteSubject : EE Called
Other Subject : STATUS OF CLAIM
Text: [05/31/2016 - WAHL, HENRY]I ADVISED THAT THE CLAIM IS CURRENTLY PENDING AND LOOKS LIKE WE ARE IN NEED OF MEDICAL INFORMATION. EE STATED THAT HE HASN'T RECD ANY MONEY YET AND IS IN NEED. ADVISED THAT WE CAN'T ISSUE A PAYMENT UNTIL THE CLAIM IS APPROVED. ADVISED I CAN TRANSFER HIS CALL TO ADCM VM AND SHE CAN CALL HIM BACK OR I CAN TRANSFER HIS CALL TO ANOTHER DCM THAT WILL BE ABLE TO ASSIST. EE ASKED TO BE TRANSFERRED TO ANOTHER DCM. **** TRANSFERRED CALL

**05/30/2016 8:45 AM - CLAIM Note 41**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : HEALTH INS COVERAGE
Text: [05/30/2016 - GRAY, LISA]EE REPORTS MANPOWER WAS PROVIDING HIM HEALTH INSURANCE WITH AETNA. EE REPORTS HE DID NOT GO TO ANY PROVIDERS BETWEEN 12/1/13 UNTIL MARCH 2015.

**05/27/2016 2:06 PM - CLAIM Note 40**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : PHARMACY SEARCH
Text: [05/27/2016 - GRAY, LISA]LATE ENTRY. WE ORIGINALLY ASKED INVESTIGATOR TO CONDUCT A 50 MILE RADIUS PHARMACY CHECK. WE RECD THE FINAL REPORT WHICH PROVIDED PHARMACIES WITHIN A 10 MILE RADIUS. ON 4/12/16 DCM WENT BACK TO INVESTIGATOR AND ASKED THEM TO CONDUCT 50 MILE RADIUS. ON 4/22/16 WE RECD A RESPONSE ADVISING US THAT BASED ON THEIR REVIEW THERE ARE 136 PHARMACIES. SINCE THAT REQUEST WE THEN RECD PHARMACY RECORDS AND HEALTH INSURANCE CARRIER INFO WHICH LED TO NO FURTHER PHARMACY SEARCHES ASTHE INFORMATION DID NOT REVEAL EE RECD ANY ADDITIONAL TREATMENT OR PRESCRIPTIONS OTHER THEN WHAT HE STATED AND WHAT WAS PROVIDED.

**05/27/2016 2:01 PM - CLAIM Note 39**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : RECOMENDATION
Text: [05/27/2016 - GRAY, LISA]53 YEAR OLD CIVIL ENGINEER WHO STOPPED WORKING DUE TO DIAGNOSES OF CHRONIC IDIOPATHIC HYPERSOMNOLENCE AND COPD AND VALVULAR HEART DISEASE. R/L;S: WOULD NEED TO TAKE NAPS/REST UP TO 15 MINUTES EVERY 2 TO 4 HOURS. I AMRECOMMENDING APPROVAL OF THIS FILE BASED ON THE FOLLOWING: INITIAL INVESTIGATION AS TO WHETHER OR NOT THIS WAS PRE-X DID NOT REVEAL ANY TREATMENT: CLAIM HISTORY FROM HEALTH INSURANCE CARRIER DID NOT REVEAL TREATMENT PHARMACY RECORDS DID NOT LIST ANY MEDICATIONS DURING PRE X PERIOD MEDICAL RECORDS ON FILE DO NOT REVEAL TREATMENT DURING PRE X LMCP REVIEW CONFIRMED EE IS NOT PRE X. LMCP DOES COMMENT ON THAT IT REALLY REMAINS QUESTIONABLE IF HE REALLY DID NOT RECV TREATMENT DURING PRE XHOWEVER WE ASKED FOR EXTENSIVE INFO WHICH WAS PROVIDED SO THERE IS NOTHING ELSE TO RESEARCH. LMCP OUTLINED R.L S CONSISTENT WITH TREATING PROVIDERS. LMCP FEELS EE COULD WORK IF ALLOWED THE OPPORTUNITY TO TAKE NAPS/RESTS I ATTEMPTED TO SEE IFER WOULD TAKE EE BACK. ER REQUESTED FURTHER CLARIFICATION SO I WENT BACK TO MD ASKING FOR SPECIFIC R/L S. HE WROTE BACK PROVIDING INFO AND NOTING EE CANNOT WORK EVEN WITH R/L S. THEREFORE THERE WAS NO NEED TO GO BACK TO ER. WHILE LMCP OPINES THE HYPERSOMNIA IS SUPPORTED TO POSSIBLY ALSO BE RELATED TO UNTREATED SLEEP APNEA, IF EE IS NOT USING CPAP AT NIGHT WE WILL NEED TO FOLLOW MEDICAL CLOSELY AND PERFORM NON-MEDICAL ASSESSMENTS TO RULE THAT OUT. LMCP NOTES: CONCLUSIONS: THE CONCLUSIONS OF THE 4/27/2016 REPORT ARE

UNCHANGED, NAMELY, THAT THE RECORDS ARE INSUFFICIENT TO SUPPORT ABSENCE OF FULL-TIME WORK CAPACITY AS NOTED IN THE REPORT. HOWEVER, THE RECORDS SUPPORT THAT THE CLAIMANT BE EVALUATED IN DR. NAJJAR S OFFICE FOR THEPURPOSE OF COMPLETING A RESTRICTIONS AND LIMITATIONS FORM TO CLARIFY HIS CURRENT OPINION, ON THE BASIS OF RECENT CLINIC EXAMINATION SPECIFIC FOR WORK CAPACITY DETERMINATION, AS TO THE DEGREE OF IMPAIRMENT. THE R/L FORM WAS COMPLETED AND RECD YESTERDAY. I RECOMMEND APPROVING THIS CLAIM AND TO CONTINUE TO MONITORING CLOSELY INCLUDING SCHEDULING SURVEILLANCE. PLEASE NOTE SURVEILLANCE WOULD HAVE BEEN PERFORMED HOWEVER EE LEFT THE COUNTRY FOR A FEW WEEKS TO GO HOME AND VISIT HIS FAMILY. HEIS RETURNING JUNE 9TH. WE ARE ALSO IN THE PROCESS OF DETERMINING IF THE OCCUPATION CAN BE PERFORMED AT HOME. IF IT IS THEN THAT IS SOMETHING WE CAN WORK ON WITH HIS PROVIDERS AND ER GOING FORWARD. IT HAS BEEN CONFIRMED THAT IT CANNOT BE PERFORMED PART TIME.

**05/27/2016 2:30 AM - CLAIM Note 38**
Claim/Event/Leave: 5690365
NoteSubject : Voc Rehab
Other Subject : VCM CASE TRANSFER
Text: 5/26/2016-THIS CASE HAS BEEN TRANSFERRED TO A NEW VCM AND IS NOW BEING HANDLED BY SULLIVAN, NANCY.

**05/27/2016 2:30 AM - CLAIM Note 37**
Claim/Event/Leave: 5690365
NoteSubject : Voc Rehab
Other Subject : CLAIM/EVENT TO VCM
Text: 5/26/2016-REFERRAL RECEIVED BY VCM AND ASSIGNED TO COOK, BERNADETTE. CLAIM/AS EVENT IS PENDING REVIEW.

**05/27/2016 2:29 AM - CLAIM Note 36**
Claim/Event/Leave: 5690365
NoteSubject : Ref to Voc Rehab
Other Subject : SCORE REFERRAL
Text: 5/26/2016 - REFERRED TO THE VOC UNIT FOR OCCUPATIONAL ANALYSIS.

**05/26/2016 11:12 AM - PHONE Note 14**
Claim/Event/Leave: 5690365
NoteSubject : Called AP
Other Subject : DR. NAJJAR
Text: [05/26/2016 - GRAY, LISA]CALLED AND SPOKE TO STEPHANIE. CONFIRMED THEY RECD OUR FAX YESTERDAY. EXPLAINED FURTHER CLARIFICATION IS NEEDED REGARDING EE'S FUNCTIONAL STATUS. SHE STATED THEY WERE NOT IN THAT LOCATION YESTERDAY BUT IS TODAY SO MD CAN HOPEFULLY REVIEW AND COMPLETE. I ASKED IF SHE THOUGHT WE MIGHT HAVE BY THE END OF THIS WEEK AND SHE FELT WE SHOULD. I THANKED HER FOR HER TIME AND THE CALL ENDED.DCM WILL NOTIFY EE.

**05/26/2016 11:03 AM - PHONE Note 13**
Claim/Event/Leave: 5690365
NoteSubject : EE Called
Other Subject : STATUS
Text: [05/26/2016 - GRAY, LISA]EE EMAILED DCM THIS AM ASKING FOR A SPECIFIC TIME TODAY FOR US TO SPEAK. I REPLIED ADVISING HIM 9 AM. EE CALLED DCM AT 10 AM. I EXPLAINED THAT BASED ON THE INFORMATION ON FILE FROM HIS TREATING PROVIDER, DR. NAJJAR, HE ISCAPABLE OF PERFORMING SEDENTARY WORK HOWEVER WOULD NEED TO TAKE NAPS/REST PERIODS THROUGHOUT THE DAY AND TAKE STIMULATING MEDICATION. I EXPLAINED THAT AN INDEPENDENT REVIEWER ALSO OPINED AND AGREED WITH DR. NAJAAR. I EXPLAINED THAT WE ARE CURRENTLYIN THE PROCESSING OF TRYING TO FIND OUT IF HIS ER WOULD BE WILLING TO ACCOMMODATE THESE RESTRICTIONS. I EXPLAINED HIS ER DID REVIEW OUR REQUEST AND RESPONDING REQUESTING CLARIFICATION. THEREFORE A DETAILED LETTER WAS FAXED TO DR. NAJAAR ASKING HIMTO PROVIDE MORE SPECIFIC R/LS. EXPLAINED UPON RECEIPT I WOULD PROVIDE TO ER. I ASKED HIM TO CONTACT DR. NAJJAR URGING HIM TO RESPOND BY END OF THIS WEEK. EE STATED HE CANNOT CONTACT HIM STATING HE IS OUT OF THE COUNTRY AND IN ADDITION CANNOT TELLHIS MD WHAT TO WRITE. HE SAID I WOULD HAVE TO CALL AND URGE THEM TO RESPOND. HE STATED THAT HE DOES NOT JUST SIT AT WORK STATING HE IS A CIVIL ENGINEER WHICH REQUIRES A LOT OF FOCUS AND CONCENTRATION. HE SAID HE HAS A VERY SERIOUS HEALTH CONDITION WHICH INTEREFERES WITH HIS ABILITY TO PERFORM THE JOB AS IT NEEDS TO BE PERFORMED. HE SAID HIS FOCUS IS NOT GOOD AND THAT HIS JOB REQUIRES VERY SOPHISTICATED FOCUS. HE SAID EVEN WITH MEDICATION HE CANNOT DO HIS JOB. THIS HELPS WITH STIMULATION BUT DOES NOT HELP WITH HIS FOCUS AND CONCENTRATION STATING THE MEDICATION DOES NOT MAKE HIM 100%. HE SAID HE DOES NOT HAVE STRENGTH OR FOCUS TO PERFORM HIS JOB. HE SAID HE HAS NO MONEY AND CANNOT SURVIVE. HE SAID HE IS RETURNING HOME ON JUNE 7, 2016. HE REQUESTED THAT WE MAKE A DECISION ASAP. I EXPLAINED I WOULD CALL DR. NAJAARS OFFICE TODAY TO FOLLOW UP ON OUR REQUEST. I ASKED HIM IF HE COULD PLEASE PROVIDE IN WRITING HIS REPORTED SYMPTOMS I.E DECREASED FOCUS AND CONCENTRATION AND SEND TODAY. HE AGREED. I EXPLAINED ONCE WE HAVE INFO WE WILL MAKE CLAIM DETERMINATION. EE THANKED DCM AND CALL ENDED.

**05/26/2016 8:00 AM - CLAIM Note 35**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : VCM
Text: [05/26/2016 - GRAY, LISA]RECD INFO FROM VCM STATING THE OCCUPATION CAN NOT BE PERFORMED ON A PART TIME BASIS. VCM WAS UNSURE AS TO WHETHER OR NOT THE OCC COULD BE PERFORMED AT HOME. VCM RECOMMENDED FILE BE RE-REFERRED FOR AN ADDENDUM TO ASSESS WHETHER OR NOT HE COULD PERFORM HIS OCCUPATION AT HOME. FILE REFERRED TO VCM. VCM NOTIFIED.

**05/25/2016 5:02 PM - PHONE Note 12**
Claim/Event/Leave: 5690365

Claim/Event/Leave: 5690365
NoteSubject : EE Called
Other Subject :
Text: [05/25/2016 - LAROCCA, KRISTIE]EE CALLED STATING HE HAS A SERIOUS HEALTH CONDITION, AND DISAGREES WITH R&LS, EE STATES HE HAS SERIOUS HEALTH PROBLEMS, AND DOESN'T THINK HE CAN RTW, DCM EXPLAINED CP AND AP AGREE ON R&LS OF TAKING A NAP DURING THE DAY,DCM HAS REACHED OUT TO ER ASKING IF THEY WILL ACCOMMODATE, DCM ALSO REACHED OUT TO PROVIDER FOR INFORMATION, DCM ADVISED IF EE WANTS ADDT'L INFO HE SHOULD S/W ASSIGNED DCM, DCM ASKED FOR A GOOD TIME TO RTC TO EE NEXT DAY, EE STATES HE IS OUT OF THECOUNTRY, AND EMAILS DCM SOMETIMES, DCM THEN SUGGESTED EE SEND DCM AN EMAIL WITH A 1/2 HR WINDOW HE WOULD LIKE TO S/W HER. ALLOWING DCM TIME TO REPLY TO ENSURE THIS IS S A GOOD TIME FOR HER. THEN DCM WILL REMAIN OFF PHONE AWAITING EE CALL, EE ASKEDIF SHOULD GET AN ATTNY, DCM ADVISED HE CAN IF HE WANTS BUT IT APPEARS EE REALLY JUST NEEDS TO S/W DIRECTLY WITH HIS OWN DCM TO GET A BETTER UNDERSTANDING OF HIS CLAIM EE VOICED UNDERSTANDING

**05/25/2016 4:48 PM - PHONE Note 11**
Claim/Event/Leave: 5690365
NoteSubject : EE Called
Other Subject : STATUS
Text: [05/25/2016 - HALE, ROBERT]EE CALLED TO CHECK ON HIS CLAIM STATUS. ADVISED EE CURRENTLY PENDED. EE SAID THAT HE IS UNDER THE IMPRESSION WE WANT HIM TO RTW BUT HE CANNOT . HE CANNOT FUNCTION ENOUGH TO RTW. EE ASKED FOR DCM. ADVISED SHE IS NOT CURRENTLY AVAIL. EE SAID HE CANNOT LVM AS HE NEEDS TO SPEAK W/ SOMEONE. ADVISED EE THAT A TEAMMEMBER OF HERS IS AVAIL, KRISTIE. EE U/S. WARM TRANSFER

**05/25/2016 10:28 AM - CLAIM Note 34**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : CLARIFICATION VCM
Text: [05/25/2016 - GRAY, LISA]ASKING VCM IF THE OCCUPATION CAN BE PERFORMED ON A PART TIME BASIS AND/OR FROM HOME.

**05/21/2016 2:29 AM - CLAIM Note 33**
Claim/Event/Leave: 5690365
NoteSubject : Voc Rehab
Other Subject : CLAIM/EVENT TO VCM
Text: 5/20/2016-REFERRAL RECEIVED BY VCM AND ASSIGNED TO COOK, BERNADETTE. CLAIM/AS EVENT IS PENDING REVIEW.

**05/21/2016 2:29 AM - CLAIM Note 32**
Claim/Event/Leave: 5690365
NoteSubject : Ref to Voc Rehab
Other Subject : SCORE REFERRAL
Text: 5/20/2016 - REFERRED TO THE VOC UNIT FOR OCCUPATIONAL ANALYSIS.

**05/20/2016 3:49 PM - CLAIM Note 31**
Claim/Event/Leave: 5690365
NoteSubject : LTR to ER
Other Subject : ACCOMMODATIONS
Text: [05/20/2016 - GRAY, LISA]EMAILED ANDREA HUBER AT CROWN EQUIPMENT REQUESTING A STATUS AS TO WHETHER OR NOT THEY CAN ACCOMMODATE EE

**05/20/2016 12:58 PM - CLAIM Note 30**
Claim/Event/Leave: 5690365
NoteSubject : Voc Rehab
Other Subject : OA1
Text: [05/20/2016 - COOK, BERNADETTE]REFERRED IN ERROR BY ELEANOR HOUSER. SENT EMAIL TO CANCEL REFERRAL AND DID CC TCC ON THIS ERROR.

**05/18/2016 8:34 AM - CLAIM Note 29**
Claim/Event/Leave: 5690365
NoteSubject : LTR to ER
Other Subject : RTW REQUEST
Text: [05/18/2016 - GRAY, LISA]EMAILING ER AGAIN REQUESTING IF THEY WOULD BE WILLING TO ACCOMMODATE R/L'S

**05/13/2016 2:30 AM - CLAIM Note 28**
Claim/Event/Leave: 5690365
NoteSubject : Voc Rehab
Other Subject : CLAIM/EVENT TO VCM
Text: 5/12/2016-REFERRAL RECEIVED BY VCM AND ASSIGNED TO SULLIVAN, NANCY. CLAIM/AS EVENT IS PENDING REVIEW.

**05/13/2016 2:29 AM - CLAIM Note 27**
Claim/Event/Leave: 5690365
NoteSubject : Ref to Voc Rehab
Other Subject : SCORE REFERRAL
Text: 5/12/2016 - REFERRED TO THE VOC UNIT FOR OCCUPATIONAL ANALYSIS.

**05/12/2016 1:35 PM - CLAIM Note 26**
Claim/Event/Leave: 5690365

NoteSubject : LTR to ER
Other Subject : ACCOMMODATION
Text: [05/12/2016 - GRAY, LISA]EMAILED ER TO SEE IF THEY WOULD BE WILLING TO ACCOMMODATE EE. BOTH TREATING PROVIDER AND LMCP OPINE EE CAN WORK BUT NEEDS BRIEF NAPS THROUGHOUT THE WORKDAY E.G. 15 MINUTE NAPS/RESTS EVERY 2 TO 4 HOURS. IF ER IS ABLE TO ACCOMMODATE WILL TAKE NEXT STEPS

**05/12/2016 1:15 PM - CLAIM Note 25**
Claim/Event/Leave: 5690365
NoteSubject : Medical Status
Other Subject : LMCP & AP
Text: [05/12/2016 - GRAY, LISA]TREATING SLEEP/PULM SPECIALIST COMPLETED A RF DATED 3/14/16 NOTING EE HAS SEDENTARY CAPACITY HOWEVER EE WOULD HAVE TO TAKE FREQUENT NAPS/REST. SLEEP/PULM LMCP REVIEWED THE FILE AND OPINED MEDICAL ON FILE SUPPORTS FULL TIME LIGHT WORK CAPACITY WITH WORKPLACE ACCOMMODATION FOR SAFE WORK ENVIRONMENT, NO HEIGHTS, CLIMBING, CRAWLING, BALANCING, OR WORK RELATED DRIVING AND FOR FREQUENT BRIEF NAPS IF SUBJECTIVELY BENEFICIAL TO THE INDIVIDUAL (15 MINUTES EVERY 2 TO 4 HOURS IF REQUIRED).

**05/12/2016 12:59 PM - PHONE Note 10**
Claim/Event/Leave: 5690365
NoteSubject : EE Called
Other Subject : STATUS
Text: [05/12/2016 - GRAY, LISA]DCM WAS NOT AVAILABLE HOWEVER LATER RETURNED HIS CALL. HE WAS NOT AVAILABLE THEREFORE I LEFT A DETAILED MESSAGE EXPLAINING THAT ONCE WE RECV FINAL MEDICAL REPORT AND CLARIFICATION OF OCC WE WILL RENDER CLAIM DETERMINATION.

**05/12/2016 12:58 PM - CLAIM Note 24**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : OCC ANALYSIS
Text: [05/12/2016 - GRAY, LISA]SEDENTARY

**05/12/2016 10:09 AM - CLAIM Note 23**
Claim/Event/Leave: 5690365
NoteSubject : Voc Rehab
Other Subject :
Text: [05/12/2016 - SULLIVAN, NANCY]REVIEWED FILE. REPORT COMPLETED, DROPPED INTO SYS 1 W DCM NOTIFIED. I CLOSE MY FILE GIVEN TASK COMPLETION.

**05/09/2016 11:23 AM - CLAIM Note 22**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : RESPONSE FROM EE
Text: [05/09/2016 - GRAY, LISA]I RECD AN EMAIL FROM EE STATING HE CONTACTED DR. NAJJAR'S OFFICE AND WAS TOLD THAT DR. NAJJAR DID RETURN LMCP CALL. DCM RESPONDED TO EE ADVISING HIM I WOULD CONTACT LMCP TO OBTAIN IF AND WHEN THEY SPOKE AND WHEN WE CAN EXPECT ADDENDUM IF THEY DID INDEED SPEAK. DCM ALSO ASKED EE TO FIND OUT WHEN DR. NAJJAR RETURNED CALL.

**05/02/2016 7:51 AM - CLAIM Note 21**
Claim/Event/Leave: 5690365
NoteSubject : LTR to EE
Other Subject : AP CONTACT
Text: [05/02/2016 - GRAY, LISA]EE IS CURRENTLY OUT OF THE COUNTRY THEREFORE DCM SENT AN EMAIL TO EE ADVISING HIM OF TELEPHONE ATTEMPTS MADE BY REVIEWING DOCTOR. ASKED HIM TO PLEASE CONTACT DR. NAJJARS OFFICE AND URGE HIM TO RETURN REVIEWING DOCTORS TELEPHONE CALL. ONCE COMPLETED THE REVIEWING MD CAN COMPLETE HIS REVIEW AND SUBMIT REPORT.

**04/27/2016 3:21 PM - CLAIM Note 20**
Claim/Event/Leave: 5690365
NoteSubject : Med Records Rcvd
Other Subject : CP REORT
Text: [04/27/2016 - KENNEDY, CHENTA]IT IS MORE LIKELY THAN NOT, BUT NOT CLEAR FROM THE RECORDS PROVIDED, THAT THE CLAIMANT RECEIVED TREATMENT DURING THE PRE-EXISTING PERIOD OF DECEMBER 3, 2014 THROUGH MARCH 1, 2015 FOR CHRONIC OBSTRUCTIVE PULMONARY DISEASE, OBSTRUCTIVE SLEEP APNEA, AND IDIOPATHIC HYPERSOMNIA--THE RECORDS SUPPORT DIAGNOSES OF IDIOPATHIC HYPERSOMNIA, OBSTRUCTIVE SLEEP APNEA, AND SEVERE CHRONIC OBSTRUCTIVE PULMONARY DISEASE (COPD). HOWEVER, THE HYPERSOMNIA IS SUPPORTED TO POSSIBLY ALSO BE RELATED TO UNTREATED OBSTRUCTIVE SLEEP APNEA ALONE, IF THE CLAIMANT IS NOT CURRENTLY USING HIS CPAP THERAPY DURING SLEEP. OBJECTIVE DATA (INCLUDING POLYSOMNOGRAPHY AND MULTIPLE SLEEP LATENCY TESTING) IS INADEQUATE TO SUPPORT IMPAIRMENT SECONDARY TO EXCESSIVE DAYTIME SLEEPINESS REQUIRING MORE THAN THE ACCOMMODATIONS MENTIONED IN RESPONSE 3. THE RECORDS SUPPORT FULL-TIME LIGHT WORK CAPACITY WITH REGARDS TO EXERTIONAL DYSPNEA RELATED TO SEVERE CHRONIC OBSTRUCTIVE PULMONARY DISEASE, ANDIS SUPPORTED BY THE SIX-MINUTE WALK TESTING-HE RECORDS SUPPORT FULL-TIME LIGHT WORK CAPACITY, WITH WORKPLACE ACCOMMODATION FOR SAFE WORK ENVIRONMENT, NO HEIGHTS, CLIMBING, CRAWLING, BALANCING, OR WORK-RELATED DRIVING; AND FOR FREQUENT BRIEF NAPSIF SUBJECTIVELY BENEFICIAL TO CLAIMANT (E.G., UP TO15 MINUTES EVERY 2-4 HOURS IF REQUIRED). THE RECORDS SUPPORT THAT THE CLAIMANT FOLLOWUP CLOSELY WITH HIS SLEEP/PULMONARY SPECIALIST, AND USE CPAP AND ALERTING THERAPY AS MAY BE INDICATED ACCORDINGTO MEDICAL RECOMMENDATIONS.THE RECORDS DO NOT SUPPORT IMPAIRMENT FROM CARRYING OUT HER USUAL LIFE ACTIVITIES INCLUDING WORK RELATED ACTIVITIES, WITHIN THE SPECIFICATIONS NOTED IN RESPONSE

USUAL LIFE ACTIVITIES INCLUDING WORK-RELATED ACTIVITIES, WITHIN THE SPECIFICATIONS NOTED IN RESPONSE THREE.

**04/26/2016 10:32 AM - PHONE Note 9**
Claim/Event/Leave: 5690365
NoteSubject : EE Called
Other Subject : STATUS
Text: [04/26/2016 - GRAY, LISA]EE CALLED ASKING IF WE HAVE FOUND OUT WHEN THE MEDICAL REPORT WILL BE RECEIVED. I EXPLAINED I CAN NOT PROVIDE A SPECIFIC DATE HOWEVER DID ADVISE HIM THAT I ANTICIPATE HAVING THE REPORT BACK NO LATER 5/15/16. HE STATED HE ISLEAVING FOR TRIP AND WAS HOPING TO RECEIVE DECISION BEFORE HE LEFT. I EXPLAINED THAT I UNDERSTOOD THAT HOWEVER UNTIL WE HAVE REPORT WE ARE UNABLE TO RENDER DECISION. HE ASKED ME TO EMAIL HIM AS SOON AS I KNOW IN WHICH I AGREED AND CALL ENDED.

**04/22/2016 12:53 PM - CLAIM Note 19**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : STATUS
Text: [04/22/2016 - GRAY, LISA]DCM HAS REACHED OUT TO REVIEWING LMCP FOR STATUS AS TO WHEN WE MIGHT EXPECT REPORT. ONCE A RESPONSE IS RECD DCM WILL CALL EE.

**04/22/2016 12:53 PM - PHONE Note 8**
Claim/Event/Leave: 5690365
NoteSubject : EE Called
Other Subject : STATUS
Text: [04/22/2016 - GRAY, LISA]EE CALLED ASKING WHEN WE MIGHT COMPLETE OUR REVIEW. I EXPLAINED HIS FILE IS CURRENTLY UNDERGOING MEDICAL REVIEW. HE ASKED IF I COULD GET ASK THE REVIEWING MD AS TO WHEN WE MIGHT EXPECT THE REPORT. I EXPLAINED I WOULD RESEARCH AND CALL HIM BACK. EE IS EAGER TO FIND OUT AS HE IS PLANNING ON TRAVEL BACK TO HIS HOME COUNTRY.

**04/14/2016 1:48 PM - PHONE Note 7**
Claim/Event/Leave: 5690365
NoteSubject : EE Called
Other Subject : REQUEST
Text: [04/14/2016 - GRAY, LISA]EE CALLED STATING HE IS TRAVELING OVERSEAS FOR 3 WEEKS. IS EXPECTED TO LEAVE THE END OF APRIL AND RETURN THIRD OR FOURTH WEEK IN MAY. EE ASKED THAT THEY PLEASE CONTACT VIA EMAIL WHILE HE IS AWAY STATING HE WILL NOT BE GETTING HIS MAIL FOR 3 WEEKS AND WANTS TO MAKE SURE HE GETS OUR DECISION. I EXPLAINED I WOULD AGREE TO THIS WHILE HE IS OUT OF TOWN BUT WHEN HE RETURNS EMAIL WILL CEASE. HE AGREED. EE STATED HE IS GOING HOME TO VISIT FAMILY.

**04/13/2016 2:38 PM - CLAIM Note 18**
Claim/Event/Leave: 5690365
NoteSubject : Medical Status
Other Subject : PHARMACY RECORDS
Text: [04/13/2016 - GRAY, LISA]NO PHARMACY RECORDS WERE FOUND IN SURROUNDING AREA OTHER THEN WHAT WE ALREADY HAVE ON FILE. HOWEVER THEY DID NOT PERFORM A 50-60 MILE RADIUS SEARCH AS REQUESTED THEREFORE DCM HAS ASKED THEM TO PLS DO SO.

**04/12/2016 7:20 AM - CLAIM Note 17**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : VENDOR PMT
Text: [04/12/2016 - GRAY, LISA]ISSUED PMT TO HUB ENTERPRISES IN THE AMOUNT OF 125.00/PHARMACY CHECK

**04/07/2016 2:33 AM - CLAIM Note 16**
Claim/Event/Leave: 5690365
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 4/6/2016 - REFERRED TO CONSULTING PHYSICIAN FOR FULL REVIEW.

**04/04/2016 6:58 AM - CLAIM Note 15**
Claim/Event/Leave: 5690365
NoteSubject : Med Records Rcvd
Other Subject : MADISON FAMILY HEALT
Text: [04/04/2016 - GRAY, LISA]PROGRESS NOTES FROM 8/10/15 THRU 3/2016

**04/01/2016 2:33 AM - CLAIM Note 14**
Claim/Event/Leave: 5690365
NoteSubject : Ref to Special Invest
Other Subject : SCORE REFERRAL
Text: 3/31/2016 - REFERRED TO HUB ENTERPRISES FOR SIU VENDOR SERVICES.

**03/31/2016 2:39 PM - CLAIM Note 13**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : PHARMACY SEARCH
Text: [03/31/2016 - GRAY, LISA]REFERRED FILE TO HUB ENTERPRISES REQUESTING A PHARMACY SEARCH IN A 50 TO 60 MILE RADIUS.

**03/31/2016 2:38 PM - CLAIM Note 12**
Claim/Event/Leave: 5690365
NoteSubject : LTR to EE
Other Subject : EMAIL
Text: [03/31/2016 - GRAY, LISA]EMAILED EE ADVISING HIM HE NEEDS TO SUBMIT A COPY OF HIS PRESENT HEALTH INSURANCE CARRIER CLAIM HISTORY. ALSO INFORMED EE THAT PER THE LAW NOT HAVING HEALTH INSURANCE IS NOT AN OPTION THEREFORE PLS SUBMIT ANY DOCUMENTATION STATING THAT HE WAS NOT REQUIRED TO APPLY OR IF HE DID AND WAS DENIED TO PLS ALSO SUBMIT A COPY OF THAT NOTIFICATION.

**03/31/2016 2:27 PM - PHONE Note 6**
Claim/Event/Leave: 5690365
NoteSubject : Called Other
Other Subject : SAMS CLUB PHARMACY
Text: [03/31/2016 - GRAY, LISA]CALLED SAMS CLUB PHARMACY IN ALABAMA AND ASKED IF I PREVIOUSLY USED SAMS CLUB PHARMACY IN OH AND THEN MOVED TO AL AND I REQUESTED A COPY OF MY PHARMACY RECORDS COULD THEY SUBMIT ON ONE DOCUMENT OR WOULD I NEED TO REQUEST FROMEACH FACILITY. PHARMACIST STATED YOU ARE ABLE TO OBTAIN ALL RECORDS FROM ALL PHARMACIES ON ONE DOCUMENT.

**03/31/2016 12:51 PM - PHONE Note 5**
Claim/Event/Leave: 5690365
NoteSubject : Called EE
Other Subject : STATUS
Text: [03/31/2016 - GRAY, LISA]CALLED AND SPOKE TO EE. WENT OVER LTD FORMS AND MEDICAL/PHARMACY RECORDS ON FILE TO DATE. WE DISCUSSED PRE X TIME PERIOD. I QUESTIONED EE ABOUT HEALTH INSURANCE CARRIER CLAIMS HISTORY. EE STATED HE DID NOT HAVE HEALTH INSURANCE PRIOR TO HIM BEGINNING EMPLOYMENT AT CROWN WHICH WAS 3/2/15. EE SAID HE WAS NEVER SICK NOR DID HE GO FOR ROUTINE PHYSICAL EXAMINATIONS. WE WENT OVER MEDICAL ON FILE WHICH IS FROM DR. NAJJAR AND MADISON FAMILY HEALTH. HE CONFIRMED THESE ARETHE ONLY TWO PROVIDERS HE HAS RECEIVED TREATMENT WITH STATING HE WAS NEVER SICK PRIOR TO THIS. I EXPLAINED THE INFO FROM MADISON HEALTH DOCUMENTS HIS FIRST VISIT AT THAT FACILITY AS 8/10/15. EE CONFIRMED THAT IS ACCURATE. WE WENT OVER PHARMACY RECORDS WHICH DOCUMENT FIRST MEDICATION WAS DISPENSED OCTOBER 13, 2015. HE CONFIRMED THAT WAS ACCURATE STATING HE NEVER TOOK ANY PRESCRIPTION MEDICATIONS PRIOR TO THAT. EE SAID HE NEVER WENT TO DOCTORS EXCEPT THE TIMES LISTED ON FORMS AND MEDICAL RECORDS. I EXPLAINED WE MAY HAVE TO CONDUCT FURTHER RESEARCH TO VERIFY THIS INFO IS ACCURATE. EE STATED THERE IS NOTHING MORE TO OBTAIN. EE STATED WE HAVE EVERYTHING. I EXPLAINED WE WOULD BEGIN OUR REVIEW. EE ASKED WHEN DECISION WOULD BE MADE. I EXPLAINED WE WILL TRY AND RENDER DECISION BEFORE FIRST CHECK RELEASES WHICH WILL BE AROUND 5/15/16. EE STATED HE UNDERSTOOD AND CALL ENDED.[03/31/2016 - GRAY, LISA]EE STATED THAT HIS TWO PRIOR JOBS WERE THRU JOB PLACEMENT SERVICES AND THEREFORE DID NOTHAVE HEALTH INS

**03/25/2016 12:22 PM - CLAIM Note 11**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : PS MANAGER REVIEW
Text: [03/25/2016 - PRESCOTT, TIMOTHY]INITIAL BENEFIT CALC REVIEW HAS BEEN COMPLETED AND APPROVED ON BEHALF OF PS MANAGER

**03/25/2016 11:38 AM - CLAIM Note 10**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : BENEFIT CALCULATION
Text: [03/25/2016 - KEEFER, JESSICA]SET UP SCHEDULED PAYMENT BASED ON EARNINGS REPORT IN DOC LIST PPE 1/9/16. $3730.00 BIWEEKLY X 26 PAY PERIODS /12 MOS= $8081.67 MONTHLY THE BENEFIT IS 60% OR $4849.00. SLCT OFFSET ADDED IN THE AMOUNT OF $1332.14 HOWEVER,ENTERED AS $727.35 TO ENSURE MIN BENEFIT IS PAID FOR 4/22/16-4/26/16. THE INITIAL PAYMENT WORKSHEET HAS BEEN SAVED TO THE DOC LIST.

**03/25/2016 2:32 AM - CLAIM Note 9**
Claim/Event/Leave: 5690365
NoteSubject : Ref to Other
Other Subject : PMNT
Text: THE SCORE REFERRAL FOR PAYMENT SERVICES REFERRAL AND INITIAL PAYMENT CALCULATION HAS BEEN REASSIGNED TO JESSICA KEEFER.

**03/24/2016 10:21 AM - CLAIM Note 8**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : SALARY REQUEST
Text: [03/24/2016 - KEEFER, JESSICA]SENT EMAIL TO ER TO VERIFY SALARY PRIOR TO DOD AS WELL AS COMMISSIONS

**03/23/2016 2:31 AM - CLAIM Note 7**
Claim/Event/Leave: 5690365
NoteSubject : Ref to Other
Other Subject : PMNT
Text: THE SCORE REFERRAL FOR PAYMENT SERVICES REFERRAL AND INITIAL PAYMENT CALCULATION HAS BEEN RECEIVED AND ASSIGNED TO NANCY AUBIN.

**03/22/2016 12:13 PM - PHONE Note 4**
Claim/Event/Leave: 5690365

Claim/Event/Leave: 5690365
NoteSubject : EE Called
Other Subject : RETURNED CALL
Text: [03/22/2016 - GRAY, LISA]EE CALLED. DCM ASKED EE IF HE RECD LTD LETTER AND FORMS. HE SAID HE NEEDS TO CHECK HIS MAIL BECAUSE AS OF RIGHT NOW HE HAS NOT RECD. DCM HAD A VERY HARD TIME UNDERSTANDING EE. EE DID STATE THAT HE SLEEPS A LOT DUE TO HISCONDITION. EE HAS CONDITION OF SEVERE COPD AND IDIOPATHIC ORGANIC HYPERSOMNIA WITHOUT LONG SLEEP TIME. IT WAS AGREED THAT WE WOULD CORRESPOND IN WRITING.

**03/22/2016 10:38 AM - PHONE Note 3**
Claim/Event/Leave: 5690365
NoteSubject : Called EE
Other Subject : ICP
Text: [03/22/2016 - GRAY, LISA]CALLED EE TODAY. SOMEBODY PICKED UP PHONE THEN HUNG IT UP. DCM WILL TRY AGAIN.

**03/22/2016 2:45 AM - CLAIM Note 6**
Claim/Event/Leave: 5690365
NoteSubject : Ref to Other
Other Subject : PMT SVC
Text: FOR INITIAL PAYMENT CALCULATION.

**03/17/2016 2:35 PM - PHONE Note 2**
Claim/Event/Leave: 5690365
NoteSubject : Called EE
Other Subject : ICP
Text: [03/17/2016 - GRAY, LISA]NO ANSWER. LM

**03/16/2016 8:19 AM - CLAIM Note 5**
Claim/Event/Leave: 5690365
NoteSubject : Med Records Rcvd
Other Subject :
Text: [03/16/2016 - GRAY, LISA]DR. NAJJAR, SLEEP/PULM MD. APS, RF, SLEEP STUDIES, ECHO CARDIOGRAM AND PROGRESS NOTES.

**03/14/2016 8:42 AM - CLAIM Note 4**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : ELIGIBILITY
Text: [03/14/2016 - GRAY, LISA]LONG TERM DISABILITY BENEFITS: CLASS 1: ALL REGULAR FULL-TIME SALARIED EMPLOYEES IN THE CORE PLAN YEAR OF BIRTH: AFTER 1959 MAXIMUM BENEFIT PERIOD: 67 EMPLOYEE CONTRIBUTIONS REQUIRED: APPLICABLE TO CLASS 1 NO ELIMINATION PERIOD: APPLICABLE TO CLASS 1, 2: 90 DAYS 36 MONTH OO LTD: 5690365 STAND ALONE CLAIM OCC: COMPUTER ENGINEER DOH: 3/2/2015 (NO WP) PRE X PERIOD: 12/2/14 THROUGH 3/1/15 SALARY: $7,843.33 X 60% = $4,706.0 (SALARIED EE) PERER SLCT ENDS 4/22/16. EDOC IS CORRECT IN S1

**03/12/2016 2:31 AM - CLAIM Note 3**
Claim/Event/Leave: 5690365
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 3/10/2016 - REFERRED TO TCMS FOR REVIEW AND POTENTIAL MANAGEMENT.

**03/11/2016 12:41 PM - CLAIM Note 2**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject : REFERRAL
Text: [03/11/2016 - BREWSTER, TRISHA]ASSIGNED TO LISA GRAY TODAY

**03/10/2016 11:34 AM - PHONE Note 1**
Claim/Event/Leave: 5690365
NoteSubject : Initial EE Interview
Other Subject : COMPLETE
Text: [03/10/2016 - HOUSER, ELEANOR]53 YOM COMPUTER ENGINEER (PRESUMED SEDENTARY). LDW: 1/22/2016. DOD: 1/23/2016. CONFIRMED PHONE NUMBER, ADDRESS, BIRTHDAY. DX: HYPERSOMNIA AND COPD. JOB: COMPUTER ENGINEER, PROGRAMMING. EE ADVISED SITS MOST OF THE DAY AND WORKS ON THE COMPUTER. PRIOR JOBS WERE WITH AEROTECH AND GENERAL ELECTRIC, HAS BEEN COMPUTER ENGINEER FOR OVER 20 YEARS. EE HAS BS AND MASTERS IN COMPUTER ENGINEER. EE ADVISED HAS VERY PROFESSIONAL/ GOOD RELATIONSHIP WITH MANAGER AND COWORKERS. EE ADVISED WORKS TYPICAL M-F,8-5 SCHEDULE. EE ADVISED HAS SLEEPING PROBLEMS (HYPERSOMNIA) AND COPD/ SEVERE OBSTRUCTIVE LUNG DISEASE, SLEEP APNEA. EE ADVISED HAS COMORBIDS OF DIABETES AND HBP. EE ADVISED HAS BEEN TREATING FOR HYPERSOMNIA ANDCOPD FOR PAST 6 MONTHS. EE ADVISED HE IS TOO SLEEPY TO EVEN TRY TO WORK FROM HOME, IS UNABLE TO CONENTRATE D/T SLEEPINESS. EE TREATS WITH MAMOUN I. NAJJAR, M. D. SLEEP AND PULMONARY CARE CENTER PH: 256-341-0152, 866-95-APNA FAX 256-341-0587. LOV WITH NAJJAR WAS 1/20ISH AND NOV IS 3/14. EE S PCP IS MADISON FAMILY HEALTH CENTER: 102 ESSEX CT MADISON AL PH: 256-325-8457. EE S LOV WITH FAMILY HEALTH WAS IN 10/2015. PHARMACY: SAM S CLUB IN HUNTSVILLE, AL. DID NOT HAVE PHONE/FAX FOR PHARMACY. EE HAS AETNA HEALTH INSURANCE, UNSURE OF PREVIOUS CARRIER. EE S TREATMENT PLAN INCLUDE CPAP MACHINE, WHICH HE ADVISED IS NOT HELPING. EE ADVISED A LOT OF MEDICATION, UNABLE TO RECALL NAMES. EE ADVISED HE IS NOT EXPECTING TO RTW D/T MEDICAL CONDITION. EE CONFIRMED SALARY OF 1810.00/WEEK, DENIED SECONDARY INCOME, DENIED OTHER INCOME BENEFITS. EE IS PLANNING TO FILE FOR SSDB. EE ASKED FOR EXPLANATION OF HOW SSDB AND LTD WORK TOGETHER; DCM ADVISED SSDB/SSDP IS OFFSET. EE ADVISED WOULD LIKETO RESEARCH THIS. DCM ADVISED THAT IS OKAY. EE ADVISED HAS TWO CHILDREN BASSELL AL-SHAREIH DOB 1/5/2009 AND LAYAN AL-

SHAREIH DOB 4/4/2014. EE IS DIVORCED, CHILDREN LIVE WITH MOTHER. EE ADVISED IS LIVING BY HIMSELF, BUT DUE TO HIS HEALTH, HE DOESN T THINK THAT THE WILL BE ABLE TO CONTINUE THAT MUCH LONGER. DCM ADVISED EE OF PRE-EX PROVISION, AND THAT WILL NED ALL MEDICAL FROM 12/2/14-3/1/15. DCM ADVISED EE OF 3 MONTH TX FREE PERIOD. DCM ADVISED EE OF NEXT STEPS, FORMS, ADVISED MEDICAL WILL BE REQUESTED FROM 12/2/14 THROUGH PRESENT, AND THAT WE WILL HAVE 45 DAYS TO GET RECORDS AND FORMS BACK. INFORMATION IS DUE ON 4/23/16. DCM PROVIDED CONTACT INFO. EE ADVISED UNDERSTOOD NEXT STEPS.

**03/09/2016 3:37 PM - CLAIM Note 1**
Claim/Event/Leave: 5690365
NoteSubject : Other
Other Subject :
Text: [03/09/2016 - TRIANO, KELLI]ASSIGNED TO E. HOUSER

**03/09/2016 8:09 AM - POSSINV Note 1**
Claim/Event/Leave: 5690365
NoteSubject : Possible Pre-Ex
Other Subject :
Text: THIS CLAIM IS SUBJECT TO A PRE-EX INVESTIGATION. THE PRE-EX PROVISION IS 3-3-12, THE DOD FOR THIS CLAIMANT IS 01/23/2016, THE ELIGIBILITY DATE IS 03/02/2015, AND THE TRANSFER PROVISION IS YES. THEREFORE, MEDICAL MUST BE GATHERED AND REVIEWED FROM 12/02/2014 THROUGH THE PRESENT.[06/01/2016 - GRAY, LISA]EE IS NOT SUBJECT TO PRE X

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
**Customers with a Daily Pickup**
Your driver will pickup your shipment(s) as usual.

**Customers without a Daily Pickup**
Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
Hand the package to any UPS driver in your area.

UPS Access Point™
JANETOS SUPERETTE
77 MAIN ST
DOVER ,NH 03820

UPS Access Point™
MAIN ST MAILING & COPY
54 MAIN ST
DURHAM ,NH 03824

FOLD HERE

MARILYN COOK
LIBERTY MUTUAL-DOVER-0096
100 LIBERTY WAY
DOVER NH 03820

0.0 LBS LTR 1 OF 1

**SHIP TO:**
MARC WHITEHEAD
MARC WHITEHEAD & ASSOCIATES LLP
SUITE 725
5300 MEMORIAL DRIVE
**HOUSTON TX 77007-8294**

**TX 775 9-04**

**UPS 2ND DAY AIR 2**

TRACKING #: 1Z 248 96X 02 9179 6931

BILLING: P/P

Office/Dept Number: 009603304

CS 19.5.40. WNTNV50 90.0A 07/2017

08/26/2016

# CURRICULUM VITAE

## COL ERIC ALAN CRAWLEY M.D. FCCP

### PRESENT ACADEMIC RANK AND POSITION:

Section Chief: Pulmonary, Allergy, Oncology and Critical Care, Straub Clinic and Hospital,
Assistant Professor of Medicine, Uniformed Services University of the Health Sciences, Bethesda, MD
Assistant Clinical Professor of Medicine, John A Burns School of Medicine, The University of Hawaii, Honolulu, HI

### EDUCATION:

Undergraduate: BS, Auburn University, 1990
Medical School: MD, Uniformed Services University of the Health Sciences, F. Edward Hebert School of Medicine, 1994
Residency: Tripler Army Medical Center, Internal Medicine, 1997
Fellowship: Walter Reed Army Medical Center, Pulmonary and Critical Care Medicine, 1997-2000

### CERTIFICATION:

USMLE Step 1 – June 1992
USMLE Step 2 – September 1993
USMLE Step 3 – June 1995
ABIM – Certification in Internal Medicine – Valid through 2019
ABIM – Certification in Pulmonary Medicine – Valid through 2019
ABIM – Certification in Critical Care Medicine – October 2000 – valid though 2020
Course Consultant, FCCS

### MEDICAL LICENSURE:

Florida, Active:
Hawaii, Active

### PROFESSIONAL POSITIONS:

International Security and Assistance Forces - Pulmonologist/Intensivist, 31st and 115th Combat Support Hospitals, Camp Dwyer, Helmand Province Afghanistan, Sept 2010 – Mar 2011

**PROFESSIONAL POSITIONS Continued:**

Joint Special Operations Task Force – Philippines – Intensivist, 10th Forward Surgical Team, Camp Navarro, Philippines, Nov 2002 – Mar 2003

Tripler Army Medical Center, Honolulu HI
Chief, Pulmonary and Critical Care Medicine, Mar 2008 - 2015

Tripler Army Medical Center, Honolulu HI
Chief, Critical Care Medicine, Jul 2007 - Mar 2008

Tripler Army Medical Center, Honolulu HI
Medical Director, Critical Care Medicine, Mar 2003 – Jul 2007

Tripler Army Medical Center, Honolulu HI
Medical Director, Rapid Response Program, 2007 – 2015

The Queen's Medical Center, Honolulu HI
Call-In Pulmonologist/Intensivist, 2004 to 2015

Straub Clinic and Hospital, Honolulu HI
Call-In Pulmonologist/Intensivist, 2001 to 2015

Straub Clinic and Hospital, Honolulu, HI
Pulmonologist/Intensivist, 2015-present

**HONORS/AWARDS:**

Sigma Delta Pi – Spanish Honorary Society
Distinguished Military Graduate, Auburn University
Order of Military Medical Merit
Bronze Star Medal
Meritorious Service Medal (2)
Army Achievement Medal (2)
Army Commendation Medal (3)
Joint Services Achievement Medal
Basic Parachutist Badge
Tripler Nursing Star, Award for Excellence (2)
Award for Interventional Bronchoscopy – American Society for Bronchology, 1999
James J. Leonard Award – for excellence in teaching Internal Medicine, 2003
Jeffery P. Kavolius Award – for Outstanding Staff Teacher, 2007, 2013
Best Doctors in America® recognition, 2013, 2014, 2015, 2016
Castle Connolly Top Docs recognition 2015, 2016
A-Proficiency Designator – Military designation for national recognition in specialty
Staff Teacher of the Quarter, Winter 2014

**PROFESSIONAL MEMBERSHIPS AND SOCIETIES:**

Fellow, American College of Chest Physicians 1997-present
Member, Society for Critical Care Medicine 2/04 to 2015
Member, American Association for Bronchology and Interventional Pulmonology 2016 to present
Member, FCCS Content Development Steering Committee, 3rd edition
Course Consultant, FCCS 12/12 to present

Member, Leadership Council, American Lung Association, Hawaii Chapter 8/12 to 12/15

**EDITORIAL ACTIVITIES**

Co-author, Fundamental of Critical Care Support (FCCS) Course Manual 3rd Edition

**ADDITIONAL ACADEMIC CONTRIBUTIONS/COMMITTEES**

1. Innovator and Director, Tele Critical Care Unit (TCCU), a $1M/year Congressional Special Interest-sponsored telemedicine project executed via a TAMC/Telemedicine and Advanced Technology Research Center (TATRC)/University of Hawaii partnership (2003-present). Nominated for TSG Excalibur Award.
2. Director, TAMC Rapid Response System: $ 700K Grant via DoD Patient Safety Program, Office of the ASoD (Health Affairs) TRICARE Management Activity. Named by DoD and TJC as "Best Practice" (2007)
3. Member of the 13th Air Force's Joint Medical Attendant Transport Team (JMATT)
4. Member, Fundamentals of Critical Care Support (FCCS) Executive and Development Steering Committee, (3rd edition)
5. Director, Fundamentals of Critical Care Support (FCCS) course (25+ courses at TAMC, Hawaii, Guam and Korea).
6. Co-facilitator of $500K Extracorporeal Membrane Oxygenation (ECMO) Transport Team Grant (TATRC – 2012).
7. Member, Patient Rights and Institutional Ethics Committee (Former Chairperson) 2005-2013

**PERSONAL INTERESTS:**

SCUBA
Triathlons
Water Sports
Fishing/Hunting
Rhythm Guitarist, Twenty Years Too Late

**PUBLICATIONS AND RESEARCH INTERESTS:**

1. Author, Leptospirosis, Infectious Disease Secrets 2001.
2. Kelly WF, Crawley EA, Vick DJ, Hurwitz KM, Spontaneous partial expectoration of an endobronchial carcinoid. Chest 1999 115(2):595-598.
3. Shorr AF, Lee DF, Bennett SP, Crawley EA, Torrington KG, Hnatiuk OW, Endobronchial Biopsy For Sarcoidosis: A Prospective Study – Abstract CHEST Meeting ,Oct 1999
4. Author, The Tripler Army Medical Center Rapid Response Team, *A Force for Improved Communication and Patient Safety*, DOD Patient Safety Newsletter, Spring 2007
5. Schlussel A, Crawley EA, Effect of Diabetes Mellitus on Outcomes of Hyperglycemia in a Mixed Medical Surgical ICU. Diabetes Sci Technol. 2011 May 1;5(3):731-40
6. Hamer WE, Crawley EA, Radiographically Severe but Clinically Mild Reexpansion Pulmonary Edema following Decompression of a Spontaneous Pneumothorax. Case Reports in Pulmonology. 2014 Aug 3

Presentations:

1. Crawley EA, Hnatiuk OW, Fitzpatrick T, Endobronchial stenting in the treatment of pectus excavatum associated symptomatic airway compression. CHEST 1999, Chicago IL
2. Crawley EA, O'Neil KM, Fitzpatrick T, Photodynamic therapy in the treatment of inoperable bronchogenic carcinoma. Meeting Army chapter of American College of Physicians, Reston VA 1998.
3. Crawley EA, Case Presentation at Interpretation of Physiologic Testing in Clinical Medicine and COPD "Master Clinicians Session" ATS 2002, Atlanta GA
4. Grand Rounds Speaker, University of Hawaii Medical School, "Dyspnea, Not Everything that Wheezes is Asthma", 1 August 2006
5. Crawley EA, Implementation of a Rapid Response Team at Tripler Army Medical Center: Lessons learned and review of outcomes, Asia Pacific Military Medicine Conference 2007, Manila, Philippines.
6. Crawley EA, Rapid Response Teams: Success Through Simulation, HMSA Hospital Quality and Service Recognition Program, Fifth Annual Quality Initiative Summit; 2 November 2007, Honolulu HI
7. Faculty, US Army Medical Command Rapid Response System Working Group. 8-10 January 2008, San Antonio, TX
8. Crawley EA, Developing a Rapid Response Team: A Focus on Patient Care, State of the MHS (Military Healthcare System); 2008 Annual Conference, Washington D.C.
9. Crawley, E.A., Telemedicine and the Military, American Telemedicine Association, 6-8 April, 2008 Annual Conference, Seattle WA
10. Holt D, Schlussel A, Crawley EA, Uyehara C, Outcomes of Blood Glucose Variability in a Mixed Medical Surgical Intensive Care Unit, Poster, 39th Congress, Society of Critical Care Medicine, Miami 2010.
11. Schlussel A, Holt D, Crawley EA, Uyehara C, Outcomes of Hyperglycemia in a Mixed Medical Surgical Intensive Care Unit, Poster, 39th Congress, Society of Critical Care Medicine, Miami 2010
12. Schlussel A, Holt D, Crawley EA, Uyehara C, Effects of Hyperglycemia and Continuous Intravenous Insulin on Outcomes of Surgical Patients, Abstract 249, 40th Congress, Society of Critical Care Medicine, San Diego 2011
13. Faculty, Endobronchial Ultrasound Course, The Queen's Medical Center, Honolulu HI 15 October 2011
14. Mentoring staff, Clinical Puzzler (Lymphangiomyomatosis) CHEST, Honolulu 2011
15. Grand Rounds Speaker, University of Hawaii School of Medicine, Deployment Related Lung Disease, 2012
16. Invited Speaker, Academic Half Day Conference, University of Hawaii School of Medicine, Dyspnea, A Case Based Approach, 2012
17. Crawley EA, Procedural Ultrasound, Moving from the ICU to the clinic, 12th Annual Symposium, Hawaii Thoracic Society, Lahaina, Maui 2013
18. Crawley EA, Thoracic Ultrasound workshop, 12th Annual Symposium Hawaii Thoracic Society, Lahaina Maui 2013
19. Crawley EA, Bronchial Thermoplasty, Review of the Literature and Lessons Learned, 12th Annual Symposium Hawaii Thoracic Society, Lahaina Maui 2013
20. Invited Speaker, American Lung Association /The Queen's Medical Center, Speaking of Health, "Airways under Attack", May 2013
21. Invited Speaker, M. D. Anderson Cancer Center, Bronchial Thermoplasty, Review of the Literature and Lessons Learned. Feb 2015.

Current research interests:

1. Co-Investigator: The use of Bronchial Thermoplasty in the treatment of disqualifying asthma in military service members, $220K Grant
2. The Role of Rapid Response Teams in creating a safer patient care environment
3. Diagnosis and treatment of vocal cord dysfunction
4. Incorporation of bedside ultrasonography into the practice of pulmonary and critical care medicine

Procedures/Expertise:

1. Fiberoptic Bronchoscopy to include expertise in endobronchial ultrasound, argon plasma coagulation, cryotherapy, transbronchial needle aspiration, endobronchial and transbronchial biopsy, endobronchial valve insertion and electronavigational bronchoscopy.
2. Bronchial Thermoplasty, Performed first in Hawai'i and the US Military
3. Medical Pleuroscopy
4. Indwelling pleural catheters e.g. Pleurx/Aspira
5. Fiberoptic Laryngoscopy
6. Pulmonary function testing to include cardiopulmonary exercise and bronchoprovocation testing
7. Critical Care procedures to include, central venous and arterial catheterization, endotracheal intubation, advanced mechanical ventilation techniques (APRV, Oscillator and prone positioning), right heart catheterization, temporary transvenous pacemaker insertion, thoracostomy placement, FAST imaging.

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213

MARC WHITEHEAD
MARC WHITEHEAD AND ASSOICATES, LLP
5300 MEMORIAL DRIVE
SUITE 725
HOUSTON TX 77007

Liberty Mutual INSURANCE

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5707

August 8, 2017

Marc Whitehead
Marc Whitehead and Assoicates, Llp
5300 MEMORIAL DRIVE
SUITE 725
HOUSTON, TX 77007

RE: Long Term Disability (LTD) Benefits
Crown Equipment Corporation
Claim #: 5690365
Claimant: Mohammed Al-Shareih

Dear Marc Whitehead:

This letter is in response to your letter dated July 25 2017, regarding the Long Term Disability (LTD) claim for Mohammed Al-Shareih. In your letter you acknowledged that Mr. Al-Shareih's appeal had been completed however advised that he was without legal representation during the appeal process. You provided a copy of Mr. Al-Shareih's signed authorization dated July 21, 2017 and requested a complete copy of his claim file, a list of all names and financial relationships to the company who had a role in reviewing Mr. Al-Shareih's claim and deadlines.

Enclosed is a complete copy of Mr. Al-Shareih's complete claim file including all claim documentation that was used in our determination of his LTD claim as well as a copy of the Policy.

The copy of the file includes any and all communications, claim forms and correspondence of all kinds relating to the claim, vocational reports, surveillance information and clinical reviews. Furthermore, I have enclosed a copy of the reviewing Physician's Curriculum Vitae for your review.

As outlined in the December 14, 2016 letter to Mr. Al-Shareih, he had 180 days from the date of the letter to submit his complete appeal and was offered a copy of his complete claim file. Specifically, the letter indicated:

*This claim determination reflects an evaluation of the claim facts and Policy provisions. We reserve the right to make a determination on any additional information that may be submitted. Under the Employee Retirement Income Security Act of 1974 (ERISA), you may request a review of this denial by writing to the address below:*

*The Liberty Life Assurance Company of Boston*
*Attn: Lisa Gray*
*Group Benefits Disability Claims*

*P.O. Box 7213*
*London, KY 40742-7213*

*The written request for review must be sent within 180 days of the receipt of this letter and state the reasons why you feel your claim should not have been denied. In your request for review please include the following documentation: neuropsychological evaluation documenting cognitive impairment, a sleep diary, multiple sleep latency testing, maintenance of wakefulness testing, cardiopulmonary exercise testing, proof of application for social security disability and updated medical records from Dr. Najjar as well as any additional information which you feel will support your claim. You may request to review pertinent claim file documents upon which the denial of benefits was based. If Liberty Life does not receive your written request for review within 180 days of your receipt of this notice, our claim decision will be final, your file will remain closed, and no further review of your claim will be conducted.*

On April 10, 2017, we received Mr. Al-Shareih's appeal letter dated April 6, 2017, a copy of the January 31, 2017 office visit note from Dr. Najjar, the January 31, 2017 MRI of the lumbar spine, the January 17, 2017 office visit note from Decatur General Hospital (Spirometry results), and the December 22, 2016 lab results from Huntville Hospital Laboratory Services.

In telephone conversations on December 27, 2016, February 14, 2017 and April 6, 2017, Mr. Al-Shareih was notified of his appeal rights. On February 14, 2017, he inquired how many levels of appeal he was authorized and was advised of only one. He indicated he did not want to obtain an attorney at that time and would submit his written request of appeal.

Mr. Al-Shareih's was notified of the appeal determination was rendered on May 2, 2017. An additional copy of the letter was mailed to him on May 22, 2017. Mr. Al-Shareih was afforded an opportunity to submit a timely written request for review and to submit additional medical findings to support his claim. Our office communicated all claim determinations to him. Therefore, it is our position that he was afforded a full and fair opportunity to appeal the denial of his claim in a timely manner. As documented in our denial letters, our assessment of the claim and our determination to deny benefits was supported by the claim facts and the terms of the policy.

Under ERISA guidelines, Al-Shareih was entitled to appeal the determination made by Liberty Life Assurance Company of Boston and to submit any additional information wished to be considered as part of the appeal. Liberty Life Assurance Company of Boston conducted a full and fair review of the appeal and accompanying materials and notified him of the results of that review.

At this time, Al-Shareih's administrative right to review has been exhausted and no further review will be conducted by Liberty Life Assurance Company of Boston. Determinations made by Liberty Life Assurance Company of Boston are based on the provisions outlined in the Crown Equipment Corporation Group Disability policy. These provisions are not contingent on decisions made by the Social Security Administration nor the Workers' Compensation Carrier.

We have rendered our final determination of this claim and his file remained closed.

If you have any questions regarding this matter, please contact me.

Sincerely,

Lisa MacAllister
Appeal Review Consultant
Phone No.: (888) 437-7611 Ext. 16400
Secure Fax No.: (603) 334-5707

# MARC WHITEHEAD & ASSOCIATES, L.L.P.
## ATTORNEYS AT LAW

*A National Disability Claims Law Firm*

5300 Memorial Drive, Suite 725
Houston, Texas 77007

Telephone: (713) 228-8888
Facsimile (713) 980-6987
Toll Free: (800) 562-9830
www.disabilitydenials.com

Marc Whitehead, Esq.

*Board Certified*
*Personal Injury Trial Law*
*Texas Board of Legal Specialization*

*Board Certified*
*Social Security Disability Law*
*National Board of Social Security Disability Advocacy*

*Accredited Veterans' Claims Attorney*

J. Anthony Vessel, Esq.
*Associate Attorney, Mediator*

Britney McDonald, Esq.
*Associate Attorney, Mediator*

Shane Kadlec, Esq.
*Of Counsel*
*Board Certified*
*Personal Injury Trial Law*
*Texas Board of Legal Specialization*


July 25, 2017

***Via CM/RRR: 7017 0190 0000 8661 3928***

Lisa MacAllister
Appeal Review Consultant
Liberty Life Assurance Company of Boston
P.O. Box 7213
London, KY 40742-7213

Re: Claimant: Mohammed Al-Shareih
Claim No.: 5690365

Dear Ms. MacAllister:

This firm represents Mr. Mohammed Al-Shareih in his claim for denied disability benefits. Please be advised that this firm retains a financial interest in the outcome of this claim. Please read this entire letter carefully as it is important for you to understand that Mr. Al-Shareih was without legal representation during the appeal process.

Considering Mr. Mohammed Al-Shareih's disability and the fact that he was without legal representation, we feel he was at an unfair disadvantage in dealing with the complexities of Long Term Disability and ERISA law. As such, we request that you voluntarily, and in good faith, re-open his claim so we might submit vital information that would be useful to the decision maker in fairly deciding this claim.

**At this time, Claimant is requesting additional time to further develop the administrative record with regard to this claim. We hereby ask for 60 days from the date of this letter to complete development of the administrative record. We reserve the right to request additional time if so needed.**

Under Federal law, the Employees' Retirement Income Security Act (ERISA)29 USC § 1001 *et seq.*, the Plan Administrator is legally obligated to provide plan members with copies of documents governing the operation of the plan.

We have been advised that Liberty Life Assurance Company of Boston is the Plan Administrator for Mr. Mohammed Al-Shareih's disability benefits. We hereby request a copy of the contract and Summary Plan Description, including those in effect currently, the ones in effect at the time Mr. Al-Shareih became disabled, and all interim Plan amendments. We also request the most recent annual report (Form 5500 series).

In addition, we request copies of all pertinent documents relating to the decision to deny Mr. Mohammed Al-Shareih's disability benefits. We are entitled to copies of these documents without charge under ERISA. These documents include but are not limited to the following:

a) A complete copy of Mr. Al-Shareih's claim file including application or enrollment information, claims record, claim status, patient management records, all correspondence, medical reports and records, pertinent excerpts from claims manual, in-house memoranda, all reports and records from contracted sources whether relied upon or not, the identity of all consulting physicians, including those not rely upon in making any claims decisions, all other records used to determine Mr. Al-Shareih's claim.

b) A list of the names and financial relationships to the insurance company of all healthcare providers who had a role in evaluating claimant's claim.

Lastly, we request that you disclose any deadlines imposed under the policy that you believe are pending, will be pending upon any event in the future or that you believe have already expired. If you have information that there may be other insurance policies or insurance carriers that may provide benefits to the Claimant because of their disability, please disclose this information in writing. As a fiduciary, you have an obligation to provide a full and fair hearing for your insured. Please notify us in writing if you are willing or unwilling to re-open this administrative appeal.

We take the position that any materials not provided to us in response to this letter are inadmissible in a subsequent lawsuit. Requests made under this letter constitute a continuing request and corresponding duty on your part for any documents or information obtained in the future.

Enclosed please find a signed release authorizing you to release all medical, employment and other records to this office. Please provide the requested information on a CD, thumb drive, or by e-mail (aggie@marcwhitehead.com, melanie@marcwhitehead.com), if possible. We look forward to receiving these documents within the 30-day period provided by the law.

Sincerely,

Marc Whitehead
Board Certified Attorney
Personal Injury Trial Law
Texas Board of Legal Specialization

Enclosures: Instructions to Insurance Company to Send Claim Information to My Attorney
Authorization for Release of Confidential Information

# LIMITED POWER OF ATTORNEY
# AND
# ASSIGNMENT OF DISABILITY BENEFITS

I, Mohammed Al-Shareih do constitute and appoint Marc Whitehead & Associates, Attorneys at Law, L.L.P., of Houston, Harris County, Texas, my lawful attorney in my name, place, and stead to demand and receive any and all sums of money due to me for back due and future short and long term disability benefits. This includes all ancillary benefits, such as, but not limited to waiver of premium benefits.

I hereby authorize and direct the below referenced Insurance Carrier/Disability Plan Administrator to make payment for any past or future disability benefits due to me to be made directly to Marc Whitehead & Associates, Attorneys at Law, L.L.P., 5300 Memorial Drive, Suite 725, Houston, Texas 77007.

I hereby assign and grant a lien on all money collected on my behalf under this agreement to Marc Whitehead & Associates, Attorneys at Law, L.L.P.

I further acknowledge and direct that the below referenced Insurance Carrier/Disability Plan Administrator to take notice that I have a contractual relationship with Marc Whitehead & Associates, Attorneys at Law, L.L.P. regarding said assignment of benefits. I further direct said Insurance Carrier/Disability Plan Administrator to comply with the instructions in this document.

I agree that all funds received will be deposited into my attorney's IOLTA trust fund. My attorney has authority to write checks against this trust fund to pay expenses and legal fees as necessary. I give my attorney authority to endorse my signature by permission to deposit any funds into said trust fund. My attorney is hereby granted a power of attorney so that he will have full authority to prepare, sign and file all legal instruments, pleadings, drafts, authorizations, checks and papers as shall be reasonably necessary to carry out and conclude this representation including settlement and/or reducing to possession any and all monies or other things of value due to me under this claim as fully as I could do so in person. My attorneys are also authorized and empowered to act as my negotiator in any and all settlement negotiations concerning the subject of this Agreement.

Insurance Carrier/Disability Plan Administrator: Liberty Life Assurance Company of Boston

My Social Security number: ___ ___

Claim No.: 5690365

Group No: ______

Employer: Crown Equipment Corporation

My Date of Birth ___ ___

Witness my hand ________ *[date]*.

7/21/2017

Signature

Printed Name: MOHAMMED AL-SHAREIH

Executed before me the undersigned Witness on this the 21st day of July, 2017.

Witness

**HIPAA-COMPLIANT AUTHORIZATION TO DISCLOSE PATIENT-IDENTIFIABLE HEALTH INFORMATION**

TO: Lisa MacAllister/Liberty Life Assurance Company of Boston RE: Mohammed Al-Shareih

1.00 **NATURE OF AUTHORIZATION:** I hereby authorize the use or disclosure of my patient-identifiable health information as described below. This authorization is in accordance with the Health Insurance Portability and Accountability Act ("HIPAA") Privacy Regulations and applicable state privacy laws and regulations.

2.00 **ENTITY(IES) AUTHORIZED TO MAKE DISCLOSURE:** The following individual or organization is authorized to make the disclosure;

Liberty Life Assurance Company of Boston

3.00 **ENTITY TO WHICH DISCLOSURE IS AUTHORIZED AND INFORMATION TO BE DISCLOSED:** Upon presentation of this authorization, or a photo static copy thereof, the individual or organization named above is authorized and requested to furnish to the Marc Whitehead and Associates and/or their agents, or to any persons designated by them in writing, the following type and amounts of patient-identifiable information:

Any and all items requested relating to the treatment or care provided by you, your agents and employees, to the above named patient, and/or the undersigned, including all records (from any & all to present); reports; correspondence; notes; consultations; imaging films, (including x-rays, sonograms, CT and MRI scans); monitor strips; billing statements, or other information pertaining to the treatment provided to the patient, and/or the undersigned, for any and all injuries, illnesses and/or conditions, including drug/alcohol/mental health/communicable disease and/or AIDS testing and treatment.

This authorization does not extend to and does not permit any oral or written communications between Defendant and/or their agents and treating physicians and/or staff or representatives of treating physicians or any other physician, hospital, medical facility, or governmental unit concerning the medical care, treatment, physical condition, or medical expenses of Mohammed Al-Shareih.

I understand that the information in the health records you furnish may include information relating to sexually transmitted disease, acquired immunodeficiency syndrome (AIDS), or human immunodeficiency virus (HIV). It may also include information about behavioral or mental health services, and treatment of alcohol and drug abuse.

4;00 **PURPOSE OF DISCLOSURE:** For potential use as evidence in legal proceedings. As a further condition of obtaining this authorization, receiver will provide legible copies of all materials obtained, copied, inspected, or read under the authority of this authorization to my attorneys:

Marc Whitehead and Associates
5300 Memorial, Suite 725
Houston, Texas 77007

5.00 **EXPIRATION OF AUTHORIZATION**: I understand I have the right to revoke this authorization at any time before it expires. I understand that if I revoke this authorization I must do so in writing and present my written revocation to you, and that any such revocation will not apply to information that has already been released in response to this authorization. Unless otherwise revoked, this authorization will expire one year from the date of my signature below.

6.00 **UNDERSTANDING OF RIGHTS AND POTENTIAL FOR REDISCLOSURE**: I understand that authorizing the disclosure of this health information is voluntary, and I that have the right to refuse to sign this authorization. I also understand that I may inspect or copy the information to be used or disclosed, as provided by 45 CFR 164.524. I understand that if the recipient authorized to receive this information is not a covered entity (e.g., insurance company or health care provider) the released information may no longer be protected by federal and state privacy regulations. I understand that any disclosure of this information carries with it the potential for an unauthorized re-disclosure and the information may not be protected by federal confidentiality rules. I understand that treatment or payment cannot be conditioned on my signing this authorization, except in certain circumstances such as for participation in research programs, or authorization of the release of testing results for pre-employment purposes.

Dated this 21st day of July, 2017.

Al-Shareih [signature]

Patient's Signature or Other Legally Responsible Person

Relationship to Patient (If other than Patient) and Description of Authority

Patient's Social Security Number

Patient's Date of Birth

7A213170013

CERTIFIED MAIL

7017 0190 0000 8661 3928

Marc Whitehead & Associates, LLP
5300 Memorial Drive, Ste. 725
Houston, TX 77007

Lisa MacAllister
Appeal Review Consultant
Liberty Life Assurance Company of Bos
P.O. Box 7213
London, KY 40742-7213

40742-721313

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213

MR. MOHAMMED AL-SHAREIH

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5855

May 22, 2017

Mr. Mohammed Al-Shareih

RE: Long Term Disability (LTD) Benefits
Crown Equipment Corporation
Claim #: 5690365

Dear Mr. Mohammed Al-Shareih:

Per our conversation, please find enclosed a copy of the appeal determination letter originally sent to you on May 2, 2017.
If you have any questions regarding this matter, please contact me.

Sincerely,

Kimberly Murray
Appeal Review Consultant
Phone No.: (888) 437-7611 Ext. 16399
Secure Fax No.: (603) 334-5855

Attachments: 5690365-DENY-FREEFORM-05.02.2017

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213

MR. MOHAMMED AL-SHAREIH

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5707

May 2, 2017

Mr. Mohammed Al-Shareih

RE: Long Term Disability (LTD) Benefits
Crown Equipment Corporation
Claim #: 5690365

Dear Mr. Mohammed Al-Shareih:

We reviewed your appeal request for Long Term Disability ("LTD") benefits and maintained the decision to deny benefits beyond December 13, 2016.

**Initial Claim Decision**

You submitted a claim for your absence from work as of January 23, 2016, as a result of chronic idiopathic hypersomnia, COPD, nonorganic sleep apnea on CPAP, valvular heart disease and headaches. LTD benefits were approved from April 22, 2016 through December 13, 2016 under Reservation of Rights. Benefits beyond December 13, 2016 were denied as the evaluation concluded you were no longer disabled as defined by the Policy.

The basis for the decision was outlined in a letter dated December 14, 2016. You were provided an opportunity to request an appeal review of the denial, stating the reasons why you felt that your claim should not have been denied, and submit additional information to support your claim. Specifically, you were advised to submit the following information: "neuropsychological evaluation documenting cognitive impairment, a sleep diary, multiple sleep latency testing, maintenance of wakefulness testing, cardiopulmonary exercise testing, proof of application for social security disability and updated medical records from Dr. Najjar as well as any additional information which you feel will support your claim."

**Appeal**

In your letter of appeal dated April 6, 2017, you indicated that your health conditions had not improved and your latest COPD test showed a result of 29/100. You indicated your active problems are central idiopathic hypersomnia, chronic obstructive pulmonary disease, hypersomnia, non-organic sleep apnea and valvular heart disease. You also advised that you had lower back problems, diabetes and high cholesterol. You advised that your employment was terminated on January 25, 2017 and you were struggling financially.

In support of your claim, you submitted the following information:

- The December 22, 2016 lab results.
- The January 27, 2017 pulmonary report from Dr. Najjar.
- The January 31, 2017 office visit note from Dr. Najjar.
- The January 31, 2017 MRI of the lumbar spine.

**Appeal Evaluation**

During the claim evaluation of ongoing benefits, your claim was reviewed by an independent physician board certified in Internal Medicine, Pulmonary Medicine and Sleep Medicine. Based on the records, the physician concluded you could work full-time in a light capacity with the workplace accommodation for safe work environment, including no heights, climbing, crawling, balancing, or work-related driving; and for frequent brief naps if subjectively beneficial to you (e.g., up to 15 minutes every 2-4 hours if required). The records were insufficient to support absence of work capacity on the basis of either hypersomnia or severe COPD. The records support that you had capacity to sustain fulltime sedentary work with the workplace accommodations noted.

Surveillance was conducted on October 27, 2016, October 28, 2016 and October 29, 2016. You were observed operating a vehicle, purchasing items and driving to a credit union. On November 16, 2016, you were observed departing your residence and returning almost two hours later.

During the review of your appeal, your claim was reviewed by Eric A. Crawley, M.D., an independent physician who is board certified in Internal Medicine with a sub specialty in pulmonary disease and critical care medicine. Based on his review of the medical records, Dr. Crawley concluded you have mild obstructive sleep apnea based on a very mildly elevated apnea hypopnea index of 5.3 on his diagnostic polysomnogram. The medical evidence does not support any diagnoses causing functional impairment from December 13, 2016 to present. Dr. Crawley indicated although you have been given several diagnoses to include severe COPD, valvular heart disease and idiopathic hypersomnia/central hypersomnia there is no objective evidence in the medical records reviewed to support these diagnoses. From a severe COPD standpoint it should be noted that all spirometry submitted for review was of such poor technical quality to be fully uninterpretable. No conclusions of any sort can be made from the data submitted. Your lung exams are all recorded as either normal or no pertinent abnormality and you denied shortness of breath, wheezing or cough at all visits with his primary care physician. It appears that from your prescription history that you have not been regularly filling Symbicort or albuterol.

From a hypersomnia / obstructive sleep apnea standpoint it should be noted that your subjective complaints of sleepiness and daytime fatigue were evaluated with nonstandard MSLT studies. It is important to confirm that you had an adequate night sleep prior to the study either via actigraphy or polysomnography. There is no documentation to suggest this was performed. It is also worth noting that during your CPAP titration studies your sleep efficiency was very high (in excess of 90%) with no evidence there was intolerant of CPAP in contrast to what you report in follow-up. No CPAP compliance documents such as machine downloads were submitted for review to determine to what degree, if any, you have been using your CPAP device. Lastly, your echocardiography studies do not suggest any clinically significant valvular heart disease.

The documentation did not contain any language suggesting that you had cognitive or physical side effects from medications. Dr. Crawley was asked to interpret the pulmonary function tests. He concluded that there are well-established guidelines from the American thoracic Society establish standards for test performance and interpretation. The interpretation rendered by the treating pulmonologist is not consistent with those guidelines. Proper pulmonary function testing interpretation requires that the studies are of sufficient quality to render a valid interpretation. Specifically efforts should be reproducible (measures such as FVC, FEV1 should be within 5 - 10% of one another) expiratory time should be at least 6 seconds, and the flow volume loop should be smooth in contour. Your spirometry fails on all measures. In no efforts does your expiratory time reach 6 seconds or plateau. The flow volume loops themselves are extremely chaotic and not consistent with a full inhalation or full exhalation. If baseline spirometry is not interpretable then post bronchodilator results also are uninterpretable. For this reason the treating clinician's interpretation that there was a significant response to bronchodilator inhalation is incorrect. Therefore, no restrictions or limitations were supported based on the review of your medical records.

Your claim was previously reviewed by a vocational consultant, who completed an occupational analysis in order to identify the material and substantial duties of your occupation as it is normally performed in the national economy. The analysis showed your occupation as an Electrical Engineer is sedentary in nature.

Based upon the research as outlined above, this occupation is performed at the sedentary level of physical demand levels in the national economy. The Department of Labor defines sedentary Work as:

"Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists form 1/3 to 2/3 of the time) to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief amounts of time. Jobs are sedentary if walking or standing are required only occasionally and all other sedentary criteria are met."

Positional Requirements:

- Frequent: sitting, fingering
- Occasional: reaching, handling, standing, walking
- No: bending/stooping, crouching/squatting, twisting, climbing, crawling, kneeling or balancing

Our role in reviewing your file is to determine whether your medical condition and the medical documentation contained in your file supports that you are unable to perform the material and substantial duties of your own occupation beyond December 13, 2016. We are not required to ensure the availability of this occupation or that you return to active employment with your former employer in the same or different position.

We are aware that your claim for Social Security Disability Income benefits is being processed. It should be noted that any ruling by the Social Security Administration, in and of itself, does not determine entitlement to benefits under the terms and conditions of the Crown Equipment Corporation's Long Term Disability Policy.

**Conclusion**

We conducted a thorough and independent review of your entire claim. In summary, we acknowledge that you may have continued to experience some symptoms associated with your condition beyond December 13, 2016. You reported that you were unable to work due to COPD, central idiopathic hypersomnia, chronic obstructive pulmonary disease, hypersomnia, non-organic sleep apnea and valvular heart disease. Based on the medical records, you have mild obstructive sleep apnea based on a very mildly elevated apnea hypopnea index of 5.3 on his diagnostic polysomnogram. Dr. Crawley indicated although you have been given several diagnoses to include severe COPD, valvular heart disease and idiopathic hypersomnia/central hypersomnia there are no supporting documentation in the medical records. No CPAP compliance documents were submitted for review. Your echocardiography studies did not suggest any clinically significant valvular heart disease.

You also advised that you had lower back problems, diabetes and high cholesterol. Your MRI dated January 31, 2017 indicated you had very mild degenerative changes at L3-4 and L4-5. Your labs on December 22, 2016 indicated your total cholesterol was 188 (normal range is under 200) and your A1C was 6.3.

The available information does not contain exam findings, diagnostic test results or other forms of medical documentation supporting your impairments and symptoms remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering you unable to perform the duties of your occupation.

Having carefully considered all of the information submitted in support of your claim, our position remains that proof of your continued disability in accordance with the Policy provisions after December 13, 2016 has not been provided. Therefore, no further benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**Policy Provisions**

In order to continue receiving benefits, you must satisfy the requirements of all Policy provisions that state, in part:

*"**Disability**" or "**Disabled**" means:*
*For persons other than pilots, co-pilots, and crewmembers of an aircraft:*
*i. that during the Elimination Period and the next 36 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*
*ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

*"**Material and Substantial Duties**" means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

*"**Own Occupation**" means the Covered Person's occupation that he was performing when*

*his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, you were entitled to appeal the decision made by Liberty Life Assurance Company of Boston (Liberty), and to submit any additional information you wished to be considered as part of the appeal. Liberty has conducted a full and fair review of your appeal and accompanying materials, and has concluded that the denial of benefits will be maintained.

At this time, your administrative right to review has been exhausted; no further review will be conducted by Liberty and your claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to your claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

Nothing in this letter should be construed as a waiver of any Liberty Life Assurance Company of Boston rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Liberty Life Assurance Company of Boston are based on the provisions outlined in Crown Equipment Corporation's Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities.

If you have any questions regarding this matter, please contact me.

Sincerely,

Lisa MacAllister
Appeal Review Consultant
Phone No.: (888) 437-7611 Ext. 16400
Secure Fax No.: (603) 334-5707

# Peer Review Report

| | | | |
|---|---|---|---|
| **Referral Date:** | 4/11/17 | **Review Type:** | Disability |
| **Claimant's Name:** | Mohammed Al-Shareih | **Group/Policy/ Claim Number:** | 5690365 |
| **MES Case Number:** | 31817049697 | **Service:** | Initial Record Review |
| **Client:** | Liberty Mutual | **Referred By:** | Lisa MacAllister |

**DATA REVIEWED AND CONTACT INFORMATION:**

- Liberty - Independent Evaluation - Peer Review dated 04/11/2017
- Liberty Mutual Appeal Referral dated 04/10/2017
- Liberty TCMS Referral Sheet dated 01/23/2016
- Liberty Consulting Physician Referral - dated 04/22/2019
- Liberty Consulting Physician Referral dated 10/17/2016
- Liberty Consulting Physician Referral dated 12/12/2016
- Liberty Authorization to Obtain and Release Psychotherapy Notes dated 03/29/2016
- Liberty Authorization to Obtain and Release Information (Excluding Psychotherapy Notes) not dated
- Liberty Claimant Information dated 03/29/2016
- Liberty Employer Statement dated 03/058/2016
- Liberty Family Information Questionnaire dated 03/29/2016
- Liberty Social Security/reimbursement Agreement not finished
- Liberty Disability Claim Form dated 04/14/2016
- Liberty Attending Physician's Statement M Najjar MD dated 03/14/2016
- Liberty Restrictions Form M Najjar MD dated 03/14/2016
- Liberty Survivor/Estate Information Form dated 03/29/2016
- Liberty Training-Education-Experience Form not dated
- Liberty Activities Questionnaire dated 03/29/2016
- Liberty letter to Claimant dated 03/14/2016 to 04/11/2017
- Liberty letter from Claimant dated 04/06/2017
- Liberty letter M Najjar MD dated 03/14/2016 to 10/10/2016
- Liberty letter to Madison Family Health Ctr dated 03/14/2016
- Sleep & Pulmonary Care Ctr, PC Work Status letter M Najjar MD dated 11/17/2015, 01/04/2016
- Sleep & Pulmonary Care Ctr, PC Office Note M Najjar MD dated 04/13/2015 to 01/31/2017
- Sleep & Pulmonary Care Ctr, PC Diagnostic Report M Najjar MD dated 04/18/2015
- Sleep & Pulmonary Care Ctr, PC Treatment Report M Najjar MD dated 04/25/2015, 08/13/2016
- Sleep & Pulmonary Care Ctr, PC Echocardiogram Report M Najjar MD dated 04/29/2016, 08/26/2016
- Sleep & Pulmonary Care Ctr, PC Carotid Ultrasound M Najjar MD dated 04/29/2015, 08/06/2016
- Sleep & Pulmonary Care Ctr, PC MSLT Report M Najjar MD dated 05/18/2015
- Sleep & Pulmonary Care Ctr, PC Prescription M Najjar MD dated 07/02/2015 to 01/31/2016
- Sleep & Pulmonary Care Ctr, PC MWT Report M Najjar MD dated 10/05/2015, 11/09/2015

- Sleep & Pulmonary Care Ctr, PC - Urgent Care Radiology Results J Betts CRNP dated 01/04/2016
- Sleep & Pulmonary Care Ctr, PC Spirometry Lung Study M Najjar MD dated 01/04/2016
- Sleep & Pulmonary Care Ctr, PC Patient Chart Report dated 10/07/2016, 10/28/2016
- Sleep & Pulmonary Care Ctr, PC Sleep Study various provides dated 04/18/2015 to 08/12/2016
- Sleep & Pulmonary Care Ctr, PC Office Visit M Najjar MD dated 11/09/2015 to 09/06/2016
- Sleep & Pulmonary Care Ctr, PC Doctor's Orders M Najjar MD dated 07/14/2016
- Sleep & Pulmonary Care Ctr, PC Consent for Polysomnography dated 05/18/2015,10/05/2015, 11/09/2015
- Sleep & Pulmonary Care Ctr, PC Pre-Sleep Questionnaire dated 05/18/2015, 10/05/2015, 11/09/2015
- Sleep & Pulmonary Care Ctr, PC Sleep Tech Check List provider signature illegible dated 10/05/2015
- Decatur General Hospital Spirometry Lung Study P Southerland RRT dated 01/27/2017
- Huntsville Hospital Lab Services  Lab Results dated 12/22/2016
- Crestwood Medical Ctr Imaging Report R Gwaltney MD dated 01/31/2017
- Front Copy of Claimant's Drivers' License
- Crown Equipment Corporation Claimant's Earning's dated 01/11/2015 to 01/09/2016
- Crown Equipment Corporation Claimant's Earning's dated 01/30/2015 to 01/23/2016
- Crown Equipment Corporation letter to Liberty dated 03/08/2016
- Crown Equipment Corporation Job Description  - Engineer/Electrical
- Crown Equipment Corporation Disability Benefits Claim Form M Najjar MD dated 01/25/2016
- Crown Equipment Corporation Attending Physician's Authorization to Return to Work  not filled out
- Summary of Investigation D Poff dated 09/26/2016
- Summary of Investigation D Poff dated 11/03/2016,11/22/2016
- Liberty Mutual Investigation Referral  - Crown Equipment Corp dated 03/31/2016, 08/15/2016
- Memorandum AG Bullard MD dated 04/24/2016, 04/27/2016, 11/02/2016
- Memorandum AG Bullard MD (Addendum) dated 05/11/2016
- Madison Family Health Ctr Adult Patient Registration dated 08/10/2015
- Madison Family Health Ctr Adult Health Questionnaire dated  08/10/2015
- Madison Family Health Ctr Office Visit B Sharma MD dated 03/14/2015 to 03/14/2016
- Madison Family Health Ctr FaceSheet not dated
- Madison Family Health Ctr Lab Results dated 03/08/2015 to 12/22/2015
- Madison Family Health Ctr Lab Orders B Sharma MD dated 08/10/2015 to 03/14/2016
- Madison Family Health Ctr Authorization for Release of Health Information dated 03/28/2016
- Claims Listing:  Pharmacy Claims dated 07/05/2015 to 03/18/2016
- Claims Listing: Medical Claims  dated 04/13/2015 to 03/14/2016
- Connexus Pharmacy System/Sam's Pharmacy 10-6380 - Medical Expense Summary dated 12/01/2013 to 03/25/2016
- Hub Enterprises Inc Investigative Report  - Pharmacy dated 04/08/2016
- Initial Payment Set Up Worksheet  dated 04/26/2016
- Liberty Occupational Analysis/Vocational Review L Gray dated 05/12/2016
- Vocational Case Management  - Occupational Analysis L Gray dated 05/12/2016, 05/26/2016

Three calls were placed to Dr. Najjar's office. On Friday 4/21/17 I called at 00730 HST. I spoke with his answering service and had him paged to my mobile number with no call back. Dr. Najjar MD’S office was called on 04/24/17 at 8:46 AM HST and a message was left with Tiffany. On 04/25/17 at 2:29 PM a message was left with Shawntelle. Again, no callback at the time of submission was received by Dr. Najjar.

**<u>SUMMARY OF RECORDS:</u>**
Disability peer review for Mohammed Al-Shareih, date of birth . Reason for review is hypersomnia.

Mamoun I Najjar M.D. Pulmonary and Sleep Medicine
1/31/17: Visit for fatigue, shortness of breath, cough wheezing, and hypersomnia. Medications include Medrol, methicillin, Pro air, promethazine and Symbicort. Social history - patient is a former smoker.
Oxygen saturation 98%, BMI 25.8 his lung exam, no pertinent abnormalities are noted. Assessment is valvular heart disease, COPD, nonorganic sleep apnea mild, obstructive sleep apnea, hypersomnia, cough, shortness of breath and wheezing. Therapy/plan: multiple sleep latency test was performed to be performed for reason of fatigue/hypersomnia and patience level of alertness, mood swings and memory and forgetfulness levels. Failed chest x-ray to be performed in office mainstay bronchodilators and Symbicort prescription given. CPAP at 8 cmH2O, failing CPAP. Plan is COPD follow-up 4 to 6 months.

1/27/17: Full PFTs result - interpretation by the interpreting physician is severe obstructive airways disease - reversible, severe restriction - possible.
My interpretation using ATS interpretive criteria - spirometry is uninterpretable secondary to very poor quality/unreliable efforts. The data obtained on the post bronchodilator study suggests that he likely does not have significant restriction or obstruction. His lung volumes by plethysmography are uninterpretable. Diffusion capacity is moderately reduced.

4/13/15: office note - 51-year-old male feeling tired, hypersomnia. The claimant complaints interrupted sleep. Oxygen saturation 94%. Physical examination - lungs no pertinent abnormalities are noted. Assessment is dizziness, normal organic sleep apnea level, shortness of breath, hypersomnia.
Plan is polysomnography to be performed in office. Continuous positive airway pressure re-titration.

4/30/15: active problems hypersomnia, nonorganic sleep apnea and valvular heart disease. Saturation 97%, lungs no pertinent abnormalities noted. Therapy/plan multiple sleep latency testing to be performed in office for reason of fatigue/hypersomnia. Continuous positive airway pressure 5 cm of water, good CPAP use in response to therapy.

7/2/15: active problems hypersomnia, nonorganic sleep apnea, valvular heart disease. Oxygen saturation 96%, lungs no pertinent abnormalities noted.

10/19/15: active problems hypersomnia, nonorganic sleep apnea, valvular heart disease. Saturation 97%, lungs no pertinent abnormalities noted.
Assessment valvular heart disease, nonorganic sleep apnea, hypersomnia and idiopathic organic hypersomnia.

12/7/15: active problems hypersomnia, nonorganic sleep apnea and valvular heart disease. Physical examination lungs examines, no pertinent abnormalities noted.

1/4/16: active problems, hypersomnia, chronic idiopathic hypersomnia, chronic obstructive pulmonary disease, nonorganic sleep apnea and valvular heart disease. History present illness, feeling tired, shortness of breath, hypersomnia, patient complaints interrupted sleep. Medications are methicillin 10 mg 3 times daily, methyl and 5 mg 3 times daily, methylphenidate extended release 20 mg tablet once daily. Saturation 96%, lungs no pertinent abnormalities noted. Assessment failed Provigil, using CPAP 5 cm H2O, failing CPAP stating it wakes him up with the pressure. He wakes up throughout the night to the pressure and discomfort. Methyl and 15 mg TID with 20 mg extended release QAM was started. Symbicort 160/4.5 was also prescribed

1/25/16: same symptoms as prior note. Saturation 97%, lungs no pertinent abnormalities noted.

3/14/16: chief complaint is 6 month check. Same symptoms as prior note. Medications are Pro air, Symbicort. Saturation 97%, lung exam no pertinent abnormalities are noted. Plan is methicillin 10 mg she 3 times a day, methyl and 5 mg to 3 times a day.

4/18/15: nocturnal polysomnogram AHI 5.6 per hour. Sleep efficiency 96.1%, minimum SaO2 87%. Latency to sleep onset 10.5 minutes.

4/25/15: CPAP titration study, treatment AHI 0.3 per hour. Minimum saturation 92%. On CPAP setting 5 cmH2O pressure.

4/29/15: Echocardiogram - Normal left ventricular ejection fraction, no diastolic dysfunction, mild MR, trace TR, PA systolic pressure 20 mmHg no stenotic valves.

8/26/16: echocardiogram report - normal left ventricular function, mild MR, mild TR, estimated right ventricular systolic pressure 32, normal diastolic function.

8/26/16: carotid ultrasound - normal.

8/12/16: CPAP treatment report. AHI 0.5., Sleep efficiency 90.1% minimum saturation 93% CPAP pressures started at 5 and ended at 8 cmH2O pressure.

8/15/16: pulmonary function testing, interpretation is severe obstructive airways disease, should be noted the data is completely uninterpretable.

4/29/15: carotid ultrasound – normal.

5/18/15: MSLT - interpreted as borderline hypersomnia, repeat and 5/16 or sooner if warranted. Nap 1 sleep latency 14.9min, nap to sleep latency 3.8min, nap 3 sleep latency 4.8min, nap 4 did not sleep. No REM was noted.

10/5/15: MWT: the report indicates this is a maintenance of wakefulness test, however the format suggest this is an MSLT. Nap number 1 sleep latency 15.9 minutes, nap number 2 sleep latency 15.4 minutes, nap member 3 no sleep, nap number 4, no sleep, no REM intrusion or REM latency. Interpretation is MSL 17.8: failed Provigil 200 mg, comments indicate the claimant took 100 mg of modafinil on arrival.

11/9/15: MWT report - nap 1 sleep latency 3.5, nap to sleep latency 3.4, nap 3 no sleep, nap for sleep latency 8.6 no REM latency. Impression is failed on methyl and 10 mg.
Comments indicate the claimant's took methylphenidate 10 mg before arrival.

11/9/15: plan hypersomnia, unspecified.

11/17/15: correspondence from Dr. Najjar, indicating the claimant is being treated for obstructive sleep apnea and hypersomnia. It is important for them to have time to have these conditions evaluated and treated.

12/7/15: no specific symptoms are recorded. His lung exam is without pertinent abnormalities.

1/4/16: spirometry pre-and Post-bronchodilator and lung volumes.
This was interpreted as severe obstructive airways disease - reversible. It should be noted that the data contained in this report is completely uninterpretable due to suboptimal test performance by the patient.

1/4/16: office visit - same symptoms as prior notes, saturation 96%, lungs without pertinent abnormalities.

1/4/16: correspondence from Dr. Najjar, indicating the claimant has sleep apnea and central idiopathic hypersomnia both impacting daytime functionality concentration. He also is severe obstructive lung disease diagnosis.

1/25/16: exercise oximetry/6 minute walk, baseline saturation 97% on room air O2 saturation nadir 95%, peak heart rate 87.

1/25/16: office visit, saturation 97%, lungs without pertinent abnormalities.

1/31/17: MRI of the lumbar spine - very mild degenerative changes identified L3 - 4 and L4 - 5.

3/14/16: 6 month check. Same symptoms as prior notes saturation 97%, lungs without abnormalities.

3/29/16: Liberty Mutual Claimant Activities Questionnaire
The claimant indicates that he can sit for one hour, stand for 30 to 45 minutes and walk for 30 minutes.
Indicates that he takes 3 naps per day and spends 15 hours per day in bed.

5/26/16: workplace accommodations questionnaire completed by Dr. Najjar
indicates no lifting over 5 pounds, occasional twisting/bending, no squatting, no stooping, standing 3 minutes per hour, walking 2 minutes per hour, sitting 30 minutes per hour. Limit driving 2.5 hours per day, he has central hypersomnia. Anticipated return to work date “NA” entered.

4/14/16: Liberty Mutual Attending Physician Statement.
Central idiopathic hypersomnia and severe COPD. Prognosis good. Physical impairment class V is selected, mental nervous impairment class V is selected.

Illegible date: Liberty Mutual Restrictions Form, completed by Dr. Najjar
Sedentary is selected. Diagnosis central idiopathic hypersomnia, severe COPD, needs frequent rest and use of bronchodilators in addition restrictions as above. Restrictions imposed from 1-4-16 to unforeseen future. Patient has daytime fatigue evident on MSLT and shortness of breath.

7/14/16:4 month follow up. Same symptoms as prior notes. Physical examination saturation 95%, lungs without pertinent abnormalities.

8/5/16: follow-up sleep study, same symptoms as prior notes. Saturation 93%, lung exam without pertinent abnormalities.

9/6/16: chief complaint is 6 months. Same symptoms as prior notes. Saturation 90%, lung exam reveals no pertinent abnormalities.

9/1/16: follow-up, same symptoms as prior notes, physical examination saturation 92%, lung exam is without pertinent abnormalities.

Bhavna Sharma MD
3/14/16: chief complaint is refills, blood work follow-up. Problems are mixed hyperlipidemia, impotence, headache, and impaired fasting glycemia.
Medications are Cialis, fenofibrate, methylphenidate 10 mg, methylphenidate 5 mg, methylphenidate ER 20 mg, modafinil 200 mg, Pro air and Symbicort.
HPI - the claimant states that he drinks sweet tea and sodas to stay awake because of his sleep apnea. He has no other issues today. Reports no wheezing, shortness of breath or cough. His lung exam is negative for wheezing, rhonchi or rales.

10/5/15: chief complaint is blood work follow-up/headache. His review of systems is negative for cough, wheeze or shortness of breath. His lungs are within normal limits on physical exam.

8/10/15: new patient appointment. Medication Cialis and modafinil.
He reports he is a never smoker. Patient is reestablishing care was previously seen in July 2011. Review systems is negative for cough, wheeze or shortness of breath. His lung exam is within normal limits.

**REVIEW QUESTION (S):**
**1. What diagnoses are supported by the medical evidence?**

Mild obstructive sleep apnea is a supported diagnosis based on a very mildly elevated apnea hypopnea index of 5.3 on his diagnostic polysomnogram.

**2. Does the medical evidence support any diagnoses causing functional impairment from 12/13/16 to the present? Please explain your medical rationale as to why or why not.**

The medical evidence does not support any diagnoses causing functional impairment from 12/13/16 to present.

Although the claimant has been given several diagnoses to include severe COPD, valvular heart disease and idiopathic hypersomnia/central hypersomnia there is no objective evidence in the medical records reviewed to support these diagnoses. From a severe COPD standpoint it should be noted that all spirometry submitted for review was of such poor technical quality to be fully uninterpretable. No conclusions of any sort can be made from the data submitted. The claimant's lung exams are all recorded as either normal or no pertinent abnormality and he denied shortness of breath, wheezing or cough at all visits with his primary care physician. It appears that from his prescription history that he is not been regularly filling Symbicort or albuterol. From a hypersomnia/obstructive sleep apnea standpoint it should be noted that the claimant's subjective complaints of sleepiness and daytime fatigue were evaluated with nonstandard MSLT studies. It is important to confirm that the claimant had an adequate night sleep prior to the study either via actigraphy or polysomnography. There is no documentation to suggest this was performed. It is

also worth noting that during his CPAP titration studies his sleep efficiency was very high (in excess of 90%) with no evidence there was intolerant of CPAP in contrast to what he reports in follow-up. No CPAP compliance documents such as machine downloads were submitted for review to determine to what degree, if any, the claimant is using his CPAP device. Lastly, his echocardiography studies do not suggest any clinically significant valvular heart disease.

**3. If functional impairment is supported, please describe how that translates into restrictions or limitations and for what period(s) of time. Please define in terms of frequency (never, occasional, frequent, constant) and task (sit, stand, lift/carry, type etc). Please explain your medical rationale for any restrictions or limitations or why restrictions or limitations are not supported.**

This is not applicable as no functional impairment requiring restriction s and/or limitations is supported.

**4. Are there any reported or observed cognitive and/or physical side effects attributed to clmnt's medications? If yes, do the side effects contribute to claimant's impairment? Please explain your medical rationale.**

The documents do not contain any language indicating that the claimant is having cognitive or physical side effects from medications.

**5. Does the (overall functional and ) medical evidence support the claimant has the ability to sustain full time capacity (8/hours/day 5 days/ week) within the identified restrictions and limitations from 12/13/16? Please explain your medical rationale.**

The medical evidence suggest that the claimant has the ability to sustain full-time capacity (8/hours/days, 5 day/week).

This is based on his physical exam findings, and lack of objective evidence of impairment.

**6. When contacting the treating provider please discuss the claimant's condition, treatment, and functional capacity. Please indicate the information reviewed and indicate whether or not you reached consensus with the treating provider. If not, please discuss your final assessment after the call.**

After multiple attempts I was unable to discuss the case with Dr. Najjar as outlined in detail above.

**7. Please review and explain the results of the Pulmonary Function Tests.**

Well-established guidelines from the American thoracic Society establish standards for test performance and interpretation. The interpretation rendered by the treating pulmonologist is not consistent with those guidelines. Proper pulmonary function testing interpretation requires that the studies are of sufficient quality to render a valid interpretation. Specifically efforts should be reproducible (measures such as FVC, FEV1 should be within 5 - 10% of one another) expiratory time should be at least 6 seconds, and the flow volume loop should be smooth in contour. The claimant's spirometry fails on all measures. In no efforts does his expiratory time reach 6 seconds or plateau. The flow volume loops themselves are extremely chaotic and not consistent with a full inhalation or full exhalation. If baseline spirometry is not interpretable then post bronchodilator results also are uninterpretable. For this reason the treating clinician's interpretation that there was a significant response to bronchodilator inhalation is incorrect.

**Conflict of Interest Attestation:**

*I certify that I do not accept compensation for review activities that is dependent in any way on the specific outcome of the case. To the best of my knowledge I was not involved with the specific episode of care prior to referral of the case for review. I do not have a material professional, familial, or financial conflict of interest (financial conflict of interest is defined as ownership interest of greater than 5%) regarding any of the following: the referring entity; the insurance issuer or group health plan that is the subject of the review; the covered person whose treatment is the subject of the review and the covered person's authorized representative, if applicable; any officer, director or management employee of the insurance issuer that is the subject of the review; any group health plan administrator, plan fiduciary, or plan employee; the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of the review; the facility at which the recommended health care service or treatment would be provided; or the developer or manufacturer of the principle drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of the review. I attest that I have the scope of licensure and certification that typically manages the medical condition, procedure, treatment, or issue under review; and I have current, relevant experience and/or knowledge to render a determination for this case under review.*

Eric A. Crawley, M.D.
Board Certified in Internal Medicine
Sub Specialty Certificate in Pulmonary Disease
Sub Specialty Certificate in Critical Care Medicine
Added Expertise in Asthma
FL License #ME72317
HI License #MD-11455
04/26/2017

# INVOICE

4/26/2017
Invoice #: 31817049697

**MES Peer Review Services**
100 Morse Street
NORWOOD MA 02062
800-706-8427 (main) 781-255-0404 (fax)
www.mesgroup.com

---

Attention:
LIBERTY MUTUAL/DOVER/DISABILITY/PEERS
DISABILITY
100 LIBERTY WAY
P.O. BOX 1525 MAIL STOP 03F
DOVER, NH 03820

Claim Number 5690365
Claimant Mohammed Al-Shareih
Referral Date: 4/11/2017 12:32:00 Peer Review Specialty: Pulmonary Disease

Jurisdiction: AL
Federal Id: 38-2193020
S.S. # : 000000054
D.O.I. :

Employer:
TAX ID #: 38-2193020

| Description of Services | Amount Due |
|---|---|
| Peer Review Services | 1,645.00 |
| **Total Due:** | $1,645.00 |

*Prompt payment within 30 days is greatly appreciated!*

**Remit Payment To:**

Medical Evaluation Specialists, Inc.
100 Morse Street,
Norwood MA 02062

*... priority peer review service*

# Liberty Mutual Appeal Referral

**Appeal Referral From:** **DOVER**

| | | | | | |
|---|---|---|---|---|---|
| Office: | 096 | Manager: | CAREY, LAUREN | Case Mgr: | GRAY, LISA |

| | | | |
|---|---|---|---|
| Claimant Name: | MOHAMMED AL-SHAREIH | Claim #: | 5690365 |
| Occupation (Job Title): | ELECTRICAL ENGINEER | Date Sent: | 4/10/2017 |
| Diagnosis: | G47.1 Hypersomnia, J44.9 Chronic obstructive pulmonary disease, unspecified | | |
| Date of Disability: | 1/23/2016 | Date Benefits Began: | 4/22/2016 |
| Maximum Duration: | 8/9/2030 | Paid Through: | 12/13/2016 |
| Date of Denial or (DB451): | 12/14/2016 | Date Appeal Received: | 4/10/2017 |

**This is the date that the full appeal was received by the Field Claim Office*

| | | | |
|---|---|---|---|
| Policyholder/Self-Insured Plan Holder: | CROWN EQUIPMENT CORPORATION | | |
| Product: | LTD | Funding: | CON |
| Is Claimant Eligible for LTD? | Y | | |
| Erisa or Non-Erisa? | ERISA Plan | | |

Document Locations

- [x] Paperless
- [ ] Bilingual - translation complete
- [ ] Paper File
- [ ] Surveillance disk(s)

**Please be sure to send all claim paper files & all surveillance disks to the ARU.*

ER Contacts/CC (if applicable):

Linda Gusching/Betsy Muhlenkamp

ER Contact Addresses (including email address):

leaveadministrator@crown.com

| | | | |
|---|---|---|---|
| Phone No. | 4196292220 | FAX No. | 4196292317 |

Account Specific or Unique Contract Issues / Additional Info:

LTD FI ERISA. Received written request for review with additional info. Further review is needed. Referring file to ARU.

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213

MR. MOHAMMED AL-SHAREIH

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5707

April 11, 2017

Mr. Mohammed Al-Shareih

RE: Long Term Disability (LTD) Benefits
Crown Equipment Corporation
Claim #: 5690365

Dear Mr. Mohammed Al-Shareih:

We are writing at this time to advise you of the status of your appeal request for disability benefits. We are in the process of reviewing the appeal. To assist us in evaluating your eligibility for benefits we have referred your file for further medical review and assessment.

Under the Employee Retirement Income Security Act (ERISA), an appeal decision should be rendered within 45 days of receipt of the appeal, unless there are special circumstances beyond Liberty's control, which require a delay in making a decision. If additional time is needed, ERISA allows for a 45-day extension to evaluate and render an appeal decision. Thus, with an extension of time, an appeal decision must be made within 90 days.

If there is a delay in rendering a decision on your appeal beyond May 10, 2017, we will provide you with an updated status letter. We regret any inconveniences this delay may cause; however, the assessment is necessary to ensure a thorough review of your eligibility for benefits under the terms of the Policy.

If you have any questions regarding this matter, please contact me.

Sincerely,

Lisa MacAllister
Appeal Review Consultant
Phone No.: (888) 437-7611 Ext. 16400
Secure Fax No.: (603) 334-5707

Liberty Mutual INSURANCE

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5715

December 14, 2016

Mr. Mohammed Al-Shareih

RE: Long Term Disability (LTD) Benefits
Crown Equipment Corporation
Claim #: 5690365

Dear Mr. Mohammed Al-Shareih:

We are writing with regard to your claim for disability benefits. We have completed a comprehensive review of your claim, and have determined that benefits will not be issued beyond today, December 13, 2016. Crown Equipment Corporation's Long Term Disability Policy requires that to receive benefits you must meet the following definition of disability:

**"Disability"** or **"Disabled"** means:

For persons other than pilots, co-pilots, and crewmembers of an aircraft:
i. that during the Elimination Period and the next 36 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

**"Material and Substantial Duties"** means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.

**"Own Occupation"** means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.

As outlined in our letter dated June 3, 2016, further clarification was needed to assess your level of impairment. We explained that while we continued to investigate your eligibility for LTD benefits we would issue benefits under Reservation of Rights. We advised you that those payments should not be interpreted as an admission of present or ongoing liability.

Mohammed Al-Shareih

Date: April 6, 2017

The Liberty Life Assurance Company of Boston
Attn: Lisa Gray
Group Benefits Disability Claims
P.O. Box 7213
London, KY~0742-721~

RE: Long Term Disability (LTD) Benefits
Crown Equipment Corporation
Claim #: 5690365

Dear Lisa

I am writing you to exercise my right to appeal with regard to the denial letter of benefits. I just want to let you know that there is no improvement to any of my health conditions; for further information on this issue, please read the doctors medical reports based on doctor visitations that were performed on January 31, 2017, and that was just before the expiration of my health insurance which was provided to me by Crown Equipment Corporation, also these reports are almost two months after receiving the denial letter; My latest COPD test shows that it is very sever (29/100); so in addition to the following active health problem:

- Central Idiopathic Hypersomnia
- Chronic Obstructive Pulmonary Disease
- Hypersomnia
- Nonorganic Sleep Apnea
- Valvular Heart Disease

I do have a lower back problem, and I also have diabetes and high level of bad cholesterol. I am totally disable person, and I did apply for social security disability benefits, where my case is still pending for now, and I know that the Liberty Life Assurance Company of Boston is entitled for social security money; and I did inform you Lisa before that I will be very open and clear to you about the social security benefits, and to inform you upon the time when it is approved.

In addition to these sever health problems that I am having, I have been struggling financially to survive since the disability benefits were stopped; and my medication are about to run-out; also, I am not able to

have health insurance since February 1, 2017, and I do have follow-up visitations with doctors ( in May, 2017) for all the health problems listed above.

My disability benefits were stopped while my employment was still active with Crown Equipment Corporation; where my employment with Crown ended in January 25, 207; the following letter I got from Crown Equipment shows that based on my present health conditions; I am not fit to be back to perform the engineering post that I used occupy.




**Prenger, Teresa** <Teresa.Prenger@crown.com> Jan 10

to me, Andrew

Mohammed,

The documentation you sent, specifically the Attending Physician's Authorization to Return to Work dated 1-4-2017, completed by your treating physician indicates that you are totally disabled from work. Based on this documentation Crown is unable to return you to work. If you feel this is incorrect information and you anticipate being released by your physician to return to work, please let me know immediately.

Regards,

Teresa Prenger I Human Resources Manager
CROWN EQUIPMENT CORPORATION
419.629.2220 x2582 www.crown.jobs

From: mohammed alshareih [mailto:malshareih@gmail.com]
Sent: Monday, January 09, 2017 9:48 AM

In the denial letter, there are requests for an update on my health conditions; so the reports which are released on January 31, 2017 are intended to fulfill the new requests; these reports (as indicated above) are listed in the attached files medic_file_1.pdf and medic_file_2.pdf. Please let me know if you need any further information to help reinstating my disability benefits back to where it was before December 13, 2016.

These days, I am going through hard time with my health conditions and my financials; I understand that the purpose of the disability benefits are to make me survive but not to make me rich; I wish I am healthy and able to perform my job that I worked very hard to get to that level of knowledge and experience (which is over 24 years of working experience plus education time for B.S. Computer Science, B.S. Computer Engineering and M.S. Computer Engineering). From past experience of you handling my case, I know Lisa that you are very professional in performing your job, and you are very nice and reliable and you care for the credibility of the Liberty Life Assurance Company; so I am appealing to you Lisa based on my present health conditions to reconsider reinforcing my disability benefits back.

Sincerely

Mohammed Al-Shareih

Al-Shareih [signature]

Sleep & Pulmonary Care Center, P.C.

1222 Somerville Rd. SE
Decatur, AL 35601
256-341-0152

105 W. Dublin Ste A
Madison, AL 35758
256-772-4211

**Patient:** MOHAMMED ALSHAREIH
**Date of Birth:**

**Visit Date:** 01/31/2017
**Attending Provider:** Mamoun I. Najjar M.D.

## Office Note

**Referred Here**
Not referred by.

**Active Problems**
- **Central Idiopathic Hypersomnia**
- **Chronic Obstructive Pulmonary Disease**
- **Hypersomnia**
- **Nonorganic Sleep Apnea**
- **Valvular Heart Disease**

**History of Present Illness**
MOHAMMED ALSHAREIH is a 53 year old male.
• Feeling tired (fatigue) • Duration of symptoms as detailed in History of Presenting Illness and/or patient questionairres
• Shortness of breath • Cough • Wheezing
• Hypersomnia • Patient complaints: interrupted sleep
• An active illness Discussed patient symptoms and/or complaints with patient and/or representative
All applicable questionnaires reviewed with patient and/or representative

**Current Medication**
- **Amoxicillin 875 MG Tablet take one po BID for 10 days, 10 days, 0 refills**
- **Medrol 4 MG Tablet Therapy Pack as directed, 30 days, 3 refills**
- **Medrol 4 MG Tablet Therapy Pack as directed, 6 days, 0 refills**
- **Methylin 10 mg Tablet three times a day, 30 days, 0 refills**
- **Methylin 5 MG Tablet Chewable three times a day, 30 days, 0 refills**
- **ProAir HFA 108 (90 Base) MCG/ACT Aerosol Solution as directed II QID PRN, 30 days, 3 refills**
- **ProAir HFA 108 (90 Base) MCG/ACT Aerosol Solution 2 puffs every 4-6 hours as needed, 30 days, 3 refills**
- **Promethazine-DM 6.25-15 MG/5ML Syrup 5 ml po Q 4-6 hours PRN for cough, 7 days, 1 refills**
- **Symbicort 160-4.5 MCG/ACT Aerosol 2 twice a day, 30 days, 3 refills**

Medication list reviewed with patient or representative.

**Past Medical/Surgical History**
**Other:**
Past medical history reviewed with patient and/or representative

**Previous Therapy**
DME in home: was not specified. DME in home:

• Continuous positive airway pressure ventilation 8; • Continuous positive airway pressure ventilation 8 CMH2O; • Continuous positive airway pressure ventilation; • Continuous positive airway pressure ventilation 7 CMH2O; • Continuous positive airway pressure ventilation CPAP 5CM H2O; • No continuous positive airway pressure ventilation; • Continuous positive airway pressure ventilation 5 CM H20; • Continuous positive airway pressure ventilation 5 cm; • Continuous positive airway pressure ventilation 5 CMH2O; • Continuous positive airway pressure ventilation 5 cm H2O; • No oxygen

**Social History**
Social history reviewed with patient or representative.
Behavioral: Not a current smokeless tobacco user and smoking status: Former smoker. Smoking status: Current everyday smoker.

**Allergies**
- **No Known Allergies**

**Family History**
Family medical history reviewed with patient or representative

**Review Of Systems**
Review of Systems as per HPI noted. Systems Reviewed: General, Neuro, Cardiac, Pulmonary, GI, Renal, Skeletal.

**Physical Findings**
- **Vitals taken 01/31/2017 09:48 am**

| | |
|---|---|
| **BP-Sitting** | **110/65 mmHg** |
| **Pulse Rate-Sitting** | **80 bpm** |
| **Height** | **65 in** |
| **Weight** | **155 lbs** |
| **Body Mass Index** | **25.8 kg/m2** |
| **Body Surface Area** | **1.78 m2** |
| **Oxygen Saturation** | **98 %** |

**General Appearance:**
° Well-appearing Examined.
**Head:**
• Head: Examined.
**Eyes:**
**General/bilateral:**
• Eyes: Examined.
**Ears, Nose, Throat:**
• ENT: Examined.
**Lungs:**
• Lungs: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.
**Cardiovascular:**
• System: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.
**Abdomen:**
• Abdomen: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.
**Musculoskeletal System:**
General/bilateral: • Extremities: abnormal Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.
**Neurological:**

- System: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Assessment**

- Valvular heart disease
- Chronic obstructive pulmonary disease Severe
- Nonorganic sleep apnea Level - Mild
- Obstructive sleep apnea Level -
- Hypersomnia
- Idiopathic organic hypersomnia without long sleep time
- Cough
- Shortness of Breath
- Wheezing

He quit smoking Years ago.

**Test Conclusions**

Test results reviewed by provider and discussed with patient and/or representative.

**Therapy/Plan**

- Multiple sleep latency testing was performed to be performed in office for reason of fatigue/hypersomnia and patients level of Alertness, mood swings, memory and forgetfullness levels. Failed.
- Chest x-ray To be performed in office
- Mainstay Bronchodilators with Symbicort RX given. Patient educated on doasge and frequency of use.
- Continue current therapy and advise Provider if complications and/or concerns.
- Clinical summary provided to patient.
- A continuous airway pressure device (CPAP) CPAP/BIPAP therapy in 8 cm H2O. Failing CPAP.

Start an.

**Plan**

- **Chronic obstructive pulmonary disease, unspecified**
  Follow Up/Every 4-6 Months: Every 4 Months x3 Appointments (4, 8, 12 Months)

- **OTHER**
  Methylin 10 mg TABS, three times a day, 30 days, 0 refills
  Methylin 5 MG CHEW, three times a day, 30 days, 0 refills

- Short Acting Bronchodilators ProAir

**Nurse Survey for possible needed work-up. This is not a test order. Refer to provider's orders**

Nurse that Performed Workup:sara asherbranner.
Neck Circumference in inches: 15.
NOT NEEDED: WALK TEST (moderate to severe lung disease; initial then every 12 months).
NOT NEEDED: CPAP MACHINES (new OSA w/ private insurance once every 3 years).
NOT NEEDED: CPAP Study (new OSA).
NOT NEEDED: C X R (every year for two of symptoms above).
NOT NEEDED: CPAP SUPPLIES (every 6 months for private insurance).
NOT NEEDED: CPAP RETITRATION (once a year w/ weight changes).
NOT NEEDED: MSLT/MWT.
NOT NEEDED: SPIROMETRY: PRE AND POST (Any two symptoms of: shortness of breath, chest tightness, cough, wheezing & congestion; every 6 months for moderate

to severe).
NOT NEEDED: NPSG.
NOT NEEDED: CT Scan.
NOT NEEDED: Cardiac Echo.

**Other**
Electronically signed by Angela Gann, CRNP Supervised and Electronically Signed By Dr. Mamoun Najjar.

**Mamoun I. Najjar M.D.**
**Electronically signed by: Mamoun Najjar, M.D. Date: 02/20/2017 18:33**

Decatur General Hospital

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Name: | Al-Shareith, Mohammed A | ID: | M000614676 | BSA: | 1.76 | Date: | 01/27/2017 |
| Tech: | Patty Southerland RRT | Height: | 65.00 | Age: | 53 | Room: | |
| Doctor: | M. NAJJAR M.D. | Weight: | 152.00 | Sex: | Male | Race: | Caucasian |

Diagnosis: Shortness of breath

Dyspnea: On hills and stairs   Cough: Non-Productive   Wheeze: No Wheeze

Tbco Prod: Pipe   Yrs Smk:   Pks/Day:   Yrs Quit: 1.0

Medications: Symbicort,Pro-air not used today

Pre Test Comments: Spo2 on room air, 94%

Post Test Comments: MAT with 3ml NS & 0.5ml Albuterol. Tolerated well. No adverse reaction. The results of this test appear to be valid although the ATS standard for three acceptable maneuvers was not met.

| | Pre-Bronch | | | Post-Bronch | | |
|---|---|---|---|---|---|---|
| | Actual | Pred | %Pred | Actual | %Pred | %Chng |
| --- SPIROMETRY --- | | | | | | |
| FVC (L) | *1.64 | 4.15 | *39 | *2.84 | *68 | +73 |
| FEV1 (L) | *0.96 | 3.21 | *29 | 2.63 | 81 | +174 |
| FEV1/FVC (%) | *59 | 77 | *76 | *93 | *120 | +58 |
| FEF 25% (L/sec) | *1.91 | 6.79 | *28 | *3.98 | *58 | +108 |
| FEF 75% (L/sec) | *0.20 | 1.41 | *13 | *4.14 | *293 | +2005 |
| FEF 25-75% (L/sec) | *0.41 | 2.85 | *14 | *4.48 | *157 | +985 |
| FEF Max (L/sec) | *2.13 | 8.56 | *24 | *4.71 | *55 | +121 |
| FIVC (L) | 1.40 | | | 3.23 | | +131 |
| FIF Max (L/sec) | 1.15 | | | 1.40 | | +22 |
| MVV (L/min) | *40 | 132 | *30 | *46 | *34 | +14 |
| --- LUNG VOLUMES --- | | | | | | |
| SVC (L) | *1.34 | 4.15 | *32 | | | |
| IC (L) | 1.07 | 2.98 | 35 | | | |
| ERV (L) | 0.27 | 1.17 | 23 | | | |
| TGV (L) | 3.35 | 2.98 | 112 | | | |
| RV (Pleth) (L) | *3.08 | 1.83 | *168 | | | |
| TLC (Pleth) (L) | 4.42 | 5.96 | 74 | | | |
| RV/TLC (Pleth) (%) | *70 | 31 | *224 | | | |
| Trapped Gas (L) | | | | | | |
| --- DIFFUSION --- | | | | | | |
| DLCOunc (ml/min/mmHg) | | 25.60 | | 13.36 | 52 | |
| DLCOcor (ml/min/mmHg) | | 25.60 | | | | |
| DL/VA (ml/min/mmHg/L) | | 4.30 | | 5.13 | 119 | |
| VA (L) | | 5.96 | | *2.61 | *43 | |
| --- AIRWAYS RESISTANCE -- | | | | | | |
| Raw (cmH2O/L/s) | 0.77 | 1.45 | 53 | | | |
| Gaw (L/s/cmH2O) | 1.42 | 1.03 | 138 | | | |

AL-SHAREIH, MOHAMMED A
MR#:M000614676 Age:53
A#:AH0095827767 DOB:
01/27/17

# Decatur General Hospital

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Name: | Al-Shareith, Mohammed A | ID: | M000614676 | BSA: | 1.76 | Date: | 01/27/2017 |
| Tech: | Patty Southerland RRT | Height: | 65.00 | Age: | 53 | Room: | |
| Doctor: | M. NAJJAR M.D. | Weight: | 152.00 | Sex: | Male | Race: | Caucasian |

| | Pre-Bronch | | | Post-Bronch | | |
|---|---|---|---|---|---|---|
| | Actual | Pred | %Pred | Actual | %Pred | %Chng |
| sRaw (cmH2O*s) | 2.81 | < 4.76 | | | | |
| sGaw (1/cmH2O*s) | *0.45 | 0.20 | *223 | | | |

The FVC, FEV1, FEV1/FVC ratio and FEF25-75% are reduced indicating airway obstruction. It is impossible to adequately evaluate the flow volume loop due to excessive variablity such as might be produced by coughing. The MVV is reduced. The airway resistance is normal. The TLC and SVC are reduced, but the FRC is normal. Following administration of bronchodilators, there is an excellent response.

Conclusions: Severe airway obstruction is present. In addition, lung volumes are reduced indicating a concurrent restrictive process. The response to bronchodilators indicates a reversible component.

Pulmonary Function Diagnosis:
Severe Obstructive Airways Disease -Reversible
Severe Restriction -Possible

This preliminary report should not be used clinically unless reviewed and signed by a physician.

____________________________ M.D.

AL-SHAREIH, MOHAMMED A
MR# :M000614676 Age:53
A# :AH0095827767 DOB:
01/27/17

# Decatur General Hospital

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Name: | Al-Shareith, Mohammed A | ID: | M000614676 | BSA: | 1.76 | Date: | 01/27/2017 |
| Tech: | Patty Southerland RRT | Height: | 65.00 | Age: | 53 | Room: | |
| Doctor: | M. NAJJAR M.D. | Weight: | 152.00 | Sex: | Male | Race: | Caucasian |













AL-SHAREIH, MOHAMMED A
MR#: M000614676 Age: 53
A#: AH0095827767 DOB:
01/27/17

# Decatur General Hospital

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Name: | Al-Shareith, Mohammed A | ID: | M000614676 | BSA: | 1.76 | Date: | 01/27/2017 |
| Tech: | Patty Southerland RRT | Height: | 65.00 | Age: | 53 | Room: | |
| Doctor: | M. NAJJAR M.D. | Weight: | 152.00 | Sex: | Male | Race: | Caucasian |

| Time | Select | I-Lp | Test Mode | ATS | FVC absolute | FVC % p/c | FEV1 absolute | FEV1 % p/c | FEV1/FVC absolute | FEF 25-75% absolute |
|---|---|---|---|---|---|---|---|---|---|---|
| Pre | | | | | | | | | | |
| 13:23:37 | * | | | | *1.64 | *39 | *0.86 | *26 | *53 | *0.41 |
| 13:22:41 | * | | | | *1.44 | *34 | *0.96 | *29 | *66 | *0.51 |
| 13:23:12 | * | | | | *1.09 | *26 | *0.64 | *20 | *59 | *0.30 |
| Composite | | | Pre/Baseline | R1 | *1.64 | *39 | *0.96 | *29 | *59 | *0.41 |
| Post | | | | | | | | | | |
| 14:05:39 | * | | | end of | *2.72 | +66 | 2.63 | +174 | *97 | *4.48 |
| 14:17:02 | * | | | | *2.84 | +73 | *2.25 | +134 | 79 | 3.54 |
| 14:17:37 | * | | | | *2.42 | +48 | *2.29 | +139 | *95 | 3.65 |
| Composite | | | Post | ER1R | *2.84 | +73 | 2.63 | +174 | *93 | *4.48 |




AL-SHAREIH, MOHAMMED A
MR#:M000614676 Age:53
A#:AH0095827767 DOB:
01/27/17

# Huntsville Hospital Laboratory Services

PAGE 1

101 Sivley Road, Huntsville, AL 35801 Phone ( 256) 265-2522, Fax: (256) 265-6231

| PATIENT NAME | PATIENT ID | DOB | AGE | SEX | STATUS | DESTINATION |
|---|---|---|---|---|---|---|
| ALSHAREIH, MOHAMMED ALLAT | 88012488 | | 53 Y | M | Final | SHARMA |

| ORDERING PROVIDER | COLLECT DATE & TIME | DATE OF SERVICE | PATIENT'S PHONE # |
|---|---|---|---|
| SHARMA, BHAVNA | 12/22/2016 10:05 | 12/22/2016 12:33 | |

| Chart Number | REQUISITION NO. | Report Comment |
|---|---|---|
| NA | SHARMA.8895 | |

COMMENTS : H498047:A1C , CMP, LIPPR

| Diagnostic Procedure | Result In Range | Result Out of Range | | Units | Reference Range |
|---|---|---|---|---|---|
| HEMOGLOBIN A1C | | 6.3 | H | % | 4.0-5.6 |

6.3

The following HbA1c ranges recommended by the American Diabetic Association may be used as aid in the diagnosis of diabetes mellitus.

HbA1c% Suggested Diagnosis

>=6.5 Diabetic

5.7-6.4 Pre-Diabetic

<5.7 Non-Diabetic

In diabetic patients, the following HbA1c ranges may be used for interpretation of results:

HbA1c% Glycemic Goal

<8.0 Less Stringent Goal

<7.0 General Goal

<6.5 More Stringent Goal

| Diagnostic Procedure | In Range | Out of Range | | Units | Reference Range |
|---|---|---|---|---|---|
| COMP METABOLIC PANEL | | | | | |
| SODIUM | 139 | | | mmol/L | 133-145 |
| POTASSIUM | 4.3 | | | mmol/L | 3.5-5.0 |
| CHLORIDE | 100 | | | mmol/L | 96-108 |
| CO2 | | 30 | H | mmol/L | 22-29 |
| UREA NITROGEN | 17 | | | mg/dL | 6-20 |
| CREATININE | 1.2 | | | mg/dL | 0.5-1.2 |
| GLUCOSE | 93 | | | mg/dL | 70-100 |
| CALCIUM | 9.2 | | | mg/dL | 8.6-10.2 |
| AST | 32 | | | U/L | <39 |
| BILIRUBIN,TOTAL | 0.5 | | | mg/dL | <1.0 |
| TOTAL PROTEIN | 7.6 | | | g/dL | 6.4-8.3 |
| ALK PHOSPHATASE | 88 | | | U/L | 39-117 |
| ALBUMIN | 4.5 | | | g/dL | 3.2-4.8 |
| ALT | 34 | | | U/L | <42 |
| ANION GAP | 9 | | | | 7-17 |
| CALC OSMOLALITY | 279 | | | mosm/kg | |
| BUN/CREAT | 14 | | | | 10-20 |
| GFR NON-AFR AMER | >60 | | | GFR UNIT | >60 |
| GFR AFRICAN AMER | >60 | | | GFR UNIT | >60 |
| COMMENT | NONE | | | | |
| LIPID PANEL | | | | | |
| TRIGLYCERIDE | 146 | | | mg/dL | <150 |
| CHOLESTEROL | 188 | | | mg/dL | <200 |
| HDL CHOLESTEROL | 38 | | | mg/dL | |
| LDL CALCULATED | | 121 | H | mg/dL | <100 |
| NON-HDL CHOLESTEROL | 150 | | | mg/dL | |

Continued on next page

# Huntsville Hospital Laboratory Services



101 Sivley Road, Huntsville, AL 35801 Phone ( 256) 265-2522, Fax: (256) 265-6231

| PATIENT NAME | PATIENT ID | DOB | AGE | SEX | STATUS | DESTINATION |
|---|---|---|---|---|---|---|
| ALSHAREIH, MOHAMMED ALLAT | 88012488 | | 53 Y | M | Final | SHARMA |

| ORDERING PROVIDER | COLLECT DATE & TI | DATE OF SERVICE | PATIENT'S PHONE # |
|---|---|---|---|
| SHARMA, BHAVNA | 12/22/2016 10:.. | 12/22/2016 12:33 | |

| Chart Number | REQUISITION NO. | Report Comment |
|---|---|---|
| NA | SHARMA.8895 | |

COMMENTS : H498047:A1C , CMP, LIPPR

| Diagnostic Procedure | Result: In Range | Result: Out of Range | Units | Reference Range |
|---|---|---|---|---|
| COMMENT | | | | |

NCEP GUIDELINES FOR ADULTS

---

TRIGLYCERIDE LEVELS

NORMAL <150

BORDERLINE HIGH 150-199

HIGH 200-499

VERY HIGH >499

---

CHOLESTEROL LEVELS

DESIRABLE <200

BORDERLINE HIGH 200-239

HIGH >239

---

NCEP GUIDELINES FOR HDL

LOW <40

HIGH >59

---

LDL LEVELS

OPTIMAL <100

NEAR/ABOVE OPTIMAL 100-129

BORDERLINE HIGH 130-159

HIGH 160-189

VERY HIGH >189

---

NON-HDL LEVELS

DESIRABLE <130

BORDERLINE HIGH 130-159

Continued on next page

# Huntsville Hospital Laboratory Services



101 Sivley Road, Huntsville, AL 35801 Phone ( 256) 265-2522, Fax: (256) 265-6231

| PATIENT NAME | PATIENT ID | DOB | AGE | SEX | STATUS | DESTINATION |
|---|---|---|---|---|---|---|
| ALSHAREIH, MOHAMMED ALLAT | 88012488 | | 53 Y | M | Final | SHARMA |

| ORDERING PROVIDER | COLLECT DATE & TIME | DATE OF SERVICE | PATIENT'S PHONE # |
|---|---|---|---|
| SHARMA, BHAVNA | 12/22/2016 10:05 | 12/22/2016 12:33 | |

| Chart Number | REQUISITION NO. | Report Comment |
|---|---|---|
| NA | SHARMA.8895 | |

COMMENTS : H498047:A1C , CMP, LIPPR

| Diagnostic Procedure | Result In Range | Result Out of Range | Units | Reference Range |
|---|---|---|---|---|
| HIGH 160-189 | | | | |
| VERY HIGH >189 | | | | |

End of Report

MR-LUMB SPINE WO CON for AL-SHAREIH, MOHAMMED (53yo M) #26476 E#26476

| Ordering Provider | BHAVNA SHARMA, MD | Performing facility | |
|---|---|---|---|
| Reported Date | 01/31/2017 14:25 | Accession ID | 21714940000200 |
| Performed Date | 01/31/2017 13:00 | | |

Crestwood Medical Center
One Hospital Drive
Huntsville, AL 35801
256 429 4000

IMAGING REPORT

NAME: ALSHAREIH, MOHAMMED A

| | | | | | |
|---|---|---|---|---|---|
| MRN: | 797957 | Room #: | | DOB: | |
| Account #: | 2171494 | Admit Date/Time: | 01/31/2017 12:45 | Age: | 53 |
| Patient Type: | RA1 | Exam Date/Time: | 01/31/2017 13:00 | Sex: | M |
| Order #: | 200 | Accession: | 21714940000200 | Class: | O |

Ordering Physician: SHARMA, BHAVNA
Attending Physician: SHARMA, BHAVNA
Primary Care Physician: SHARMA, BHAVNA

MRI LUMBAR SPINE WITHOUT CONTRAST

HISTORY: - Low back pain

COMPARISON: None.

TECHNIQUE: Multiplane, multisequence non-contrast lumbar spine MRI performed.

CONTRAST: None.

FINDINGS:
Alignment: Normal.
Vertebrae: No significant abnormality.
Visualized cord: No significant abnormality. Conus terminates at L1.

L1-2: No significant disc abnormality, spinal canal or neural foraminal stenosis.

L2-3: No significant disc abnormality, spinal canal or neural foraminal stenosis.

L3-4: Minimal broad-based disc bulge, resulting in effacement of the anterior thecal sac. Mild bilateral foraminal stenosis. No significant facet arthropathy or central canal stenosis.

L4-5: There is a mild broad-based disc bulge, resulting in minimal effacement of the anterior thecal sac and mild bilateral foraminal stenosis. No evidence of central canal stenosis.

L5-S1: No significant disc abnormality, spinal canal or neural foraminal stenosis.

Additional findings: None.

IMPRESSION:
1. Very mild degenerative changes identified at L3-4 and L4-5.

**MR-LUMB SPINE WO CON for AL-SHAREIH, MOHAMMED (53yo M) #26476 E#26476**

Signer Name: Robin Gwaltney MD
Signed: 1/31/2017 2:25 PM
Organization: Radiology of Huntsville Referring Physicians only 256.713.0622

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213

MR. MOHAMMED AL-SHAREIH

Liberty Mutual INSURANCE

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5715

April 10, 2017

Mr. Mohammed Al-Shareih

RE: Long Term Disability (LTD) Benefits
Crown Equipment Corporation
Claim #: 5690365

Dear Mr. Mohammed Al-Shareih:

Liberty Life Assurance Company of Boston ("Liberty") is responsible for managing claims for Long Term Disability (LTD) benefits under Crown Equipment Corporation's Group Disability Policy. We are writing in reference to your claim for LTD benefits under the Policy.

We have received your request for review of the recent claim determination on your Long Term Disability (LTD) claim.

Your file is being forwarded to Liberty's Appeal Review Unit for an independent review of your claim eligibility. Your claim will be assigned to an Appeal Consultant who will contact you when they have completed a review of the appeal. If you have any questions regarding the status of the appeal prior to hearing from the Appeal Consultant, you may contact the Appeal Review Unit at 1-888-437-7611 during the hours of 8am to 5pm Eastern Standard Time.

In accordance with the Employee Retirement Income Security Act of 1974 (ERISA), under normal circumstances, you will be notified in writing of a final decision within 45 days from the date your request for review was received.

If there are special circumstances requiring a delay in Liberty's response, you will be notified of our decision no later than 90 days after the request for review was received.

If you have any questions regarding this correspondence, please contact me.

Sincerely,

Lisa Gray
Disability Claims Tech Spec
Phone No.: (888) 437-7611 Ext. 16396
Secure Fax No.: (603) 334-5715

**n0054335**

**From:** Gray, Lisa
**Sent:** Thursday, December 29, 2016 11:27:10 AM
**To:** Stanczak, Dawn
**Subject:** RE: Crown LTD Question

Hi Dawn,

Yes the LTD file has been closed. Based on the medical evidence on file and independent medical reviews performed it was determined that he did not meet the definition of total disability beyond December 13, 2016. The employee was mailed a detailed closure letter explaining our decision. In addition, I also spoke to the EE on 12/22/16, at which time we went over the closure. Notifications were sent to Crown on 12/14/16 and 12/15/16.

Let me know if there is anything else you need

Thanks!


Lisa Gray

Technical Claims Consultant

Liberty Life Assurance Company of Boston

100 Liberty Way - Mail Stop 02E Dover, NH 03820
(P) 1-888-437-7611 Ext: 16396

(F) 603-334-5715


**From:** Stanczak, Dawn
**Sent:** Thursday, December 29, 2016 10:33 AM
**To:** Gray, Lisa <LISA.GRAY@LibertyMutual.com>
**Subject:** FW: Crown LTD Question
**Importance:** High

Hi Lisa –

This claim appears to be assigned to you so could you kindly give me a status / update on it? It appears we closed it but the ER says it was originally approved so I am just looking for a timeline of what transpired and Pete is out. Are you able to assist? Thanks.

Dawn Stanczak
Senior Account Service Manager
Liberty Life Assurance Company of Boston Group Benefits
One North Shore Center
12 Federal Street
Suite 310, MS 01A
Pittsburgh, PA 15212

Phone (412) 995-6991
Fax (603) 422-7933
Dawn.Stanczak@LibertyMutual.com

**From:** Thompson, Jami [mailto:Jami.Thompson@Crown.com]
**Sent:** Wednesday, December 28, 2016 10:35 AM
**To:** peter.miller@libertymututal.com
**Cc:** Stanczak, Dawn <DAWN.STANCZAK@LibertyMutual.com>
**Subject:** Crown LTD Question
**Importance:** High

Peter,

We had a call from Mohammed Al-Shareih (#030031) and he indicated that there has been a change in his LTD claim with Liberty Mutual.

When I look at our monthly reports, I do not see that there are any changes and he is approved through 4/22/2019.

Could you please check your records and advise me of his status as soon as possible?

Thanks!

**Jami Thompson | Director of Benefits**

Crown Equipment Corporation

New Bremen, OH 45869

Ph. (419) 629-2220, ext. 2340

Fax (419) 629-2317

**ATTENTION: Confidential information may be contained in this message. If you are not the intended recipient of this message (or responsible for delivery of the message to such person), please destroy this message and kindly notify the sender by reply email.**

**From:** Grp Mkt Clm Ops Reporting
**Sent:** Thursday, December 15, 2016 4:41 PM
**To:** 'leaveadministrator@crown.com'
**Subject:** emp_first name AL-SHAREIH, Claim #5690365

**THIS IS AN AUTOMATED EMAIL, PLEASE DO NOT RESPOND.**

The above named employee has applied for long term disability benefits. The date of disability is 1/23/2016. The claim has been approved through 12/13/2016. As of 12/14/2016 this claim is closed. The case manager for this claim is Lisa GRAY. The claim number is 5690365.

If you have further questions, please call Liberty Mutual Insurance at (800) 210-0268.

**n0054335**

**From:** Gray, Lisa
**Sent:** Wednesday, December 14, 2016 9:35:05 AM
**To:** 'leaveadministrator@crown.com'
**Subject:** LTD Closure

Good Morning

RE: Mohammed Al-Shareih

DOB:

Based on our review we have determined that Mr. Al-Shareih no longer qualifies for LTD benefits beyond 12/13/16. A detailed letter is being mailed to him today and in addition I will be placing a telephone call to him later this morning.

Thank you,


Lisa Gray

Technical Claims Consultant

Liberty Life Assurance Company of Boston

100 Liberty Way - Mail Stop 02E Dover, NH 03820
(P) 1-888-437-7611 Ext: 16396

(F) 603-334-5715

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213

MR. MOHAMMED AL-SHAREIH

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5715

December 14, 2016

Mr. Mohammed Al-Shareih

RE: Long Term Disability (LTD) Benefits
Crown Equipment Corporation
Claim #: 5690365

Dear Mr. Mohammed Al-Shareih:

We are writing with regard to your claim for disability benefits. We have completed a comprehensive review of your claim, and have determined that benefits will not be issued beyond today, December 13, 2016. Crown Equipment Corporation's Long Term Disability Policy requires that to receive benefits you must meet the following definition of disability**:**

**"Disability"** or **"Disabled"** means:

For persons other than pilots, co-pilots, and crewmembers of an aircraft:
i. that during the Elimination Period and the next 36 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

**"Material and Substantial Duties"** means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.

**"Own Occupation"** means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.

As outlined in our letter dated June 3, 2016, further clarification was needed to assess your level of impairment. We explained that while we continued to investigate your eligibility for LTD benefits we would issue benefits under Reservation of Rights. We advised you that those payments should not be interpreted as an admission of present or ongoing liability.

We have now completed our review.

In order to determine your current restrictions and limitations in regards to your chronic idiopathic hypersomnia, COPD, nonorganic sleep apnea on cpap, valvular heart disease and headaches we requested and received the following medical documentation:

**<u>Mamoun Najjar, M.D. – Sleep & Pulmonary Care Center:</u>**

Attending Physician Statement dated March 14, 2016
Restrictions Form dated March 14, 2016
Office Notes dated April 13, 2015 through September 6, 2016
Sleep Study dated April 18, 2015, April 25, 2015 and August 12, 2016
Echocardiogram dated April 29, 2015 and August 26, 2016
Carotid Ultrasound dated April 29, 2015 and August 26, 2016
MSLT Report dated May 18, 2015
MWT Report dated October 5, 2015 and November 9, 2015
Letter from Dr. Najjar addressed to Whom it May Concern dated November 17, 2015
Pulmonary Function Test dated January 4, 2016 and August 15, 2016
Restrictions and Limitations dated May 26, 2016

**<u>Maddison Family Health Center:</u>**

Progress notes dated August 10, 2015 through March 14, 2016
Lab Results dated September 9, December 19, 2015 & December 30, 2015

**<u>Pharmacy Summary:</u>**

Prescriptions filled from July 8, 2015 through March 18, 2016

The following non-medical documentation is also contained in your file:

Long Term Disability Claim forms dated March 30, 2016
A copy of your Job Description
Video surveillance conducted over the course of three days – October 27, 2016 through October 29, 2016
Video surveillance conducted over the course of two days – November 16, 2016 and November 17, 2016

To ensure a thorough review, your file was reviewed by a board certified consulting sleep medicine, pulmonary medicine and internal medicine specialist. This review was to obtain clarification of your current clinical status, level of impairment and restrictions and limitations outlined by Dr. Najjar.

The consulting physician opined the following:

*The records support diagnoses of idiopathic hypersomnia,*
*obstructive sleep apnea, and severe chronic obstructive pulmonary disease*

*(COPD). However, the hypersomnia is supported to possibly also be related to untreated obstructive sleep apnea alone, if the claimant is not currently using his CPAP therapy during sleep. Objective data (including polysomnography and multiple sleep latency testing) is inadequate to support impairment secondary to excessive daytime sleepiness.*

*The records support full-time light work capacity with regards to exertional dyspnea related to severe chronic obstructive pulmonary disease, and is supported by the six-minute walk testing.*

*The records as a whole support full-time light work capacity, with workplace accommodation for safe work environment, no heights, climbing, crawling, balancing, or work-related driving; and for frequent brief naps if subjectively beneficial to claimant (e.g., up to15 minutes every 2-4 hours if required). The records support that the claimant follow-up closely with his sleep/pulmonary specialist, and use CPAP and alerting therapy as may be indicated according to medical recommendations.*

*The records are insufficient to support absence of work capacity on the basis of either hypersomnia or severe COPD.*

*The records support that the claimant has capacity to sustain fulltime sedentary work with the workplace accommodations noted.*

Additionally, your file was referred to a Vocational Specialist to conduct an occupational analysis. The Vocational Specialist opined:

The occupation falls under the DOT code of Electrical Engineer (DOT: 030.061-010) and SOC/O*NET classification of Electrical Engineers (SOC # 17-2071.00). The O*NET describes
this occupation, along with sample job titles, as:

"Research, design, develop, test, or supervise the manufacturing and installation of electrical equipment, components, or systems for commercial, industrial, military, or scientific use."

**Sample of reported job titles:** Circuits Engineer, Design Engineer, Electrical Controls Engineer, Electrical Design Engineer, Electrical Engineer, Electrical Project Engineer, Instrumentation and Electrical Reliability Engineer (I&E Reliability Engineer), Power Systems Engineer, Project Engineer, Test Engineer

The occupation falls under the Occupational Outlook Handbook (OOH) description of Electrical and Electronics Engineer.

**PHYSICAL DEMANDS**

Based upon the research as outlined above, this occupation is performed at the sedentary level of physical demand levels in the national economy. The Department of Labor defines sedentary Work as:

"Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists form 1/3 to 2/3 of the time) to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief amounts of time. Jobs are sedentary if walking or standing are required only occasionally and all other sedentary criteria are met."

**Positional Requirements:**

Frequent: sitting, fingering
Occasional: reaching, handling, standing, walking
No: bending/stooping, crouching/squatting, twisting, climbing, crawling, kneeling or balancing

**Non-Medical Evidence**

Routine observation was performed on your claim October 27, 2016, October 28, 2016 and October 29, 2016. You were identified on each day of the investigation and observed at different time periods during the day. You were observed operating your vehicle, purchasing items including fast food, and driving to a credit union. On November 16, 2016, you were observed departing your residence at 4:01 pm and returning almost two hours later at 5:52 pm.

Throughout the course of your claim, you have continued to assert that you are unable to work due to fatigue, memory loss and "sometimes" breathing problems. We understand you may experience symptoms associated with your condition(s) however, based on the medical, non-medical and vocational review it is determined you have the functional ability to perform full time sedentary work.

In May 2016, Dr. Najjar outlined specific restrictions and limitations and opined you are unable to work. Based on our review of the medical and diagnostic evidence on file this information does not support Dr. Najjar's restrictions and limitations or your inability to perform full time sedentary work. Dr. Najjar wrote that you cannot lift over 5 lbs., you need to limit pushing and pulling over 5 lbs., you may occasionally twist and bend and you must avoid squatting, stooping and kneeling. He wrote that you can stand 3 minutes per hour, walk 2 minutes per hour and sit 30 minutes per hour. He wrote that you must limit work duties of driving to one half hour per day or 1 minute per hour. He concluded that you are unable to work.

Of note, you completed an activities questionnaire on March 30, 2016 documenting greater capacity then from what Dr. Najjar documents.

The restrictions and limitations outlined by the consulting physician would not preclude you from performing full time sedentary work. Your occupation does not require on the job driving and would not require you to work at heights, climb, crawl, squat, bend, twist or lift over 10 lbs.

Based on the totality of our review, we have determined that you can perform the material and substantial duties of your own occupation. Therefore you do not meet Crown Equipment Corporation's LTD definition of disability beyond today, December 13, 2016, and we must deny your claim. Liberty Life will issue payment under Reservation of Rights through December 13, 2016, and your claim is closed as of December 14, 2016

This claim determination reflects an evaluation of the claim facts and Policy provisions. We reserve the right to make a determination on any additional information that may be submitted. Under the Employee Retirement Income Security Act of 1974 (ERISA), you may request a review of this denial by writing to the address below:

The Liberty Life Assurance Company of Boston
Attn: Lisa Gray
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213

The written request for review must be sent within 180 days of the receipt of this letter and state the reasons why you feel your claim should not have been denied. In your request for review please include the following documentation: neuropsychological evaluation documenting cognitive impairment, a sleep diary, multiple sleep latency testing, maintenance of wakefulness testing, cardiopulmonary exercise testing, proof of application for social security disability and updated medical records from Dr. Najjar as well as any additional information which you feel will support your claim. You may request to review pertinent claim file documents upon which the denial of benefits was based. If Liberty Life does not receive your written request for review within 180 days of your receipt of this notice, our claim decision will be final, your file will remain closed, and no further review of your claim will be conducted. Under normal circumstances, you will be notified of the final decision within 45 days of the date that your request is received. If special circumstances cause a delay in our decision, you will be notified of the final decision no later than 90 days after your request for review is received.

Nothing in this letter should be construed as a waiver of any Liberty Life Assurance Company of Boston rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

If you have any questions regarding this matter, please contact me.

Sincerely,

Lisa Gray
Disability Claims Tech Spec
Phone No.: (888) 437-7611 Ext. 16396
Secure Fax No.: (603) 334-5715

# Liberty Mutual Consulting Physician Referral
## Attendance Only

**Consulting Physician: Wager, Gilbert**

| | | | |
|---|---|---|---|
| Office: | 0096 | Claim #: | 5690365 |
| Claimant Name: | MOHAMMED AL-SHAREIH | | |
| Date of Birth: | | Claim Status: | AP |
| Date of Disability: | 1/23/2016 | Date Sent: | 12/12/2016 |
| Claimant SSN: | | Date Benefits Began: | 4/22/2016 |
| Product Type: | LTD | Paid Through: | 4/22/2019 |
| Disability Level: | | | |

Document Locations
- ☑ Document List
- ☐ Correspondence
- ☐ Paper File

Policyholder/Self-Insured Plan Holder: CROWN EQUIPMENT CORPORATION

Referred By: GRAY, LISA 096 8*731-6396

Assigned Nurse Case Manager:

Diagnosis: G47.1 Hypersomnia, J44.9 Chronic obstructive pulmonary disease, unspecified

Questions or Issues for Physician: (Note - If a physician has viewed this claim in the past please detail the physician and the outcome.)

N/A

DDI

Donovan and Devlin, Inc.
P.O.Box 328
Alpharetta, GA. 30009

| DATE | INVOICE # |
|---|---|
| 11/21/2016 | 24232 |

| BILL TO |
|---|
| Liberty Mutual Disability<br>P.O.Box 1525<br>Dover,NH. 03821-1525 |

| CASE NO. | TERMS | FEI NO.58-1947172 |
|---|---|---|
| 16-125-1259 | On Receipt | 58-1947172 |

| QUANTITY | DESCRIPTION | AMOUNT |
|---|---|---|
| | CLAIMANT:Mohammed Al-Shareih | |
| | CLAIM #:5690365 | |
| | DATES:November 16,17 2016 | |
| | REQUESTOR:Lisa Gray | |
| 2 | FLAT RATE | 1,300.00 |
| | TEL:770- 594-1000.Fax 770-594-1199 | |
| | PLEASE SHOW INVOICE | |

| | |
|---|---|
| WHEN DEDICATION DEPENDABILITY & INTEGRITY COUNT THANK YOU FOR YOUR PATRONAGE | **Total** $1,300.00 |

## SUMMARY OF INVESTIGATION

| | | | |
|---|---|---|---|
| **Claimant:** | Mohammed Al-Shareih | **Date:** | November 22, 2016 |
| **Claim #:** | 5690365 | **File #:** | 16-125-1259 |
| **Employer:** | Crown Equipment Corporation | **Injury:** | Hypersomnia |

### Objective

At the request of the Client, three days of surveillance were requested in an effort to determine his level of activity over the course of two consecutive days with specific emphasis on how much standing, walking, driving he is able to perform.

### Directions/Description

From , Alabama, take West toward . Take the Road Exit and turn left at the traffic light. Travel northbound on Road for approximately two miles. Turn right onto into the Apartment Complex. The CLAIMANT'S apartment is located near the rear of the complex in building . It is located in the middle of the building with a lower level door and an upper level balcony. The unit has single car attached garages. A second exit only exterior gate is located near the CLAIMANT'S building.

### Summary of Results

The Investigation was conducted over the course of two days of surveillance on November 16th and 17th 2016. The CLAIMANT was identified on each day of the investigation. A close inspection of the vehicle indicated it still had minor damage identified during a previous investigation. On the first day of surveillance, the CLAIMANT departed from his gated apartment complex at 4:01 p.m. and traveled to a congested commercial area in Madison, Alabama sixteen minutes later. He drove erratically through several parking lots only to return to the highway without stopping at any of the businesses in the area. A gridsearch of the area met with negative results so the Investigator returned to his apartment and documented his return almost two hours later at 5:52 p.m. He entered his residence with a backpack over his shoulder and a bag of unknown items in his hand. He exited his residence five minutes later and carried a bag of trash to his vehicle. He drove to the garbage dump area within the complex, exiting his vehicle to throw the trash bag inside the dumpster area. He drove his vehicle back to the residence and entered completing the task within five minutes. The following day surveillance began late that morning and the CLAIMANT'S vehicle was parked in the same position from the previous day. The vehicle was identified at 4:48 p.m. as it moved toward the leasing office, dumpster, and mailbox area of the community. A mobile surveillance was conducted after entering the gated community. The CLAIMANT drove his vehicle back to his residence and entered. He carried what appeared to be a drink in a Styrofoam cup as he entered his residence. He completed the unknown task near the leasing office within a five minute period.

## Video Link:

**TIME/ DATE/ LOCATION** | **DETAILS**

Preliminary Investigation

A driver's license was provided which contained a picture of the CLAIMANT for identification purposes. He was listed as 53 year old, male, 5'6" and 150lbs. His address was listed as , AL . He reportedly worked for Crown Equipment Corporation. He was hired on 3/2/15 and disabled on 1/23/16. His occupation was is a Computer Engineer. His mailing address was provided as . He was reported to be divorced and lives alone as his wife has custody of their two children.

The CLAIMANT reports he is unable to work due to memory loss, breathing problems, and severe fatigue resulting him to fall asleep in the middle of performing tasks. He reports spending approximately 15 hours in bed. He still has an ability to drive but does not drive continuously more than 25 minutes otherwise it is a hazard.




Wednesday
November 16, 2016
at Apt Homes

9:28 a.m.

The Investigator arrived in the area and located the captioned street provided as the CLAIMANT'S address. It corresponded to a gated apartment complex. The apartment number was believed to be which corresponded to the street number portion of the provided address. The gate was closed upon arrival so a suitable position was established outside to monitor vehicles arriving and departing the area.




10:05 a.m.- 10:18 a.m.

Foot surveillance was conducted through an open gate and the CLAIMANT'S burgundy or deep red Honda Accord Alabama Tag# was parked near the residence. No one was identified inside the vehicle. The Investigator returned to the surveillance vehicle and established a suitable position to monitor vehicles departing the area.

10:19 a.m. – 1:46 p.m.

Surveillance continued with no change to report.




1:47 p.m.- 4:00 p.m.

A Mail Carrier and school buses arrived in the area during this time.




4:01 p.m.- 4:11 p.m.

The CLAIMANT departed from the complex in the burgundy Honda Accord. He was alone in the vehicle. A mobile surveillance was initiated.




4:12 p.m.- 4:14 p.m.
Lowes Home Improvement

The CLAIMANT'S vehicle entered the captioned parking lot and continued to drive through several adjoining parking lots in an erratic manner as if unsure of his destination. He turned out of view between a Mexican Restaurant and a Ruby Tuesday Restaurant. Both parking lots were searched but did not reveal the CLAIMANT'S vehicle.

4:17 p.m.
Hwy
, AL

The CLAIMANT'S vehicle was identified as it turned out onto the captioned Highway and headed back in the direction he had just traveled. The Investigator was not immediately able to perform the same maneuver and

| | |
|---|---|
| | visual contact with the vehicle was interrupted. |
| 4:18 p.m.- 4:35 p.m. | A gridsearch of the area was conducted but met with negative results. |
| 4:50 p.m.<br>CLAIMANT'S residence | The Investigator returned to the captioned location and entered through an open gate. A suitable position was established near the CLAIMANT'S apartment. His vehicle was not present at this time. |




| | |
|---|---|
| 5:53 p.m.- 5:56 p.m. | The burgundy Honda Accord AL Tag# arrived and parked near the building. The CLAIMANT remained seated inside of the vehicle as he appeared to complete and unknown task while the driver's side door remained ajar. He exited his vehicle, removed a backpack from his trunk, and carried the backpack over his shoulder and a plastic bag of unknown items in his left hand. He opened the door which leads to his upstairs apartment and entered. The door closed behind him. (VIDEO) |







| | |
|---|---|
| 5:59 p.m. | The CLAIMANT returned to the parking lot with a bag similar in size and shape to a trash bag in his hand. He entered his vehicle and departed. He drove to another area of the complex and parked. He carried the bag toward a dumpster and disappeared from view. He returned to his vehicle without the trash bag, entered his vehicle and departed. (VIDEO) |







| | |
|---|---|
| 6:04 p.m. | The CLAIMANT returned to his apartment and parked nearby. He exited his vehicle and entered his apartment ahead of the Investigator before a suitable stationary position could be established to obtain video evidence. |
| 6:05 p.m.- 6:29 p.m. | An exterior light was illuminated over the door and several interior lights were illuminated within the upstairs unit of the apartment. A single fold up chair was observed on the balcony. |




6:30 p.m.

As there had been no further outside CLAIMANT activity the daily surveillance was suspended at this time.

Thursday
<u>November 17, 2016</u>
at Apt Homes

The Investigator arrived in the area and commenced with the daily surveillance. The gate was closed which allowed access to the apartment units. From an adjacent street outside of the complex, the burgundy Honda Accord AL Tag# 47DD190 associated with the

9:58 a.m.

CLAIMANT was parked in the same position from the previous evening. No one was inside of the vehicle.




9:59 p.m.- 2:13 p.m.

A suitable position was established to monitor vehicles departing the area. There was no change or outside activity to report.




2:14p.m.- 4:47 p.m. A Mail Carrier and school buses arrived in the area during this time.




4:48 p.m. The CLAIMANT'S vehicle was identified as it moved to another area of the apartment complex within the gated area. The vehicle parked near the leasing office. A dumpster and a community mailbox center were located nearby. The CLAIMANT'S intentions were unknown.

4:51 p.m.- 4:52 p.m. The investigator gained entry to the apartment complex and located the CLAIMANT'S vehicle as it backed out of a parking space near the leasing office. He drove back to his apartment and parked.

4:53 p.m. The CLAIMANT exited his vehicle with a Styrofoam drink cup walked a short distance across the parking lot

and entered his apartment. The door closed behind him. One exterior light was illuminated over his front door and several interior lights were identified inside of the apartment. (VIDEO)







5:00 p.m. As there was no further outside activity from the CLAIMANT, the daily surveillance was suspended at this time.

END OF REPORT

<u>Investigation Conducted by:</u> Doug Poff
DDI
P. O. Box 328
Alpharetta, Georgia 30009

## SUMMARY OF INVESTIGATION

| | | | |
|---|---|---|---|
| **Claimant:** | Mohammed Al-Shareih | **Date:** | November 3, 2016 |
| **Claim #:** | 5690365 | **File #:** | 16-125-1259 |
| **Employer:** | Crown Equipment Corporation | **Injury:** | Hypersomnia |

### Objective

At the request of the Client, three days of surveillance were requested in an effort to determine his level of activity on a Thursday, Friday, and Saturday.

### Directions/Description

From , Alabama, take I West toward , AL. Take the Road Exit and turn left at the traffic light. Travel northbound on Road for approximately two miles. Turn right onto into the Apartment Complex. The CLAIMANT'S apartment is located near the rear of the complex in building # unit number . It is located in the middle of the building with a lower level door and an upper level balcony. The unit has single car attached garages. A second exit only exterior gate is located near the CLAIMANT'S building.

### Summary of Results

The Investigation was conducted over the course of three days as requested; Thursday, Friday, Saturday from October 27th to 29th 2016. The CLAIMANT'S provided residence was confirmed at , AL which was determined to be an apartment complex. The CLAIMANT was identified on each day of the investigation and observed at different time periods during the day. He operated a different vehicle than reported for him by several sources. A close inspection of the vehicle indicated it had been in a minor accident as the front bumper was damaged and the side passenger mirror was missing. The CLAIMANT operates his vehicle in an aggressive manner, driving above the speed limit, and weaving in and out of traffic. During surveillance, he returned with some purchased items, checked his mail at a community mailbox, visited an onsite laundry facility, and picked up some fast food. When not running errands, his vehicle was identified at his residence during. On Saturday, he departed around mid-morning and traveled to a credit union for a short period of time. He returned home only to depart again and travel to a wholesale food club parking lot in , Georgia. Visual contact with his vehicle was lost inside the busy shopping center and could not be located. He apparently traveled to another destination and used the shopping center parking lot a short cut to avoid heavy traffic congestion in the area. He was not identified at his ex-wife's home which was located nearby and he failed to return to his residence that afternoon before surveillance was suspended.

## Video Link

| **TIME/ DATE/ LOCATION** | **DETAILS** |
|---|---|
| Preliminary Investigation | A driver's license was provided which contained a picture of the CLAIMANT for identification purposes. He was listed as 53 year old, male, 5'6" and 150lbs. His address was listed as , . He reportedly worked for Crown Equipment Corporation. He was hired on 3/2/15 and disabled on 1/23/16. His occupation is a Computer Engineer. His mailing address was provided as . He was reported to be divorced and lives alone as his wife has custody of their two children.<br><br>The CLAIMANT reports he is unable to work due to memory loss, breathing problems, and severe fatigue resulting him to fall asleep in the middle of performing tasks. He reports spending approximately 15 hours in bed. He still has an ability to drive but does not drive continuously more than 25 minutes otherwise it is a hazard. |




| | |
|---|---|
| Thursday<br><u>October 27, 2016</u><br>Apt Homes<br><br>9:03 a.m. | The Investigator arrived in the area and located the captioned street provided as the CLAIMANT'S address. It corresponded to a gated apartment complex. The apartment number was believed to be which corresponded to the street number portion of the provided address. The gate was closed upon arrival so a suitable position was established outside to monitor vehicles arriving and departing the area. Several sources had |

reported the CLAIMANT drove a red or maroon colored Honda Civic; however, the tag number was not known. The CLAIMANT had recently moved from Ohio to Alabama.




11:39 a.m.

A red Honda Civic departed from the apartment complex. The vehicle was operated by an unidentified male. A mobile surveillance was conducted to determine the identity of the driver.

11:51 a.m.

The driver was determined to be a young male and did not fit the CLAIMANT'S description, therefore, the mobile surveillance was suspended and the Investigator returned to the apartment complex.

12:02 p.m.

The Investigator returned to the CLAIMANT'S reported residence. Foot surveillance was conducted through an open gate. The CLAIMANT'S reported apartment was located at the rear of the complex near an exit only gate. The reported red or maroon Honda Civic was not identified. The apartment homes had single car garage door attached to the buildings. Additional unmarked parking was available around the buildings. The garage door next to the CLAIMANT'S marked door was closed.

12:10 p.m.- 3:14 p.m.

The three vehicles parked closest to the CLAIMANT'S apartment were a silver Mercedes Benz, black Toyota Camry and a maroon Honda Accord. The burgundy Honda Accord AL Tag# had a January decal which is assigned to registered owners with last names that start with the letter "A or D". The CLAIMANT'S last name started with the letter "A". Since the vehicle

could be associated with the CLAIMANT a position was established to continue to monitor the vehicles arriving and departing the area.




<u>Investigator's Note:</u> The burgundy Honda Accord would subsequently be confirmed as the CLAIMANT'S vehicle later in the day.

3:15 p.m.- 4:04 p.m. A mail carrier delivered mail to the community mail center and school buses dropped of children during this time.

4:05 p.m. As the CLAIMANT had yet to be observed, the daily surveillance was temporarily suspended at this time.




5:55 p.m.
CLAIMANT'S residence

The Investigator returned to the captioned location and commenced with the daily surveillance. Additional

vehicles were parked in various unmarked spaces around the apartment building. No interior lights were visible within the residence. An exterior light was illuminated over the front door and garage door to the left of the front door. The Investigator noted that the burgundy Honda Accord parked near the residence that afternoon was absent. A suitable position was established nearby.




6:42 p.m.- 6:44 p.m.

The burgundy Honda Accord AL Tag# 47DD190 arrived and parked near the building. A man who fit the CLAIMANT'S description and provided photograph walked into view and unlocked the door to apartment . Based on the description provided this was believed to be the CLAIMANT and shall be hereinafter referred to as such. After unlocking the door he entered the residence and ascended a flight of steps. The door closed behind him. (VIDEO)




6:45 p.m. — The CLAIMANT returned to the parking lot and walked out of view in the darkness toward the burgundy Honda Accord.

6:47 p.m. — The CLAIMANT walked back into view with a single white plastic bag. He entered the residence and the door closed behind him. Interior lights were illuminated.




7:25 p.m. — As there had been no further outside CLAIMANT activity the daily surveillance was suspended at this time.

Friday
<u>October 28, 2016</u>
Apt Homes

The Investigator arrived in the area and commenced with the daily surveillance. The gate was open and allowed access to the apartment units. The burgundy Honda Accord AL Tag# was parked in the same position from the previous evening. No one was inside

7:34 a.m. — of the vehicle. A closer inspection of the vehicle revealed front passenger side bumper damage.




7:35 a.m.- 11:05 a.m. — A suitable position was established nearby to maintain a direct view of the apartment and parking lot area.




11:06 a.m. — The CLAIMANT exited the apartment with a black duffle bag or large backpack over his right shoulder. He walked to the burgundy Honda Accord and placed the black bag in the trunk. He entered the vehicle and backed out of the parking space. The vehicle stopped and the CLAIMANT exited and inspected the front passenger side bumper where previous damage was identified. The CLAIMANT bent over out of view near the damaged part of the vehicle. He rose up and then entered the vehicle and departed the area. A mobile

surveillance was initiated. (VIDEO)









| | |
|---|---|
| 11:11 a.m. | The vehicle stopped at a community mailbox center inside of the complex. The CLAIMANT checked a mailbox and threw items in a nearby trashcan. He entered his vehicle and departed. (VIDEO) |




| | |
|---|---|
| 11:13 a.m. | The CLAIMANT stopped at an onsite laundry facility at the complex. The Investigator was not able to get a position to monitor the CLAIMANT'S activities. |
| 11:21 a.m. | The CLAIMANT departed the area in the burgundy Honda Accord and the mobile surveillance resumed. The Investigator noted that the passenger side mirror was broken on the CLAIMANT'S vehicle. |




| | |
|---|---|
| 11:33 a.m.- 11:36 a.m.<br>Wendy's Fast Food Restaurant<br><br>, AL | The vehicle arrived at the captioned fast food restaurant and proceeded into the drive thru. He obtained his order and then departed the area. |
| 11:40 a.m. | Due to the adverse traffic conditions in the area, the Investigator lost visual contact with the CLAIMANT'S vehicle as it headed back in the general direction of his residence. |
| 11:41 a.m.- 12:49 p.m. | A quick gridsearch of the immediate area failed to reveal the location of the vehicle. A spot check was also conducted for the Sleep & Pulmonary Car Center at 1222 Somerville Road SE, Decatur, AL reported to be one of the CLAIMANT'S physicians. His vehicle was not present. |
| 12:50 p.m.<br>CLAIMANT'S residence | The Investigator returned to the CLAIMANT'S apartment and established a suitable surveillance position nearby. |




| | |
|---|---|
| 1:40 p.m. | Foot surveillance of the complex was conducted and revealed the CLAIMANT'S vehicle as it returned to the apartment from the direction of the onsite laundry facility. The CLAIMANT parked against the curb and entered his apartment. |
| 2:13 p.m. | The CLAIMANT entered his vehicle traveled to the laundry facility. Video was unobtainable due to the brevity of the action. |
| 2:21 p.m. | The CLAIMANT'S vehicle departed from the laundry facility and traveled toward his apartment out of the Investigator's view. |
| 2:22 p.m.- 3:34 p.m. | Surveillance continued: however, there was no further change or outside CLAIMANT activity to report. |



3:35 p.m. The daily surveillance was temporarily suspended at this time.

5:24 p.m. The Investigator returned to the captioned location and established a suitable position outside of the gated complex. During this time the CLAIMANT'S vehicle was not observed arriving or departing the area.

6:31 p.m. The daily surveillance was suspended at this time.




Saturday
<u>October 29, 2016</u>
Apt Homes

The Investigator arrived in the area and commenced with the daily surveillance. The gates at the complex were closed so a suitable position was established nearby to monitor vehicles arriving and departing the area.

8:37 a.m.




9:10 a.m.

The gates were opened so the Investigator switched surveillance positions and established a suitable position near the CLAIMANT'S residence.

10:20 a.m.

The CLAIMANT exited his residence with a black bag which he placed inside the trunk of the burgundy Honda Accord. The vehicle departed and a mobile surveillance was initiated. (VIDEO)




10:28 a.m.
Redstone Federal Credit Union
County Line Road
Madison, AL

The vehicle arrived at the captioned location and parked. The CLAIMANT entered the building as a suitable stationary position was established.




10:31 a.m. The CLAIMANT exited the building, entered his vehicle, and departed the area. (VIDEO)




10:40 a.m. The CLAIMANT returned to his residence and drove out of view toward his apartment. A suitable position was established nearby.

10:44 a.m. The CLAIMANT departed in the burgundy Honda Accord. The mobile surveillance continued.

11:07 a.m. The vehicle entered the captioned location which is best described as a wholesale grocery store. The vehicle disappeared from view inside of the large parking lot which was full of vehicles and customers. A gridsearch of the parking lot was conducted but the CLAIMANT"S vehicle could not be located.

| | |
|---|---|
| 11:08 a.m. | Since other businesses were adjacent to the parking lot the gridsearch continued but met with negative results. |
| 11:22 a.m.<br>2906 6th Street SW<br>Huntsville, AL 35805 | A spot check of the last known address for the CLAIMANT'S ex-wife was conducted which was a few miles away from where visual contact of the CLAIMANT'S vehicle was interrupted.<br><br>No vehicles were present at the residence and there was no outside activity to report. |




| | |
|---|---|
| 11:55 a.m. | The Investigator returned to the CLAIMANT'S apartment complex. The gates were closed. It was not known at this time if his vehicle was inside. A suitable position was established to monitor vehicles arriving and departing the area. |
| 12:15 p.m. | Foot surveillance was conducted but did not reveal the CLAIMANT'S vehicle in the parking lot. |
| 2:41 p.m. | As the CLAIMANT'S whereabouts were still unknown, the daily surveillance was suspended at this time. |




END OF REPORT

<u>Investigation Conducted by:</u>

Doug Poff
DDI
P. O. Box 328
Alpharetta, Georgia 30009

DDI

Donovan and Devlin, Inc.
P.O.Box 328
Alpharetta, GA. 30009

| DATE | INVOICE # |
|---|---|
| 11/2/2016 | 24212 |

| BILL TO |
|---|
| Liberty Mutual Disability<br>P.O.Box 1525<br>Dover,NH. 03821-1525 |

| CASE NO. | TERMS | FEI NO.58-1947172 |
|---|---|---|
| 16-125-1259 | On Receipt | 58-1947172 |

| QUANTITY | DESCRIPTION | AMOUNT |
|---|---|---|
| | CLAIMANT: Mohammed Al-Shareih<br><br>CLAIM #: 5690365<br><br>DATES: October 27-29, 2016<br><br>REQUESTOR: Lisa Gray | |
| 3 | FLAT RATE | 2,025.00 |

| | |
|---|---|
| WHEN DEDICATION DEPENDABILITY & INTEGRITY COUNT THANK YOU FOR YOUR PATRONAGE | **Total** $2,025.00 |

## SUMMARY OF INVESTIGATION

| | | | |
|---|---|---|---|
| **Claimant:** | Mohammed Al-Shareih | **Date:** | November 3, 2016 |
| **Claim #:** | 5690365 | **File #:** | 16-125-1259 |
| **Employer:** | Crown Equipment Corporation | **Injury:** | Hypersomnia |

### Objective

At the request of the Client, three days of surveillance were requested in an effort to determine his level of activity on a Thursday, Friday, and Saturday.

### Directions/Description

From , Alabama, take , AL. Take the and turn left at the traffic light. Travel northbound on for approximately two miles. Turn right onto into the Apartment Complex. The CLAIMANT'S apartment is located near the rear of the complex in building #12 unit number . It is located in the middle of the building with a lower level door and an upper level balcony. The unit has single car attached garages. A second exit only exterior gate is located near the CLAIMANT'S building.

### Summary of Results

The Investigation was conducted over the course of three days as requested; Thursday, Friday, Saturday from October 27th to 29th 2016. The CLAIMANT'S provided residence was confirmed at , AL which was determined to be an apartment complex. The CLAIMANT was identified on each day of the investigation and observed at different time periods during the day. He operated a different vehicle than reported for him by several sources. A close inspection of the vehicle indicated it had been in a minor accident as the front bumper was damaged and the side passenger mirror was missing. The CLAIMANT operates his vehicle in an aggressive manner, driving above the speed limit, and weaving in and out of traffic. During surveillance, he returned with some purchased items, checked his mail at a community mailbox, visited an onsite laundry facility, and picked up some fast food. When not running errands, his vehicle was identified at his residence during. On Saturday, he departed around mid-morning and traveled to a credit union for a short period of time. He returned home only to depart again and travel to a wholesale food club parking lot in Huntsville, Georgia. Visual contact with his vehicle was lost inside the busy shopping center and could not be located. He apparently traveled to another destination and used the shopping center parking lot a short cut to avoid heavy traffic congestion in the area. He was not identified at his ex-wife's home which was located nearby and he failed to return to his residence that afternoon before surveillance was suspended.

## Video Link:

| | | | |
|---|---|---|---|
| **Claimant:** | Mohammed Al-Shareih | **Date:** | November 3, 2016 |
| **Claim #:** | 5690365 | **File #:** | 16-125-1259 |

| <u>**TIME/ DATE/ LOCATION**</u> | <u>**DETAILS**</u> |
|---|---|
| Preliminary Investigation | A driver's license was provided which contained a picture of the CLAIMANT for identification purposes. He was listed as 53 year old, male, 5'6" and 150lbs. His address was listed as . He reportedly worked for Crown Equipment Corporation. He was hired on 3/2/15 and disabled on 1/23/16. His occupation is a Computer Engineer. His mailing address was provided as . He was reported to be divorced and lives alone as his wife has custody of their two children. |

The CLAIMANT reports he is unable to work due to memory loss, breathing problems, and severe fatigue resulting him to fall asleep in the middle of performing tasks. He reports spending approximately 15 hours in bed. He still has an ability to drive but does not drive continuously more than 25 minutes otherwise it is a hazard.




Thursday
<u>October 27, 2016</u>
Apt Homes
9:03 a.m.

The Investigator arrived in the area and located the captioned street provided as the CLAIMANT'S address. It corresponded to a gated apartment complex. The apartment number was believed to be which corresponded to the street number portion of the provided address. The gate was closed upon arrival so a suitable position was established outside to monitor vehicles arriving and departing the area. Several sources had reported the CLAIMANT drove a red or maroon colored

Honda Civic; however, the tag number was not known. The CLAIMANT had recently moved from Ohio to Alabama.




| | |
|---|---|
| 11:39 a.m. | A red Honda Civic departed from the apartment complex. The vehicle was operated by an unidentified male. A mobile surveillance was conducted to determine the identity of the driver. |
| 11:51 a.m. | The driver was determined to be a young male and did not fit the CLAIMANT'S description, therefore, the mobile surveillance was suspended and the Investigator returned to the apartment complex. |
| 12:02 p.m. | The Investigator returned to the CLAIMANT'S reported residence. Foot surveillance was conducted through an open gate. The CLAIMANT'S reported apartment was located at the rear of the complex near an exit only gate. The reported red or maroon Honda Civic was not identified. The apartment homes had single car garage door attached to the buildings. Additional unmarked parking was available around the buildings. The garage door next to the CLAIMANT'S marked door was closed. |
| 12:10 p.m.- 3:14 p.m. | The three vehicles parked closest to the CLAIMANT'S apartment were a silver Mercedes Benz, black Toyota Camry and a maroon Honda Accord. The burgundy Honda Accord AL Tag# had a January decal which is assigned to registered owners with last names that start with the letter "A or D". The CLAIMANT'S last name started with the letter "A". Since the vehicle could be associated with the CLAIMANT a position was |

established to continue to monitor the vehicles arriving and departing the area.




<u>Investigator's Note:</u> The burgundy Honda Accord would subsequently be confirmed as the CLAIMANT'S vehicle later in the day.

3:15 p.m.- 4:04 p.m. A mail carrier delivered mail to the community mail center and school buses dropped of children during this time.

4:05 p.m. As the CLAIMANT had yet to be observed, the daily surveillance was temporarily suspended at this time.




5:55 p.m.
CLAIMANT'S residence

The Investigator returned to the captioned location and commenced with the daily surveillance. Additional vehicles were parked in various unmarked spaces around

the apartment building. No interior lights were visible within the residence. An exterior light was illuminated over the front door and garage door to the left of the front door. The Investigator noted that the burgundy Honda Accord parked near the residence that afternoon was absent. A suitable position was established nearby.




6:42 p.m.- 6:44 p.m.

The burgundy Honda Accord AL Tag# arrived and parked near the building. A man who fit the CLAIMANT'S description and provided photograph walked into view and unlocked the door to apartment . Based on the description provided this was believed to be the CLAIMANT and shall be hereinafter referred to as such. After unlocking the door he entered the residence and ascended a flight of steps. The door closed behind him. (VIDEO)



6:45 p.m. The CLAIMANT returned to the parking lot and walked out of view in the darkness toward the burgundy Honda Accord.

6:47 p.m. The CLAIMANT walked back into view with a single white plastic bag. He entered the residence and the door closed behind him. Interior lights were illuminated.




7:25 p.m. As there had been no further outside CLAIMANT activity the daily surveillance was suspended at this time.

Friday
<u>October 28, 2016</u>
Apt Homes

7:34 a.m.

The Investigator arrived in the area and commenced with the daily surveillance. The gate was open and allowed access to the apartment units. The burgundy Honda Accord AL Tag# was parked in the same position from the previous evening. No one was inside of the vehicle. A closer inspection of the vehicle revealed front passenger side bumper damage.




7:35 a.m.- 11:05 a.m. A suitable position was established nearby to maintain a direct view of the apartment and parking lot area.




11:06 a.m. The CLAIMANT exited the apartment with a black duffle bag or large backpack over his right shoulder. He walked to the burgundy Honda Accord and placed the black bag in the trunk. He entered the vehicle and backed out of the parking space. The vehicle stopped and the CLAIMANT exited and inspected the front passenger side bumper where previous damage was identified. The CLAIMANT bent over out of view near the damaged part of the vehicle. He rose up and then entered the vehicle and departed the area. A mobile surveillance was initiated. (VIDEO)


OCT 28 2016
11:06:44AM


OCT 28 2016
11:07:11AM


OCT 28 2016
11:07:19AM

11:11 a.m.

The vehicle stopped at a community mailbox center inside of the complex. The CLAIMANT checked a mailbox and threw items in a nearby trashcan. He entered his vehicle and departed. (VIDEO)




11:13 a.m.

The CLAIMANT stopped at an onsite laundry facility at the complex. The Investigator was not able to get a position to monitor the CLAIMANT'S activities.

11:21 a.m.

The CLAIMANT departed the area in the burgundy Honda Accord and the mobile surveillance resumed. The Investigator noted that the passenger side mirror was broken on the CLAIMANT'S vehicle.




11:33 a.m.- 11:36 a.m.
Wendy's Fast Food Restaurant

The vehicle arrived at the captioned fast food restaurant and proceeded into the drive thru. He obtained his order

| | |
|---|---|
| Madison Blvd<br>Madison, AL | and then departed the area. |
| 11:40 a.m. | Due to the adverse traffic conditions in the area, the Investigator lost visual contact with the CLAIMANT'S vehicle as it headed back in the general direction of his residence. |
| 11:41 a.m.- 12:49 p.m. | A quick gridsearch of the immediate area failed to reveal the location of the vehicle. A spot check was also conducted for the Sleep & Pulmonary Car Center at 1222 Somerville Road SE, Decatur, AL reported to be one of the CLAIMANT'S physicians. His vehicle was not present. |
| 12:50 p.m.<br>CLAIMANT'S residence | The Investigator returned to the CLAIMANT'S apartment and established a suitable surveillance position nearby. |




| | |
|---|---|
| 1:40 p.m. | Foot surveillance of the complex was conducted and revealed the CLAIMANT'S vehicle as it returned to the apartment from the direction of the onsite laundry facility. The CLAIMANT parked against the curb and entered his apartment. |
| 2:13 p.m. | The CLAIMANT entered his vehicle traveled to the laundry facility. Video was unobtainable due to the brevity of the action. |
| 2:21 p.m. | The CLAIMANT'S vehicle departed from the laundry facility and traveled toward his apartment out of the Investigator's view. |

2:22 p.m.- 3:34 p.m. Surveillance continued: however, there was no further change or outside CLAIMANT activity to report.




3:35 p.m. The daily surveillance was temporarily suspended at this time.

5:24 p.m. The Investigator returned to the captioned location and established a suitable position outside of the gated complex. During this time the CLAIMANT'S vehicle was not observed arriving or departing the area.

6:31 p.m. The daily surveillance was suspended at this time.



Saturday
October 29, 2016

Apt Homes

The Investigator arrived in the area and commenced with the daily surveillance. The gates at the complex were closed so a suitable position was established nearby to monitor vehicles arriving and departing the area.

8:37 a.m.




9:10 a.m. The gates were opened so the Investigator switched surveillance positions and established a suitable position near the CLAIMANT'S residence.

10:20 a.m. The CLAIMANT exited his residence with a black bag which he placed inside the trunk of the burgundy Honda Accord. The vehicle departed and a mobile surveillance was initiated. (VIDEO)



| | |
|---|---|
| 10:28 a.m.<br>Redstone Federal Credit Union<br>County Line Road<br>Madison, AL | The vehicle arrived at the captioned location and parked. The CLAIMANT entered the building as a suitable stationary position was established. |




| | |
|---|---|
| 10:31 a.m. | The CLAIMANT exited the building, entered his vehicle, and departed the area. (VIDEO) |




| | |
|---|---|
| 10:40 a.m. | The CLAIMANT returned to his residence and drove out of view toward his apartment. A suitable position was established nearby. |
| 10:44 a.m. | The CLAIMANT departed in the burgundy Honda Accord. The mobile surveillance continued. |
| 11:07 a.m. | The vehicle entered the captioned location which is best described as a wholesale grocery store. The vehicle |

| | |
|---|---|
| | disappeared from view inside of the large parking lot which was full of vehicles and customers. A gridsearch of the parking lot was conducted but the CLAIMANT"S vehicle could not be located. |
| 11:08 a.m. | Since other businesses were adjacent to the parking lot the gridsearch continued but met with negative results. |
| 11:22 a.m. | A spot check of the last known address for the CLAIMANT'S ex-wife was conducted which was a few |
| 35805 | miles away from where visual contact of the CLAIMANT'S vehicle was interrupted. |
| | No vehicles were present at the residence and there was no outside activity to report. |




| | |
|---|---|
| 11:55 a.m. | The Investigator returned to the CLAIMANT'S apartment complex. The gates were closed. It was not known at this time if his vehicle was inside. A suitable position was established to monitor vehicles arriving and departing the area. |
| 12:15 p.m. | Foot surveillance was conducted but did not reveal the CLAIMANT'S vehicle in the parking lot. |
| 2:41 p.m. | As the CLAIMANT'S whereabouts were still unknown, the daily surveillance was suspended at this time. |




END OF REPORT

Investigation Conducted by:

Doug Poff
DDI
P. O. Box 328
Alpharetta, Georgia 30009

**Memorandum**

| | |
|---|---|
| From: | A. Gray Bullard, MD |
| Date: | 11/2/2016 |
| To: | Case Manager (Lisa Gray) |

# Claim # 5690365

**Claimant**: Al-Shareih, Mohammed

**Company:** Crown Equipment Corporation

**Date of Birth**:

**Date of Disability**: 1/23/2016

**Questions**:

(Dr. Bullard reviewed this file in May 2016. Additional information has been received. Further review is needed. Please refer to Dr. Bullard for review and comment.)

Please review the medical evidence received after your May 2016 review. Further review is needed to determine if diagnoses of hypersomnolence and sleep apnea are supported.

- **Question 1**. Based on your review please outline supported diagnoses.
- **Response 1**. The records support diagnoses of idiopathic hypersomnia, obstructive sleep apnea, and severe chronic obstructive pulmonary disease (COPD). However, the hypersomnia is supported to possibly also be related to untreated obstructive sleep apnea alone, if the claimant is not currently using his CPAP therapy during sleep. Objective data (including polysomnography and multiple sleep latency testing) is inadequate to support impairment secondary to excessive daytime sleepiness requiring more than the accommodations mentioned in Response 3. The records support full-time light work capacity with regards to exertional dyspnea related to severe chronic obstructive pulmonary disease, and is supported by the six-minute walk testing.
- **Question 2.** Does this information alter your May 2016 findings/conclusions regarding this individual's level of impairment and R/L's (Pre X does not need to be addressed). If yes, please outline your findings and specific R/L's.
- **Response 2.** The records do not affect the May 2016 findings/conclusions that the records as a whole support full-time light work capacity, with workplace accommodation for safe work environment, no heights, climbing, crawling, balancing, or work-related driving; and for frequent brief naps if subjectively beneficial to claimant (e.g., up to15 minutes every 2-4 hours if required). The records support that the claimant follow-up closely with his sleep/pulmonary specialist, and use CPAP and alerting therapy as may be indicated according to medical recommendations. If multiple sleep latency testing, maintenance of wakefulness testing, or cardiopulmonary exercise testing is available, I would be happy to review these. If further opinion regarding work capacity or back-to-

work status is desired, then independent medical examination by a pulmonologist-sleep specialist is supported.

- **Question 3.** Dr. Najjar opines EE is totally disabled. Based on your review do you agree?
- **Response 3.** The records are insufficient to support absence of work capacity on the basis of either hypersomnia or severe COPD.
- **Question 4.** Based on your review of the updated medical evidence does this individual have the capacity to sustain full time sedentary work? Please explain.
- **Response 4.** The records support that the claimant has capacity to sustain full-time sedentary work with the workplace accommodations noted.

**Analysis**: This analysis is a summary of the analysis in the original report: Hypersomnia refractory to effective therapy for sleep apnea may be related to sedating medications, insufficient sleep syndrome, inadequate sleep hygiene, idiopathic hypersomnolence, or narcolepsy. Narcolepsy versus idiopathic hypersomnolence are determined using multiple sleep latency testing, which is normally performed off all stimulant drugs and agents, and after sleep apnea has been effectively controlled with positive airway therapy (e.g., CPAP, BiPAP, ASV, etc.). The claimant is supported to have idiopathic hypersomnia (IHS).[i] It is important to rule-out by history, sleep diary or actigraphy, depression and other affective disorders, insufficient sleep, and disturbance of circadian rhythms (e.g., advanced sleep phase syndrome and delayed sleep phase syndrome). Hypothyroidism and iron deficiency with or without anemia can also cause excessive sleep and daytime sleepiness and should be assessed for and corrected as appropriate.[ii] A night-time sleep test (polysomnogram) is performed followed by multiple sleep latency testing (MSLT) the day after during which the patient is given an opportunity to fall asleep on 4 or 5 occasions at 2-hour intervals after waking up. This testing performed at a sleep laboratory rules out other causes of sleepiness such as obstructive sleep apnea, and the MSLT in individuals with idiopathic hypersomnolence usually demonstrates an average latency to sleep of < 8 minutes, and the intrusion of dream sleep into 1 or fewer daytime naps.[iii]

**Review of Records**:

Response letter from Dr. Najjar signed by Dr. Najjar 5/26/2016 states no lifting, pushing, pulling over 5 pounds; occasional Christine, bending; squatting; occasional bending/twisting; no stooping on kneeling. Standing 3 min. per hour, walking 2 min. per hour, sitting 30 min. per hour. Limitations of reaching at and above shoulder level indicating "frequent"; limit work activities and driving to 0.5 hours per day for 1 min. per hour; "he has hard to control hypersomnia." The claimant "may not return to work with the above accommodations."

September 26, 2016 surveillance report reviewed, negative for identification the claimant on September 19, 2006.

Pulmonary/sleep clinic records from October 7, 2016 (Dr. Najjar) reviewed. Active medications include pro-air inhaler, Medrol 1 mg 30 day, Methylin 5 mg TID and 10 mg TID, Symbicort 160-4.5 2 puffs BID. BP 9/6/2016 110/55, pulse 80, BMI 26.1. "Current smoker every day." Problems include "idiopathic hypersomnia without long sleep time, chronic obstructive pulmonary disease…primary hypersomnia, obstructive sleep apnea…shortness of breath…other ill-defined heart diseases…" Carotid ultrasound 8/2016 normal, echocardiogram 8/26/2016 with left ventricular ejection fraction 79%, right ventricular systolic pressure estimate 32, mild mitral regurgitation. Polysomnogram 8/12/2016 with total sleep time 331 minutes, total recording tie 368 minutes, AHI 0.5, 3 apneas and hypopneas, no periodic limb movements, minimum SpO2 93%, sleep efficiency 90%, latency to sleep onset 5 minutes. Lights out 9:06 p, lights on 3:14 a. Stage N1 0.6%, N2 89%, N3 0%, Stage R 11%. CPAP study, with beginning pressure 5, ending pressure 8, optimal pressure 8 cwp. Pulmonary function testing 8/15/2016 with FVC 1.27 L (30% predicted), FEV1 0.92 (28% predicted), FEV1/FVC 72%, 15% decrease in FEV1 after bronchodilators, and FEV1/FVC 68% after bronchodilators. FEV1 decreased to 0.77L or 23% predicted after bronchodilators. SVC 1.46 L, or 34% predicted. In terms of other procedures, claimant had "good…effort and cooperation. The results of this test meets ATS standards for acceptability and repeatability…could not trigger DLCO properly, nor could he cooperate with lung volume measurements, according to the technician. "the expiratory time was less than 6 seconds, which may underestimate the degree of obstruction. (Claimant) effort was erratic which makes it impossible to adequately evaluate the flow volume loops. The FVC is reduced relative to the SVC indicating air trapping." Impression is "severe obstructive airways disease."

Clinic note Dr. Najjar 9/6/2016 states problems of "Cdentral idiopathic hypersomnia, chronic obstructive pulmonary disease, hypersomnia, nonorganic sleep apnea, valvular heart disease." Complaints are "fatigue, shortness of breath, hypersomnia, interrupted sleep." Medications reviewed; Methylin 10 mg/5mg TID, ProAir HFA inhaler as needed qid, Medrol 4 mg therapy pack, Symbicort BID. CPAP 8 cwp. No oxygen. Current everyday smoker: "He quit smoking years ago." Plan was pulmonary function tests, multiple sleep latency testing (MSLT), bronchodilators, steroids. 9/1/2016, 8/15/2016, 7/14/2016, 3/14/2016, 1/25/2016 clinic notes with similar findings. SpO293% room air 8/15/2016. 1/4/2016 clinic note "states that he is exhausted all the time. It is starting to seriously affect his work. States that he uses his CPAP all night unitl he pulls it off in his sleep. States that he could not tolerate the BiPAP." MSLT to be performed "for reason of fatigue/hypersomnia and…alertness, mood swings, memory and forgetfulness levels…on Provigil. Failed 10/5/2015." Started Methylin 15 mg TID with 20 mg ER q AM, with plans to repeat maintenance of wakefulness testing.

Initial case review dated 4/27/2016:

Question 1. Tx - 4/8/2016: Diagnoses: Chronic idiopathic hypersomnia, COPD, nonorganic sleep apnea on cpap, valvular heart disease. Co-Morbids: Hyperlipidemia and headaches. Provider: Dr. Najjar, Sleep/Pulmonary. Symptoms: Fatigue and shortness of breath. Need further assessment/clarification to determine if this individual received treatment for COPD, sleep apnea and Chronic Idiopathic hypersomnia during the pre x period. Pre X period is December 2, 2014 through March 1, 2015.

The Policy states: Pre-Existing Condition Exclusion. This policy will not cover any Disability or Partial Disability:
1. which is caused or contributed to by, or results from, a Pre-Existing Condition; and
2. which begins in the first 12 months immediately after the Covered Persons effective date of coverage, unless he received no Treatment of the condition for any three consecutive months after his effective date of coverage.
"Pre-Existing Condition" means a condition resulting from an Injury or Sickness for which the Covered Person is diagnosed or received Treatment within three months prior to the Covered Persons effective date of coverage.
Based on your review of the medical evidence, including pharmacy records, did this individual receive treatment for the COPD, sleep apnea and chronic idiopathic hypersomnia between December 3, 2014 through March 1, 2015? Please explain.
Response 1. It is more likely than not, but not clear from the records provided, that the claimant received treatment during the pre-existing period of December 3, 2014 through March 1, 2015 for chronic obstructive pulmonary disease, obstructive sleep apnea, and idiopathic hypersomnia.
Question 2. If the individual did not receive treatment during the pre x period please address the following questions: Are the above diagnoses supported by the medical and diagnostic evidence on file? Are the individual's self-reports of fatigue, drowsiness and shortness of breath supported by the medical evidence on file?
Response 2. The records support diagnoses of idiopathic hypersomnia, obstructive sleep apnea, and severe chronic obstructive pulmonary disease (COPD). However, the hypersomnia is supported to possibly also be related to untreated obstructive sleep apnea alone, if the claimant is not currently using his CPAP therapy during sleep. Objective data (including polysomnography and multiple sleep latency testing) is inadequate to support impairment secondary to excessive daytime sleepiness requiring more than the accommodations mentioned in Response 3. The records support full-time light work capacity with regards to exertional dyspnea related to severe chronic obstructive pulmonary disease, and is supported by the six-minute walk testing.
Question 3. Please provide restrictions and limitations consistent with the medical evidence on file.
Response 3. The records support full-time light work capacity, with workplace accommodation for safe work environment, no heights, climbing, crawling, balancing, or work-related driving; and for frequent brief naps if subjectively beneficial to claimant (e.g., up to15 minutes every 2-4 hours if required). The records support that the claimant followup closely with his sleep/pulmonary specialist, and use CPAP and alerting therapy as may be indicated according to medical recommendations.
Question 4. If further clarification is needed regarding this individual's treatment, clinical status and R/Ls please contact Dr. Najjar.
Response 4. I placed a call to Dr. Najjar's office at 11 AM April 27, 2016. His receptionist Stephanie took my phone number and stated she would have him return the call. I received no callback by afternoon, and so called again and spoke with Stephanie; she stated she would have him return my call. If/when I receive a callback, I will prepare an addendum to this report.

Question 5. Do the medical records reasonably support that the insured has impairments attributable to his COPD, sleep apnea and hypersomnia that would preclude him from carrying out his usual life activities including work related activities?
Response 5. The records do not support impairment from carrying out her usual life activities including work-related activities, within the specifications noted in Response Three.
Question 6. Please define the restrictions and limitations that are reasonably supported and their timeframe.
Response 6. See Response Three; these restrictions and limitations are indefinite in duration."

5/11/2016 addendum to report: "I called Dr. Najjar at 256-341-0152 on 4/27/2016. The case manager reports that Dr. Najjar's office noted that there was a callback from Dr. Najjar to the case reviewer, and to the best recollection, Dr. Najjar did return a call the next day and stated that the claimant was impaired from COPD and hypersomnia with respect to work, and that he was not sure if the claimant had work capacity or if he would regain work capacity. I called again today at 5:50 pm to clarify his opinion further, but the male telephone attendant (name unclear) stated that Dr. Najjar was seeing appointments and would call back later. I asked if I could speak with the physician briefly at the time of the call to confirm his impressions, but was suddenly disconnected. However, the attendant did take my contact information. If any other information is obtained that confirms that the claimant has no full-time work capacity related to either dyspnea from COPD or hypersomnia, I will complete a further addendum.
Conclusions: The conclusions of the 4/27/2016 report are unchanged, namely, that the records are insufficient to support absence of full-time work capacity as noted in the report. However, the records support that the claimant be evaluated in Dr. Najjar's office for the purpose of completing a Restrictions and Limitations form to clarify his current opinion, on the basis of recent clinic examination specific for work capacity determination, as to the degree of impairment."

Claims listing for pharmacy claims reviewed with dates July 8, 2015 through March 18, 2016. These include modafinil (7/8/2015), fenofibrate, methylphenidate, Symbicort, pro-air. Additional claims listing for pharmacy claims reviewed with dates April 13, 2015 through March 14, 2016. Additional claims listing for pharmacy claims reported March 25, 2016 list pharmacy orders dated October 13, 2015 through March 18, 2016.

There is a form signed March 28, 2016 by Dr. Sharma of Family Health Center stating that claimant has been under his care from December 2015 to present.

Clinic note August 10, 2015 from Dr. Sharma states that claimant "is here to get reestablished with me. He was seen here in July of 2011 last time. He was diagnosed with high triglycerides and was prescribed trilipix.… Today for few months and then discontinued difficulty losses medical insurance and he never followed up after that. He works in Ohio and he comes here every 2 to 4 weeks of his family still here.… Lots lab orders to have his cholesterol recheck. He has been trying to stay compliant with low-fat diet. He stays active. He also has problems with direction and in the past aching silence

helped him as needed and he was a prescription for that. He is in the side effects from Cialis. He has no other issues today." Occasional headaches. Examination essentially normal. Plan was follow-up for laboratories in two weeks. October 5, 2015 clinic visit with Dr. Sharma showed room air oxygen saturation 97% room air, blood pressure 109/70, height 5 foot 4.5 inches, body mass index 27, pulse 89, temperature 97. Laboratories from December 2015 discussed. Claimant "states that he drinks so there is an sweet tea all day long because you need caffeine to stay awake because of his sleep apnea." Counseled to stop drinking sodas and sweet tea. March 14, 2016 clinic visit with Dr. Sharma reviewed. High triglycerides, compliant with fenofibrate. Other medications include Cialis, methylphenidate 10 mg, methylphenidate 5 mg, methylphenidate ER 20 mg extended release, modafinil 200 mg, pro-air HSA inhaler, Symbicort 160 MCG/4.5 MCG. Clinic visit July 1, 2016 reviewed. Clinic visit March 14, 2016 vital signs contains problems of mixed hyperlipidemia, evidence, headache, impaired fasting glycemia. Patient refused colonoscopy in August 2015. Medications filled in January and February 2016 reviewed.

Laboratory work December 30, 2015 reviewed with CBC and chemistries unremarkable except for glucose 104. September 2015 bloodwork with cholesterol elevated at 215, triglycerides elevated at 253, LDL elevated at 140.

Disability claim form completed by Dr. Najjar April 14, 2016 states that prognosis is "good" for "central idiopathic hypersomnia, severe COPD" with first visit April 13, 2015, last visit March 14, 2016, date of first treatment July 2, 2015, date firsts symptoms appeared April 13, 2015, dates claimant advised to cease work January 4, 2016. Class 5 physical impairment ("incapable of minimum activity"), classified mental/nervous impairment.

Liberty Mutual restrictions form dated March 14, 2016 by Dr. Najjar stated sedentary work capacity (lifting/carrying up to 10 pounds occasionally, sitting over 50% of the time and standing/walking occasionally). "With central idiopathic hypersomnia, he needs frequent naps and a stimulating medicine. Severe COPD, needs frequent rest and use of bronchodilators in addition to restrictions as above." "Can't foresee return time" to work.

Clinic note Dr. Najjar pulmonary and sleep medicine dated April 13, 2015 states problems up "hypersomnia, nonorganic sleep apnea." Blood pressure 110/72, pulse 65 and regular, body mass index 25, oxygen saturation room air 94%. Physical examination normal. Plan was to perform polysomnography with CPAP retitration. April 30, 2015 clinic note for hypersomnolence notes the claimant is not using CPAP nor supplemental oxygen. Plan was to continue with CPAP therapy five CWP, with "good CPAP use in response (two) therapy", and to perform multiple sleep latency testing and annual echocardiography. The note is signed by Sofia Barnes, CRNP. July 20, 2015 clinic note with multiple sleep latency testing demonstrating borderline hypersomnia with subjective hypersomnia "affecting work, falls asleep" on Provigil. October 28, 2015 clinic note states that CPAP wakes claimantup. December 7, 2015 clinic visit start methylphenidate 50 mg TID with 20 mg extended release each morning. 1/25/2016 clinic note reviewed. SpO2 97%.

4/18/2015 sleep study reviewed: lights out 933p, lights on 410a, total recording time 397 m, total sleep time 387 m, sleep latency within normal limits at 10.5 minutes, 1% Stage 1, 71% Stage 2, 0% stage 3, 24% Stage R. conclusion was "mild OSA ; CPAP study and therapy" indicated. Multiple sleep latency testing (MSLT) October 5, 2015 with five naps, sleep latency 14.9, 3.8, and 2.8 minutes (mean not provided but calculated at 7.2 minutes) in the first three naps, no sleep fourth nap, no sleep onset REM periods. There is no routine urine drug screen provided with MSLT. “Significant hypersomnia” and Provigil 200 mg daily started.

Carotid ultrasound April 29, 2015 normal. Pulmonary function studies January 4, 2016 with FVC 1.26 L (29% predicted), FEV1 0.74 L (22% predicted), 53% improvement in FEV1 following bronchodilators (to 2.13 L, 50% predicted), with FEV1/FVC ratio 58% and changing to 53% with bronchodilators. 6 min. walk test January 25, 2016 with peak heart rate 87, BORG score for, no chest pain. Echocardiogram with EF 64%, mild mitral regurgitation, trace tricuspid regurgitation, pulmonary systolic pressure estimate 20 mm HG, normal chambers and valves.

Letter to whom it may concern dated November 17, 2015 from Dr. Najjar states that claimant "is currently being treated for obstructive sleep apnea and hypersomnia. It is vitally important that he received time to have these conditions evaluated and treated. Without proper medical management (e.g. testing, office assesses, evaluation) seeking damages helping reduce productivity. With proper medical management is possible for him to function at work at this time." Letter to whom it may concern dated January 4, 2016 states that "I had diagnosed (claimant) with both sleep apnea and central idiopathic hypersomnia, both impacting daytime functionality and concentration. In addition, he has a severe obstructive lung disease diagnosis."

**Job description:** electrical engineer. Occupational analysis 5/12/2016 indicates sedentary physical capacity.

I reviewed the records of this claimant that have been provided to me. If any other records are made available, my opinions are subject to change. I have reached my conclusions within a reasonable degree of medical certainty.
This attestation certifies that the peer reviewer named below has the appropriate scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review and has current, relevant experience and/or knowledge to render a determination for the case under review.

(electronically signed)

A. Gray Bullard, MD, FACP, FCCP, D-ABSM

Board Certified in Pulmonary Medicine, American Board of Internal Medicine

Board Certified in Sleep Medicine, American Board of Sleep Medicine

---

[i] American Academy of Sleep Medicine. *The international classification of sleep disorders: diagnostic - coding manual*. 2nd ed. Westchester, IL: American Academy of Sleep Medicine; 2005.
[ii] http://sleep.emory.edu/sleep_disorders/idiopathic_hypersomnia/diagnosis.html. Accessed 6/30/2014.
[iii] Diagnostic and Statistical Manual of Mental Disorders, 5th Edition (DSM-V).

# Sleep & Pulmonary Care Center, P.C

**Mamoun I. Najjar, M.D.**
Tel 1-866-95-APNEA (256) 341 0152 Fax (256) 341 0587

## Facsimile Transmittal Sheet

To: Lisa Gray From: Shantel

Company: Date: 10-28-16

Fax Number: 1603-334 5715 Total Number of Pages Including Cover: 86

Phone Number:

RE: Mohammed Al-Shareih

Notes/Comments: Records

The information contained in this facsimile transmittal sheet and documents that follow are for the exclusive use of the addressee named above and may contain confidential and privileged information. If the recipient of this facsimile is not the addressee named above, you are hereby notified that any reading, photocopying, distributing, or other use of this facsimile, or its contents, is strictly prohibited. If you receive this facsimile in error, please call us immediately so that we can arrange for the return of the documents.

Liberty Mutual. INSURANCE

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
(888) 437-7611
Secure Fax No.: (603) 334-5715

| | |
|---|---|
| Date: | September 9, 2016 |
| To: | DR. MAMOUN NAJJAR<br>1222 SOMERVILLE ROAD SE<br>DECATUR AL 35601 |
| Attn: | |
| Fax: | (256) 341-0587 |
| From: | Lisa Gray<br>Disability Claims Tech Spec<br>Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-5715 |
| Total Pages (Including Cover): | 5 |
| RE: | Claim #: 5690365<br>Claimant: Mohammed Al-Shareih<br><br>Crown Equipment Corporation |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

CROWN

Please fax completed form to 419-629-3059 Medical Department

# Attending Physician's Authorization to Return to Work

| Employee Name | Employee Number | Last day worked |
|---|---|---|
| | | |

I, Mohammed Al-Shareih have authority to release protected health information about myself or ____________________. I hereby authorize my attending physician to release the information below to the Crown Medical Department. **I have advised my physician as to the physical requirements necessary for the complete performance of my job at the workplace.**

This authorization expires when this condition resolves. However, I understand that I may revoke this authorization at any time by advising the affected person(s) and entities identified herein in writing of such revocation.

The undersigned understands there is some potential for information disclosed pursuant to this authorization to be redisclosed and to lose its protected status.

Al-Shareih

Signature of Individual

Signature and relationship of representative who warrants they have authority to sign

Date

**Please complete steps 1 & 2 (and if applicable step 3)**

1.

Diagnosis __________

ICD-10 Code __________

WORK ACTIVITY

2.

☐ May return to work without restrictions on ________(including weekend dates)

OR

☐ May return to work with restrictions on ________ (including weekend dates)

- Complete Work Capabilities list on right.
- **Restrictions apply to work and non-work activities.**
- Restrictions expire on________

OR

☒ Is totally disabled from work, estimated Return To Work Date ________

- **Please explain why the employee is unable to work based on the ICD-10 code diagnosis.**

__________

3. Work Capabilities

| % of 8 hr. workday / Repetitions per hour | None 0% | Infrequent 1-10% Up to 2 | Occasional 10 - 33% 4-6 | Frequent 34-66% 6 - 12 | Continuous 67-100% 13+ |
|---|---|---|---|---|---|
| Lift/Carry/Push/Pull | | | | | |
| Up to 10 lbs. | ☐ | ☐ | ☐ | ☐ | ☐ |
| 11 - 20 lbs. | ☐ | ☐ | ☐ | ☐ | ☐ |
| 21 - 30 lbs. | ☐ | ☐ | ☐ | ☐ | ☐ |
| 31 - 40 lbs | ☐ | ☐ | ☐ | ☐ | ☐ |
| 41 - 50 lbs. | ☐ | ☐ | ☐ | ☐ | ☐ |
| Bend/Stoop/Twist | ☐ | ☐ | ☐ | ☐ | ☐ |
| Reach below Knee Level | ☐ | ☐ | ☐ | ☐ | ☐ |
| Squat/Kneel/Crawl | ☐ | ☐ | ☐ | ☐ | ☐ |
| Climb Stairs | ☐ | ☐ | ☐ | ☐ | ☐ |
| Climb ladders | ☐ | ☐ | ☐ | ☐ | ☐ |
| Upper Extremity Restrictions - | | Right ☐ | | Left ☐ | |
| Grip/Grasp | ☐ | ☐ | ☐ | ☐ | ☐ |
| Torque | ☐ | ☐ | ☐ | ☐ | ☐ |
| Work w/ Arm Outstretched | ☐ | ☐ | ☐ | ☐ | ☐ |
| Work above Chest Level | ☐ | ☐ | ☐ | ☐ | ☐ |
| Vibratory Tools | ☐ | ☐ | ☐ | ☐ | ☐ |
| Pinch Grip | ☐ | ☐ | ☐ | ☐ | ☐ |

No lifting greater than ________

No use of: ☐ Arm ☐ Hand ☐ Finger ________

☐ Sit/Stand as necessary

☐ May work only ____ hours per shift.

Comments or Additional Restrictions ________

Next appointment is: ________

Physician's Name ________ Print ________ Date ________ Signature

Received at Crown: ________ Copy to: ☐ Leave Adm. ☐ Case Manager

DF4784 PC Rev. 03/16

This form is HIPAA compliant

**ALSHAREIH, MOHAMMED 53y M**
DOB:

# Patient Chart Report

SLEEP & PULMONARY CENTER, P.C.

10/28/16 1:30 pm

## Patient Information

### Demographics

| | |
|---|---|
| Patient Number | **10583** |
| Chart Number | **2272s** |
| Age/Sex | **53y M** |
| Marital Status | |
| Emp. Status | |
| Assigned Prov | **Najjar, Mamoun I. M.D.** |
| Primary Care Prov | **Najjar, Mamoun I. M.D.** |
| Care Coordinator | |
| Referring Prov | |
| Rel. to Guarantor | **Self** |
| Date of Birth | |
| Race | |
| Language | **English** |
| Mother's Maiden | |
| Social Security # | |
| Became Patient | **04/08/11** |
| Last Visit | **09/06/16** |
| Home Phone | |
| Work Phone | |
| Mobile Phone | |
| Address | |
| Patient Consent | **Yes** |
| Rx History Consent | **Rx Hx Consent Given for Any Prescriber** |
| Date Set | **01/01/00** |
| Consent Notes | **Set During Patient Registration.** |

### Additional Information

| | |
|---|---|
| Email | |
| Recall Method | **Paper** |

## Guarantor Information

| | |
|---|---|
| Guarantor | **ALSHAREIH, MOHAMMED** |
| Home Phone | |
| Work Phone | |
| Address | |
| City, State & Zip | **Huntsville AL 35814-0859** |
| Date of Birth | |
| Social Security # | |
| Account Date | **04/08/11** |
| Employer | |
| Emp. Status | |

ALSHAREIH, MOHAMMED 53y M
DOB:

## Patient Chart Report

SLEEP & PULMONARY CENTER, P.C.

10/28/16 1:30 pm

### Patient Information

### Insurance Information

| | Insurance Plan Name | Insurance ID | Group # | Subscriber Name | Relation | Start and End Dates |
|---|---|---|---|---|---|---|
| 1 | Aetna | W218475409 | 868203-014-00008 | ALSHAREIH, MOHAMMED | Self | |

ALSHAREIH, MOHAMMED 53y M
DOB:

# Patient Chart Report

10/28/16 1:30 pm

SLEEP & PULMONARY
CENTER, P.C.

## Active Problems Summary

| Problem | Code | Specialty | Chronicity | Status | Onset | Last Assessment | User | Last Upd |
|---|---|---|---|---|---|---|---|---|
| Hypersomnia | F51.11 | | Chronic | Active | 04/13/15 | Unchanged | Mamoun Najjar, M.D. | 04/13/2015 |
| Nonorganic Sleep Apnea | G47.33 | | Chronic | Active | 04/13/15 | Unchanged | Mamoun Najjar, M.D. | 04/13/2015 |
| Valvular Heart Disease | I51.89 | | Chronic | Active | 04/30/15 | Unchanged | Sophia Barnes | 04/30/2015 |
| Central Idiopathic Hypersomnia | G47.12 | | Chronic | Active | 01/04/16 | Unchanged | Mamoun Najjar, M.D. | 01/04/2016 |
| Chronic Obstructive Pulmonary Disease | J44.9 | | Chronic | Active | 01/04/16 | Unchanged | Mamoun Najjar, M.D. | 01/04/2016 |

## Active Medications

| Drug Name | Diag | Dosage | Days | User | Status | Issued/Reported |
|---|---|---|---|---|---|---|
| ProAir HFA 108 (90 Base) | | 30 days, 3 | 14 | Mamoun Najjar | Current | 07/14/2016 |
| Medrol 4 MG Tablet Therapy | | 30 days, 0 | 1 | Mamoun Najjar | Current | 07/14/2016 |
| Methylin 5 MG Tablet | | tid 30 days, 0 | 1 | Mamoun Najjar | Current | 06/20/2016 |
| Methylin 10 mg Tablet | | tid 30 days, 0 | 1 | Mamoun Najjar | Current | 06/20/2016 |
| Symbicort 160-4.5 MCG/ACT | | 2bid 30 days, 3 | 1 | Mamoun Najjar | Current | 06/20/2016 |
| ProAir HFA 108 (90 Base) | | ud 30 days, 3 | 1 | Mamoun Najjar | Current | 06/20/2016 |

## All Lab Results -- 10/28/15 to 10/28/16

| Component | Flag | Result | Units | Range | Status |
|---|---|---|---|---|---|

No Data Found

## Clinical History for Active History

| Medical History | Qualifiers | Comments | User | Updated |
|---|---|---|---|---|
| Past medical history reviewed with patient | | and/or representative. | Angie Gann | 08/28/2016 |

| Social History | Qualifiers | Comments | User | Updated |
|---|---|---|---|---|
| Social history | | reviewed with patient or representative. | Angie Gann | 08/28/2016 |

**ALSHAREIH, MOHAMMED 53y M**
DOB:

# Patient Chart Report

SLEEP & PULMONARY
CENTER, P.C.

10/28/16 1:30 pm

## Clinical History for Active History

| | | | |
|---|---|---|---|
| Not a current smokeless tobacco user | Result: normal | BreAnna Phillips | 08/28/2016 |
| Smoking status | : Current everyday smoker, Result: abnormal | Angie Gann | 08/28/2016 |

| Family History | Qualifiers | Comments | User | Updated |
|---|---|---|---|---|
| Family medical history | | reviewed with patient or representative. | Angie Gann | 08/28/2016 |

## Procedure History -- 10/28/15 to 10/28/16

| Service Date | Procedure | Description | Diagnoses | Provider |
|---|---|---|---|---|
| 09/06/2016 | 99212 | OFFICE/ OUTPUT VIS ESTB/ STR | J44.9, G47.12 | Gann, Angela NP |
| 09/01/2016 | 99214 | OFFICE/ OUTPT VIS ESTB/ MOD | J44.9, G47.12, G47.33, F51.11 | Najjar, Mamoun I. M.D. |
| 08/26/2016 | 93880 | Duplex Scan of extracranial arteries, bilateral | R42 | Najjar, Mamoun I. M.D. |
| 08/26/2016 | 93306 | ECHOCARDIOGRAPHY | R06.02 | Najjar, Mamoun I. M.D. |
| 08/15/2016 | 94729 | Diffusing Capacity - PFT | J44.9 | Najjar, Mamoun I. M.D. |
| 08/15/2016 | 94726 | Plethysmography for lung volumes and air resistance | J44.9 | Najjar, Mamoun I. M.D. |
| 08/15/2016 | 94060 | BRONCHODILATION RESPONSIVENESS, SPIROMETRY | J44.9 | Najjar, Mamoun I. M.D. |
| 08/15/2016 | 99214 | OFFICE/ OUTPT VIS ESTB/ MOD | G47.33, I51.89, J44.9, G47.12 | Najjar, Mamoun I. M.D. |
| 08/12/2016 | 95811 | PSG w/ CPAP | G47.33 | Najjar, Mamoun I. M.D. |
| 07/14/2016 | 99214 | OFFICE/ OUTPT VIS ESTB/ MOD | J44.9, F51.11, G47.33, I51.89 | Gann, Angela NP |
| 03/14/2016 | 99213 | OFFICE/ OUTPT VIS ESTB/ LOW | J44.9, G47.33, F51.11, G47.12 | Kipchumba, Mary |
| 01/30/2016 | E0601-NU | CPAP Device | G47.30 | Najjar, Mamoun I. M.D. |
| 01/25/2016 | 94620 | 6 minute walk test | G47.33 | Najjar, Mamoun I. M.D. |
| 01/25/2016 | 99214 | OFFICE/ OUTPT VIS ESTB/ MOD | G47.33 | Najjar, Mamoun I. M.D. |
| 01/04/2016 | 71020 | Chest Xray PA/Lat | J44.9 | Najjar, Mamoun I. M.D. |
| 01/04/2016 | 94729 | Diffusing Capacity - PFT | J44.9 | Najjar, Mamoun I. M.D. |
| 01/04/2016 | 94726 | Plethysmography for lung volumes and air resistance | J44.9 | Najjar, Mamoun I. M.D. |
| 01/04/2016 | 94060 | BRONCHODILATION RESPONSIVENESS, SPIROMETRY | J44.9 | Najjar, Mamoun I. M.D. |
| 01/04/2016 | 99215 | OFFICE/ OUTPT VIS ESTB/ HIGH | G47.12, G47.33, J44.9, F51.11 | Najjar, Mamoun I. M.D. |
| 12/30/2015 | E0601-NU | CPAP Device | G47.30 | Najjar, Mamoun I. M.D. |
| 12/07/2015 | 99214 | OFFICE/ OUTPT VIS ESTB/ MOD | G47.12, F51.11, G47.33 | Najjar, Mamoun I. M.D. |
| 11/30/2015 | E0601-NU | CPAP Device | G47.30 | Najjar, Mamoun I. M.D. |
| 11/09/2015 | 95805 | MSLT sleep test | G47.10 | Najjar, Mamoun I. M.D. |
| 10/30/2015 | E0601-NU | CPAP Device | G47.30 | Najjar, Mamoun I. M.D. |

ALSHAREIH, MOHAMMED 53y M
DOB:

# Patient Chart Report

10/28/16 1:30 pm

SLEEP & PULMONARY
CENTER, P.C.

## Diagnosis History -- 10/28/15 to 10/28/16

| Service Date | Code | Description | Provider |
|---|---|---|---|
| 09/06/2016 | G47.12 | Idiopathic hypersomnia without long sleep time | Gann, Angela NP |
| 09/06/2016 | J44.9 | Chronic obstructive pulmonary disease, unspecified | Gann, Angela NP |
| 09/01/2016 | F51.11 | Primary hypersomnia | Najjar, Mamoun I. M.D. |
| 09/01/2016 | G47.12 | Idiopathic hypersomnia without long sleep time | Najjar, Mamoun I. M.D. |
| 09/01/2016 | G47.33 | Obstructive sleep apnea (adult) (pediatric) | Najjar, Mamoun I. M.D. |
| 09/01/2016 | J44.9 | Chronic obstructive pulmonary disease, unspecified | Najjar, Mamoun I. M.D. |
| 08/26/2016 | R06.02 | Shortness of breath | Najjar, Mamoun I. M.D. |
| 08/26/2016 | R42 | Dizziness and giddiness | Najjar, Mamoun I. M.D. |
| 08/15/2016 | G47.12 | Idiopathic hypersomnia without long sleep time | Najjar, Mamoun I. M.D. |
| 08/15/2016 | G47.33 | Obstructive sleep apnea (adult) (pediatric) | Najjar, Mamoun I. M.D. |
| 08/15/2016 | I51.89 | Other ill-defined heart diseases | Najjar, Mamoun I. M.D. |
| 08/15/2016 | J44.9 | Chronic obstructive pulmonary disease, unspecified | Najjar, Mamoun I. M.D. |
| 08/12/2016 | G47.33 | Obstructive sleep apnea (adult) (pediatric) | Najjar, Mamoun I. M.D. |
| 07/14/2016 | F51.11 | Primary hypersomnia | Gann, Angela NP |
| 07/14/2016 | G47.33 | Obstructive sleep apnea (adult) (pediatric) | Gann, Angela NP |
| 07/14/2016 | I51.89 | Other ill-defined heart diseases | Gann, Angela NP |
| 07/14/2016 | J44.9 | Chronic obstructive pulmonary disease, unspecified | Gann, Angela NP |
| 03/14/2016 | F51.11 | Primary hypersomnia | Kipchumba, Mary |
| 03/14/2016 | G47.12 | Idiopathic hypersomnia without long sleep time | Kipchumba, Mary |
| 03/14/2016 | G47.33 | Obstructive sleep apnea (adult) (pediatric) | Kipchumba, Mary |
| 03/14/2016 | J44.9 | Chronic obstructive pulmonary disease, unspecified | Kipchumba, Mary |
| 01/30/2016 | G47.30 | Sleep apnea, unspecified | Najjar, Mamoun I. M.D. |
| 01/25/2016 | G47.33 | Obstructive sleep apnea (adult) (pediatric) | Najjar, Mamoun I. M.D. |
| 01/04/2016 | F51.11 | Primary hypersomnia | Najjar, Mamoun I. M.D. |
| 01/04/2016 | G47.12 | Idiopathic hypersomnia without long sleep time | Najjar, Mamoun I. M.D. |
| 01/04/2016 | G47.33 | Obstructive sleep apnea (adult) (pediatric) | Najjar, Mamoun I. M.D. |
| 01/04/2016 | J44.9 | Chronic obstructive pulmonary disease, unspecified | Najjar, Mamoun I. M.D. |
| 12/30/2015 | G47.30 | Sleep apnea, unspecified | Najjar, Mamoun I. M.D. |
| 12/07/2015 | F51.11 | Primary hypersomnia | Najjar, Mamoun I. M.D. |
| 12/07/2015 | G47.12 | Idiopathic hypersomnia without long sleep time | Najjar, Mamoun I. M.D. |
| 12/07/2015 | G47.33 | Obstructive sleep apnea (adult) (pediatric) | Najjar, Mamoun I. M.D. |
| 11/30/2015 | G47.30 | Sleep apnea, unspecified | Najjar, Mamoun I. M.D. |
| 11/09/2015 | G47.10 | Hypersomnia, unspecified | Najjar, Mamoun I. M.D. |
| 10/30/2015 | G47.30 | Sleep apnea, unspecified | Najjar, Mamoun I. M.D. |

## Document list for All Documents -- 10/28/15 to 10/28/16

| Encounter Date | Description | Type | Status | Provider |
|---|---|---|---|---|
| 09/06/2016 | 6 month check | Note | WIP | Najjar, Mamoun I. M.D. |
| 09/01/2016 | Follow Up | Note | WIP | Najjar, Mamoun I. M.D. |
| 08/15/2016 | follow up from Sleep Study | Note | ARC | Najjar, Mamoun I. M.D. |
| 07/14/2016 | Order | Correspondence | ARC | Najjar, Mamoun I. M.D. |
| 07/14/2016 | 4 month check | Note | ARC | Najjar, Mamoun I. M.D. |
| 03/14/2016 | 6 month check | Note | ARC | Najjar, Mamoun I. M.D. |
| 01/25/2016 | office visit | Note | ARC | Najjar, Mamoun I. M.D. |

**ALSHAREIH, MOHAMMED 53y M**
DOB:

## Patient Chart Report

10/28/16 1:30 pm

SLEEP & PULMONARY
CENTER, P.C.

**Document list for All Documents -- 10/28/15 to 10/28/16**

| Encounter Date | Description | Type | Status | Provider |
|---|---|---|---|---|
| 01/04/2016 | office visit | Note | ARC | Najjar, Mamoun I, M.D. |
| 12/07/2015 | Follow Up | Note | ARC | Najjar, Mamoun I, M.D. |
| 11/09/2015 | MWT | Note | ARC | Najjar, Mamoun I, M.D. |

**Patient:** 10583 - MOHAMMED ALSHAREIH
**DOB:**
**SSN:**

**Date:** 09/06/2016 13:00
**Provider:** Najjar, Mamoun I. M.D.
**Encounter:** 6 month check

## REFERRED HERE

Not referred by.

## ACTIVE PROBLEMS

- Central Idiopathic Hypersomnia
- Chronic Obstructive Pulmonary Disease
- Hypersomnia
- Nonorganic Sleep Apnea
- Valvular Heart Disease

## CHIEF COMPLAINT

The Chief Complaint is: 6 MO.

## HISTORY OF PRESENT ILLNESS

MOHAMMED ALSHAREIH is a 53 year old male.

• Feeling tired (fatigue) • Duration of symptoms as detailed in History of Presenting Illness and/or patient questionairres

• Shortness of breath

• Hypersomnia • Patient complaints: interrupted sleep

• An active illness Discussed patient symptoms and/or complaints with patient and/or representative

All applicable questionnaires reviewed with patient and/or representative

## CURRENT MEDICATION

- Medrol 4 MG Tablet Therapy Pack as directed, 30 days, 0 refills
- Methylin 10 mg Tablet three times a day, 30 days, 0 refills
- Methylin 5 MG Tablet Chewable CHEW, three times a day, 30 days, 0 refills
- ProAir HFA 108 (90 Base) MCG/ACT Aerosol Solution AERS, as directed II QID PRN, 30 days, 3 refills
- ProAir HFA 108 (90 Base) MCG/ACT Aerosol Solution AERS, 2 puffs every 4-6 hours as needed, 30 days, 3 refills
- Symbicort 160-4.5 MCG/ACT Aerosol 2 twice a day, 30 days, 3 refills

Medication list reviewed with patient or representative.

## PAST MEDICAL/SURGICAL HISTORY

**Other:**

Past medical history reviewed with patient and/or representative

**Patient:** 10583 - MOHAMMED ALSHAREIH
**DOB:**
**SSN:**

**Date:** 09/06/2016 13:00
**Provider:** Najjar, Mamoun I. M.D.
**Encounter:** 6 month check

## PREVIOUS THERAPY

DME in home: DME in home: was not specified.

• Continuous positive airway pressure ventilation 7 CMH2O; • Continuous positive airway pressure ventilation 8 CMH2O; • Continuous positive airway pressure ventilation CPAP 5CM H2O; • No continuous positive airway pressure ventilation; • Continuous positive airway pressure ventilation 5 CM H20; • Continuous positive airway pressure ventilation 5 cm; • Continuous positive airway pressure ventilation 5 CMH2O; • Continuous positive airway pressure ventilation 5 cm H2O; • No oxygen

## SOCIAL HISTORY

Social history reviewed with patient or representative.
Behavioral: Not a current smokeless tobacco user. Smoking status: Current everyday smoker. Smoking status: Former smoker.

## ALLERGIES

• No Known Allergies

## FAMILY HISTORY

Family medical history reviewed with patient or representative

## REVIEW OF SYSTEMS

Review of Systems as per HPI noted. Systems Reviewed: General, Neuro, Cardiac, Pulmonary, GI, Renal, Skeletal.

## PHYSICAL FINDINGS

• Vitals taken 09/06/2016 01:20 pm

| | |
|---|---|
| BP-Sitting | 110/55 mmHg |
| Pulse Rate-Sitting | 80 bpm |
| Height | 65 in |
| Weight | 157 lbs |
| Body Mass Index | 26.1 kg/m2 |
| Body Surface Area | 1.78 m2 |
| Oxygen Saturation | 98 % |

**General Appearance:**
° Well-appearing Examined.
**Head:**
• Head: Examined.
**Eyes:**

**Patient:** **10583 - MOHAMMED ALSHAREIH**
**DOB:**
**SSN:**

**Date:** **09/06/2016 13:00**
**Provider:** **Najjar, Mamoun I. M.D.**
**Encounter:** **6 month check**

**General/bilateral:**
- Eyes: Examined.

**Ears, Nose, Throat:**
- ENT: Examined.

**Lungs:**
- Lungs: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Cardiovascular:**
- System: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Abdomen:**
- Abdomen: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Musculoskeletal System:**
General/bilateral: • Extremities: abnormal Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Neurological:**
- System: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

## ASSESSMENT

- Valvular heart disease
- Chronic obstructive pulmonary disease Severe
- Nonorganic sleep apnea Level - Mild
- Obstructive sleep apnea Level -
- Hypersomnia
- Idiopathic organic hypersomnia without long sleep time

He quit smoking Years ago.

## TEST CONCLUSIONS

Test results reviewed by provider and discussed with patient and/or representative.

## THERAPY/PLAN

- Pulmonary function tests
- Multiple sleep latency testing was performed to be performed in office for reason of fatigue/hypersomnia and patients level of Alertness, mood swings, memory and forgetfullness levels. Failed.
- Steroids Steroid prescription given as course of treatment. Patient educated on dosage and frequency of use.
- Mainstay Bronchodilators with Symbicort RX given. Patient educated on doasge and frequency of use.
- Continue current therapy and advise Provider if complications and/or concerns.

**Patient:** 10583 - MOHAMMED ALSHAREIH
**DOB:**
**SSN:**

**Date:** 09/06/2016 13:00
**Provider:** Najjar, Mamoun I. M.D.
**Encounter:** 6 month check

- Clinical summary provided to patient.
- A continuous airway pressure device (CPAP) CPAP/BIPAP therapy in 8 cm H2O. Failing CPAP.

## PLAN

- Short Acting Bronchodilators ProAir

## NURSE SURVEY FOR POSSIBLE NEEDED WORK-UP. THIS IS NOT A TEST ORDER. REFER TO PROVIDER'S ORDERS

Neck Circumference in inches: 15.
Nurse that Performed Workup: BREANNA PHILLIPS.
NOT NEEDED: WALK TEST (moderate to severe lung disease; initial then every 12 months).
NOT NEEDED: CPAP MACHINES (new OSA w/ private insurance once every 3 years).
NOT NEEDED: CPAP Study (new OSA).
NOT NEEDED: C X R (every year for two of symptoms above).
NOT NEEDED: CPAP SUPPLIES (every 6 months for private insurance).
NOT NEEDED: CPAP RETITRATION (once a year w/ weight changes).
NOT NEEDED: MSLT/MWT.
NOT NEEDED: SPIROMETRY: PRE AND POST (Any two symptoms of: shortness of breath, chest tightness, cough, wheezing & congestion; every 6 months for moderate to severe).
NOT NEEDED: NPSG.
NOT NEEDED: CT Scan.
NOT NEEDED: Cardiac Echo.

## OTHER

Electronically signed by Angela Gann, CRNP Supervised and Electronically Signed By Dr. Mamoun Najjar.

**Patient:** 10583 - MOHAMMED ALSHAREIH
**DOB:**
**SSN:**

**Date:** 09/01/2016 09:00
**Provider:** Najjar, Mamoun I. M.D.
**Encounter:** Follow Up

## REFERRED HERE

Not referred by.

## ACTIVE PROBLEMS

- Central Idiopathic Hypersomnia
- Chronic Obstructive Pulmonary Disease
- Hypersomnia
- Nonorganic Sleep Apnea
- Valvular Heart Disease

## CHIEF COMPLAINT

The Chief Complaint is: FOLLOW UP/ECHO.

## HISTORY OF PRESENT ILLNESS

MOHAMMED ALSHAREIH is a 53 year old male.

• Feeling tired (fatigue) • Duration of symptoms as detailed in History of Presenting Illness and/or patient questionairres

• Shortness of breath

• Hypersomnia • Patient complaints: interrupted sleep

• An active illness Discussed patient symptoms and/or complaints with patient and/or representative

All applicable questionnaires reviewed with patient and/or representative

## CURRENT MEDICATION

- Medrol 4 MG Tablet Therapy Pack as directed, 30 days, 0 refills
- Methylin 10 mg Tablet three times a day, 30 days, 0 refills
- Methylin 5 MG Tablet Chewable CHEW, three times a day, 30 days, 0 refills
- ProAir HFA 108 (90 Base) MCG/ACT Aerosol Solution AERS, as directed II QID PRN, 30 days, 3 refills
- ProAir HFA 108 (90 Base) MCG/ACT Aerosol Solution AERS, 2 puffs every 4-6 hours as needed, 30 days, 3 refills
- Symbicort 160-4.5 MCG/ACT Aerosol 2 twice a day, 30 days, 3 refills

Medication list reviewed with patient or representative.

## PAST MEDICAL/SURGICAL HISTORY

**Other:**

Past medical history reviewed with patient and/or representative

**Patient:** 10583 - MOHAMMED ALSHAREIH
**DOB:**
**SSN:**

**Date:** 09/01/2016 09:00
**Provider:** Najjar, Mamoun I. M.D.
**Encounter:** Follow Up

## PREVIOUS THERAPY

DME in home: was not specified. DME in home:

• Continuous positive airway pressure ventilation 7 CMH2O; • Continuous positive airway pressure ventilation 5 CMH2O; • Continuous positive airway pressure ventilation 5 cm H2O; • Continuous positive airway pressure ventilation CPAP 5CM H2O; • No continuous positive airway pressure ventilation; • Continuous positive airway pressure ventilation 5 CM H20; • Continuous positive airway pressure ventilation 5 cm; • Continuous positive airway pressure ventilation 8 cmh2o; • No oxygen

## SOCIAL HISTORY

Social history reviewed with patient or representative.

Behavioral: Not a current smokeless tobacco user. Smoking status: Current everyday smoker. Smoking status: Former smoker.

## ALLERGIES

• No Known Allergies

## FAMILY HISTORY

Family medical history reviewed with patient or representative

## REVIEW OF SYSTEMS

Review of Systems as per HPI noted. Systems Reviewed: General, Neuro, Cardiac, Pulmonary, GI, Renal, Skeletal.

## PHYSICAL FINDINGS

• Vitals taken 09/01/2016 09:16 am

| | |
|---|---|
| BP-Sitting | 110/60 mmHg |
| Pulse Rate-Sitting | 87 bpm |
| Height | 65 in |
| Weight | 158 lbs |
| Body Mass Index | 26.3 kg/m2 |
| Body Surface Area | 1.79 m2 |
| Oxygen Saturation | 92 % |

**General Appearance:**
° Well-appearing Examined.
**Head:**
• Head: Examined.
**Eyes:**

**Patient:** **10583 - MOHAMMED ALSHAREIH**
**DOB:**
**SSN:**

**Date:** **09/01/2016 09:00**
**Provider:** **Najjar, Mamoun I. M.D.**
**Encounter:** **Follow Up**

**General/bilateral:**
- Eyes: Examined.

**Ears, Nose, Throat:**
- ENT: Examined.

**Lungs:**
- Lungs: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Cardiovascular:**
- System: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Abdomen:**
- Abdomen: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Musculoskeletal System:**
General/bilateral: • Extremities: abnormal Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Neurological:**
- System: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

## ASSESSMENT

- Valvular heart disease
- Chronic obstructive pulmonary disease Severe
- Nonorganic sleep apnea Level - Mild
- Obstructive sleep apnea Level -
- Hypersomnia
- Idiopathic organic hypersomnia without long sleep time

He quit smoking Years ago.

## TEST CONCLUSIONS

Test results reviewed by provider and discussed with patient and/or representative.

## THERAPY/PLAN

- Pulmonary function tests
- Multiple sleep latency testing was performed to be performed in office for reason of fatigue/hypersomnia and patients level of Alertness, mood swings, memory and forgetfullness levels. Failed.
- Steroids Steroid prescription given as course of treatment. Patient educated on dosage and frequency of use.
- Mainstay Bronchodilators with Symbicort RX given. Patient educated on doasge and frequency of use.
- Continue current therapy and advise Provider if complications and/or concerns.

**Patient:** 10583 - MOHAMMED ALSHAREIH
**DOB:**
**SSN:**

**Date:** 09/01/2016 09:00
**Provider:** Najjar, Mamoun I. M.D.
**Encounter:** Follow Up

• Clinical summary provided to patient.
• A continuous airway pressure device (CPAP) CPAP/BIPAP therapy in 8 cm H2O. Failing CPAP.

## PLAN

• Short Acting Bronchodilators ProAir

## NURSE SURVEY FOR POSSIBLE NEEDED WORK-UP. THIS IS NOT A TEST ORDER. REFER TO PROVIDER'S ORDERS

Nurse that Performed Workup: BREANNA PHILLIPS.
Neck Circumference in inches: 15.
NOT NEEDED: C X R (every year for two of symptoms above).
NOT NEEDED: WALK TEST (moderate to severe lung disease; initial then every 12 months).
NOT NEEDED: CPAP MACHINES (new OSA w/ private insurance once every 3 years).
NOT NEEDED: CT Scan.
NOT NEEDED: CPAP Study (new OSA).
NOT NEEDED: CPAP RETITRATION (once a year w/ weight changes).
NOT NEEDED: MSLT/MWT.
NOT NEEDED: Cardiac Echo.
NOT NEEDED: NPSG.
NOT NEEDED: SPIROMETRY: PRE AND POST (Any two symptoms of: shortness of breath, chest tightness, cough, wheezing & congestion; every 6 months for moderate to severe).
NOT NEEDED: CPAP SUPPLIES (every 6 months for private insurance).

## OTHER

Electronically signed by Angela Gann, CRNP Supervised and Electronically Signed By Dr. Mamoun Najjar.

Sleep & Pulmonary Care Center, P.C.

1222 Somerville Rd. SE
Decatur, AL 35601
256-341-0152

105 W. Dublin Ste A
Madison, AL 35758
256-772-4211

**Patient:** MOHAMMED ALSHAREIH
**Date of Birth:**

**Visit Date:** 08/15/2016
**Attending Provider:** Mamoun I. Najjar M.D.

## Office Note

**Referred Here**
Not referred by.

**Active Problems**
- **Central Idiopathic Hypersomnia**
- **Chronic Obstructive Pulmonary Disease**
- **Hypersomnia**
- **Nonorganic Sleep Apnea**
- **Valvular Heart Disease**

**Chief Complaint**
The Chief Complaint is: FOLLOW UP/SLEEP STUDY.

**History of Present Illness**
MOHAMMED ALSHAREIH is a 53 year old male.
• Feeling tired (fatigue) • Duration of symptoms as detailed in History of Presenting Illness and/or patient questionairres
• Shortness of breath
• Hypersomnia • Patient complaints: interrupted sleep
• An active illness Discussed patient symptoms and/or complaints with patient and/or representative
All applicable questionnaires reviewed with patient and/or representative

**Current Medication**
- **Medrol 4 MG Tablet Therapy Pack as directed, 30 days, 0 refills**
- **Methylin 10 mg Tablet three times a day, 30 days, 0 refills**
- **Methylin 5 MG Tablet Chewable CHEW, three times a day, 30 days, 0 refills**
- **ProAir HFA 108 (90 Base) MCG/ACT Aerosol Solution AERS, as directed II QID PRN, 30 days, 3 refills**
- **ProAir HFA 108 (90 Base) MCG/ACT Aerosol Solution AERS, 2 puffs every 4-6 hours as needed, 30 days, 3 refills**
- **Symbicort 160-4.5 MCG/ACT Aerosol 2 twice a day, 30 days, 3 refills**

Medication list reviewed with patient or representative.

**Past Medical/Surgical History**
**Other:**
Past medical history reviewed with patient and/or representative

**Previous Therapy**
DME in home: DME in home: was not specified.

• Continuous positive airway pressure ventilation 7 CMH2O; • Continuous positive airway pressure ventilation 5 CMH2O; • Continuous positive airway pressure ventilation 5 cm H2O; • Continuous positive airway pressure ventilation CPAP 5CM H2O; • No continuous positive airway pressure ventilation; • Continuous positive airway pressure ventilation 5 CM H20; • Continuous positive airway pressure ventilation 5 cm; • No oxygen

**Social History**

Social history reviewed with patient or representative.

Behavioral: Not a current smokeless tobacco user and smoking status: Former smoker. Smoking status: Current everyday smoker.

**Allergies**

- **No Known Allergies**

**Family History**

Family medical history reviewed with patient or representative

**Review Of Systems**

Review of Systems as per HPI noted. Systems Reviewed: General, Neuro, Cardiac, Pulmonary, GI, Renal, Skeletal.

**Physical Findings**

- **Vitals taken 08/15/2016 03:14 pm**

| | |
|---|---|
| **BP-Sitting** | **118/65 mmHg** |
| **Pulse Rate-Sitting** | **83 bpm** |
| **Height** | **65 in** |
| **Weight** | **156 lbs** |
| **Body Mass Index** | **26.0 kg/m2** |
| **Body Surface Area** | **1.78 m2** |
| **Oxygen Saturation** | **93 %** |

**General Appearance:**
- Well-appearing Examined.

**Head:**
- Head: Examined.

**Eyes:**

**General/bilateral:**
- Eyes: Examined.

**Ears, Nose, Throat:**
- ENT: Examined.

**Lungs:**
- Lungs: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Cardiovascular:**
- System: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Abdomen:**
- Abdomen: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Musculoskeletal System:**

General/bilateral: • Extremities: abnormal Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Neurological:**
- System: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Patient Name: MOHAMMED ALSHAREIH** **Date: 08/15/2016**

**Assessment**

- Dizziness
- Valvular heart disease
- Chronic obstructive pulmonary disease Severe
- Nonorganic sleep apnea Level - Mild
- Obstructive sleep apnea Level -
- Hypersomnia
- Idiopathic organic hypersomnia without long sleep time
- Shortness of Breath

He quit smoking Years ago.

**Test Conclusions**

Test results reviewed by provider and discussed with patient and/or representative.

**Therapy/Plan**

- Pulmonary function tests
- Multiple sleep latency testing was performed to be performed in office for reason of fatigue/hypersomnia and patients level of Alertness, mood swings, memory and forgetfullness levels. Failed.
- An echocardiogram to be performed for risk of LVH, CAD, pulmonary HTN and PVD because of accompanied comorbidities in this patient. Provider will review results upon receipt
- Steroids Steroid prescription given as course of treatment. Patient educated on dosage and frequency of use.
- Mainstay Bronchodilators with Symbicort RX given. Patient educated on doasge and frequency of use.
- Continue current therapy and advise Provider if complications and/or concerns.
- Clinical summary provided to patient.
- A continuous airway pressure device (CPAP) CPAP/BIPAP therapy in 8 cm $H_2O$. Failing CPAP.

**Plan**

- **Obstructive sleep apnea (adult) (pediatric)**
  Follow Up/Every 4-6 Months: Every 4 Months x3 Appointments (4, 8, 12 Months)

- **Chronic obstructive pulmonary disease, unspecified**
  In-House Testing 2: PFT

- Short Acting Bronchodilators ProAir

**Nurse Survey for possible needed work-up. This is not a test order. Refer to provider's orders**

Neck Circumference in inches: 15.
Nurse that Performed Workup: BREANNA PHILLIPS.
NOT NEEDED: CT Scan.
NEEDED: Cardiac Echo.
NOT NEEDED: C X R (every year for two of symptoms above).
NEEDED: SPIROMETRY: PRE AND POST (Any two symptoms of: shortness of breath, chest tightness, cough, wheezing & congestion; every 6 months for moderate to severe).
NOT NEEDED: NPSG.
NOT NEEDED: WALK TEST (moderate to severe lung disease; initial then every 12 months).
NOT NEEDED: CPAP MACHINES (new OSA w/ private insurance once every 3 years).

NOT NEEDED: CPAP Study (new OSA).
NOT NEEDED: CPAP RETITRATION (once a year w/ weight changes).
NOT NEEDED: MSLT/MWT.
NOT NEEDED: CPAP SUPPLIES (every 6 months for private insurance).

**Other**
Electronically signed by Angela Gann, CRNP Supervised and Electronically Signed By Dr. Mamoun Najjar.

**Mamoun I. Najjar M.D.**
**Electronically signed by: Mamoun Najjar, M.D. Date: 08/28/2016 11:01**

Sleep & Pulmonary Care Center, P.C.

1222 Somerville Rd. SE
Decatur, AL 35601
256-341-0152

105 W. Dublin Ste A
Madison, AL 35758
256-772-4211

Patient: MOHAMMED ALSHAREIH
DOB:

**Test Ordered: Echo; Carotid doppler**

**Order Date:** 07/14/2016

**Reason for Order:** Shortness of breath

**Order Information:** Information in this section has been provided for the benefit of the sleep center staff. The patient has been instructed on how to self-administer their medication by the ordering physician. At no time is the technician to administer medication or advise patient on the use of medication.

No Sleep Aid for Patients under age of 18

**Ordered by:** Mamoun I. Najjar M.D.
**Ordering Provider NPI:** 1043269061

Sleep & Pulmonary Care Center, P.C.

1222 Somerville Rd. SE
Decatur, AL 35601
256-341-0152

105 W. Dublin Ste A
Madison, AL 35758
256-772-4211

**Patient:** MOHAMMED ALSHAREIH
**Date of Birth:**

**Visit Date:** 07/14/2016
**Attending Provider:** Mamoun I. Najjar M.D.

## Office Note

**Referred Here**
Not referred by.

**Active Problems**
- **Central Idiopathic Hypersomnia**
- **Chronic Obstructive Pulmonary Disease**
- **Hypersomnia**
- **Nonorganic Sleep Apnea**
- **Valvular Heart Disease**

**Chief Complaint**
The Chief Complaint is: 4 MO.

**History of Present Illness**
MOHAMMED ALSHAREIH is a 52 year old male.
• Feeling tired (fatigue) • Duration of symptoms as detailed in History of Presenting Illness and/or patient questionairres
• Shortness of breath
• Hypersomnia • Patient complaints: interrupted sleep
• An active illness Discussed patient symptoms and/or complaints with patient and/or representative
All applicable questionnaires reviewed with patient and/or representative

**Current Medication**
- **Methylin 10 mg Tablet three times a day, 30 days, 0 refills**
- **Methylin 5 MG Tablet Chewable CHEW, three times a day, 30 days, 0 refills**
- **ProAir HFA 108 (90 Base) MCG/ACT Aerosol Solution AERS, as directed II QID PRN, 30 days, 3 refills**
- **Symbicort 160-4.5 MCG/ACT Aerosol 2 twice a day, 30 days, 3 refills**

Medication list reviewed with patient or representative.

**Past Medical/Surgical History**
**Other:**
Past medical history reviewed with patient and/or representative

**Previous Therapy**
DME in home: DME in home: was not specified.
• Continuous positive airway pressure ventilation 5 CMH2O; • Continuous positive airway pressure ventilation 5 cm H2O; • Continuous positive airway pressure ventilation CPAP 5CM H2O; • No continuous positive airway pressure ventilation;

• Continuous positive airway pressure ventilation 5 CM H20; • Continuous positive airway pressure ventilation 5 cm; • No oxygen

**Social History**
Social history reviewed with patient or representative.
Behavioral: Not a current smokeless tobacco user and smoking status: Former smoker. Smoking status: Current everyday smoker.

**Allergies**
- **No Known Allergies**

**Family History**
Family medical history reviewed with patient or representative

**Review Of Systems**
Review of Systems as per HPI noted. Systems Reviewed: General, Neuro, Cardiac, Pulmonary, GI, Renal, Skeletal.

**Physical Findings**
- **Vitals taken 07/14/2016 01:41 pm**

| | |
|---|---|
| **BP-Sitting** | **121/68 mmHg** |
| **Pulse Rate-Sitting** | **60 bpm** |
| **Height** | **65 in** |
| **Weight** | **154 lbs** |
| **Body Mass Index** | **25.6 kg/m2** |
| **Body Surface Area** | **1.77 m2** |
| **Oxygen Saturation** | **95 %** |

**General Appearance:**
° Well-appearing Examined.
**Head:**
• Head: Examined.
**Eyes:**
**General/bilateral:**
• Eyes: Examined.
**Ears, Nose, Throat:**
• ENT: Examined.
**Lungs:**
• Lungs: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.
**Cardiovascular:**
• System: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.
**Abdomen:**
• Abdomen: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.
**Musculoskeletal System:**
General/bilateral: • Extremities: abnormal Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.
**Neurological:**
• System: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Assessment**
- Recent weight change
- Dizziness

- Valvular heart disease
- Chronic obstructive pulmonary disease Severe
- Nonorganic sleep apnea Level - Mild
- Obstructive sleep apnea Level -
- Shortness of Breath
- Hypersomnia
- Idiopathic organic hypersomnia without long sleep time

He quit smoking Years ago.

**Test Conclusions**
Test results reviewed by provider and discussed with patient and/or representative.

**Therapy/Plan**

- Multiple sleep latency testing was performed to be performed in office for reason of fatigue/hypersomnia and patients level of Alertness, mood swings, memory and forgetfullness levels. Failed.
- An echocardiogram to be performed for risk of LVH, CAD, pulmonary HTN and PVD because of accompanied comorbidities in this patient. Provider will review results upon receipt
- Continuous positive airway pressure ventilation Retitration. To be performed for reason of recurrence/persistence of symptoms and weight fluctuation.
- Steroids Steroid prescription given as course of treatment. Patient educated on dosage and frequency of use.
- Mainstay Bronchodilators with Symbicort RX given. Patient educated on doasge and frequency of use.
- Continue current therapy and advise Provider if complications and/or concerns.
- Clinical summary provided to patient.
- A continuous airway pressure device (CPAP) CPAP/BIPAP therapy in 5 cm $H_2O$. Failing CPAP.

**Plan**

- **Chronic obstructive pulmonary disease, unspecified**
  InHouse SleepStudies: CPAP Titration
  Instructions: Information in this section has been provided for the benefit of the sleep center staff. The patient has been instructed on how to self-administer their medication by the ordering physician. At no time is the technician to administer medication or advise patient on the use of medication.

  No Sleep Aid for Patients under age of 18
  Ambien 10mg

- **OTHER**
  ProAir HFA 108 (90 Base) MCG/ACT AERS, 2 puffs every 4-6 hours as needed, 30 days, 3 refills
  Medrol 4 MG TBPK, as directed, 30 days, 0 refills

- **Shortness of breath**
  Follow Up/Every 4-6 Months: Every 4 Months x3 Appointments (4, 8, 12 Months)
  Follow Up/After Work Up: After Work Up
  InHouse SleepStudies/Echo: Echo, Carotid doppler
  Instructions: Information in this section has been provided for the benefit of the sleep center staff. The patient has been instructed on how to self-administer their medication by the ordering physician. At no time is the

technician to administer medication or advise patient on the use of medication.

No Sleep Aid for Patients under age of 18

- Short Acting Bronchodilators ProAir

**Nurse Survey for possible needed work-up. This is not a test order. Refer to provider's orders**
Nurse that Performed Workup:BREANNA PHILLIPS.
NEEDED: Cardiac Echo.
NOT NEEDED: CT Scan.
NOT NEEDED: C X R (every year for two of symptoms above).
NEEDED: CPAP RETITRATION (once a year w/ weight changes).
NOT NEEDED: NPSG.
NOT NEEDED: WALK TEST (moderate to severe lung disease; initial then every 12 months).
NOT NEEDED: CPAP MACHINES (new OSA w/ private insurance once every 3 years).
NOT NEEDED: CPAP Study (new OSA).
NOT NEEDED: MSLT/MWT.
NOT NEEDED: SPIROMETRY: PRE AND POST (Any two symptoms of: shortness of breath, chest tightness, cough, wheezing & congestion; every 6 months for moderate to severe).
NOT NEEDED: CPAP SUPPLIES (every 6 months for private insurance).

**Other**
Electronically signed by Angela Gann, CRNP Supervised and Electronically Signed By Dr. Mamoun Najjar.

**Mamoun I. Najjar M.D.**
**Electronically signed by: Mamoun Najjar, M.D. Date: 07/31/2016 12:57**

Sleep & Pulmonary Care Center, P.C.

1222 Somerville Rd. SE
Decatur, AL 35601
256-341-0152

105 W. Dublin Ste A
Madison, AL 35758
256-772-4211

**Patient:** MOHAMMED ALSHAREIH
**Date of Birth:**

**Visit Date:** 03/14/2016
**Attending Provider:** Mamoun I. Najjar M.D.

## Office Note

**Referred Here**
Not referred by.

**Active Problems**
- **Central Idiopathic Hypersomnia**
- **Chronic Obstructive Pulmonary Disease**
- **Hypersomnia**
- **Nonorganic Sleep Apnea**
- **Valvular Heart Disease**

**Chief Complaint**
The Chief Complaint is: 6 month check.

**History of Present Illness**
MOHAMMED ALSHAREIH is a 52 year old male.
• Feeling tired (fatigue) • Duration of symptoms as detailed in History of Presenting Illness and/or patient questionairres
• Shortness of breath
• Hypersomnia • Patient complaints: interrupted sleep
• An active illness Discussed patient symptoms and/or complaints with patient and/or representative
All applicable questionnaires reviewed with patient and/or representative

**Current Medication**
- **ProAir HFA 108 (90 Base) MCG/ACT Aerosol Solution AERS, as directed II QID PRN, 30 days, 3 refills**
- **Symbicort 160-4.5 MCG/ACT Aerosol 2 twice a day, 30 days, 3 refills**

Medication list reviewed with patient or representative.

**Past Medical/Surgical History**
**Other:**
Past medical history reviewed with patient and/or representative

**Previous Therapy**
DME in home: was not specified.
• Continuous positive airway pressure ventilation 5 cm H2O; • Continuous positive airway pressure ventilation CPAP 5CM H2O; • No continuous positive airway pressure ventilation; • Continuous positive airway pressure ventilation 5 CM H2O; • Continuous positive airway pressure ventilation 5 cm; • No oxygen

**Social History**

**Patient Name: MOHAMMED ALSHAREIH** **Date: 03/14/2016**

Social history reviewed with patient or representative.
Behavioral: Not a current smokeless tobacco user and smoking status: Never smoker. Smoking status: Current everyday smoker.

**Allergies**

- **No Known Allergies**

**Family History**

Family medical history reviewed with patient or representative

**Review Of Systems**

Review of Systems as per HPI noted. Systems Reviewed: General, Neuro, Cardiac, Pulmonary, GI, Renal, Skeletal.

**Physical Findings**

- **Vitals taken 03/14/2016 11:26 am**

| | |
|---|---|
| **BP-Sitting R** | **110/74 mmHg** |
| **Pulse Rate-Sitting** | **89 bpm** |
| **Height** | **65 in** |
| **Weight** | **161 lbs** |
| **Body Mass Index** | **26.8 kg/m2** |
| **Body Surface Area** | **1.80 m2** |
| **Oxygen Saturation** | **97 %** |

**General Appearance:**
- Well-appearing Examined.

**Head:**
- Head: Examined.

**Eyes:**

**General/bilateral:**
- Eyes: Examined.

**Ears, Nose, Throat:**
- ENT: Examined.

**Lungs:**
- Lungs: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Cardiovascular:**
- System: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Abdomen:**
- Abdomen: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Musculoskeletal System:**

General/bilateral: • Extremities: abnormal Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Neurological:**
- System: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Assessment**
- Valvular heart disease
- Chronic obstructive pulmonary disease Severe
- Nonorganic sleep apnea Level - Mild
- Obstructive sleep apnea Level -
- Shortness of Breath
- Hypersomnia

• Idiopathic organic hypersomnia without long sleep time

He quit smoking Years ago.

**Test Conclusions**

Test results reviewed by provider and discussed with patient and/or representative.

**Therapy/Plan**

• Multiple sleep latency testing was performed to be performed in office for reason of fatigue/hypersomnia and patients level of Alertness, mood swings, memory and forgetfullness levels. Failed.

• Continue current therapy and advise Provider if complications and/or concerns.

• Clinical summary provided to patient.

• A continuous airway pressure device (CPAP) CPAP/BIPAP therapy in 5 cm $H_2O$. Failing CPAP.

**Plan**

- **Chronic obstructive pulmonary disease, unspecified**
  Follow Up/Every 4-6 Months: Every 4 Months x3 Appointments (4, 8, 12 Months)

- **OTHER**
  Methylin 10 MG CHEW, three times a day, 30 days, 0 refills
  Methylin 5 MG CHEW, three times a day, 30 days, 0 refills

**Nurse Survey for possible needed work-up. This is not a test order. Refer to provider's orders**

Nurse that Performed Workup:Sam Jones.
Neck Circumference In inches:
NOT NEEDED: Cardiac Echo.
NOT NEEDED: WALK TEST (moderate to severe lung disease; initial then every 12 months).
NOT NEEDED: CPAP MACHINES (new OSA w/ private insurance once every 3 years).
NEEDED: CPAP SUPPLIES (every 6 months for private insurance).
NOT NEEDED: CPAP Study (new OSA).
NOT NEEDED: C X R (every year for two of symptoms above).
NOT NEEDED: CPAP RETITRATION (once a year w/ weight changes).
NOT NEEDED: MSLT/MWT.
NOT NEEDED: SPIROMETRY: PRE AND POST (Any two symptoms of: shortness of breath, chest tightness, cough, wheezing & congestion; every 6 months for moderate to severe).
NOT NEEDED: NPSG.
NOT NEEDED: CT Scan.

**Other**

Electronically signed by Mary Kipchumba CRNP
Supervised and Electronically Signed By Dr. Mamoun Najjar.

**Mamoun I. Najjar M.D.**
**Electronically signed by: Mamoun Najjar, M.D. Date: 04/10/2016 11:39**

Sleep & Pulmonary Care Center, P.C.

1222 Somerville Rd. SE
Decatur, AL 35601
256-341-0152

105 W. Dublin Ste A
Madison, AL 35758
256-772-4211

**Patient:** MOHAMMED ALSHAREIH
**Date of Birth:**

**Visit Date:** 01/25/2016
**Attending Provider:** Mamoun I. Najjar M.D.

## Office Note

**Referred Here**
Not referred by.

**Active Problems**
- **Central Idiopathic Hypersomnia**
- **Chronic Obstructive Pulmonary Disease**
- **Hypersomnia**
- **Nonorganic Sleep Apnea**
- **Valvular Heart Disease**

**Chief Complaint**
The Chief Complaint is: Office visit.

**History of Present Illness**
MOHAMMED ALSHAREIH is a 52 year old male.
• Feeling tired (fatigue) • Duration of symptoms as detailed in History of Presenting Illness and/or patient questionairres
• Shortness of breath
• Hypersomnia • Patient complaints: interrupted sleep
• An active illness Discussed patient symptoms and/or complaints with patient and/or representative
All applicable questionnaires reviewed with patient and/or representative

**Current Medication**
- **ProAir HFA 108 (90 Base) MCG/ACT Aerosol Solution AERS, as directed II QID PRN, 30 days, 3 refills**
- **Symbicort 160-4.5 MCG/ACT Aerosol 2 twice a day, 30 days, 3 refills**

Medication list reviewed with patient or representative.

**Past Medical/Surgical History**
**Other:**
Past medical history reviewed with patient and/or representative

**Previous Therapy**
DME in home: was not specified.
• Continuous positive airway pressure ventilation 5 cm; • Continuous positive airway pressure ventilation 5 cm H2O; • Continuous positive airway pressure ventilation CPAP 5CM H2O; • No continuous positive airway pressure ventilation; • Continuous positive airway pressure ventilation 5 CM H20; • No oxygen

**Social History**

Social history reviewed with patient or representative.
Behavioral: Not a current smokeless tobacco user. Smoking status: Current some day smoker. Smoking status: Never smoker.

**Allergies**
- **No Known Allergies**

**Family History**
Family medical history reviewed with patient or representative

**Review Of Systems**
Review of Systems as per HPI noted. Systems Reviewed: General, Neuro, Cardiac, Pulmonary, GI, Renal, Skeletal.

**Physical Findings**
- **Vitals taken 01/25/2016 10:38 am**

| | |
|---|---|
| **BP-Sitting R** | **122/83 mmHg** |
| **Pulse Rate-Sitting** | **104 bpm** |
| **Height** | **65 in** |
| **Weight** | **161 lbs** |
| **Body Mass Index** | **26.8 kg/m2** |
| **Body Surface Area** | **1.80 m2** |
| **Oxygen Saturation** | **97 %** |

**General Appearance:**
° Well-appearing Examined.
**Head:**
- Head: Examined.

**Eyes:**
**General/bilateral:**
- Eyes: Examined.

**Ears, Nose, Throat:**
- ENT: Examined.

**Lungs:**
- Lungs: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Cardiovascular:**
- System: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Abdomen:**
- Abdomen: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Musculoskeletal System:**
General/bilateral: • Extremities: abnormal Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.
**Neurological:**
- System: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Assessment**
- Valvular heart disease
- Chronic obstructive pulmonary disease Severe
- Nonorganic sleep apnea Level - Mild
- Obstructive sleep apnea Level -
- Shortness of Breath
- Hypersomnia

**Patient Name: MOHAMMED ALSHAREIH** **Date: 01/25/2016**

• Idiopathic organic hypersomnia without long sleep time
He quit smoking Years ago.

**Test Conclusions**
Test results reviewed by provider and discussed with patient and/or representative.

**Therapy/Plan**
• Multiple sleep latency testing was performed to be performed in office for reason of fatigue/hypersomnia and patients level of Alertness, mood swings, memory and forgetfullness levels. Failed.
• An echocardiogram -See reports. Annual 4/2016
• Clinical summary provided to patient.
• A continuous airway pressure device (CPAP) CPAP/BIPAP therapy in 5 cm H2O. Failing CPAP.

**Plan**

- **Obstructive sleep apnea (adult) (pediatric)**
  In-House Testing 2/6 minutes Walk Test: Simple Pulmonary Stress test

**Nurse Survey for possible needed work-up. This is not a test order. Refer to provider's orders**
Nurse that Performed Workup:Sam Jones.
NOT NEEDED: CPAP MACHINES (new OSA w/ private insurance once every 3 years).
NEEDED: CPAP SUPPLIES (every 6 months for private insurance).
NOT NEEDED: CPAP Study (new OSA).
NOT NEEDED: C X R (every year for two of symptoms above).
NOT NEEDED: CPAP RETITRATION (once a year w/ weight changes).
NOT NEEDED: MSLT/MWT.
NEEDED: WALK TEST (moderate to severe lung disease; initial then every 12 months).
NOT NEEDED: SPIROMETRY: PRE AND POST (Any two symptoms of: shortness of breath, chest tightness, cough, wheezing & congestion; every 6 months for moderate to severe).
NOT NEEDED: NPSG.
NOT NEEDED: CT Scan.
NOT NEEDED: Cardiac Echo.

**Mamoun I. Najjar M.D.**
**Electronically signed by: Mamoun Najjar, M.D. Date: 02/27/2016 22:20**

Sleep & Pulmonary Care Center, P.C.

1222 Somerville Rd. SE
Decatur, AL 35601
256-341-0152

105 W. Dublin Ste A
Madison, AL 35758
256-772-4211

**Patient:** MOHAMMED ALSHAREIH
**Date of Birth:**

**Visit Date:** 01/04/2016
**Attending Provider:** Mamoun I. Najjar M.D.

## Office Note

**Referred Here**
Not referred by.

**Active Problems**
- **Central Idiopathic Hypersomnia**
- **Chronic Obstructive Pulmonary Disease**
- **Hypersomnia**
- **Nonorganic Sleep Apnea**
- **Valvular Heart Disease**

**Chief Complaint**
The Chief Complaint is: Office visit.

**History of Present Illness**
MOHAMMED ALSHAREIH is a 52 year old male.
• Feeling tired (fatigue) • Duration of symptoms as detailed in History of Presenting Illness and/or patient questionairres
• Shortness of breath
• Hypersomnia • Patient complaints: interrupted sleep
• An active illness Discussed patient symptoms and/or complaints with patient and/or representative
All applicable questionnaires reviewed with patient and/or representative

**Current Medication**
- **Methylin 10 MG Tablet Chewable CHEW, three times a day, 30 days, 0 refills**
- **Methylin 5 MG Tablet Chewable CHEW, three times a day, 30 days, 0 refills**
- **Methylphenidate HCl ER 20 MG Tablet Extended Release TBCR, once a day, 30 days, 0 refills**

Medication list reviewed with patient or representative.

**Past Medical/Surgical History**
**Other:**
Past medical history reviewed with patient and/or representative

**Previous Therapy**
DME in home: was not specified.
• Continuous positive airway pressure ventilation 5 cm; • Continuous positive airway pressure ventilation 5 cm H2O; • Continuous positive airway pressure ventilation CPAP 5CM H2O; • No continuous positive airway pressure ventilation;

• Continuous positive airway pressure ventilation 5 CM H20; • No oxygen

**Social History**
Social history reviewed with patient or representative.
Behavioral: Not a current smokeless tobacco user and smoking status: Never smoker.

**Allergies**
- **No Known Allergies**

**Family History**
Family medical history reviewed with patient or representative

**Review Of Systems**
Review of Systems as per HPI noted. Systems Reviewed: General, Neuro, Cardiac, Pulmonary, GI, Renal, Skeletal.

**Physical Findings**
- **Vitals taken 01/04/2016 02:26 pm**

| | |
|---|---|
| **BP-Sitting L** | **125/73 mmHg** |
| **Pulse Rate-Sitting** | **106 bpm** |
| **Height** | **65 in** |
| **Weight** | **161 lbs** |
| **Body Mass Index** | **26.8 kg/m2** |
| **Body Surface Area** | **1.80 m2** |
| **Oxygen Saturation** | **96 %** |

**General Appearance:**
° Well-appearing Examined.
**Head:**
• Head: Examined.
**Eyes:**
**General/bilateral:**
• Eyes: Examined.
**Ears, Nose, Throat:**
• ENT: Examined.
**Lungs:**
• Lungs: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.
**Cardiovascular:**
• System: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.
**Abdomen:**
• Abdomen: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.
**Musculoskeletal System:**
General/bilateral: • Extremities: abnormal Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.
**Neurological:**
• System: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Assessment**
- Valvular heart disease
- Chronic obstructive pulmonary disease Severe
- Nonorganic sleep apnea Level - Mild

**Patient Name: MOHAMMED ALSHAREIH** **Date: 01/04/2016**

- Obstructive sleep apnea Level -
- Hypersomnia
- Idiopathic organic hypersomnia without long sleep time

States that he is exhausted all the time. It is starting to seriously affect his work States that he uses his CPAP all night until he pulls it off in his sleep. States that he could not tolerate the BiPAP.

.

**Test Conclusions**

Test results reviewed by provider and discussed with patient and/or representative.

**Therapy/Plan**

- Multiple sleep latency testing was performed to be performed in office for reason of fatigue/hypersomnia and patients level of Alertness, mood swings, memory and forgetfullness levels. Failed.
- MWT to be performed in office. Based on fatigue/hypersomnia and patients level of Alertness, mood swings, memory and forgetfullness levels-On Provigil. Failed 10/5/2015.

On 12/7/15 raised to 15 mg TID. and extended release 20 mg daily

- An echocardiogram -See reports. Annual 4/2016
- Bilevel Positive Airway Pressure Retitration. To be performed for reason of recurrence/persistence of symptoms and weight fluctuation.
- Clinical summary provided to patient.
- A continuous airway pressure device (CPAP) CPAP/BIPAP therapy in 5 cm $H_2O$. Failing CPAP. States that it wakes him up with the pressure. Uses it one hour before bed but when he falls asleep with it on it wakes him up continually thought the night due to pressure and discomfort.

Start Methylin 15 mg TID with 20 mg ER q AM
Repeat MWT.

**Plan**

- **Idiopathic hypersomnia without long sleep time**
  Follow Up/Every 4-6 Months: Every 4 Months x3 Appointments (4, 8, 12 Months)
  Follow Up/After Work Up: After Work Up

- **OTHER**
  Symbicort 160-4.5 MCG/ACT AERO, 2 twice a day, 30 days, 3 refills
  ProAir HFA 108 (90 Base) MCG/ACT AERS, as directed II QID PRN, 30 days, 3 refills

**Nurse Survey for possible needed work-up. This is not a test order. Refer to provider's orders**

Nurse that Performed Workup:Sam Jones.
NOT NEEDED: WALK TEST (moderate to severe lung disease; initial then every 12 months).
NOT NEEDED: Cardiac Echo.
NEEDED: C X R (every year for two of symptoms above).
NOT NEEDED: CPAP MACHINES (new OSA w/ private insurance once every 3 years).
NEEDED: CPAP SUPPLIES (every 6 months for private insurance).
NOT NEEDED: CPAP Study (new OSA).
NEEDED: SPIROMETRY: PRE AND POST (Any two symptoms of: shortness of breath, chest tightness, cough, wheezing & congestion; every 6 months for moderate to severe).

NOT NEEDED: CPAP RETITRATION (once a year w/ weight changes).
NOT NEEDED: MSLT/MWT.
NOT NEEDED: NPSG.
NOT NEEDED: CT Scan.

**Mamoun I. Najjar M.D.**
**Electronically signed by: Mamoun Najjar, M.D. Date: 01/04/2016 17:06**

Sleep & Pulmonary Care Center, P.C.

1222 Somerville Rd. SE
Decatur, AL 35601
256-341-0152

105 W. Dublin Ste A
Madison, AL 35758
256-772-4211

**Patient:** MOHAMMED ALSHAREIH
**Date of Birth:**

**Visit Date:** 12/07/2015
**Attending Provider:** Mamoun I. Najjar M.D.

## Office Note

**Referred Here**
Not referred by.

**Active Problems**
- **Hypersomnia**
- **Nonorganic Sleep Apnea**
- **Valvular Heart Disease**

**History of Present Illness**
MOHAMMED ALSHAREIH is a 52 year old male.
• Duration of symptoms as detailed in History of Presenting Illness and/or patient questionairres.
• An active illness Discussed patient symptoms and/or complaints with patient and/or representative.
All applicable questionnaires reviewed with patient and/or representative.

**Current Medication**
Medication list reviewed with patient or representative.

**Past Medical/Surgical History**
**Other:**
Past medical history reviewed with patient and/or representative

**Previous Therapy**
DME in home: was not specified.
• Continuous positive airway pressure ventilation 5 cm H2O; • Continuous positive airway pressure ventilation CPAP 5CM H2O; • No continuous positive airway pressure ventilation; • Continuous positive airway pressure ventilation 5 CM H20; • No oxygen

**Social History**
Social history reviewed with patient or representative.
Behavioral: Not a current smokeless tobacco user and smoking status: Never smoker.

**Allergies**
- **No Known Allergies**

**Family History**
Family medical history reviewed with patient or representative

**Review Of Systems**

Review of Systems as per HPI noted. Systems Reviewed: General, Neuro, Cardiac, Pulmonary, GI, Renal, Skeletal.

**Physical Findings**
**General Appearance:**
- Well-appearing Examined.

**Head:**
- Head: Examined.

**Eyes:**
**General/bilateral:**
- Eyes: Examined.

**Ears, Nose, Throat:**
- ENT: Examined.

**Lungs:**
- Lungs: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Cardiovascular:**
- System: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Abdomen:**
- Abdomen: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Musculoskeletal System:**
General/bilateral: • Extremities: abnormal Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Neurological:**
- System: Examined. No pertinent abnormalities noted. except what is documented otherwise in H&P.

**Assessment**
- Valvular heart disease
- Nonorganic sleep apnea Level - Mild
- Hypersomnia
- Idiopathic organic hypersomnia without long sleep time

States that he is exhausted all the time. It is starting to seriously affect his work. States that he uses his CPAP all night until he pulls it off in his sleep. States that he could not tolerate the BiPAP.

**Test Conclusions**
Test results reviewed by provider and discussed with patient and/or representative.

**Therapy/Plan**
- Multiple sleep latency testing was performed to be performed in office for reason of fatigue/hypersomnia and patients level of Alertness, mood swings, memory and forgetfullness levels. Failed.
- MWT to be performed in office. Based on fatigue/hypersomnia and patients level of Alertness, mood swings, memory and forgetfullness levels-On Provigil. Failed 10/5/2015
- An echocardiogram -See reports. Annual 4/2016
- Bilevel Positive Airway Pressure Retitration. To be performed for reason of recurrence/persistence of symptoms and weight fluctuation.
- Clinical summary provided to patient.
- A continuous airway pressure device (CPAP) CPAP/BIPAP therapy in 5 cm $H_2O$. Failing CPAP. States that it wakes him up with the pressure. Uses it one hour before bed but when he falls asleep with it on it wakes him up continually thought the night due to pressure and discomfort.

**Patient Name: MOHAMMED ALSHAREIH** **Date: 12/07/2015**

Start Methylin 15 mg TID with 20 mg ER q AM
Repeat MWT.

**Plan**

- **Idiopathic hypersomnia without long sleep time**
  Follow Up/Every 4-6 Months: Every 6 Months x3 Appointments (6, 12, 18 Months)
  InHouse SleepStudies: MWT
  Instructions: Information in this section has been provided for the benefit of the sleep center staff. The patient has been instructed on how to self-administer their medication by the ordering physician. At no time is the technician to administer medication or advise patient on the use of medication.

  No Sleep Aid for Patients under age of 18

- **OTHER**
  Methylin 10 MG CHEW, three times a day, 30 days, 0 refills
  Methylin 5 MG CHEW, three times a day, 30 days, 0 refills
  Methylphenidate HCl ER 20 MG TBCR, once a day, 30 days, 0 refills

**Nurse Survey for possible needed work-up. This is not a test order. Refer to provider's orders**
Nurse that Performed Workup: Jada Wootan.
Neck Circumference in inches:
NOT NEEDED: WALK TEST (moderate to severe lung disease; initial then every 12 months).
NOT NEEDED: CPAP MACHINES (new OSA w/ private insurance once every 3 years).
NOT NEEDED: CPAP Study (new OSA).
NOT NEEDED: C X R (every year for two of symptoms above).
NOT NEEDED: CPAP SUPPLIES (every 6 months for private insurance).
NOT NEEDED: CPAP RETITRATION (once a year w/ weight changes).
NOT NEEDED: MSLT/MWT.
NOT NEEDED: SPIROMETRY: PRE AND POST (Any two symptoms of: shortness of breath, chest tightness, cough, wheezing & congestion; every 6 months for moderate to severe).
NOT NEEDED: NPSG.
NOT NEEDED: CT Scan.
NOT NEEDED: Cardiac Echo.

**Other**
Electronically signed by Julie Vincent CRNP
Supervised and Electronically Signed By Dr. Mamoun Najjar.

**Mamoun I. Najjar M.D.**
**Electronically signed by: Mamoun Najjar, M.D. Date: 12/15/2015 20:25**

Sleep & Pulmonary Care Center, P.C.

1222 Somerville Rd. SE
Decatur, AL 35601
256-341-0152

105 W. Dublin Ste A
Madison, AL 35758
256-772-4211

**Patient:** MOHAMMED ALSHAREIH
**Date of Birth:**

**Visit Date:** 11/09/2015
**Attending Provider:** Mamoun I. Najjar M.D.

## Office Note

**Active Problems**
- **Hypersomnia**
- **Nonorganic Sleep Apnea**
- **Valvular Heart Disease**

**Current Medication**
- **Methylin 10 MG Tablet Chewable CHEW, three times a day, 30 days, 0 refills**

**Allergies**
- **No Known Allergies**

**Plan**
- **Hypersomnia, unspecified**
  InHouse SleepStudies: MWT
  Instructions: Information in this section has been provided for the benefit of the sleep center staff. The patient has been instructed on how to self-administer their medication by the ordering physician. At no time is the technician to administer medication or advise patient on the use of medication.

  No Sleep Aid for Patients under age of 18

**Mamoun I. Najjar M.D.**
**Electronically signed by: Mamoun Najjar, M.D. Date: 11/28/2015 11:22**

P-004

# CAROTID ULTRASOUND

FACILITY Decatur DATE 8/26/16
PATIENT Alshareif, Mohamed
DOB ______ AGE 1 SEX M
PHYSICIAN Najjar TECH KC TAPE ______
INDICATION Dizzy




| VELOCITY (cm/s) | sys/dia | VELOCITY (cm/s) | sys/dia |
|---|---|---|---|
| R Subclavian | 0.79 | L Subclavian | 1.19 |
| R CCA prox | 0.89 | L CCA prox | 0.98 |
| R CCA dist | 0.91 | L CCA dist | 0.88 |
| R ICA prox | 0.77 | L ICA prox | 1.20 |
| R ICA dist | 0.78 | L ICA dist | 0.79 |
| R ECA prox | 0.89 | L ECA prox | 1.10 |
| R Vertebral | 0.41 | L Vertebral | 0.42 |
| INT Thickening | Ø | INT Thickening | Ø |

PLAQUE: ☐ Smooth ☐ Soft ☐ Calcified ☐ Irregular

PLAQUE: ☐ Smooth ☐ Soft ☐ Calcified ☐ Irregular

Location:
Before Plaque:
At Plaque:
After Plaque:
% Obstruction:
CA/CCA:

Location:
Before Plaque:
At Plaque:
After Plaque:
% Obstruction:
CA/CCA:

Technologist Comments (This report is not final until interpreted by a physician):

Impression

Ø focal narrowing
Ø gross plaque
Ø intimal thickening
Bilat antegrade verts

Electronically signed by: Mamoun I. Najjar, MD

CAROTID ARTERY STENOSIS

| | 0-50% | 50-75% | 75-90% | >90% |
|---|---|---|---|---|
| Peak Systolic Velocity (cm/sec) | <125 | 125-225 | 225-325 | >325 |
| Spectral Broadening (Bandwidth) | <40 | 40-80 | 80-120 | >120 |
| Systolic Velocity Ratio (ICA/CCA) | <2:1 | >2:1 | >3:1 | >4:1 |

| | 0-50% | 50-75% | 75-90% | >90% |
|---|---|---|---|---|
| Peak Diastolic Velocity | <40 | 40-100 | >100 | >100 |
| Diastolic Velocity Ratio (ICA/CCA) | | | >5:1 | >9:1 |
| CCA Velocity Ratio (RCCA/LCCA) | 0.7-1.3 | 0.7-1.3 | 0.7-1.3 | 0.7/>1.3 |

1 2563410587 >> LMG

2016-10-28 17:31

# Decatur Echocardiogram Report

| Name: AlShareih, Mohammed | Date: 8/26/16 | D.O.B.: |
|---|---|---|
| Age: | Sex: | Indication: SOB |
| Account: | Height/Weight: | Location: Decatur |
| Referring Dr.: Najjar | Tech: KA | |

M-Mode(Normal dimensions [mm] in brackets)

LEFT VENTRICLE

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Diastole: | 39 | <57mm | Aorta: | 21 | <37mm | IVS: | 8 |
| Systole: | 20 | <40mm | AV: | 18 | >15mm | LVPW: | 7 |
| LVEF: | 79% | >60% | MV: | 17 | >18mm | RV: | 19 |
| EF Short: | | >25% | E/A Ratio: | 1.0 | 1.1-1.5 | LA: | 35 |

Real Time:

| |
|---|
| Pericardial Effusion: __Y or __N |
| Aortic Arch: |
| Ascending Aorta: 29mm |

Doppler Findings:

| | | | |
|---|---|---|---|
| Aortic Valve: | Vmax- 1.41 m/s | MnGrad- mmHg | |
| Mitral Valve: | E: 0.7 m/s | A: 0.7 m/s | |
| Pulmonic Valve: 0.91 m/s | | | |
| Tricuspid Valve: 2.31 m/s | | RVSP: 32 mmHg | |

Tech Findings:

Right Atrium: Normal in size.

Left Atrium: Normal in size.

Right Ventricle: Normal in size.

Left Ventricle: LV appears normal in size. Normal LV wall thickness. Normal LV wall Systolic function with estimated EF of 60-65%. Normal LV wall motion.

Interatrial Septum: Intact by color Doppler

Mitral Valve: Mitral valve leaflets appear normal. No significant regurgitation or stenosis. Mild MR

Tricuspid Valve: Tricuspid valve is normal. Mild TR regurgitation. Estimated RVSP is 32 mmHg.

Aortic Valve: Aortic valve is tri leaflet and appears normal. No significant regurgitation or stenosis.

Pulmonary Valve: Grossly Normal.

Diastology: Diastolic function is normal.

Pericardium: No pericardial effusion or tamponade.

Ascending Aorta: Normal in size.

Impression:

Electronically Signed by: Mamoun I Najjar, MD

Sleep and Pulmonary Care Center
1222 Somerville Road SE
Decatur, AL, 35756

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Name: | Alshareih, Mohammed | ID: | | BSA: | 1.78 | Date: | 08/15/2016 |
| Tech: | Kail, Danielle | Height: | 65.00 | Age: | 53 | Room: | |
| Doctor: | Najjar, Mamoun | Weight: | 156.00 | Sex: | Male | Race: | <Unspecified |

Diagnosis:

Dyspnea: After any exertion Cough: Non-Productive Wheeze: Rare

Tbco Prod: Never Smoked Yrs Smk: Pks/Day: Yrs Quit:

Medications:

Pre Test Comments:

Post Test Comments: Nebulized albuterol 2.5mg/3.0ml saline and tolerated well. Good patient effort and cooperation. The results of this test meets ATS standards for acceptability and repeatability Patient could not trigger DLCO properly. The patient was unable to maintain a pant frequency of 60 breaths per minute during the lung volume measurements.

| | Pre-Bronch | | | Post-Bronch | | |
|---|---|---|---|---|---|---|
| | **Actual** | **Pred** | **%Pred** | **Actual** | **%Pred** | **%Chng** |
| ---- SPIROMETRY ---- | | | | | | |
| FVC (L) | *1.27 | 4.17 | *30 | *1.13 | *27 | *-10 |
| FEV1 (L) | *0.92 | 3.22 | *28 | *0.77 | *23 | -15 |
| FEV1/FVC (%) | 72 | 77 | 93 | 68 | 88 | -6 |
| FEF 25% (L/sec) | *1.12 | 6.86 | *16 | *0.96 | *14 | -14 |
| FEF 75% (L/sec) | *0.96 | 1.43 | *67 | *0.13 | *9 | -86 |
| FEF 25-75% (L/sec) | *0.97 | 2.87 | *33 | *0.22 | *7 | *-76 |
| FEF Max (L/sec) | *1.13 | 8.59 | *13 | *0.98 | *11 | -13 |
| FIVC (L) | | | | 0.66 | | |
| FIF Max (L/sec) | | | | 0.56 | | |
| ---- LUNG VOLUMES ---- | | | | | | |
| SVC (L) | *1.46 | 4.17 | *34 | | | |
| IC (L) | *1.05 | 2.98 | *35 | | | |
| ERV (L) | *0.25 | 1.19 | *20 | | | |

Sleep and Pulmonary Care Center
1222 Somerville Road SE
Decatur, AL, 35756

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Name: | Alshareih, Mohammed | ID: | | BSA: | 1.78 | Date: | 08/15/2016 |
| Tech: | Kail, Danielle | Height: | 65.00 | Age: | 53 | Room: | |
| Doctor: | Najjar, Mamoun | Weight: | 156.00 | Sex: | Male | Race: | <Unspecified |

The FVC, FEV1, FEV1/FVC ratio and FEF25-75% are reduced indicating airway obstruction. The expiratory time was less than six seconds, which may underestimate the degree of obstruction. Patient effort was erratic which makes it impossible to adequately evaluate the flow volume loops. The FVC is reduced relative to the SVC indicating air trapping. The slow vital capacity is reduced. Following administration of bronchodilators, there is no significant response.

Conclusions:

Pulmonary Function Diagnosis:
Severe Obstructive Airways Disease

This preliminary report should not be used clinically unless reviewed and signed by a physician.

Angela Dunn, CRNP ________M.D.
Najjar, Mamoun
Electronically signed by: Mamoun I, Najjar M.D.

Sleep and Pulmonary Care Center
1222 Somerville Road SE
Decatur, AL, 35756

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Name: | Alshareih, Mohammed | ID: | | BSA: | 1.78 | Date: | 08/15/2016 |
| Tech: | Kail, Danielle | Height: | 65.00 | Age: | 53 | Room: | |
| Doctor: | Najjar, Mamoun | Weight: | 156.00 | Sex: | Male | Race: | <Unspecified |









Patient: Study Date:

**Sleep & Pulmonary Care Center, P.C**
1222 Somerville Road SE
Decatur, AL 35601
Tel: (256) 341-0152 Fax: (256) 341-0587
www.safe-sleep.com

| | | | |
|---|---|---|---|
| Patient: | ALSHAREIH,MOHAMMED | Date: | 08/12/2016 21:06 |
| DOB: | | PSG Study #: | 2272S |
| Age: | 53 yrs | Referring | , |
| Sex: | M | Height(In.): | 65 |
| PSG Tech: | BK | Weight(lbs): | 154 |
| Scored by: | BK | BMI: | |

# Treatment Report

| | | | |
|---|---|---|---|
| Total Sleep Time: | 331 | Sleep Efficiency: | 90.1 |
| AHI: | 0.5 | RDI: | 1.1 |
| Apneas & Hypopneas: | 3 | RERAs | 3 |
| PLMs: | 0 | PLM Arousal Index: | 0.0 |
| Minimum SaO2: | 93 | Latency to Sleep Onset: | 5 |

## Sleep Architecture Summary

| | | | |
|---|---|---|---|
| Lights Out: | 09:06:59 PM | Lights On: | 03:14:29 AM |
| Total Record Time: | 368.4 min. | # REM Episodes: | 3 |
| | | # of Awakenings*: | 6 |

| | Time (min.) | % of TST | % of SPT | % of TIB |
|---|---|---|---|---|
| Time In Bed (TIB): | 367.5 | | | 100 % |
| Total Sleep Time (TST): | 331 | 100 % | 91.3 % | 90.1 % |
| Total Stage N1: | 2 | 0.6 % | 0.6 % | 0.5 % |
| Total Stage N2: | 294 | 88.8 % | 81.1 % | 80.0 % |
| Total Stage N3: | 0 | 0 % | 0.0 % | 0.0 % |
| Total Stage R: | 35 | 10.6 % | 9.7 % | 9.5 % |
| Total Movement Time: | 0 | | 0.0 % | 0.0 % |
| Total Wake Time: | 36.5 | | | 9.9 % |
| WASO: | 31.5 | | | |
| Wake Time During SPT: | 31.5 | | 8.7 % | |
| Latency to Sleep Onset: | 5 | | | |
| Latency to REM Sleep: | 163 | | | |
| Latency to Persistent Sleep: | 5 | | | |
| Sleep Efficiency: | 90.1 % | | | |
| Sleep Maintenance: | 91.3 % | | | |

**Sleep Efficiency is time asleep as a % of time in bed. Sleep Maintenance is time asleep as a % of sleep period time. Awakenings are defined as 30 seconds or more.*

I reviewed the following: The patient chart, the raw data of sleep study, features of EEG, EKG rhythm and abnormality, sleep stages (at least by performing spot check) and the numerical data of sleep study report.

Impression/Plan:

Electronically signed: Mamoun I. Najjar, MD, FCCP, FAASM

*Patient:* *Study Date:*

**Positional Summary**

| | Time (min) | %TST |
|---|---|---|
| Left: | 0 | 0.0 % |
| Right: | 0 | 0.0 % |
| Supine: | 263.3 | 79.6 % |
| Prone: | 0 | 0.0 % |

* Positional times are given for TST.

**Arousal Summary**

| Arousal Caused By: | Number | Index |
|---|---|---|
| Respiratory Events: | 22 | 4.0 |
| Snore: | 0 | 0.0 |
| LM: | 0 | 0.0 |
| Spontaneous: | 8 | 1.5 |
| Bruxism: | 0 | 0.0 |
| Other: | 0 | 0.0 |
| Total: | 30 | 5.4 |

**Respiratory Events Summary**

***Number of Respiratory Events – Position & Sleep Stage***

| | NREM | | REM | | TOTAL |
|---|---|---|---|---|---|
| | Non-supine | Supine | Non-Supine | Supine | |
| Obstructive Apnea: | 0 | 0 | 0 | 0 | 0 |
| Mixed Apnea: | 0 | 0 | 0 | 0 | 0 |
| Central Apnea: | 0 | 0 | 0 | 1 | 2 |
| All Apneas: | 0 | 0 | 0 | 1 | 2 |
| Hypopneas: | 0 | 0 | 0 | 0 | 1 |
| Apneas + Hypopneas: | 0 | 0 | 0 | 1 | 3 |
| RERA: | 0 | 3 | 0 | 0 | 3 |
| A/H INDEX: | 0 | 0 | 0 | 1.7 | 0.5 |
| RDI: | 0 | 0.8 | 0 | 1.7 | 1.1 |

| | By Sleep Stage | | By Position | | TOTAL |
|---|---|---|---|---|---|
| | NREM | REM | Non-Supine | Supine | |
| Sleep Time (min.): | 296 | 35 | 0 | 263.3 | 331 |
| Obstructive Apnea: | 0 | 0 | 0 | 0 | 0 |
| Mixed Apnea: | 0 | 0 | 0 | 0 | 0 |
| Central Apnea: | 1 | 1 | 0 | 1 | 2 |
| All Apneas: | 1 | 1 | 0 | 1 | 2 |
| Hypopneas: | 1 | 0 | 0 | 0 | 1 |
| Apneas + Hypopneas: | 2 | 1 | 0 | 1 | 3 |
| RERA: | 3 | 0 | 0 | 3 | 3 |
| Apnea Index: | 0.2 | 1.7 | 0 | 0.2 | 0.4 |
| Hypopnea Index: | 0.2 | 0 | 0 | 0 | 0.2 |
| A/H INDEX: | 0.4 | 1.7 | 0 | 0.2 | 0.5 |
| RDI: | 1.0 | 1.7 | 0 | 0.9 | 1.1 |

* RDI denotes the average number of all respiratory events (Apnea+Hypop+RERA) per hour of sleep.

***Respiratory Event Durations***

| | Average (sec) | Maximum (sec) |
|---|---|---|
| Apnea (NREM): | 11.9 | 26.7 |
| Hypopnea (NREM): | 28.9 | 28.9 |
| RERA (NREM): | 19.7 | 26.7 |
| Apnea (REM): | 16.7 | 16.7 |
| Hypopnea (REM): | 0 | 0 |
| RERA (REM): | 0 | 0 |

Patient: Study Date:

*Other Respiratory Patterns*

| | Yes | No |
|---|---|---|
| Cheyne Stokes: | ☐ | X☐ |
| Hypoventilation: | ☐ | X☐ |

**Oxygen Saturation Summary**

| | Wake | NREM | REM | Total Record |
|---|---|---|---|---|
| Total O2 Desaturations: | 1 | 1 | 0 | 2 |
| O2 Desaturation Index: | 1.6 | 0.2 | 0 | 0.3 |
| Average O2 Saturation (%) | 96.8 | 96.3 | 96.7 | 96.3 |
| Min O2 Saturation (%) | 93 | 93 | 94 | 93 |
| Max O2 Saturation (%) | 99 | 98 | 98 | 99 |
| Time @ 90% - 100% (min.) | 33.4 | 295.9 | 35 | 364.9 |
| Time @ 80% - 89% (min.) | 0.0 | 0.0 | 0.0 | 0.0 |
| Time @ 70% - 79% (min.) | 0.0 | 0.0 | 0.0 | 0.0 |
| Time @ 60% - 69% (min.) | 0.0 | 0.0 | 0.0 | 0.0 |
| Time @ 50% - 59% (min.) | 0.0 | 0.0 | 0.0 | 0.0 |
| | | | | |
| Time ≤ 88% (min.) | 0.0 | 0.0 | 0.0 | 0.0 |

**SaO2 <90% for 0.0% of the total sleep time.**

**Limb Movements Summary**

| | Number | Index |
|---|---|---|
| LM Arousals: | 0 | 0.0 |
| Isolated Limb Movements: | N/A | 0 |
| Periodic Limb Movements: | N/A | 0 |
| TOTAL Limb Movements: | N/A | 0 |

** Index is number per hour of sleep.*

**Snore Summary**

| | Number | Index |
|---|---|---|
| Snore Arousals: | 0 | 0.0 |
| Periodic Snores: | N/A | 0 |
| TOTAL Snores: | N/A | 0 |

** Index is number per hour of sleep.*

**Heart Rate Summary**

| | Wake | NREM | REM | TOTAL |
|---|---|---|---|---|
| Average Heart Rate (BPM) | 76 | 72 | 68 | 72 |
| Minimum Heart Rate (BPM) | 65 | 61 | 62 | 61 |
| Maximum Heart Rate (BPM) | 99 | 99 | 84 | 99 |

**Cardiac Events Summary:**

**Occurrence of the following arrhythmias was observed:**

| | | | BPM |
|---|---|---|---|
| Bradycardia: | N/A | Lowest heart rate observed: | |
| Asystole: | N/A | Longest pause observed: | |
| Sinus Tachycardia during sleep: | N/A | Highest heart rate observed: | |
| Narrow Complex Tachycardia: | N/A | Highest heart rate observed: | |
| Wide Complex Tachycardia: | N/A | Highest heart rate observed: | |
| Atrial fibrillation: | N/A | | |
| Other arrhythmias observed: | | | |

Patient: Study Date:

**Technologist Comment Section**

- All electrodes and sensors are applied according to *The AASM Manual for Scoring of Sleep and Associated Events, 2007 (IV)*

- All scoring follows *The AASM Manual for Scoring of Sleep and Associated Events: Rules, Terminology and Technical Specifications, 1st ed., 2007*

  Including scoring of hypopneas using VIII 4a and VIII 4b

EEG abnormalities noted? YES or NO
If yes please explain:

Any abnormal behavioral observations noted? YES or NO
If yes please explain:

Patient:

Study Date:

## TREATMENT Breakdown Table

| Treatment Level | SLEEP TIME [min.] | | | | | APNEAS | | | | | HYP # | AHI | | | RERA # | RDI | | | Arousal Index | SaO2 Min % | SaO2 Avg % | Avg A/H Dur. (sec.) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | NREM | REM | Total | Non-Supine | Supine | OBS | MIX | CEN | Total# | Index | | Total | Non-Supine | Supine | | NREM | REM | Total | | | | |
| 7.0 | 136.7 | 35 | 171.7 | 0 | 171.7 | 0 | 0 | 1 | 1 | 0.3 | 0 | 0.3 | 0 | 0.3 | 1 | 0.4 | 1.7 | 0.7 | 5.9 | 94 | 96 | 16.7 |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

Patient: Study Date:

## Hypnograms






Liberty/Al-Shareih 247

**Sleep and Pulmonary Care Center**

Patient Name Mohammed Alshareih Location: (Decatur) or Madison

Date of Study 8-12-16 Chart# 22225

Date of Birth_ Room Number 3

Referring Physician____________________

Epworth Sleepiness Scale________ Height 65 Weight 154

O2 Used: Yes ____ No____ Liter FLOW _______ lpm

Ambien Given Yes_____No_____ Amount Given (mg) 10

*Patient Discharge Time: ____________________

*CPAP Mask Brand: Aura Style Nasal Mask Size Md

**Technician Comments:**

Type of Study CPAP

RERA's: YES X NO_____

Hypopnea YES X NO_____

Apnea: YES X NO_____

PLM's: YES_____ NO_____

Beginning Pressure: 6 Cmh2o

Ending Pressure: 8 Cmh2o

Optimal Pressure: 8 Cmh20

Heart Rhythms: (Normal) or Abnormal Explain: ____________________

Bathroom breaks: 1

Comments:

Technician's Signature Brian King

**Sleep & Pulmonary Care Center**
1222 Somerville Rd., SE • Decatur, AL 35601
105 W. Dublin Dr., Suite A • Madison, AL 35758
(866) 95-APNEA • (256) 341-0152
FAX (256) 341-0587

Mamoun I. Najjar, M.D., FCCP, FAASM

Name: Mohammed Alshareih

Date: 1/25/16

| | |
|---|---|
| Incline: 0 | Speed: Up to 2 Miles/ Hour |

| | SPO2 | Heart Rate | BORG Core | Chest Pain | Blood Pressure |
|---|---|---|---|---|---|
| BASELINE | 97 | 104 | 2 | No | 120/83 |
| 2 Minutes | 96 | 88 | 3 | No | — |
| 4 Minutes | 95 | 59 | 2 | No | — |
| 6 Minutes | 96 | 87 | 4 | No | — |
| 8 Minutes | | | | | |
| Exercise With O2 | | | | | |
| After 10 Minutes of Rest | | | | | |

Therapist: ____________

Discharged with no symptoms: ____________

INTERPRETATION:

Significant Oxygen Desaturation Yes / No (No circled) ________ at ______ Minutes ______%

Mamoun I. Najjar M.D.
Electronically signed by: Mamoun Najjar, M.D.

Accredited Member Center

www.sleep-pulmonary.com

Sleep and Pulmonary Care Center
1222 Somerville Road SE
Decatur, AL, 35756

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Name: | Alsharieh, Mohammad | ID: | | BSA: | 1.80 | Date: | 01/04/2016 |
| Tech: | Sirmon, Heather | Height: | 65.00 | Age: | 50 | Room: | |
| Doctor: | Najjar, Mamoun | Weight: | 161.00 | Sex: | Male | Race: | <Unspecified |

Diagnosis:
Dyspnea: No Dyspnea Cough: No Cough Wheeze: No Wheeze
Tbco Prod: Never Smoked Yrs Smk: Pks/Day: Yrs Quit:
Medications:
Pre Test Comments:
Post Test Comments: Good patient effort and cooperation. Nebulized albuterol 2.5mg/3.0ml saline and tolerated well. The results of this test meets ATS standards for acceptability and repeatability The patient was unable to maintain a pant frequency of 60 breaths per minute during the lung volume measurements. Patient could not trigger DLCO properly.

| | Pre-Bronch | | | Post-Bronch | | |
|---|---|---|---|---|---|---|
| | **Actual** | **Pred** | **%Pred** | **Actual** | **%Pred** | **%Chng** |
| ---- SPIROMETRY ---- | | | | | | |
| FVC (L) | *1.26 | 4.25 | *29 | *2.13 | *50 | +69 |
| FEV1 (L) | *0.74 | 3.31 | *22 | *1.13 | *34 | +53 |
| FEV1/FVC (%) | *58 | 78 | *74 | *53 | *67 | -9 |
| FEF 25% (L/sec) | *0.12 | 7.01 | *1 | *0.21 | *3 | +74 |
| FEF 75% (L/sec) | *0.34 | 1.51 | *22 | *0.29 | *19 | -15 |
| FEF 25-75% (L/sec) | *0.22 | 3.02 | *7 | *0.33 | *10 | +45 |
| FEF Max (L/sec) | *0.95 | 8.74 | *10 | *0.57 | *6 | *-39 |
| FIVC (L) | 0.61 | | | 0.77 | | +27 |
| FIF Max (L/sec) | 0.85 | | | 0.85 | | +0 |
| ---- LUNG VOLUMES ---- | | | | | | |
| SVC (L) | *3.21 | 4.25 | *75 | | | |
| IC (L) | 2.79 | 3.00 | 92 | | | |
| ERV (L) | *0.42 | 1.25 | *33 | | | |
| TGV (L) | *3.56 | 2.95 | *120 | | | |
| RV (Pleth) (L) | *3.15 | 1.76 | *179 | | | |
| TLC (Pleth) (L) | 6.17 | 5.95 | 103 | | | |
| RV/TLC (Pleth) (%) | *51 | 30 | *170 | | | |
| ---- AIRWAYS RESISTANCE -- | | | | | | |
| Raw (cmH2O/L/s) | *0.61 | 1.45 | *42 | | | |
| Gaw (L/s/cmH2O) | *1.64 | 1.03 | *158 | | | |
| sRaw (cmH2O*s) | 2.04 | <4.76 | | | | |
| sGaw (1/cmH2O*s) | *0.49 | 0.20 | *245 | | | |

Sleep and Pulmonary Care Center
1222 Somerville Road SE
Decatur, AL, 35756

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Name: | Alsharieh, Mohammad | ID: | | BSA: | 1.80 | Date: | 01/04/2016 |
| Tech: | Simon, Heather | Height: | 65.00 | Age: | 50 | Room: | |
| Doctor: | Najjar, Mamoun | Weight: | 161.00 | Sex: | Male | Race: | <Unspecified |

The FVC, FEV1, FEV1/FVC ratio and FEF25-75% are reduced indicating airway obstruction. The expiratory time was less than six seconds, which may underestimate the degree of obstruction. The FVC is reduced relative to the SVC indicating air trapping. The airway resistance is normal. While the TLC is within normal limits, the FRC, RV and RV/TLC ratio are increased. Following administration of bronchodilators, there is a significant response indicated by the increased FVC.

Conclusions: Severe airway obstruction is present. The response to bronchodilators indicates a reversible component.

Pulmonary Function Diagnosis:
Severe Obstructive Airways Disease -Reversible

This preliminary report should not be used clinically unless reviewed and signed by a physician.

_______________________________________M.D.
Electronically Signed by Mamoun Najjar, M.D.

Sleep and Pulmonary Care Center
1222 Somerville Road SE
Decatur, AL, 35756

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Name: | Alsharieh, Mohammad | ID: | | BSA: | 1.80 | Date: | 01/04/2016 |
| Tech: | Sirmon, Heather | Height: | 65.00 | Age: | 50 | Room: | |
| Doctor: | Najjar, Mamoun | Weight: | 161.00 | Sex: | Male | Race: | <Unspecified |









# Urgent Care of Madison, Sleep & Pulmonary Care Center

## X-Ray INTERPERTATION

Pt. Name Mohammed Alshareih MR ____ Date 1/4/16

☒ CXR: PA and Lateral

Reviewed lung field, major airways, hemidiaphragms, cardiac shadow and major vessels with xray limitations considering artifacts and soft tissue factors.

- CARDIOMEGALLY
- COPD
- HYPERINFLATION
- GRANULOMA
- PNEUMONIA
- PROMINENT MARKINGS
- STERNAL WIRES

X-RAY: Sinuses Shoulder Arm Wrist Spine Abdomen Hip Knee tibia/fibula Foot Other…………

Reviewed Bone Lines, Soft Tissues, Joint Spaces, curvatures with x-ray limitations considering artifacts and other limiting factors.

Check here once sent to DICOM

Initial review by:

Julia Betts CRNP Initial …………..

Charles Misori CRNP Initials………..

**Mamoun I. Najjar M.D.**
**Electronically signed by: Mamoun Najjar, M.D.**

**Sleep & Pulmonary Care Center, P.C**
**1222 Somerville Road SE**
**Decatur, AL 35601**
**Tel: (256) 341-0152 Fax: (256) 341-0587**
**www.safe-sleep.com**

**Patient:** ALSHAREIH,MOHAMMED **Date:** 11/9/2015 8:45
**DOB:** **PSG Study #:**
**Age:** [illegible] yrs [illegible] mos **PSG Tech:**
**Sex:** M **Referring Physician:** ,

# MWT Report

## Sleep Architecture

| Session | Time (minutes) | | | | | |
|---|---|---|---|---|---|---|
| | Start Time | TST* | NREM | REM | Sleep Latency* | REM Latency |
| Nap #1 | 08:45 | 15 | 15 | 0 | 3.5 | 0.0 |
| Nap #2 | 09:44 | 12 | 12 | 0 | 3.4 | 0.0 |
| Nap #3 | 10:53 | 0 | 0 | 0 | 0.0 | 0.0 |
| Nap #4 | 11:45 | 10.6 | 10.6 | 0 | 8.6 | 0.0 |
| Nap #5 | 00:00 | 0 | 0 | 0 | 0.0 | 0.0 |
| | | | | Mean Sleep Latency (min): | | #SOREMPs: |

** TST is Total Sleep Time. Sleep Latency is from Lights Out to the first epoch of sleep.*




## Clinical Polysomnographer's Diagnostic Impression

I reviewed the following: The patient chart, the raw data of sleep study, features of EEG, EKG rhythm and abnormality, sleep stages (at least by performing spot check) and the numerical data of sleep study report.
Impression/Plan:

Electronically signed: Mamoun I. Najjar, MD, FCCP, FAASM

Patient Name Mohammed Alshareih

Date of Study 11/9/15 Chart # 2272

Room Number 2 Referring physician NA

Date of Birth [redacted]

Epworth Sleepiness Scale ____

Height 65 Weight 150

O2 used Yes____ No X Liter Flow ____

Ambien given Yes____ No X Amount given (mg) ____

Patient discharge time ____________

If applicable:

CPAP mask brand NA Style NA Size NA

Technician Comments:

MWT

8:45 NAP1 Sleep noted, NO REM

NAP2 - Sleep noted, NO REM

NAP3 - NO Sleep

NAP4 - Sleep, NO REM

Pt took Methylphenid 10mg before arrival. Pt takes t.i.d. 3x. Pt said when he was up & moving he was fine but once he was still he becomes sleepy & can't stay awake.

Technician's Signature Keali Miller, RPSGT, RST

**Sleep & Pulmonary Care Center, P.C**

**Mamoun I. Najjar, M.D., FFCP, FAASM**

Tel 1-866-95-APNEA (256) 341 0152 Fax (256) 341 0587

1222 Somerville Rd. S.E.
Decatur, AL 35603
www.safe-sleep.com

# CONSENT FOR POLYSOMNOGRAPHY

**Agreement**

My signature below indicates that I understand and agree with the following statements:

1. This sleep study may not detect the cause of my sleep problem.
2. A technician will attach sensors to my body for the study.
3. The removal of the sensors in the morning may irritate my skin and cause redness.
4. A video camera will record me as I sleep. A technician will watch me on a monitor in the control room.
5. I will be free to roll over and move in bed during the study.
6. I will need to ask for help if I must get out of the bed for any reason.
7. The technician may need to enter the room to wake me if there is a problem.
8. The study may show that I stop breathing many times during the night. If this happens, a technician may enter my room to give me treatment. This treatment is called positive airway pressure, or PAP. To use this treatment, I will wear a mask that covers either my nose or my nose and mouth.
9. I understand why I am having this sleep study.
10. The sleep center staff explained this sleep study to me. I understand what is going to happen during the study.

X Al-Shareih 11/9/2015

**Signature (Patient or Guardian)** **Date**

**Signature (Witness)** **Date**

# Sleep & Pulmonary Care Center, P.C

## Mamoun I. Najjar, M.D., FCCP, FAASM

### Pre-Sleep Questionnaire

Patient Name: MOHAMMED AL-SHAREIH Date: 11/9/2015

How long did you sleep last night? 9 hours

Did you take a nap today? NO At what time? ______ For how long? ______

Prior to coming to the sleep center, has today been unusual in any way? I just wake up

it is just started

Did you have any of the following today?

- ☐ Alcohol What time? ______ How much? ______
- ☐ Coffee What time? ______ How much? ______
- ☐ Tea/Soda What time? ______ How much? ______

What medications have you taken today or will be taking before bed? Please include prescription, over-the-counter, and vitamins.

| Medication | Amount | Time Taken |
|---|---|---|
| MethylPhenid | 10mg | 3X daily |
| | | |

See chart

Do you have any physical complaints right now? If yes, please explain:

Usual bedtime: 9 to 10 PM a.m./p.m. Usual wake time: 6:30-7 AM a.m./p.m.

(866)-95-APNEA Telephone (256) 341 0152 www.safe-sleep.com Fax (256) 341 0587

**Sleep & Pulmonary Care Center, P.C**
1222 Somerville Road SE
Decatur, AL 35601
Tel: (256) 341-0152 Fax: (256) 341-0587
www.safe-sleep.com

| | | | |
|---|---|---|---|
| Patient: | Alshareih,Mohammed | Date: | 10/05/2015 9:12 |
| DOB: | | PSG Study #: | |
| Age: | 52 yrs 2 mos | PSG Tech: | |
| Sex: | M | Referring Physician: | , |

# MWT Report

## Sleep Architecture

| Session | | Time (minutes) | | | | |
|---|---|---|---|---|---|---|
| | Start Time | TST* | NREM | REM | Sleep Latency* | REM Latency |
| Nap #1 | 09:12 | 12.5 | 12.5 | 0 | 15.9 | 0.0 |
| Nap #2 | 10:12 | 1.5 | 1.5 | 0 | 15.4 | 0.0 |
| Nap #3 | 11:12 | 0 | 0 | 0 | 0.0 | 0.0 |
| Nap #4 | 12:13 | 0 | 0 | 0 | 0.0 | 0.0 |
| Nap #5 | 00:00 | 0 | 0 | 0 | 0.0 | 0.0 |
| | | | Mean Sleep Latency (min): | | | #SOREMPs: |

** TST is Total Sleep Time. Sleep Latency is from Lights Out to the first epoch of sleep.*




## Clinical Polysomnographer's Diagnostic Impression

I reviewed the following: The patient chart, the raw data of sleep study, features of EEG, EKG rhythm and abnormality, sleep stages (at least by performing spot check) and the numerical data of sleep study report.

Impression/Plan:

Electronically signed: Mamoun I. Najjar, MD, FCCP, FAASM

Patient Name Mohammed Alshareih

Date of Study 10-5-15 Chart # 2272

Room Number 3 Referring physician

Date of Birth

Epworth Sleepiness Scale

Height 65 Weight 150

O2 used Yes ___ No ✓ Liter Flow ___

Ambien given Yes ___ No ✓ Amount given (mg) ___

Patient discharge time

If applicable:

CPAP mask brand — Style — Size —

Technician Comments:

MWT ~~Provigil 200mg~~ Modafinil (200mg)

Trial 1 - Sleep Noted NO REM

Trial 2 - Sleep Noted NO REM

Trial 3 - NO Sleep Noted

Trial 4 - NO Sleep Noted

pt took Modafinil (100mg) ~~as~~ on arrival.

pt only took 1/2 of the medicine.

pt fell asleep ~~dur~~ after Trial 1 & 2.

Technician's Signature [signature]

# Sleep & Pulmonary Care Center, P.C

## Mamoun I. Najjar, M.D., FCCP, FAASM

Sleep Technician Check List

Date 10-5-15 Tech Initials [signature]

Patient Name Mohammed Alshareih

- [x] Patient was asked "Why are you here? , What kind of Study"
- [x] Orders for Study reviewed including Nature of study
- [x] Last office note in Chart or EMR Reviewed
- [x] Old sleep Reports reviewed, if any
- [x] Studies Scored, notes written
- [ ] PLMs scored
- [ ] Documented EKG rhythm, Ectopies, arryhtmias
- [ ] documented and Logged ambien intake
- [x] Sheets and pillow cases placed in yellow hampers. Top blanket left in room
- [x] Reports Completed and printed
- [ ] Reports emailed, if study done in Madison
- [x] All wires cleaned and ready for use for the next tech
- [ ] All CPAP masks and hoses cleaned and ready for use again
- [ ] Humidifiers cleaned
- [x] Rooms neat and cleaned with trash/scraps/pads picked off floors
- [x] Clean towels placed in bathrooms. Used Towels placed in yellow hampers

# Sleep & Pulmonary Care Center, P.C

*Mamoun I. Najjar, M.D., FFCP, FAASM*

Tel 1-866-95-APNEA (256) 341 0152 Fax (256) 341 0587

1222 Somerville Rd. S.E.
Decatur, AL 35603
www.safe-sleep.com

## CONSENT FOR POLYSOMNOGRAPHY

**Agreement**

My signature below indicates that I understand and agree with the following statements:

1. This sleep study may not detect the cause of my sleep problem.
2. A technician will attach sensors to my body for the study.
3. The removal of the sensors in the morning may irritate my skin and cause redness.
4. A video camera will record me as I sleep. A technician will watch me on a monitor in the control room.
5. I will be free to roll over and move in bed during the study.
6. I will need to ask for help if I must get out of the bed for any reason.
7. The technician may need to enter the room to wake me if there is a problem.
8. The study may show that I stop breathing many times during the night. If this happens, a technician may enter my room to give me treatment. This treatment is called positive airway pressure, or PAP. To use this treatment, I will wear a mask that covers either my nose or my nose and mouth.
9. I understand why I am having this sleep study.
10. The sleep center staff explained this sleep study to me. I understand what is going to happen during the study.

X Al-Shareih [signature] 10-5-15

Signature (Patient or Guardian) Date

[signature] 10-5-15

Signature (Witness) Date

# Sleep & Pulmonary Care Center, P.C

*Mamoun I. Najjar, M.D., FCCP, FAASM*

## Pre-Sleep Questionnaire

Patient Name: Mohammed Alshareih Date: 10-5-15

How long did you sleep last night? 7-8 hours

Did you take a nap today? no At what time? ________ For how long? ________

Prior to coming to the sleep center, has today been unusual in any way?

no

Did you have any of the following today?

- ☐ Alcohol What time? ________ How much? ________
- ☐ Coffee What time? ________ How much? ________
- ☐ Tea/Soda What time? ________ How much? ________

What medications have you taken today or will be taking before bed? Please include prescription, over-the-counter, and vitamins.

| Medication | Amount | Time Taken |
|---|---|---|
| See chart | | |

Do you have any physical complaints right now? If yes, please explain:

Usual bedtime: ________ a.m./p.m. Usual wake time: ________ a.m./p.m.

(866)-95-APNEA Telephone (256) 341 0152 Fax (256) 341 0587
www.safe-sleep.com

**Sleep & Pulmonary Care Center P.C**
1222 Somerville Road SE
Decatur, AL 35601
Tel: (256) 341-0152 Fax: (256) 341-0587
www.safe-sleep.com

| | | | |
|---|---|---|---|
| Patient: | Alshareih,Mohammed | Date: | 05/18/2015 8:49 |
| DOB: | | PSG Study #: | |
| Age: | 51 yrs 9 mos | PSG Tech: | |
| Sex: | M | Referring Physician: | , |

# MSLT Report

## Sleep Architecture

| Session | | Time (minutes) | | | | |
|---|---|---|---|---|---|---|
| | Start Time | TST* | NREM | REM | Sleep Latency* | REM Latency |
| Nap #1 | 08:49 | 15 | 15 | 0 | 14.9 | 0.0 |
| Nap #2 | 09:39 | 14.5 | 14.5 | 0 | 3.8 | 0.0 |
| Nap #3 | 10:29 | 15.5 | 15.5 | 0 | 4.8 | 0.0 |
| Nap #4 | 11:24 | 0 | 0 | 0 | 0.0 | 0.0 |
| Nap #5 | 00:00 | 0 | 0 | 0 | 0.0 | 0.0 |
| | | | | Mean Sleep Latency (min): | | #SOREMPs: |

* *TST is Total Sleep Time. Sleep Latency is from Lights Out to the first epoch of sleep.*

## Clinical Polysomnographer's Diagnostic Impression

- All electrodes and sensors have been applied according to *The AASM Manual for Scoring of Sleep and Associated Events, 2007 (IV)*
- All scoring follows *The AASM Manual for Scoring of Sleep and Associated Events: Rules, Terminology and Technical Specifications, 1st ed., 2007*

I reviewed the following: The patient chart, the raw data of sleep study, features of EEG, EKG rhythm and abnormality, sleep stages (at least by performing spot check) and the numerical data of sleep study report.
Impression/Plan:

Electronically signed: Mamoun I. Najjar, MD, FCCP, FAASM

Patient Name Mohammed Alshareih

Date of Study 5/18/15 Chart # 22712

Room Number 3 Referring physician N/A

Date of Birth

Epworth Sleepiness Scale 10

Height 6'5" Weight 150

O2 used Yes ___ No ✓ Liter Flow N/A

Ambien given Yes ___ No ✓ Amount given (mg) N/A

Patient discharge time ___

If applicable:

CPAP mask brand N/A Style N/A Size N/A

Technician Comments:

MSLT

Nap1 - Sleep Noted. No REM Noted.
Nap2 - Sleep Noted. No REM Noted.
Nap3 - Sleep Noted. No REM Noted.
Nap4 - No Sleep Noted.

Technician's Signature [signature] RPSGT

# *Sleep & Pulmonary Care Center*, P.C

***Mamoun I. Najjar, M.D., FFCP, FAASM***

Tel 1-866-95-APNEA (256) 341 0152 Fax (256) 341 0587

1222 Somerville Rd. S.E.
Decatur, AL 35603
www.safe-sleep.com


## CONSENT FOR POLYSOMNOGRAPHY

**Agreement**

My signature below indicates that I understand and agree with the following statements:

1. This sleep study may not detect the cause of my sleep problem.
2. A technician will attach sensors to my body for the study.
3. The removal of the sensors in the morning may irritate my skin and cause redness.
4. A video camera will record me as I sleep. A technician will watch me on a monitor in the control room.
5. I will be free to roll over and move in bed during the study.
6. I will need to ask for help if I must get out of the bed for any reason.
7. The technician may need to enter the room to wake me if there is a problem.
8. The study may show that I stop breathing many times during the night. If this happens, a technician may enter my room to give me treatment. This treatment is called positive airway pressure, or PAP. To use this treatment, I will wear a mask that covers either my nose or my nose and mouth.
9. I understand why I am having this sleep study.
10. The sleep center staff explained this sleep study to me. I understand what is going to happen during the study.

[signature] 5/18/2015

**Signature (Patient or Guardian)** **Date**

[signature] 5/18/15

**Signature (Witness)** **Date**

# Sleep & Pulmonary Care Center, P.C

Mamoun I. Najjar, M.D., FCCP, FAASM

## Pre-Sleep Questionnaire

Patient Name: MOHAMMED ALSHAREIH Date: 5/18/2015

How long did you sleep last night? 9 ½ hours

Did you take a nap today? No At what time? ______ For how long? ______

Prior to coming to the sleep center, has today been unusual in any way? No
it is early morning; I feel very ~~tired~~ tired

Did you have any of the following today?

- ☐ Alcohol What time? ______ How much? ______
- ☐ Coffee What time? ______ How much? ______
- ☐ Tea/Soda What time? ______ How much? ______

What medications have you taken today or will be taking before bed? Please include prescription, over-the-counter, and vitamins.

| Medication | Amount | Time Taken |
|---|---|---|
| See Chart | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Do you have any physical complaints right now? If yes, please explain:
very tired

Usual bedtime: 9 a.m./(p.m.) Usual wake time: 7 (a.m.)/p.m.

# Sleep & Pulmonary Care Center, P.C

## Mamoun I. Najjar, M.D., FCCP, FAASM

Sleep Technician Check List

Date 5/18/15 Tech Initials [signature]

Patient Name Mohammed Alshareih

- ☑ Patient was asked "Why are you here? , What kind of Study"
- ☑ Orders for Study reviewed including Nature of study
- ☑ Last office note in Chart or EMR Reviewed
- ☑ Old sleep Reports reviewed, if any
- ☑ Studies Scored, notes written
- ☑ PLMs scored
- ☑ Documented EKG rhythm, Ectopies, arryhtmias
- ☑ documented and Logged ambien intake
- ☑ Sheets and pillow cases placed in yellow hampers. Top blanket left in room
- ☑ Reports Completed and printed
- ☑ Reports emailed, if study done in Madison
- ☑ All wires cleaned and ready for use for the next tech
- ☑ All CPAP masks and hoses cleaned and ready for use again
- ☑ Humidifiers cleaned
- ☑ Rooms neat and cleaned with trash/scraps/pads picked off floors
- ☑ Clean towels placed in bathrooms. Used Towels placed in yellow hampers

1222 Somerville Rd SE. Decatur, AL 35601. 105 W. Dublin Dr. Suite A Madison, AL 35758.
(866)-95-APNEA Telephone (256) 341 0152 Fax (256) 341 0587
www.safe-sleep.com Updated 1/15/ 14. Saved on Dr. Najjar's computer (the book)

P-004

# CAROTID ULTRASOUND

FACILITY 2272 DATE 4-29-15
PATIENT Mohammed Alshareih
DOB _ AGE 54 SEX M
PHYSICIAN Najjar TECH RW TAPE 02
INDICATION dizz

| VELOCITY (cm/s) Rt | sys/dia |
|---|---|
| R Subclavian ........: | — |
| R CCA prox ........: | 110-23 |
| R CCA dist .........: | 98-23 |
| R ICA prox ........: | 69-17 |
| R ICA dist .........: | 77-32 |
| R ECA prox ........: | 118 |
| R Vertebral .........: | 33 14 |
| INT Thickening ...: | N |

PLAQUE:
☐ Smooth ☐ Soft
☐ Calcified ☐ Irregular

Location .........:
Before Plaque .:
At Plaque ........:
After Plaque ....:
% Obstruction :
ICA/CCA .......:




| VELOCITY (cm/s) Lt | sys/dia |
|---|---|
| L Subclavian ........: | — |
| L CCA prox ........: | 73-16 |
| L CCA dist .........: | 95-22 |
| L ICA prox ........: | 98-30 |
| L ICA dist .........: | 44-19 |
| L ECA prox ........: | 88 |
| L Vertebral .........: | 34 14 |
| INT Thickening ....: | N |

PLAQUE:
☐ Smooth ☐ Soft
☐ Calcified ☐ Irregular

Location ........:
Before Plaque :
At Plaque .......:
After Plaque ..:
% Obstruction :
CA/CCA .......:

Technologist Comments (This report is not final until interpreted by a physician):

Impression Ø Plaques
No Focal Narrowing
Vert Ant.
Normal carotid u/s

Electronically signed by: Mamoun I. Najjar, MD

CAROTID ARTERY STENOSIS

| | 0-50% | 50-75% | 75-90% | ≥90% |
|---|---|---|---|---|
| Peak Systolic Velocity (cm/sec) | <125 | 125-225 | 225-325 | >325 |
| Spectral Broadening (bandwidth) | <40 | 40-80 | 80-120 | >120 |
| Systolic Velocity Ratio (ICA/CCA) | <2:1 | >2:1 | >3:1 | >4:1 |

| | 0-50% | 50-75% | 75-90% | ≥90% |
|---|---|---|---|---|
| Peak Diastolic Velocity | <40 | 40-100 | >100 | >100 |
| Diastolic Velocity Ratio (ICA/CCA) | | | >5:1 | >9:1 |
| CCA Velocity Ratio (RCCA/LCCA) | 0.7-1.3 | 0.7-1.3 | 0.7-1.3 | 0.7/>1.3 |

# ECHOCARDIOGRAM REPORT

**Facility:** Sapcc **Chart No:** 2272

Patient First Name Mohammed Patient Last Name ALShareih

DOB ___ Age 51 Sex M Date of Service 4-29-15

Physician Najjar Tech CW RDCS Tape OV

Indication SOB

**2 D/M-MODE DIMENSIONS:**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| RV | 22 | (<27) mm | LVIDd | 37 | (37-56) mm | LVIDs | 24 | (26-36) mm |
| LA | 34 | (19-39) mm | IVS | 9 | (6-11) mm | LVPW | 9 | (6-11) mm |
| LV Fx | — | % | Ejc.Fr. | 64 | % | PA | — | (15-21) mm |
| Ao | 24 | (20-37) mm | Ao V | 16 | (15-36) mm | RVW | — | (<5) mm |

**DOPPLER:**

| | Valve Structure | Peak Velocity (cm/s) | Valve Area (cm2) | MXPG (mmHg) | Color Doppler |
|---|---|---|---|---|---|
| MV | N | 95/58 | | | MR mild |
| AV | N | 155 | | | N |
| TV | N | 80 | | | TR Trace |
| PV | N | 142 | | | N |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| RVFx | | % | PA sys. Press | 20 | Mm/Hg | Effusion | None |

Exam Quality:

Nomenclature: G = Good F = Fair P = Poor N = Normal A = Abnormal SB = See below NS = Not seen

**Technologist Comments:** *(this report is not final until interpreted by a physician):*

Impression No diastolic dysfunction
EF 64%
mild MR
Trace TR
PA syst press = 20 mmHg
chambers Normal in caliber
No stenotic valves

Electronically signed by: Mamoun I. Najjar, MD

Patient: Alshareih, Mohammed Study Date: 4/25/2015

**Sleep & Pulmonary Care Center, P.C**
**105 W Dublin Dr.**
**Madison, AL 35758**
**Tel: (256) 341-0152 Fax: (256) 341-0587**
www.safe-sleep.com Room 2

| | | | |
|---|---|---|---|
| **Patient:** | Alshareih, Mohammed | **Date:** | 4/25/2015 at 8:56:15 PM |
| **DOB:** | | **PSG Study #:** | 413 |
| **Age:** | 51 years | **Referring** | , |
| **Sex:** | Male | **Height(in.):** | in. |
| **PSG Tech:** | | **Weight(lbs):** | lbs. |
| **Scored by:** | | **BMI:** | lb/in² |

# Treatment Report

| | | | |
|---|---|---|---|
| **Total Sleep Time:** | 226.6 | **Sleep Efficiency:** | 60.4% |
| **AHI:** | 0.3/hr | **REM %:** | 6.4 % |
| **Apneas & Hypopneas:** | 1 | **PLM Index:** | N/A |
| **PLMs:** | | **PLM Arousal Index:** | N/A |
| **Minimum SaO2:** | 92% | **Latency to Sleep Onset:** | 14.3 min |

## Sleep Architecture Summary

| | | | |
|---|---|---|---|
| **Lights Out:** | 8:56:27 PM | **Lights On:** | 3:11:21 AM |
| **Total Record Time:** | 374.9 min | **#REM Episodes:** | 5 |
| | | **# of Awakenings*:** | 9 |

| | Time (min.) | % of TST | % of SPT | % of TIB |
|---|---|---|---|---|
| **Time In Bed (TIB):** | 374.9 | | | 100 % |
| **Total Sleep Time (TST):** | 360.6 | 100 % | 62.8 % | 60.4 % |
| **Total Stage N1:** | 0.0 | 0.0 % | 0.0 % | 0.0 % |
| **Total Stage N2:** | 166.1 | 73.3 % | 46.1 % | 44.3 % |
| **Total Stage N3:** | 46.0 | 20.3 % | 12.8 % | 12.3 % |
| **Total Stage R:** | 14.5 | 6.4 % | 4.0 % | 3.9 % |
| **Total Movement Time:** | 0.0 | | 0.0 % | 0.0 % |
| **Total Wake Time:** | 148.3 | | | 39.6 % |
| **WASO:** | 134.0 | | | |
| **Wake Time During SPT:** | 134.0 | | 37.2 % | |
| **Latency to Sleep Onset:** | 14.3 | | | |
| **Latency to REM Sleep:** | 72.5 | | | |
| **Latency to Persistent Sleep:** | 0.0 | | | |
| **Sleep Efficiency:** | 60.4% | | | |
| **Sleep Maintenance:** | 62.8% | | | |

**Sleep Efficiency is time asleep as a % of time in bed. Sleep Maintenance is time asleep as a % of sleep period time. Awakenings are defined as 30 seconds or more.*

I reviewed the following: The patient chart, the raw data of sleep study, features of EEG, EKG rhythm and abnormality, sleep stages (at least by performing spot check) and the numerical data of sleep study report.
Impression/Plan:

Electronically signed: Mamoun I. Najjar, MD, FCCP, FAASM

## Positional Summary

| | Time (min) | %TST |
|---|---|---|

Patient: Alshareih, Mohammed Study Date: 4/25/2015

| | | |
|---|---|---|
| Left: | | ??50426?? % |
| Right: | | ??50428?? % |
| Supine: | 226.6 | ??50424?? % |
| Prone: | | ??50430?? % |

*Positional times are given for TST.Arousal Summary*

| Arousal Caused By: | Number | Index |
|---|---|---|
| Respiratory Events: | 0 | 0.0 |
| Snore: | 0 | 0.0 |
| LM: | 0 | 0.0 |
| Spontaneous: | 6 | 1.6 |
| Total: | 6 | 1.6 |

**Respiratory Events Summary**

***Number of Respiratory Events – Position & Sleep Stage***

| | NREM | | REM | | TOTAL |
|---|---|---|---|---|---|
| | Non-supine | Supine | Non-Supine | Supine | |
| Obstructive Apnea: | ??50179?? | 0 | ??50154?? | 0 | 0 |
| Mixed Apnea: | ??50184?? | 0 | ??50159?? | 0 | 0 |
| Central Apnea: | ??50174?? | 0 | ??50149?? | 0 | 0 |
| All Apneas: | ??53011?? | 0 | ??53016?? | 0 | 0 |
| Hypopneas: | ??50189?? | 1 | ??50164?? | 0 | 1 |
| Apneas + Hypopneas: | ??50209?? | 1 | ??50214?? | 0 | 1 |
| RERA: | ??50194?? | 0 | ??50169?? | 0 | 0 |
| A/H INDEX: | ??53036?? | 0.3 | ??53026?? | 0.0 | 0.3 |
| RDI: | ??53035?? | 0.3 | ??53025?? | 0.0 | 0.3 |

| | By Sleep Stage | | By Position | | TOTAL |
|---|---|---|---|---|---|
| | NREM | REM | Supine | Non-Supine | |
| Sleep Time (min.): | 212.1 | 14.5 | 226.6 | ??50124?? | 226.6 |
| Obstructive Apnea: | 0 | 0 | 0 | ??50064?? | 0 |
| Mixed Apnea: | 0 | 0 | 0 | ??50074?? | 0 |
| Central Apnea: | 0 | 0 | 0 | ??50054?? | 0 |
| All Apneas: | 0 | 0 | 0 | ??50096?? | 0 |
| Hypopneas: | 1 | 0 | 1 | ??50084?? | 1 |
| Apneas + Hypopneas: | 1 | 0 | 1 | ??50094?? | 1 |
| RERA: | 0 | 0 | 0 | ??50104?? | 0 |
| Apnea Index: | 0.0 | 0.0 | 0.0 | ??50097?? | 0.0 |
| Hypopnea Index: | 0.3 | 0.0 | 0.3 | ??50085?? | 0.3 |
| A/H INDEX: | 0.3 | 0.0 | 0.3 | ??50219?? | 0.3 |
| RDI: | 0.3 | 0.0 | 0.3 | ??50127?? | 0.3 |

* RDI denotes the average number of all respiratory events (Apnea+Hypop+RERA) per hour of sleep.

***Respiratory Event Durations***

| | Average (sec) | Maximum (sec) |
|---|---|---|
| Apnea (NREM): | 0.0 | 0.0 |
| Hypopnea (NREM): | 10.0 | 10.0 |
| RERA (NREM): | 0.0 | 0.0 |
| Apnea (REM): | 0.0 | 0.0 |
| Hypopnea (REM): | 0.0 | 0.0 |
| RERA (REM): | 0.0 | 0.0 |

***Other Respiratory Patterns***

**Cheyne Stokes Breathing:**

| | |
|---|---|
| YES ☐ | NO ☒ |

**Hypoventilation:**

| | |
|---|---|
| YES ☐ | NO ☒ |

*Patient:* ***Alshareih, Mohammed*** *Study Date:* ***4/25/2015***

**Oxygen Saturation Summary**

| | Wake | NREM | REM | Total Record |
|---|---|---|---|---|
| Total O2 Desaturations: | 0 | 0 | 0 | 0 |
| O2 Desaturation Index: | | 0.0 | 0.0 | 0.0 |
| Average O2 Saturation (%) | | 0.0 | 0.0 | 0.0 |
| Min O2 Saturation (%) | | | | 92 |
| Time @ 90% - 100% (min.) | ??514237? | ??514617? | ??514677? | ??514017? |
| Time @ 80% - 89% (min.) | ??514247? | ??514627? | ??514687? | ??514027? |
| Time @ 70% - 79% (min.) | ??514257? | ??514637? | ??514697? | ??514037? |
| Time @ 60% - 69% (min.) | ??514267? | ??514647? | ??514707? | ??514047? |
| Time @ 50% - 59% (min.) | ??514277? | ??514657? | ??514717? | ??514057? |
| | | | | |
| Time ≤ 88% (min.) | 7.1 | 0.0 | 0.0 | 0.0 |

**SaO2 <90% for 0.0% of the total sleep time.**

**Oximetry Histogram:**




**Limb Movements Summary**

| | Number | Index |
|---|---|---|
| Total Leg Movements: | 0 | N/A |
| PLMS: | 0 | N/A |
| PLMS Arousals: | 0 | N/A |

* *Index is number per hour of sleep.*

**Snore Summary**

| | Number |
|---|---|
| Snoring Episodes: | 0 |
| Snoring Index: | N/A |
| Total Time with Snoring: | 0 min |

* *Index is number per hour of sleep.*

**Heart Rate Summary**

| | HEART RATE | PULSE RATE |
|---|---|---|
| Average Rate During Sleep: | 71.3 bpm | 72.4 bpm |
| Highest Rate During Sleep: | 196 bpm | 96 bpm |
| Highest Rate During Recording (TIB): | 255 bpm | 102 bpm |

*Patient:* ***Alshareih, Mohammed*** *Study Date:* ***4/25/2015***

**Cardiac Events:**

**Occurrence of the following arrhythmias was observed:**

| **Arrythmia Type** | **# Events** | | |
|---|---|---|---|
| | **Yes** | **No** | **Rate / Duration** |
| **Bradycardia:** | | ✓ | Lowest HR Scored: |
| **Unclassified Tachycardia:** | | ✓ | Highest HR Scored: |
| **Sinus Tachycardia During Sleep:** | | ✓ | Highest HR Scored: N/A |
| **Narrow Complex Tachycardia:** | | ✓ | Highest HR Scored: N/A |
| **Wide Complex Tachycardia:** | | ✓ | Highest HR Scored: N/A |
| **Asystole:** | | ✓ | Longest Pause: N/A |
| **Atrial Fibrillation:** | | ✓ | Duration Longest Event: N/A |

**Technologist Comment Section**

- All electrodes and sensors have been applied according to *The AASM Manual for Scoring of Sleep and Associated Events, 2007 (IV)*
- All scoring follows *The AASM Manual for Scoring of Sleep and Associated Events: Rules, Terminology and Technical Specifications, 1st ed., 2007*
  Including scoring of hypopneas using VIII 4a and VIII 4b

EEG abnormalities noted? Yes or NO

If yes please explain:

Any abnormal behavioral observations noted? Yes or No

If yes please explain:

Patient: Alshareih, Mohammed

Study Date: 4/25/2015

## TREATMENT BREAKDOWN TABLE

| | | TIB | Sleep | REM | Supine | Apneas | | | | Hypopneas | | RERAs | | | | Min | Avg | Arousals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| IPAP | EPAP | (min) | (min) | (min) | | CA# | OA# | MA# | Index | # | Index | # | Index | AHI | RDI | SpO2 | SpO2 | Index |
| 5 | 5 | 350.1 | 226.5 | 14.5 | 226.5 | 0 | 0 | 0 | 0.0 | 1 | 0.3 | 0 | 0.0 | 0.3 | 0.3 | 92 | 95 | 1.6 |

Patient: Alshareih, Mohammed Study Date: 4/25/2015

## Hypnograms



Patient Name Alshareih Mohammed

Date of Study 4-25-15 Chart # ____

Room Number 5 Referring physician ____

Date of Birth [illegible]

Epworth Sleepiness Scale N/A

Height 65 Weight 150

O2 used Yes ____ No X Liter Flow ____

Ambien given Yes ____ No X Amount given (mg) 10 ____

Patient discharge time ____

If applicable:

CPAP mask brand respironics Style Fullface Size M

Technician Comments:

CPAP
CPAP start pressure 5 + in supine
pt had REM
pt has arousals
pt used the Bathroom once
pt has hypopneas
CPAP ~~ended~~ end pressure 5 + in supine

Technician's Signature [signature]

**Sleep & Pulmonary Care Center, P.C**
**105 W Dublin Dr.**
**Madison, AL 35758**
**Tel: (256) 341-0152 Fax: (256) 341-0587**
www.safe-sleep.com. Room 2

| | | | |
|---|---|---|---|
| **Patient:** | ALSHAREIH, MOHAMMED | **Date:** | 4/18/2015 at 9:32:11 PM |
| **DOB:** | | **PSG Study #:** | 89 |
| **Age:** | 51 years | **Referring** | , |
| **Sex:** | Male | **Height(in.):** | 65 in. |
| **PSG Tech:** | M. PENN | **Weight(lbs):** | 150 lbs. |
| **Scored by:** | M. PENN | **BMI:** | lb/in$^2$ |

## Diagnostic Report

| | | | |
|---|---|---|---|
| **Total Sleep Time:** | 381.6 | **Sleep Efficiency:** | 96.1% |
| **AHI:** | 8.8/hr | **REM %:** | 25.4 % |
| **Apneas & Hypopneas:** | 56 | **PLM Index:** | N/A |
| **PLMs:** | | **PLM Arousal Index:** | N/A |
| **Minimum SaO2:** | 87% | **Latency to Sleep Onset:** | 10.5 min |

### Sleep Architecture Summary

| | | | |
|---|---|---|---|
| **Lights Out:** | 9:33:41 PM | **Lights On:** | 4:10:47 AM |
| **Total Record Time:** | 397.1 min | **# REM Episodes:** | 4 |
| | | **# of Awakenings*:** | 3 |

| | Time (min.) | % of TST | % of SPT | % of TIB |
|---|---|---|---|---|
| **Time In Bed (TIB):** | 397.1 | | | 100 % |
| **Total Sleep Time (TST):** | 386.6 | 100 % | 98.7 % | 96.1 % |
| **Total Stage N1:** | 4.0 | 1.0 % | 1.0 % | 1.0 % |
| **Total Stage N2:** | 280.6 | 73.5 % | 72.6 % | 70.7 % |
| **Total Stage N3:** | 0.0 | 0.0 % | 0.0 % | 0.0 % |
| **Total Stage R:** | 97.0 | 25.4 % | 25.1 % | 24.4 % |
| **Total Movement Time:** | 0.0 | | 0.0 % | 0.0 % |
| **Total Wake Time:** | 15.5 | | | 3.9 % |
| **WASO:** | 5.0 | | | |
| **Wake Time During SPT:** | 5.0 | | 1.3 % | |
| **Latency to Sleep Onset:** | 10.5 | | | |
| **Latency to REM Sleep:** | 78.5 | | | |
| **Latency to Persistent Sleep:** | 1.0 | | | |
| **Sleep Efficiency:** | 96.1% | | | |
| **Sleep Maintenance:** | 98.7% | | | |

**Sleep Efficiency is time asleep as a % of time in bed. Sleep Maintenance is time asleep as a % of sleep period time. Awakenings are defined as 30 seconds or more.*

I reviewed the following: The patient chart, the raw data of sleep study, features of EEG, EKG rhythm and abnormality, sleep stages (at least by performing spot check) and the numerical data of sleep study report.

Impression/Plan:

Electronically signed: Mamoun I. Najjar, MD, FCCP, FAASM

*Patient:* ***ALSHAREIH, MOHAMMED*** *Study Date:* ***4/18/2015***

## Positional Summary

| | Time (min) | %TST |
|---|---|---|
| Left: | | 0.00 % |
| Right: | | 0.00 % |
| Supine: | | 0.00 % |
| Prone: | | 0.00 % |

*Positional times are given for TST.Arousal Summary*

| Arousal Caused By: | Number | Index |
|---|---|---|
| Respiratory Events: | 12 | 1.9 |
| Snore: | 0 | 0.0 |
| LM: | 0 | 0.0 |
| Spontaneous: | 35 | 5.5 |
| Total: | 47 | 7.4 |

## Respiratory Events Summary

*Number of Respiratory Events – Position & Sleep Stage*

| | NREM | | REM | | TOTAL |
|---|---|---|---|---|---|
| | Non-supine | Supine | Non-Supine | Supine | |
| Obstructive Apnea: | 0.00 | | 0.00 | | 0 |
| Mixed Apnea: | 0.00 | | 0.00 | | 0 |
| Central Apnea: | 0.00 | | 0.00 | | 0 |
| All Apneas: | 0.00 | | 13.61 | | 0 |
| Hypopneas: | 34.00 | | 22.00 | | 56 |
| Apneas + Hypopneas: | 34.00 | | 0.00 | | 56 |
| RERA: | 56.00 | | 15.00 | | 71 |
| A/H INDEX: | 7.17 | | 0.00 | | 8.8 |
| RDI: | 18.97 | | 22.89 | | 20.0 |

| | By Sleep Stage | | By Position | | TOTAL |
|---|---|---|---|---|---|
| | NREM | REM | Supine | Non-Supine | |
| Sleep Time (min.): | 284.6 | 97.0 | | 381.60 | 381.6 |
| Obstructive Apnea: | 0 | 0 | | 0.00 | 0 |
| Mixed Apnea: | 0 | 0 | | 0.00 | 0 |
| Central Apnea: | 0 | 0 | | 0.00 | 0 |
| All Apneas: | 0 | 0 | | 0.00 | 0 |
| Hypopneas: | 34 | 22 | | 56.00 | 56 |
| Apneas + Hypopneas: | 34 | 22 | | 56.00 | 56 |
| RERA: | 56 | 15 | | 71.00 | 71 |
| Apnea Index: | 0.0 | 0.0 | | 0.00 | 0.0 |
| Hypopnea Index: | 7.2 | 13.6 | | 8.81 | 8.8 |
| A/H INDEX: | 7.2 | 13.6 | | 8.81 | 8.8 |
| RDI: | 19.0 | 22.9 | | 19.97 | 20.0 |

** RDI denotes the average number of all respiratory events (Apnea+Hypop+RERA) per hour of sleep.*

*Respiratory Event Durations*

| | Average (sec) | Maximum (sec) |
|---|---|---|
| Apnea (NREM): | 0.0 | 0.0 |
| Hypopnea (NREM): | 24.6 | 35.0 |
| RERA (NREM): | 22.8 | 35.5 |
| Apnea (REM): | 0.0 | 0.0 |
| Hypopnea (REM): | 25.3 | 35.5 |
| RERA (REM): | 24.6 | 37.0 |

*Other Respiratory Patterns*

**Cheyne Stokes Breathing:**

YES ☐ NO ☒

**Hypoventilation:**

YES ☐ NO ☒

Patient: ALSHAREIH, MOHAMMED Study Date: 4/18/2015

## Oxygen Saturation Summary

| | Wake | NREM | REM | Total Record |
|---|---|---|---|---|
| Total O2 Desaturations: | 1 | 28 | 32 | 60 |
| O2 Desaturation Index: | | 17.3 | 6.8 | 9.4 |
| Average O2 Saturation (%) | | 17.3 | 6.8 | 9.4 |
| Min O2 Saturation (%) | | | | 87 |
| Time @ 90% - 100% (min.) | 15.50 | 284.00 | 96.70 | 396.20 |
| Time @ 80% - 89% (min.) | 0.00 | 0.40 | 0.30 | 0.70 |
| Time @ 70% - 79% (min.) | 0.00 | 0.00 | 0.00 | 0.00 |
| Time @ 60% - 69% (min.) | 0.00 | 0.00 | 0.00 | 0.00 |
| Time @ 50% - 59% (min.) | 0.00 | 0.00 | 0.00 | 0.00 |
| Time ≤ 88% (min.) | 0.0 | 0.0 | 0.0 | 0.0 |

**SaO2 <90% for 0.2% of the total sleep time.**

## Oximetry Histogram:




## Limb Movements Summary

| | Number | Index |
|---|---|---|
| Total Leg Movements: | 0 | N/A |
| PLMS: | 0 | N/A |
| PLMS Arousals: | 0 | N/A |

* *Index is number per hour of sleep.*

## Snore Summary

| | Number |
|---|---|
| Snoring Episodes: | 0 |
| Snoring Index: | N/A |
| Total Time with Snoring: | 0 min |

* *Index is number per hour of sleep.*

## Heart Rate Summary

| | HEART RATE | PULSE RATE |
|---|---|---|
| Average Rate During Sleep: | 72.4 bpm | 71.8 bpm |
| Highest Rate During Sleep: | 194 bpm | 107 bpm |
| Highest Rate During Recording (TIB): | 194 bpm | 107 bpm |

*Patient:* ***ALSHAREIH, MOHAMMED*** *Study Date:* ***4/18/2015***

**Cardiac Events:**

**Occurrence of the following arrhythmias was observed:**

| Arrythmia Type | # Events | | |
|---|---|---|---|
| | Yes | No | Rate / Duration |
| **Bradycardia:** | | ✓ | Lowest HR Scored: |
| **Unclassified Tachycardia:** | | ✓ | Highest HR Scored: |
| **Sinus Tachycardia During Sleep:** | | ✓ | Highest HR Scored: N/A |
| **Narrow Complex Tachycardia:** | | ✓ | Highest HR Scored: N/A |
| **Wide Complex Tachycardia:** | | ✓ | Highest HR Scored: N/A |
| **Asystole:** | | ✓ | Longest Pause: N/A |
| **Atrial Fibrillation:** | | ✓ | Duration Longest Event: N/A |

**Technologist Comment Section**

- All electrodes and sensors have been applied according to *The AASM Manual for Scoring of Sleep and Associated Events, 2007 (IV)*
- All scoring follows *The AASM Manual for Scoring of Sleep and Associated Events: Rules, Terminology and Technical Specifications, 1st ed., 2007*
  Including scoring of hypopneas using VIII 4a and VIII 4b

EEG abnormalities noted? Yes or NO

If yes please explain:

Any abnormal behavioral observations noted? Yes or No

If yes please explain:

Patient: **ALSHAREIH, MOHAMMED** Study Date: **4/18/2015**

## Hypnograms



Patient Name Mohammed Alshareih

Date of Study 04/18/15 Chart # 2272

Room Number 3 Referring physician ____

Date of Birth ____

Epworth Sleepiness Scale ____

Height 65 Weight 150

O2 used Yes ____ No ✓ Liter Flow ____

Ambien given Yes ____ No ✓ Amount given (mg) ____

Patient discharge time ____

If applicable:

CPAP mask brand ____ Style ____ Size ____

Technician Comments:

NPSG
Hypopnea + RERAs were observed
No arrythmia was observed
No significant PLMs were observed

Technician's Signature [signature]

**n0054335**

**From:** malshareih
**Sent:** Thursday, October 20, 2016 2:08:12 PM
**To:** Gray, Lisa
**Subject:** RE: Physical address is needed

Hi Lisa
My address is:

Sent from my T-Mobile 4G LTE Device

-------- Original message --------
From: "Gray, Lisa" <LISA.GRAY@LibertyMutual.com>
Date: 10/17/2016 8:15 PM (GMT+02:00)
To: malshareih@gmail.com
Subject: Physical address is needed

Good Afternoon,

We are currently updating our files. In order to send registered mail and/or overnight mail we need your physical address. Please provide us with this information by the end of this week.

Thank you,

Lisa Gray

Technical Claims Consultant

Liberty Life Assurance Company of Boston

100 Liberty Way - Mail Stop 02E Dover, NH 03820
(P) 1-888-437-7611 Ext: 16396

(F) 603-334-5715

# Liberty Mutual Consulting Physician Referral

## File Review - Standard

**Physician Specialty: Pulmonary**

| | | | |
|---|---|---|---|
| Office: | 0096 | Claim #: | 5690365 |
| Claimant Name: | MOHAMMED AL-SHAREIH | | |
| Date of Birth: | | Claim Status: | AP |
| Date of Disability: | 1/23/2016 | Date Sent: | 10/17/2016 |
| Claimant SSN: | | Date Benefits Began: | 4/22/2016 |
| Product Type: | LTD | Paid Through: | 4/22/2019 |
| Disability Level: | Own Occupation | | |

Document Locations

- [x] Document List
- [ ] Correspondence
- [ ] Paper File

Policyholder/Self-Insured Plan Holder: CROWN EQUIPMENT CORPORATION

Referred By: GRAY, LISA 096 8*731-6396

Assigned Nurse Case Manager:

Diagnosis: G47.1 Hypersomnia, J44.9 Chronic obstructive pulmonary disease, unspecified

Questions or Issues for Physician: (Note - If a physician has viewed this claim in the past please detail the physician and the outcome.)

Dr. Bullard reviewed this file in May 2016. Additional information has been received. Further review is needed. Please refer to Dr. Bullard fo review and comment.

Please review the medical evidence received after your May 2016 review.

Further review is needed to determine if diagnoses of hypersomnolence and sleep apnea are supported.

Based on your review please outlined supported diagnoses.

Does this information alter your May 2016 findings/Conclusions regarding this individual's level of impairment and R/L's (Pre X does not need to be addressed). If yes, please outline your findings and specific R/L's.

Dr. Najjar opines EE is totally disabled. Based on your review do you agree?

Based on your review of the updated medical evidence does this individual have the capacity to sustain full time sedentary work? Please explain.

## n0054335

**From:** GRP MKT MD Referral
**Sent:** Monday, October 17, 2016 2:07:34 PM
**To:** Gray, Lisa
**Cc:** GMKT MD Referral Charlotte
**Subject:** Referral 5690365 - AL-SHAREIH, MOHAMMED - Assignment Notification

Thank you for this referral.

The referral has been assigned to Andrew Bullard MD in the Charlotte office.

If you have questions regarding the status of this referral, please review the daily status report. If you have further questions, please contact the Medical Department in the Dover office.

(Please do not respond to this e-mail, as this is a system generated e-mail and responses are not monitored.)

Office: GM - Dover
Claim Number: 5690365
Claimant: AL-SHAREIH, MOHAMMED
Priority Status: 2
Date of Disability: 1/23/2016
Product Type: LTD
Disability Level: Own Occupation
Claim Status: AP
Date Referred: 10/17/2016
Date Report Needed: 11/4/2016
Policy Holder: CROWN EQUIPMENT CORPORATION
Referred By: GRAY, LISA 096 8*731-6396
Diagnosis: G47.1 Hypersomnia, J44.9 Chronic obstructive pulmonary disease, unspecified
Questions or Issues for Physician: Dr. Bullard reviewed this file in May 2016. Additional information has been received. Further review is needed. Please refer to Dr. Bullard fo review and comment.

Please review the medical evidence received after your May 2016 review.

Further review is needed to determine if diagnoses of hypersomnolence and sleep apnea are supported.

Based on your review please outlined supported diagnoses.

Does this information alter your May 2016 findings/Conclusions regarding this individuals level of impairment and R/Ls (Pre X does not need to be addressed). If yes, please outline your

findings and specific R/Ls.

Dr. Najjar opines EE is totally disabled. Based on your review do you agree?

Based on your review of the updated medical evidence does this individual have the capacity to sustain full time sedentary work? Please explain.

**n0054335**

**From:** Gray, Lisa
**Sent:** Monday, October 17, 2016 1:15:09 PM
**To:** 'malshareih@gmail.com'
**Subject:** Physical address is needed

Good Afternoon,

We are currently updating our files. In order to send registered mail and/or overnight mail we need your physical address. Please provide us with this information by the end of this week.

Thank you,

Lisa Gray

Technical Claims Consultant

Liberty Life Assurance Company of Boston

100 Liberty Way - Mail Stop 02E Dover, NH 03820
(P) 1-888-437-7611 Ext: 16396

(F) 603-334-5715

# *Sleep & Pulmonary Care Center*, P.C

## *Mamoun I. Najjar, M.D.*

Tel 1-866-95-APNEA (256) 341 0152 Fax (256) 341 0587

## Facsimile Transmittal Sheet

To: Lisa Gray From: SAPCC

Company: Date: 10-14-16

Fax Number: 603 334 5715 Total Number of Pages Including Cover: 23

Phone Number:

RE: Mohammed Al-Shareih

Notes/Comments: Records

The information contained in this facsimile transmittal sheet and documents that follow are for the exclusive use of the addressee named above and may contain confidential and privileged information. If the recipient of this facsimile is not the addressee named above, you are hereby notified that any reading, photocopying, distributing, or other use of this facsimile, or its contents, is strictly prohibited. If you receive this facsimile in error, please call us immediately so that we can arrange for the return of the documents.

Liberty Mutual.
INSURANCE

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
(888) 437-7611
Secure Fax No.: (603) 334-5715

| | |
|---|---|
| Date: | September 9, 2016 |
| To: | DR. MAMOUN NAJJAR<br>1222 SOMERVILLE ROAD SE<br>DECATUR AL 35601 |
| Attn: | |
| Fax: | (256) 341-0587 |
| From: | Lisa Gray<br>Disability Claims Tech Spec<br>Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-5715 |
| Total Pages (Including Cover): | 5 |
| RE: | Claim #: 5690365<br>Claimant: Mohammed Al-Shareih<br><br>Crown Equipment Corporation |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

Liberty Mutual. INSURANCE

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5715

September 9, 2016

Dr. Mamoun J. Najjar
1222 SOMERVILLE ROAD SE
DECATUR, AL 35601

RE: Long Term Disability (LTD) Benefits
Crown Equipment Corporation
Claim #: 5690365
Claimant: Mohammed Al-Shareih
Claimant D.O.B.:

Dear Dr. Mamoun Najjar:

We are the Disability Claim Administrator for your patient, Mohammed Al-Shareih.

To evaluate Mr. Al-Shareih's eligibility for disability benefits and to help facilitate a return to work, when appropriate, we are requesting the following information:

- Please forward copies of all progress notes, sleep study test results, pulmonary test results and diagnostic test results from April 14, 2016 through present.

We ask that you provide this information by September 30, 2016. Failure to provide the requested information may result in an adverse benefit or claim determination. The information can be faxed to our office at our secure fax number (603) 334-5715 or mailed to the above address.

If prepayment is required, please fax an invoice indicating the number of pages, federal tax ID# and amount due.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored LTD benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Mr. Al-Shareih allowing the release of information to our company. This authorization specifically allows you to release medical information to us and is valid for two years from the date of Mr. Al-Shareih's signature.

If you have any questions regarding this matter, please contact me.

Sincerely,

Lisa Gray
Disability Claims Tech Spec
Phone No.: (888) 437-7611 Ext. 16396
Secure Fax No.: (603) 334-5715

Attachments: 5690365-EMPLOYEE/CLAIMANT-AUTHORIZATION-05.25.2016

Liberty Mutual. INSURANCE

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5715

## Authorization to Obtain and Release Psychotherapy Notes

**EMPLOYEE** Mohammed Al-Shareih **Claim** 5690365

**EMPLOYER/SPONSOR/CUSTOMER** Crown Equipment Corporation

**Return** Lisa Gray

I **authorize** any physician, health plan, health care professional, mental health professional, hospital, clinic, medical facility, other health care providers, government agency and any insurance or reinsurance company to release any psychotherapy notes relating to me to the particular Company in the Liberty Mutual Group of companies to which I am submitting a claim, or to its agents, employees, or representatives, or to the Plan Sponsor (if Self Insured Plan), or to persons or other organizations providing claims management services.

By my signature below, I acknowledge that any agreements I have made to restrict my protected health information do not apply to this Authorization, and I instruct any physician, health plan, health care professional, hospital, clinic, medical facility, other health care provider, government agency, and any insurance or reinsurance company to release and disclose all of my psychotherapy notes without restriction, including psychotherapy notes recorded in any medium documenting or analyzing the contents of conversations(s) during private counseling sessions and/or group, joint or family counseling sessions.

I **understand** the Company or Plan Sponsor will use the information obtained under this Authorization or directly from me to determine eligibility for insurance benefits, which may include assessing ongoing treatment. Any information obtained will not be released to any person or organizations *EXCEPT* to the Plan Sponsor, reinsuring companies, other companies in the Liberty Mutual Group of companies to which I am submitting a claim, Employee Assistance Programs (EAP) or other disease management or assistance programs providing services to the Plan Sponsor and/or to the Company, persons or other organizations providing claims management and claim advisory services to the Plan Sponsor and/or to the Company, the Group Policyholder and its agents/vendors for purposes of auditing the Company's administration of claims under the policy and/or assessing statistical claim data related to its benefit programs, persons or organizations providing medical treatment or services in connection with my claim, or any person performing business or legal services for them in connection with my claim(s) or as may be otherwise permitted or required by law. I also understand that, to the extent reasonably necessary, information obtained may be released to other insurance companies or insurance support organizations to detect or prevent criminal activity, fraud, material misrepresentation, or material non-disclosure in connection with insurance transactions.

I **understand** that the Company must comply with state and federal laws and regulations enacted to protect my privacy. I also understand that the information disclosed to them pursuant to this Authorization may be subject to redisclosure with my authorization or as otherwise permitted or required by law.

**I understand** that this Authorization is valid for two years from the date appearing below with my signature. I understand that I have a right to request and receive a copy of this Authorization. I agree that a photographic copy of this Authorization shall be as valid as the original. I understand that I have the right to revoke this Authorization at any time by written notification to the Plan Sponsor and/or the Company in the Liberty Mutual Group of companies for which I submit a claim. I understand that revocation will not apply to any information that is requested prior to Liberty receiving notice of revocation.

**I understand** that if I refuse to sign this Authorization to release all of my psychotherapy notes or if I alter or revoke it, the Company may not be able to process my claim for benefits and may not be able to make benefit payments.

Mohammed Al-Shareih
Claimant Name (Print)

Date of Birth

Al-Shareih [signature]
Claimant Signature

03/29/2016
Date

5690365
Claim Number

Liberty Mutual.
INSURANCE

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5715

## Authorization to Obtain and Release Information (Excluding Psychotherapy notes)

Employee Name Mohammed Al-Shareih Claim No 5690365

Employer/Sponsor/Customer Name Crown Equipment Corporation

Return to: Lisa Gray

I authorize any licensed physician, health care professionals, hospital, clinic, pharmacy, other medical or medically related facility, rehabilitation professional; vocational evaluator; government agency including the Social Security Administration and Veterans Administration, insurance or reinsurance company, credit or consumer reporting agency, financial/educational institutions and any current or former employer to release any and all of the following information to the particular Company in the Liberty Mutual Group of companies to which I am submitting claim, or to its legal representative, or to the Plan Sponsor (if Self-Insured Plan), or to persons or other organizations providing claims management services:

1. Medical information with respect to any physical or mental condition and/or treatment of me, including confidential information regarding AIDS/HIV infection, communicable diseases, alcohol and substance abuse, and mental health **(excluding psychotherapy notes).**

2. Information with respect to: job duties, earnings, employment applications, personnel records, and other work related information; records and information related to any insurance coverage and claims filed; credit information including, but not limited to, credit reports and credit applications; other financial information including bank records; complete copies of Federal and State tax returns; including attachments; and academic transcripts.

3. Information concerning Social Security benefits, including, but not limited to, monthly benefit amounts, monthly Supplemental Security Income payment amounts, entitlement dates, information from my Fact Query, and any benefits to which my dependents may be eligible under my record.

I understand the Company or Plan Sponsor will use the information obtained under this Authorization or directly from me to determine eligibility for insurance benefits, which may include assessing ongoing treatment. Any information obtained will not be released to any person or organizations EXCEPT to the Plan Sponsor, reinsuring companies, other companies in the Liberty Mutual Group of companies to which I am submitting a claim, Employee Assistance Programs (EAP) or other disease management or assistance programs providing services to the Plan Sponsor and/or to the Company, persons or other organizations providing claims management and claim advisory services to the Plan Sponsor and/or to the Company, the Group Policyholder and its agents/vendors for purposes of auditing the Company's administration of claims under the policy and/or assessing statistical claim data related to its benefit programs, persons or organizations providing medical treatment or services in connection with my claim, or as may be other wise permitted or required by law. I also understand that, to the extent reasonably necessary, information obtained may be released to other insurance companies or insurance support organizations to detect or prevent criminal activity, fraud, material misrepresentation, or material non-disclosure in connection with insurance transactions.

I understand that this authorization is valid for two years from the date appearing below with my signature. I understand that I have a right to request and receive a copy of this authorization. I understand that I have the right to revoke this Authorization at any time by notifying the Plan Sponsor and/or the Company in the Liberty Mutual group of companies for which I submit a claim. If I do not sign this authorization or if I alter or revoke it, Liberty may not be able to evaluate my claim(s), which may lead to my claim(s) being denied. I understand that revocation will not apply to any information that is requested prior to Liberty receiving notice of revocation.

Mohammed Al-Shareih
Claimant Name (Print) Date of Birth

Claimant Signature Date

5690365
Claim Number

**ALSHAREIH, MOHAMMED 53y M**
DOB:

# Patient Chart Report

SLEEP & PULMONARY CENTER, P.C.

10/07/16 3:09 pm

## Patient Information

### Demographics

| | |
|---|---|
| Patient Number | **10583** |
| Chart Number | **2272s** |
| Age/Sex | **53y M** |
| Marital Status | |
| Emp. Status | |
| Assigned Prov | **Najjar, Mamoun I. M.D.** |
| Primary Care Prov | **Najjar, Mamoun I. M.D.** |
| Care Coordinator | |
| Referring Prov | |
| Rel. to Guarantor | **Self** |
| Date of Birth | |
| Race | |
| Language | **English** |
| Mother's Maiden | |
| Social Security # | |
| Became Patient | **04/08/11** |
| Last Visit | **09/06/16** |
| Home Phone | |
| Work Phone | |
| Mobile Phone | |
| Address | |

### Additional Information

Email

| | | | |
|---|---|---|---|
| Patient Consent | **Yes** | Recall Method | **Paper** |
| Rx History Consent | **Rx Hx Consent Given for Any Prescriber** | | |
| Date Set | **01/01/00** | | |
| Consent Notes | **Set During Patient Registration.** | | |

## Guarantor Information

| | |
|---|---|
| Guarantor | **ALSHAREIH, MOHAMMED** |
| Home Phone | |
| Work Phone | |
| Address | |
| City, State & Zip | |
| Date of Birth | |
| Social Security # | |
| Account Date | **04/08/11** |
| Employer | |
| Emp. Status | |

**ALSHAREIH, MOHAMMED 53y M**
DOB:

# Patient Chart Report

10/07/16 3:09 pm

SLEEP & PULMONARY
CENTER, P.C.

## Patient Information

### Insurance Information

| | Insurance Plan Name | Insurance ID | Group # | Subscriber Name | Relation | Start and End Dates |
|---|---|---|---|---|---|---|
| 1 | Aetna | W218475409 | 868203-014-00008 | ALSHAREIH, MOHAMMED | Self | |

**ALSHAREIH, MOHAMMED 53y M**
DOB:

# Patient Chart Report

10/07/16 3:09 pm

SLEEP & PULMONARY
CENTER, P.C.

## Active Medications

| Drug Name | Diag | Dosage | Days | User | Status | Issued/Reported |
|---|---|---|---|---|---|---|
| ProAir HFA 108 (90 Base) | | 30 days, 3 | 35 | Mamoun Najjar | Current | 07/14/2016 |
| Medrol 4 MG Tablet Therapy | | 30 days, 0 | 1 | Mamoun Najjar | Current | 07/14/2016 |
| Methylin 5 MG Tablet | | tid 30 days, 0 | 1 | Mamoun Najjar | Current | 06/20/2016 |
| Methylin 10 mg Tablet | | tid 30 days, 0 | 1 | Mamoun Najjar | Current | 06/20/2016 |
| Symbicort 160-4.5 MCG/ACT | | 2bid 30 days, 3 | 11 | Mamoun Najjar | Current | 06/20/2016 |
| ProAir HFA 108 (90 Base) | | ud 30 days, 3 | 11 | Mamoun Najjar | Current | 06/20/2016 |

## Active Allergies

| Allergy | Status | Onset | Reactions | User | Reviewed |
|---|---|---|---|---|---|
| No Known Allergies | Active | | | Staci Walker | 10/19/2015 |

## Vitals -- 04/14/16 to 10/07/16

| Vital Name | 09/06/16 01:20pm | 09/01/16 09:16am | 08/15/16 03:14pm | 07/14/16 01:41pm |
|---|---|---|---|---|
| All Items | | | | |
| Systolic BP-Sitting (mmHg) | 110 | 110 | 118 | 121 |
| Diastolic BP-Sitting (mmHg) | 55 | 60 | 65 | 68 |
| Pulse Rate-Sitting (bpm) | 80 | 87 | 83 | 60 |
| Height (in) | 65 | 65 | 65 | 65 |
| Weight (lbs) | 157 | 158 | 156 | 154 |
| Body Mass Index | 26.1 | 26.3 | 26.0 | 25.6 |
| Body Surface Area | 1.78 | 1.79 | 1.78 | 1.77 |
| Oxygen Saturation (%) | 98 | 92 | 93 | 95 |

**ALSHAREIH, MOHAMMED 53y M**
DOB:

# Patient Chart Report

10/07/16 3:09 pm

SLEEP & PULMONARY
CENTER, P.C.

## All Lab Results -- 04/14/16 to 10/07/16

| Component | Flag | Result | Units | Range | Status |
|---|---|---|---|---|---|

No Data Found

## Clinical History for Active History

| Medical History | Qualifiers | Comments | User | Updated |
|---|---|---|---|---|
| Past medical history reviewed with patient | | and/or representative. | Angie Gann | 08/28/2016 |

| Social History | Qualifiers | Comments | User | Updated |
|---|---|---|---|---|
| Social history | | reviewed with patient or representative. | Angie Gann | 08/28/2016 |
| Not a current smokeless tobacco user | Result: normal | | BreAnna Phillips | 08/28/2016 |
| Smoking status | : Current everyday smoker, Result: abnormal | | Angie Gann | 08/28/2016 |

| Family History | Qualifiers | Comments | User | Updated |
|---|---|---|---|---|
| Family medical history | | reviewed with patient or representative. | Angie Gann | 08/28/2016 |

## Diagnosis History -- 04/14/16 to 10/07/16

| Service Date | Code | Description | Provider |
|---|---|---|---|
| 09/06/2016 | G47.12 | Idiopathic hypersomnia without long sleep time | Gann, Angela NP |
| 09/06/2016 | J44.9 | Chronic obstructive pulmonary disease, unspecified | Gann, Angela NP |
| 09/01/2016 | F51.11 | Primary hypersomnia | Najjar, Mamoun I. M.D. |
| 09/01/2016 | G47.12 | Idiopathic hypersomnia without long sleep time | Najjar, Mamoun I. M.D. |
| 09/01/2016 | G47.33 | Obstructive sleep apnea (adult) (pediatric) | Najjar, Mamoun I. M.D. |
| 09/01/2016 | J44.9 | Chronic obstructive pulmonary disease, unspecified | Najjar, Mamoun I. M.D. |
| 08/26/2016 | R06.02 | Shortness of breath | Najjar, Mamoun I. M.D. |
| 08/26/2016 | R42 | Dizziness and giddiness | Najjar, Mamoun I. M.D. |
| 08/15/2016 | G47.12 | Idiopathic hypersomnia without long sleep time | Najjar, Mamoun I. M.D. |
| 08/15/2016 | G47.33 | Obstructive sleep apnea (adult) (pediatric) | Najjar, Mamoun I. M.D. |
| 08/15/2016 | I51.89 | Other ill-defined heart diseases | Najjar, Mamoun I. M.D. |
| 08/15/2016 | J44.9 | Chronic obstructive pulmonary disease, unspecified | Najjar, Mamoun I. M.D. |
| 08/12/2016 | G47.33 | Obstructive sleep apnea (adult) (pediatric) | Najjar, Mamoun I. M.D. |
| 07/14/2016 | F51.11 | Primary hypersomnia | Gann, Angela NP |
| 07/14/2016 | G47.33 | Obstructive sleep apnea (adult) (pediatric) | Gann, Angela NP |
| 07/14/2016 | I51.89 | Other ill-defined heart diseases | Gann, Angela NP |

ALSHAREIH, MOHAMMED 53y M
DOB:

## Patient Chart Report

10/07/16 3:09 pm

SLEEP & PULMONARY
CENTER, P.C.

### Diagnosis History -- 04/14/16 to 10/07/16

| Service Date | Code | Description | Provider |
|---|---|---|---|
| 07/14/2016 | J44.9 | Chronic obstructive pulmonary disease, unspecified | Gann, Angela NP |

2016-10-14 11:44

1 2563410587 >> LMG

P-004

# CAROTID ULTRASOUND

FACILITY Decatur DATE 8/26/16

PATIENT Alshareih, Mohamed

DOB ______ AGE 1 SEX M

PHYSICIAN Najjar TECH KC TAPE ______

INDICATION Dizzy

| VELOCITY (cm/s) sys/dia | |
|---|---|
| R Subclavian | 0.79 |
| R CCA prox | 0.89 |
| R CCA dist | 0.91 |
| R ICA prox | 0.77 |
| R ICA dist | 0.72 |
| R ECA prox | 0.82 |
| R Vertebral | 0.41 |
| INT Thickening | Ø |

PLAQUE:
- ☐ Smooth ☐ Soft
- ☐ Calcified ☐ Irregular

Location:
Before Plaque:
At Plaque:
After Plaque:
% Obstruction:
CA/CCA:




| VELOCITY (cm/s) sys/dia | |
|---|---|
| L Subclavian | 1.19 |
| L CCA prox | 0.98 |
| L CCA dist | 0.88 |
| L ICA prox | 1.20 |
| L ICA dist | 0.79 |
| L ECA prox | 1.10 |
| L Vertebral | 0.42 |
| INT Thickening | Ø |

PLAQUE:
- ☐ Smooth ☐ Soft
- ☐ Calcified ☐ Irregular

Location:
Before Plaque:
At Plaque:
After Plaque:
% Obstruction:
CA/CCA:

Technologist Comments (This report is not final until interpreted by a physician):

Impression

Ø focal narrowing
Ø gross plaque
Ø intimal thickening
Bilat antegrade verts

Electronically signed by: Mamoun I. Najjar, MD

## CAROTID ARTERY STENOSIS

| | 0-50% | 50-75% | 75-90% | >90% |
|---|---|---|---|---|
| Peak Systolic Velocity (cm/sec) | <125 | 125-225 | 225-325 | >325 |
| Spectral Broadening (Bandwidth) | <40 | 40-80 | 80-120 | >120 |
| Systolic Velocity Ratio (ICA/CCA) | <2:1 | >2:1 | >3:1 | >4:1 |

| | 0-50% | 50-75% | 75-90% | >90% |
|---|---|---|---|---|
| Peak Diastolic Velocity | <40 | 40-100 | >100 | >100 |
| Diastolic Velocity Ratio (ICA/CCA) | | | >5:1 | >9:1 |
| CCA Velocity Ratio (RCCA/LCCA) | 0.7-1.3 | 0.7-1.3 | 0.7-1.3 | 0.7/>1.3 |

2016-10-14 11:44 1 2563410587 >> LMG

Decatur Echocardiogram Report

| Name: AlShafiyah, Mohammed | Date: 8/26/16 | D.O.B.: |
|---|---|---|
| Age: | Sex: | Indication: SOB |
| Account: | Height/Weight: | Location: Decatur |
| Referring Dr.: Najjar | Tech: RO | |

M-Mode(Normal dimensions [mm] in brackets)

LEFT VENTRICLE

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Diastole: | 39 | <57mm | Aorta: | 21 | <37mm | IVS: | 8 |
| Systole: | 20 | <40mm | AV: | 18 | >15mm | LVPW: | 7 |
| LVEF: | 79% | >60% | MV: | 17 | >18mm | RV: | 19 |
| EF Short: | | >25% | E/A Ratio: | 1.0 | 1.1-1.5 | LA: | 35 |

Real Time:

| | |
|---|---|
| Pericardial Effusion: __Y or __N | |
| Aortic Arch: | |
| Ascending Aorta: 29mm | |

Doppler Findings:

| | | | |
|---|---|---|---|
| Aortic Valve: | Vmax- 1.01 m/s | MnGrad- mmHg | |
| Mitral Valve: | E: 0.7 m/s | A: 0.7 m/s | |
| Pulmonic Valve: | 0.91 m/s | | |
| Tricuspid Valve: | 2.31 m/s | RVSP: 32 mmHg | |

Tech Findings:

Right Atrium: Normal in size.

Left Atrium: Normal in size.

Right Ventricle: Normal in size.

Left Ventricle: LV appears normal in size. Normal LV wall thickness. Normal LV wall Systolic function with estimated EF of 60-65%. Normal LV wall motion.

Interatrial Septum: Intact by color Doppler

Mitral Valve: Mitral valve leaflets appear normal. No significant regurgitation or stenosis. Mild MR

Tricuspid Valve: Tricuspid valve is normal. Mild TR regurgitation. Estimated RVSP is 32 mmHg.

Aortic Valve: Aortic valve is tri leaflet and appears normal. No significant regurgitation or stenosis.

Pulmonary Valve: Grossly Normal.

Diastology: Diastolic function is normal.

Pericardium: No pericardial effusion or tamponade.

Ascending Aorta: Normal in size.

Impression:

Electronically Signed by: Mamoun I Najar, MD

Patient: Study Date:

**Sleep & Pulmonary Care Center, P.C**
**1222 Somerville Road SE**
**Decatur, AL 35601**
**Tel: (256) 341-0152 Fax: (256) 341-0587**
**www.safe-sleep.com**

| | | | |
|---|---|---|---|
| **Patient:** | ALSHAREIH,MOHAMMED | **Date:** | 08/12/2016 21:06 |
| **DOB:** | | **PSG Study #:** | 2272S |
| **Age:** | 53 yrs | **Referring** | , |
| **Sex:** | M | **Height(in.):** | 65 |
| **PSG Tech:** | BK | **Weight(lbs):** | 154 |
| **Scored by:** | BK | **BMI:** | |

# Treatment Report

| | | | |
|---|---|---|---|
| **Total Sleep Time:** | 331 | **Sleep Efficiency:** | 90.1 |
| **AHI:** | 0.5 | **RDI:** | 1.1 |
| **Apneas & Hypopneas:** | 3 | **RERAs** | 3 |
| **PLMs:** | 0 | **PLM Arousal Index:** | 0.0 |
| **Minimum SaO2:** | 93 | **Latency to Sleep Onset:** | 5 |

## Sleep Architecture Summary

| | | | |
|---|---|---|---|
| **Lights Out:** | 09:06:59 PM | **Lights On:** | 03:14:29 AM |
| **Total Record Time:** | 368.4 min. | **# REM Episodes:** | 3 |
| | | **# of Awakenings*:** | 6 |

| | Time (min.) | % of TST | % of SPT | % of TIB |
|---|---|---|---|---|
| **Time In Bed (TIB):** | 367.5 | | | 100 % |
| **Total Sleep Time (TST):** | 331 | 100 % | 91.3 % | 90.1 % |
| **Total Stage N1:** | 2 | 0.6 % | 0.6 % | 0.5 % |
| **Total Stage N2:** | 294 | 88.8 % | 81.1 % | 80.0 % |
| **Total Stage N3:** | 0 | 0 % | 0.0 % | 0.0 % |
| **Total Stage R:** | 35 | 10.6 % | 9.7 % | 9.5 % |
| **Total Movement Time:** | 0 | | 0.0 % | 0.0 % |
| **Total Wake Time:** | 36.5 | | | 9.9 % |
| **WASO:** | 31.5 | | | |
| **Wake Time During SPT:** | 31.5 | | 8.7 % | |
| **Latency to Sleep Onset:** | 5 | | | |
| **Latency to REM Sleep:** | 163 | | | |
| **Latency to Persistent Sleep:** | 5 | | | |
| **Sleep Efficiency:** | 90.1 % | | | |
| **Sleep Maintenance:** | 91.3 % | | | |

**Sleep Efficiency is time asleep as a % of time in bed. Sleep Maintenance is time asleep as a % of sleep period time. Awakenings are defined as 30 seconds or more.*

I reviewed the following: The patient chart, the raw data of sleep study, features of EEG, EKG rhythm and abnormality, sleep stages (at least by performing spot check) and the numerical data of sleep study report.

Impression/Plan:

Electronically signed: Mamoun I. Najjar, MD, FCCP, FAASM

*Patient:* *Study Date:*

**Positional Summary**

| | Time (min) | %TST |
|---|---|---|
| Left: | 0 | 0.0 % |
| Right: | 0 | 0.0 % |
| Supine: | 263.3 | 79.6 % |
| Prone: | 0 | 0.0 % |

** Positional times are given for TST.*

**Arousal Summary**

| Arousal Caused By: | Number | Index |
|---|---|---|
| Respiratory Events: | 22 | 4.0 |
| Snore: | 0 | 0.0 |
| LM: | 0 | 0.0 |
| Spontaneous: | 8 | 1.5 |
| Bruxism: | 0 | 0.0 |
| Other: | 0 | 0.0 |
| Total: | 30 | 5.4 |

**Respiratory Events Summary**

***Number of Respiratory Events – Position & Sleep Stage***

| | NREM | | REM | | TOTAL |
|---|---|---|---|---|---|
| | Non-supine | Supine | Non-Supine | Supine | |
| Obstructive Apnea: | 0 | 0 | 0 | 0 | 0 |
| Mixed Apnea: | 0 | 0 | 0 | 0 | 0 |
| Central Apnea: | 0 | 0 | 0 | 1 | 2 |
| All Apneas: | 0 | 0 | 0 | 1 | 2 |
| Hypopneas: | 0 | 0 | 0 | 0 | 1 |
| Apneas + Hypopneas: | 0 | 0 | 0 | 1 | 3 |
| RERA: | 0 | 3 | 0 | 0 | 3 |
| A/H INDEX: | 0 | 0 | 0 | 1.7 | 0.5 |
| RDI: | 0 | 0.8 | 0 | 1.7 | 1.1 |

| | By Sleep Stage | | By Position | | TOTAL |
|---|---|---|---|---|---|
| | NREM | REM | Non-Supine | Supine | |
| Sleep Time (min.): | 296 | 35 | 0 | 263.3 | 331 |
| Obstructive Apnea: | 0 | 0 | 0 | 0 | 0 |
| Mixed Apnea: | 0 | 0 | 0 | 0 | 0 |
| Central Apnea: | 1 | 1 | 0 | 1 | 2 |
| All Apneas: | 1 | 1 | 0 | 1 | 2 |
| Hypopneas: | 1 | 0 | 0 | 0 | 1 |
| Apneas + Hypopneas: | 2 | 1 | 0 | 1 | 3 |
| RERA: | 3 | 0 | 0 | 3 | 3 |
| Apnea Index: | 0.2 | 1.7 | 0 | 0.2 | 0.4 |
| Hypopnea Index: | 0.2 | 0 | 0 | 0 | 0.2 |
| A/H INDEX: | 0.4 | 1.7 | 0 | 0.2 | 0.5 |
| RDI: | 1.0 | 1.7 | 0 | 0.9 | 1.1 |

** RDI denotes the average number of all respiratory events (Apnea+Hypop+RERA) per hour of sleep.*

***Respiratory Event Durations***

| | Average (sec) | Maximum (sec) |
|---|---|---|
| Apnea (NREM): | 11.9 | 26.7 |
| Hypopnea (NREM): | 28.9 | 28.9 |
| RERA (NREM): | 19.7 | 26.7 |
| Apnea (REM): | 16.7 | 16.7 |
| Hypopnea (REM): | 0 | 0 |
| RERA (REM): | 0 | 0 |

Patient: Study Date:

*__Other Respiratory Patterns__*

| | Yes | No |
|---|---|---|
| Cheyne Stokes: | ☐ | X☐ |
| Hypoventilation: | ☐ | X☐ |

**Oxygen Saturation Summary**

| | Wake | NREM | REM | Total Record |
|---|---|---|---|---|
| Total O2 Desaturations: | 1 | 1 | 0 | 2 |
| O2 Desaturation Index: | 1.6 | 0.2 | 0 | 0.3 |
| Average O2 Saturation (%) | 96.8 | 96.3 | 96.7 | 96.3 |
| Min O2 Saturation (%) | 93 | 93 | 94 | 93 |
| Max O2 Saturation (%) | 99 | 98 | 98 | 99 |
| Time @ 90% - 100% (min.) | 33.4 | 295.9 | 35 | 364.9 |
| Time @ 80% - 89% (min.) | 0.0 | 0.0 | 0.0 | 0.0 |
| Time @ 70% - 79% (min.) | 0.0 | 0.0 | 0.0 | 0.0 |
| Time @ 60% - 69% (min.) | 0.0 | 0.0 | 0.0 | 0.0 |
| Time @ 50% - 59% (min.) | 0.0 | 0.0 | 0.0 | 0.0 |
| | | | | |
| Time ≤ 88% (min.) | 0.0 | 0.0 | 0.0 | 0.0 |

**SaO2 <90% for 0.0% of the total sleep time.**

**Limb Movements Summary**

| | Number | Index |
|---|---|---|
| LM Arousals: | 0 | 0.0 |
| Isolated Limb Movements: | N/A | 0 |
| Periodic Limb Movements: | N/A | 0 |
| TOTAL Limb Movements: | N/A | 0 |

** Index is number per hour of sleep.*

**Snore Summary**

| | Number | Index |
|---|---|---|
| Snore Arousals: | 0 | 0.0 |
| Periodic Snores: | N/A | 0 |
| TOTAL Snores: | N/A | 0 |

** Index is number per hour of sleep.*

**Heart Rate Summary**

| | Wake | NREM | REM | TOTAL |
|---|---|---|---|---|
| Average Heart Rate (BPM) | 76 | 72 | 68 | 72 |
| Minimum Heart Rate (BPM) | 65 | 61 | 62 | 61 |
| Maximum Heart Rate (BPM) | 99 | 99 | 84 | 99 |

**Cardiac Events Summary:**

**Occurrence of the following arrhythmias was observed:**

| | | | BPM |
|---|---|---|---|
| Bradycardia: | N/A | Lowest heart rate observed: | |
| Asystole: | N/A | Longest pause observed: | |
| Sinus Tachycardia during sleep: | N/A | Highest heart rate observed: | |
| Narrow Complex Tachycardia: | N/A | Highest heart rate observed: | |
| Wide Complex Tachycardia: | N/A | Highest heart rate observed: | |
| Atrial fibrillation: | N/A | | |
| Other arrhythmias observed: | | | |

Patient: Study Date:

**Technologist Comment Section**

- All electrodes and sensors are applied according to *The AASM Manual for Scoring of Sleep and Associated Events, 2007 (IV)*

- All scoring follows *The AASM Manual for Scoring of Sleep and Associated Events: Rules, Terminology and Technical Specifications, 1st ed., 2007*

  Including scoring of hypopneas using VIII 4a and VIII 4b

EEG abnormalities noted? YES or NO
If yes please explain:

Any abnormal behavioral observations noted? YES or NO
If yes please explain:

Patient: Study Date:

## TREATMENT Breakdown Table

| Treatment Level | SLEEP TIME [min.] | | | | | APNEAS | | | | | HYP # | AHI | | | RERA # | RDI | | | Arousal Index | SaO2 Min % | SaO2 Avg % | Avg A/H Dur. (sec.) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | NREM | REM | Total | Non-Supine | Supine | OBS | MIX | CEN | Totals | Index | | Total | Non-Supine | Supine | | NREM | REM | Total | | | | |
| 7.0 | 136.7 | 35 | 171.7 | 0 | 171.7 | 0 | 0 | 1 | 1 | 0.3 | 0 | 0.3 | 0 | 0.3 | 1 | 0.4 | 1.7 | 0.7 | 5.9 | 94 | 96 | 16.7 |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

*Patient:* *Study Date:*

**Hypnograms**






Liberty/Al-Shareih 308

**Sleep and Pulmonary Care Center**

Patient Name Mohammed AlShareih Location: (Decatur) or Madison

Date of Study 8-12-16 Chart# 22225

Date of Birth_ Room Number 3

Referring Physician________

Epworth Sleepiness Scale_____ Height 65 Weight 154

O2 Used: Yes ____ No____ Liter FLOW _______ lpm

Ambien Given Yes_____No_____ Amount Given (mg) 10

*Patient Discharge Time: ________

*CPAP Mask Brand: Aura Style Nasal Mask Size Md

**Technician Comments:**

Type of Study CPAP

RERA's: YES X NO______

Hypopnea YES X NO____

Apnea: YES X NO_____

PLM's: YES_____ NO_____

Beginning Pressure: 5 Cmh2o

Ending Pressure: 8 Cmh2o

Optimal Pressure: 8 Cmh20

Heart Rhythms: (Normal) or Abnormal Explain: ________

Bathroom breaks: 1

Comments: ________

Technician's Signature Brian King

Sleep and Pulmonary Care Center
1222 Somerville Road SE
Decatur, AL, 35756

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Name: | Alshareih, Mohammed | ID: | | BSA: | 1.78 | Date: | 08/15/2016 |
| Tech: | Kail, Danielle | Height: | 65.00 | Age: | 53 | Room: | |
| Doctor: | Najjar, Mamoun | Weight: | 156.00 | Sex: | Male | Race: | <Unspecified |

Diagnosis:

Dyspnea: After any exertion    Cough: Non-Productive    Wheeze: Rare

Tbco Prod: Never Smoked    Yrs Smk:    Pks/Day:    Yrs Quit:

Medications:

Pre Test Comments:

Post Test Comments: Nebulized albuterol 2.5mg/3.0ml saline and tolerated well. Good patient effort and cooperation. The results of this test meets ATS standards for acceptability and repeatability Patient could not trigger DLCO properly. The patient was unable to maintain a pant frequency of 60 breaths per minute during the lung volume measurements.

| | Pre-Bronch | | | Post-Bronch | | |
|---|---|---|---|---|---|---|
| | Actual | Pred | %Pred | Actual | %Pred | %Chng |
| ---- SPIROMETRY --- | | | | | | |
| FVC (L) | *1.27 | 4.17 | *30 | *1.13 | *27 | *-10 |
| FEV1 (L) | *0.92 | 3.22 | *28 | *0.77 | *23 | -15 |
| FEV1/FVC (%) | 72 | 77 | 93 | 68 | 88 | -6 |
| FEF 25% (L/sec) | *1.12 | 6.86 | *16 | *0.96 | *14 | -14 |
| FEF 75% (L/sec) | *0.96 | 1.43 | *67 | *0.13 | *9 | -86 |
| FEF 25-75% (L/sec) | *0.97 | 2.87 | *33 | *0.22 | *7 | *-76 |
| FEF Max (L/sec) | *1.13 | 8.59 | *13 | *0.98 | *11 | -13 |
| FIVC (L) | | | | 0.66 | | |
| FIF Max (L/sec) | | | | 0.56 | | |
| ---- LUNG VOLUMES ---- | | | | | | |
| SVC (L) | *1.46 | 4.17 | *34 | | | |
| IC (L) | *1.05 | 2.98 | *35 | | | |
| ERV (L) | *0.25 | 1.19 | *20 | | | |

Sleep and Pulmonary Care Center
1222 Somerville Road SE
Decatur, AL, 35756

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Name: | Alshareih, Mohammed | ID: | | BSA: | 1.78 | Date: | 08/15/2016 |
| Tech: | Kail, Danielle | Height: | 65.00 | Age: | 53 | Room: | |
| Doctor: | Najjar, Mamoun | Weight: | 156.00 | Sex: | Male | Race: | <Unspecified |

The FVC, FEV1, FEV1/FVC ratio and FEF25-75% are reduced indicating airway obstruction. The expiratory time was less than six seconds, which may underestimate the degree of obstruction. Patient effort was erratic which makes it impossible to adequately evaluate the flow volume loops. The FVC is reduced relative to the SVC indicating air trapping. The slow vital capacity is reduced. Following administration of bronchodilators, there is no significant response.

Conclusions:

Pulmonary Function Diagnosis:
Severe Obstructive Airways Disease

This preliminary report should not be used clinically unless reviewed and signed by a physician.

Angela Gunn, CRNP ______ M.D.
Najjar, Mamoun
Electronically signed by: Mamoun I, Najjar M.D.

Sleep and Pulmonary Care Center
1222 Somerville Road SE
Decatur, AL, 35756

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Name: | Alshareih, Mohammed | ID: | | BSA: | 1.78 | Date: | 08/15/2016 |
| Tech: | Kail, Danielle | Height: | 65.00 | Age: | 53 | Room: | |
| Doctor: | Najjar, Mamoun | Weight: | 156.00 | Sex: | Male | Race: | <Unspecified |












Liberty Mutual
INSURANCE

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
(888) 437-7611
Secure Fax No.: (603) 334-5715

| | |
|---|---|
| Date: | October 10, 2016 |
| To: | DR. MAMOUN NAJJAR<br>1222 SOMERVILLE ROAD SE<br>DECATUR AL 35601 |
| Attn: | |
| Fax: | (256) 341-0587 |
| From: | Lisa Gray<br>Disability Claims Tech Spec<br>Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-5715 |
| Total Pages (Including Cover): | 7 |
| RE: | Claim #: 5690365<br>Claimant: Mohammed Al-Shareih<br><br>Crown Equipment Corporation |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

Liberty Mutual INSURANCE

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5715

October 10, 2016

Dr. Mamoun J. Najjar
1222 SOMERVILLE ROAD SE
DECATUR, AL 35601

RE: Long Term Disability (LTD) Benefits
Crown Equipment Corporation
Claim #: 5690365
Claimant: Mohammed Al-Shareih
Claimant D.O.B.:

Dear Dr. Mamoun Najjar:

Liberty Life Assurance Company of Boston ("Liberty") is responsible for managing claims for Long Term Disability (LTD) benefits under Crown Equipment Corporation's Group Disability Policy. We are writing in reference to Mohammed Al-Shareih's claim for LTD benefits under the Policy.

Please find the enclosed request(s) for information previously sent to September 9, 2016. This is the second request for this information. Further delay may result in an adverse claim determination. Please submit the requested information by October 24, 2016.

If you have any questions regarding this correspondence, please contact me.

Sincerely,

Lisa Gray
Disability Claims Tech Spec
Phone No.: (888) 437-7611 Ext. 16396
Secure Fax No.: (603) 334-5715

Attachments: 5690365-REQUEST-PROVIDER-09.09.2016

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
(888) 437-7611
Secure Fax No.: (603) 334-5715

| | |
|---|---|
| Date: | September 9, 2016 |
| To: | DR. MAMOUN NAJJAR<br>1222 SOMERVILLE ROAD SE<br>DECATUR AL 35601 |
| Attn: | |
| Fax: | (256) 341-0587 |
| From: | Lisa Gray<br>Disability Claims Tech Spec<br>Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-5715 |
| Total Pages<br>(Including Cover): | 5 |
| RE:<br><br>Claim #: 5690365<br>Claimant: Mohammed Al-Shareih<br><br>Crown Equipment Corporation | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5715

September 9, 2016

Dr. Mamoun J. Najjar
1222 SOMERVILLE ROAD SE
DECATUR, AL 35601

RE: Long Term Disability (LTD) Benefits
Crown Equipment Corporation
Claim #: 5690365
Claimant: Mohammed Al-Shareih
Claimant D.O.B.:

Dear Dr. Mamoun Najjar:

We are the Disability Claim Administrator for your patient, Mohammed Al-Shareih.

To evaluate Mr. Al-Shareih's eligibility for disability benefits and to help facilitate a return to work, when appropriate, we are requesting the following information:

- Please forward copies of all progress notes, sleep study test results, pulmonary test results and diagnostic test results from April 14, 2016 through present.

We ask that you provide this information by September 30, 2016. Failure to provide the requested information may result in an adverse benefit or claim determination. The information can be faxed to our office at our secure fax number (603) 334-5715 or mailed to the above address.

If prepayment is required, please fax an invoice indicating the number of pages, federal tax ID# and amount due.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored LTD benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Mr. Al-Shareih allowing the release of information to our company. This authorization specifically allows you to release medical information to us and is valid for two years from the date of Mr. Al-Shareih's signature.

If you have any questions regarding this matter, please contact me.

Sincerely,

Lisa Gray
Disability Claims Tech Spec
Phone No.: (888) 437-7611 Ext. 16396
Secure Fax No.: (603) 334-5715

Attachments: 5690365-EMPLOYEE/CLAIMANT-AUTHORIZATION-05.25.2016

Liberty Mutual. INSURANCE

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5715

## Authorization to Obtain and Release Psychotherapy Notes

**EMPLOYEE** Mohammed Al-Shareih **Claim** 5690365

**EMPLOYER/SPONSOR/CUSTOMER** Crown Equipment Corporation

**Return** Lisa Gray

I **authorize** any physician, health plan, health care professional, mental health professional, hospital, clinic, medical facility, other health care providers, government agency and any insurance or reinsurance company to release any psychotherapy notes relating to me to the particular Company in the Liberty Mutual Group of companies to which I am submitting a claim, or to its agents, employees, or representatives, or to the Plan Sponsor (if Self Insured Plan), or to persons or other organizations providing claims management services.

By my signature below, I acknowledge that any agreements I have made to restrict my protected health information do not apply to this Authorization, and I instruct any physician, health plan, health care professional, hospital, clinic, medical facility, other health care provider, government agency, and any insurance or reinsurance company to release and disclose all of my psychotherapy notes without restriction, including psychotherapy notes recorded in any medium documenting or analyzing the contents of conversations(s) during private counseling sessions and/or group, joint or family counseling sessions.

I **understand** the Company or Plan Sponsor will use the information obtained under this Authorization or directly from me to determine eligibility for insurance benefits, which may include assessing ongoing treatment. Any information obtained will not be released to any person or organizations EXCEPT to the Plan Sponsor, reinsuring companies, other companies in the Liberty Mutual Group of companies to which I am submitting a claim, Employee Assistance Programs (EAP) or other disease management or assistance programs providing services to the Plan Sponsor and/or to the Company, persons or other organizations providing claims management and claim advisory services to the Plan Sponsor and/or to the Company, the Group Policyholder and its agents/vendors for purposes of auditing the Company's administration of claims under the policy and/or assessing statistical claim data related to its benefit programs, persons or organizations providing medical treatment or services in connection with my claim, or any person performing business or legal services for them in connection with my claim(s) or as may be otherwise permitted or required by law. I also understand that, to the extent reasonably necessary, information obtained may be released to other insurance companies or insurance support organizations to detect or prevent criminal activity, fraud, material misrepresentation, or material non-disclosure in connection with insurance transactions.

I **understand** that the Company must comply with state and federal laws and regulations enacted to protect my privacy. I also understand that the information disclosed to them pursuant to this Authorization may be subject to redisclosure with my authorization or as otherwise permitted or required by law.

I **understand** that this Authorization is valid for two years from the date appearing below with my signature. I understand that I have a right to request and receive a copy of this Authorization. I agree that a photographic copy of this Authorization shall be as valid as the original. I understand that I have the right to revoke this Authorization at any time by written notification to the Plan Sponsor and/or the Company in the Liberty Mutual Group of companies for which I submit a claim. I understand that revocation will not apply to any information that is requested prior to Liberty receiving notice of revocation.

I **understand** that if I refuse to sign this Authorization to release all of my psychotherapy notes or if I alter or revoke it, the Company may not be able to process my claim for benefits and may not be able to make benefit payments.

**Mohammed Al-Shareih**
Claimant Name (Print)

Date of Birth

Al-Shareih [signature]
Claimant Signature

03/29/2016
Date

**5690365**
Claim Number

Liberty Mutual®
INSURANCE

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5715

## Authorization to Obtain and Release Information (Excluding Psychotherapy notes)

Employee Name Mohammed Al-Shareih Claim No 5690365

Employer/Sponsor/Customer Name Crown Equipment Corporation

Return to: Lisa Gray

I **authorize** any licensed physician, health care professionals, hospital, clinic, pharmacy, other medical or medically related facility, rehabilitation professional; vocational evaluator; government agency including the Social Security Administration and Veterans Administration, insurance or reinsurance company, credit or consumer reporting agency, financial/educational institutions and any current or former employer to release any and all of the following information to the particular Company in the Liberty Mutual Group of companies to which I am submitting claim, or to its legal representative, or to the Plan Sponsor (if Self-Insured Plan), or to persons or other organizations providing claims management services:

1. Medical information with respect to any physical or mental condition and/or treatment of me, including confidential information regarding AIDS/HIV infection, communicable diseases, alcohol and substance abuse, and mental health **(excluding psychotherapy notes).**

2. Information with respect to: job duties, earnings, employment applications, personnel records, and other work related information; records and information related to any insurance coverage and claims filed; credit information including, but not limited to, credit reports and credit applications; other financial information including bank records; complete copies of Federal and State tax returns; including attachments; and academic transcripts.

3. Information concerning Social Security benefits, including, but not limited to, monthly benefit amounts, monthly Supplemental Security Income payment amounts, entitlement dates, information from my Fact Query, and any benefits to which my dependents may be eligible under my record.

I **understand** the Company or Plan Sponsor will use the information obtained under this Authorization or directly from me to determine eligibility for insurance benefits, which may include assessing ongoing treatment. Any information obtained will not be released to any person or organizations EXCEPT to the Plan Sponsor, reinsuring companies,other companies in the Liberty Mutual Group of companies to which I am submitting a claim, Employee Assistance Programs (EAP) or other disease management or assistance programs providing services to the Plan Sponsor and/or to the Company, persons or other organizations providing claims management and claim advisory services to the Plan Sponsor and/or to the Company, the Group Policyholder and its agents/vendors for purposes of auditing the Company's administration of claims under the policy and/or assessing statistical claim data related to its benefit programs, persons or organizations providing medical treatment or services in connection with my claim, or as may be other wise permitted or required by law. I also understand that, to the extent reasonably necessary, information obtained may be released to other insurance companies or insurance support organizations to detect or prevent criminal activity, fraud, material misrepresentation, or material non-disclosure in connection with insurance transactions.

I understand that this authorization is valid for two years from the date appearing below with my signature. I understand that I have a right to request and receive a copy of this authorization. I understand that I have the right to revoke this Authorization at any time by notifying the Plan Sponsor and/or the Company in the Liberty Mutual group of companies for which I submit a claim. If I do not sign this authorization or if I alter or revoke it, Liberty may not be able to evaluate my claim(s), which may lead to my claim(s) being denied. I understand that revocation will not apply to any information that is requested prior to Liberty receiving notice of revocation.

Mohammed Al-Shareih
Claimant Name ( Print) Date of Birth

Claimant Signature Date

5690365
Claim Number

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213

MR. MOHAMMED AL-SHAREIH

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5715

October 10, 2016

Mr. Mohammed Al-Shareih

RE: Long Term Disability (LTD) Benefits
Crown Equipment Corporation
Claim #: 5690365

Dear Mr. Mohammed Al-Shareih:

Liberty Life Assurance Company of Boston ("Liberty") is responsible for managing claims for Long Term Disability (LTD) benefits under Crown Equipment Corporation's Group Disability Policy. We are writing in reference to your claim for LTD benefits under the Policy.

We are currently reviewing your eligibility for continued disability benefits, and are in need of additional information.

On September 9, 2016, we requested medical records from Dr. Najjar . This information is necessary to complete our ongoing claims investigation. Please provide us with the following information to assist us with our review of your eligibility for benefits:

- Office treatment notes, test results, operative reports, prescription histories, and treatment plans from April 14, 2016 through present. from Dr. Najjar

Crown Equipment Corporation's LTD Policy requires that, in order to receive ongoing benefits, you provide proof of disability within a required timeframe. Your cooperation in providing the requested information is essential to our claim investigation.

If we do not receive all of the requested information by November 10, 2016, 30 days from the date of this request, your benefits will be suspended. If we do not receive all of this requested information by December 10, 2016, 30 days from the date of suspension, your claim will be closed.

We ask that you provide us with this information no later than November 10, 2016 as required under the terms of the Policy.

If there are any other attending physicians or specialists, including physical therapy providers, that we are unaware of, please have them forward all medical records pertinent to your disability within the timeframe stated above.

Please be adviesd another request was sent to Dr. Najjar today.

In addition we ask that you please provide proof that you applied for Social Security Disability.

If we do not receive the requested information by November 10, 2016, your benefits will be suspended.

If you have any questions regarding this matter, please contact me.

Sincerely,

Lisa Gray
Disability Claims Tech Spec
Phone No.: (888) 437-7611 Ext. 16396
Secure Fax No.: (603) 334-5715

DDI

Donovan and Devlin, Inc.
P.O.Box 328
Alpharetta, GA. 30009

| DATE | INVOICE # |
|---|---|
| 10/4/2016 | 24182 |

| BILL TO |
|---|
| Liberty Mutual Disability<br>P.O.Box 1525<br>Dover,NH. 03821-1525 |

| CASE NO. | TERMS | FEI NO.58-1947172 |
|---|---|---|
| 16-125-1259 | On Receipt | 58-1947172 |

| QUANTITY | DESCRIPTION | AMOUNT |
|---|---|---|
| | CLAIMANT:Mohammed Al-Sharesh | |
| | CLAIM #:5690365 | |
| | DATES:August 15-20, September 19, 2016 | |
| | REQUESTOR:Lisa Gray | |
| 1.5 | FLAT RATE | 1,012.50 |
| | TEL:770- 594-1000.Fax 770-594-1199 | |
| | PLEASE SHOW INVOICE | |

| | | |
|---|---|---|
| WHEN DEDICATION DEPENDABILITY & INTEGRITY COUNT THANK YOU FOR YOUR PATRONAGE | **Total** | $1,012.50 |

## SUMMARY OF INVESTIGATION

| | | | |
|---|---|---|---|
| **Claimant:** | Mohammed Al-Shareih | **Date:** | September 26, 2016 |
| **Claim #:** | 5690365 | **File #:** | 16-125-1259 |
| **Employer:** | Crown Equipment Corporation | **Injury:** | Hypersomnia |

### Objective

At the request of the Client, a preliminary investigation was conducted to first determine the CLAIMANT'S current address using computer and telephone resources. One day of surveillance was approved in , Alabama area in order to confirm his residence.

### Directions/Description

Unknown at this time. The CLAIMANT was recently evicted from his last known address . It appears that he has moved back to the , Alabama area where he maintains a Post Office Box.

### Summary of Results

A preliminary investigation was conducted to identify the CLAIMANT'S current residence, level activity, and interests. Database records indicated that his most current address was at 3 even though a post office box in , Alabama was provided for him as a mailing address. The investigator conducted a record search in Miami County Ohio and learned that a recent eviction notice was filed by the management company at his reported address. A representative was contacted and it was discovered he had vacated the property about a week prior. The representative saw him driving a rented U-Haul type van pulling a red or maroon Honda Civic sedan behind it. The client provided the CLAIMANT had visited Dr. Najjar at a Sleep and Pulmonary Care Center in Decatur, Alabama in September 2016. The CLAIMANT has a follow up visit on January 9, 2017. Efforts to locate the CLAIMANT in the Huntsville, Alabama area met with negative results on Monday, September 19, 2016. He was divorced from his wife on July 23, 2015 and does not appear to have reconciled. Two young children bear his name. A protective order was filed by his ex-wife during the proceedings as she claimed he threatened to kill her if she filed for divorce or left with the children. A professional Linked-In account was discovered for the CLAIMANT as it matched criteria for his personal identifiers. He was listed as the Director of Hardware-Software, Inc., established in 2013 and specializing in custom computer programming. His name also appeared as a professor in the Computer Science Department at Calhoun Community College in Decatur, Alabama in 2013 and 2014.

| **TIME/ DATE/ LOCATION** | **DETAILS** |
|---|---|
| August 15- 20th 2016<br>Preliminary Investigation | A driver's license was provided which contained a picture of the CLAIMANT for identification purposes. He was listed as 53 year old, male, 5'6" and 150lbs. His address was listed as , AL 35758. He reportedly worked for Crown Equipment Corporation. He was hired on 3/2/15 and disabled on 1/23/16. His occupation was is a Computer Engineer. His mailing address was provided as , AL 35814. He was reported to be divorced and lives alone as his wife has custody of their two children. |

The CLAIMANT reports he is unable to work due to memory loss, breathing problems, and severe fatigue causing him to fall asleep in the middle of performing tasks. He reports spending approximately 15 hours in bed. He still has an ability to drive but does not drive continuously more than 25 minutes otherwise it is a hazard.




His telephone number was provided as . A reverse search indicated it was a cellular telephone and last listed at , Al 35757 a former address associated with the CLAIMANT.

Database records indicated that his most current address was at 45373 even though a post office box in , Alabama was provided for him as a mailing address. The investigator conducted a record search in Miami County

Ohio and learned that a recent eviction notice was filed by the management company at his reported address on July 15, 2016 (16-CV-G-01177). A representative was contacted at the management company and it was discovered he had vacated the property about a week prior. The representative saw him driving a rented U-Haul type van pulling a red or maroon Honda Civic sedan behind it. His destination was unknown.

An internet search of various social sites revealed a professional Linked In account for the CLAIMANT as it matched certain personal identifiers for him. He was listed as the Director of Hardware-Software, Inc., established in 2013 and specializing in custom computer programming. His name also appeared as a professor in the Computer Science Department at Calhoun Community College in Decatur, Alabama in 2013 and 2014.

**https://www.linkedin.com/in/mohammed-al-shareih-3b130278**

Mohammed Al-Shareih

Computer Software Professional

Madison, Alabama
Computer Software

**Current** 1. Hardware-Software Inc.

**0** connections

Join LinkedIn and access Mohammed's full profile. It's fre

As a LinkedIn member, you'll join 400 mi
professionals who are sharing connections,
opportunities.

- See who you know in common
- Get introduced
- Contact **Mohammed** directly

View Mohammed's Full Profile

## Experience

- Senior Firmware Engineer

  **Hardware-Software Inc.**
  2013 – Present (3 years)

[http://www.buzzfile.com/business/Hardware~Software,-Inc.](http://www.buzzfile.com/business/Hardware~Software,-Inc.)

**Hardware-Software, Inc.**

Contact Information
**Hardware-Software, Inc.**

35757

| | |
|---|---|
| Contact: | Mohammed Al-Shareih |
| Title: | Director |
| Phone: | |
| Website: | |

**Hardware-Software, Inc. is the only company located at 35757**
Map

Business Description
Hardware-Software is located in Madison, Alabama. This organization primarily operates in the Custom Computer Programming Services business / industry within the Business Services sector. This organization has been operating for approximately 3 years. Hardware-Software is estimated to generate $85,055 in annual revenues, and employs approximately 3 people at this single location.

| | |
|---|---|
| Sector: | Business Services |
| Category: | Custom Computer Programming Services |
| Industry: | Custom Computer Programming Services<br>Systems Engineering Consultant, Ex. Compute<br>Software Training, Computer<br>Personal Computers (Microcomputers) |
| **SIC Code:** | 7371, 8748, 8243, 3571 |

Name:
Hardware-Software, Inc.
Year Founded:
2013
State of Inc:
Alabama
Location Type:
Single
Revenue:

$ 85,055
Employees:
3
Facility Size:
N/A
** Revenue & Employees are estimates*

**http://www.ratemyprofessors.com/ShowRatings.jsp?tid=1857777**

Al-Shareih Mohammed
Professor in the Computer Science department
at Calhoun Community College, Decatur, AL

| | | |
|---|---|---|
| 04/11/2014 awesome 4.5 Overall Quality 3.0 Level of Difficulty | CIS251 For Credit: N/A Attendance: Mandatory Textbook Used: Yes Would Take Again: N/A Grade Received: B | Deep understanding of the material. |
| 03/02/2014 awesome 5.0 Overall Quality 3.0 Level of Difficulty | CIS251 For Credit: N/A Attendance: N/A Textbook Used: Yes Would Take Again: N/A Grade Received: N/A | This instructor is very helpful; he knows what he is teaching very well. You can do good in his class if you pay attention in the class. |
| 12/02/2013 poor 1.5 Overall Quality 2.0 Level of Difficulty | | |

A google image from a mapping program displayed a red Honda Civic parked in the driveway of . The tag number had been blurred out.



Monday
<u>September 19, 2016</u>

9:04 a.m.

The Investigator arrived in the area, located the captioned residence which was the most current address reported for the CLAIMANT'S ex-wife Israa Almomani the custodian of the CLAIMANT'S two young children. No vehicles were present in the driveway or on the street. A one car garage door was closed. A six foot high perimeter privacy fence was enclosed the property except for a portion of the driveway. There was no outside activity to report.




9:44 a.m.

The investigator conducted a spot check of a previous address reported for the CLAIMANT and his computer software business. The address was determined to be a private residence in a residential neighborhood. No vehicles were parked on the street or in the driveway. The single door two car garage was closed. There was no outside activity to report.




| | |
|---|---|
| 10:15a.m. | The investigator conducted a spot check of a previous address reported for the CLAIMANT and on his Alabama Driver's License. The address was determined to be a private residence in a residential neighborhood. No vehicles were parked on the street or in the driveway. The single door two car garage was closed. There was no outside activity to report. |




| | |
|---|---|
| 10:40 a.m. | The Investigator located the captioned post office that the provided mailing address corresponded with. A search of the parking lot did not reveal a red or maroon Honda Civic reported as the CLAIMANT'S vehicle. |
| 10:50 a.m. | A gridsearch of the area was conducted which included multiple apartment complexes, and hotels in the area. |

11:24 a.m.
La Quinta Inn Motel
4870 University Drive
Huntsville, AL

A red Honda Civic AL Tag# was located at the captioned address near the Post Office. Additional inquiries were made about the owner of the vehicle. Although a similar color and style it did not appear to be associated with the CLAIMANT.




12:05 p.m.- 1:20 p.m.
Madison County Court House
Madison, Alabama

A search of criminal records revealed two traffic violation for the CLAIMANT on July 17, 2012. He was charged with Failure to Stop at Stop Sign and Failure to Display Insurance. At the time of the infraction he operated a 2011 Black Honda Pilot AL Tag# and resided at .

A search of Civil cases revealed that he was divorced from his wife, Hanna Israa Al-Momani on July 23, 2015. Two young children bear his name and were reported as approximately 2 years and 7 years old. A protective order was filed by his ex-wife during the proceedings as she claimed he threatened to kill her if she filed for divorce or left with the children. He was ordered to stay away from Huntsville Hospital Audiology. She retained possession of the Honda Pilot. In 2014, his address was listed as A Post Office Box was also listed for him.

1:40 p.m.- 3:09 p.m.

Spot checks of the three previous addresses in the Huntsville area were conducted again but failed to reveal a red Honda Civic sedan associated with the CLAIMANT.







3:10 p.m. As the CLAIMANT'S current whereabouts were unknown at this time, the daily surveillance was suspended.

END OF REPORT

Investigation Conducted by: Doug Poff
DDI
P. O. Box 328
Alpharetta, Georgia 30009

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
(888) 437-7611
Secure Fax No.: (603) 334-5715

| | |
|---|---|
| Date: | September 9, 2016 |
| To: | DR. MAMOUN NAJJAR<br>1222 SOMERVILLE ROAD SE<br>DECATUR AL 35601 |
| Attn: | |
| Fax: | (256) 341-0587 |
| From: | Lisa Gray<br>Disability Claims Tech Spec<br>Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-5715 |
| Total Pages<br>(Including Cover): | 5 |
| RE:<br><br>Claim #: 5690365<br>Claimant: Mohammed Al-Shareih<br><br>Crown Equipment Corporation | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

Liberty Mutual
INSURANCE

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5715

September 9, 2016

Dr. Mamoun J. Najjar
1222 SOMERVILLE ROAD SE
DECATUR, AL 35601

RE: Long Term Disability (LTD) Benefits
Crown Equipment Corporation
Claim #: 5690365
Claimant: Mohammed Al-Shareih
Claimant D.O.B.:

Dear Dr. Mamoun Najjar:

We are the Disability Claim Administrator for your patient, Mohammed Al-Shareih.

To evaluate Mr. Al-Shareih's eligibility for disability benefits and to help facilitate a return to work, when appropriate, we are requesting the following information:

- Please forward copies of all progress notes, sleep study test results, pulmonary test results and diagnostic test results from April 14, 2016 through present.

We ask that you provide this information by September 30, 2016. Failure to provide the requested information may result in an adverse benefit or claim determination. The information can be faxed to our office at our secure fax number (603) 334-5715 or mailed to the above address.

If prepayment is required, please fax an invoice indicating the number of pages, federal tax ID# and amount due.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored LTD benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Mr. Al-Shareih allowing the release of information to our company. This authorization specifically allows you to release medical information to us and is valid for two years from the date of Mr. Al-Shareih's signature.

If you have any questions regarding this matter, please contact me.

Sincerely,

Lisa Gray
Disability Claims Tech Spec
Phone No.: (888) 437-7611 Ext. 16396
Secure Fax No.: (603) 334-5715

Attachments: 5690365-EMPLOYEE/CLAIMANT-AUTHORIZATION-05.25.2016

Liberty Mutual INSURANCE

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7213
London, KY 40742-7213
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5715

## Authorization to Obtain and Release Psychotherapy Notes

**EMPLOYEE** Mohammed Al-Shareih **Claim** 5690365

**EMPLOYER/SPONSOR/CUSTOMER** Crown Equipment Corporation

**Return** Lisa Gray

I **authorize** any physician, health plan, health care professional, mental health professional, hospital, clinic, medical facility, other health care providers, government agency and any insurance or reinsurance company to release any psychotherapy notes relating to me to the particular Company in the Liberty Mutual Group of companies to which I am submitting a claim, or to its agents, employees, or representatives, or to the Plan Sponsor (if Self Insured Plan), or to persons or other organizations providing claims management services.

By my signature below, I acknowledge that any agreements I have made to restrict my protected health information do not apply to this Authorization, and I instruct any physician, health plan, health care professional, hospital, clinic, medical facility, other health care provider, government agency, and any insurance or reinsurance company to release and disclose all of my psychotherapy notes without restriction, including psychotherapy notes recorded in any medium documenting or analyzing the contents of conversations(s) during private counseling sessions and/or group, joint or family counseling sessions.

I **understand** the Company or Plan Sponsor will use the information obtained under this Authorization or directly from me to determine eligibility for insurance benefits, which may include assessing ongoing treatment. Any information obtained will not be released to any person or organizations EXCEPT to the Plan Sponsor, reinsuring companies, other companies in the Liberty Mutual Group of companies to which I am submitting a claim, Employee Assistance Programs (EAP) or other disease management or assistance programs providing services to the Plan Sponsor and/or to the Company, persons or other organizations providing claims management and claim advisory services to the Plan Sponsor and/or to the Company, the Group Policyholder and its agents/vendors for purposes of auditing the Company's administration of claims under the policy and/or assessing statistical claim data related to its benefit programs, persons or organizations providing medical treatment or services in connection with my claim, or any person performing business or legal services for them in connection with my claim(s) or as may be otherwise permitted or required by law. I also understand that, to the extent reasonably necessary, information obtained may be released to other insurance companies or insurance support organizations to detect or prevent criminal activity, fraud, material misrepresentation, or material non-disclosure in connection with insurance transactions.

I **understand** that the Company must comply with state and federal laws and regulations enacted to protect my privacy. I also understand that the information disclosed to them pursuant to this Authorization may be subject to redisclosure with my authorization or as otherwise permitted or required by law.

I **understand** that this Authorization is valid for two years from the date appearing below with my signature. I understand that I have a right to request and receive a copy of this Authorization. I agree that a photographic copy of this Authorization shall be as valid as the original. I understand that I have the right to revoke this Authorization at any time by written notification to the Plan Sponsor and/or the Company in the Liberty Mutual Group of companies for which I submit a claim. I understand that revocation will not apply to any information that is requested prior to Liberty receiving notice of revocation.

I **understand** that if I refuse to sign this Authorization to release all of my psychotherapy notes or if I alter or revoke it, the Company may not be able to process my claim for benefits and may not be able to make benefit payments.

**Mohammed Al-Shareih**
Claimant Name (Print)

Date of Birth

Al-Shareih [signature]
Claimant Signature

03/29/2016
Date

**5690365**
Claim Number